BARBARA HART (*pro hac vice*)
DAVID C. HARRISON (*pro hac vice*)
JEANNE D'ESPOSITO (*pro hac vice*)
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
Telephone: 914-997-0500
Facsimile: 914-997-0035

*Lead Counsel for the New York City Pension Funds and the Putative Class*

WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile:  415-778-0160

*Local Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | No. C 06-04327-JW<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO KRIENS, GANI AND BERRY'S COURSE AND SCOPE**<br><br>DATE: MARCH 30, 2009<br>TIME:  9:00 AM<br>BEFORE:  Hon. James Ware |

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

{1964 / MOT / 00093879.DOC v1}

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3)) ............................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES
PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ......................................... 3

RELEVANT FACTS ............................................................................................................................ 4

ARGUMENTS AND AUTHORITIES ................................................................................................ 7

I.     Summary Judgment Standard .................................................................................. 7

II.    Respondeat Superior and "Course and Scope" ..................................................... 9

III.   Juniper Is Vicariously Liable For False Statements Contained In Its SEC Filings As Kriens And Gani Acted Within The Course And Scope Of Their Employment When Signing And Filing the Documents With The SEC .................................... 10

IV.   Juniper Is Liable For The Intentional Backdating Of Stock Options Conducted By Its Stock Option Committee, As Kriens, Gani and/or Berry Were Acting Within The Course and Scope Of Their Employment As Members Of The Stock Option Committee When The Stock Option Committee Engaged in Options Backdating at Juniper ...................................... 11

CONCLUSION .................................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Celotex v. Catrett,*
    477 U.S. 317, 323-24 (1986) ............................................................................................7

*Hollinger v. Titan Capital Corp.,*
    914 F.2d 1564 (9th Cir. 1990) .......................................................................................8, 9

*Home Diagnostics Inc. v. Lifescan, Inc.,*
    120 F. Supp. 2d 864, 865 (N.D. Cal. 2000) ......................................................................7

*In re Brocade Sec. Litig.,*
    2008 WL 2050847 (N.D. Cal. May 13, 2008) ..................................................8, 9, 11, 12

*In re Cylink Sec. Litig.,*
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ............................................................................8

*In re Hienergy Technologies, Inc.,*
    No. SACV04-1226 DOC (JTLX),
    2005 WL 3071250 (C.D. Cal. Oct. 25, 2005) ...................................................................8

*Lies v. Farrell Lines, Inc.,*
    641 F.2d 765 (9th Cir. 1981) ............................................................................................7

*Meyer v. Holley,*
    537 U.S. 280 (2003) ..........................................................................................................9

*Oki Semiconductor Co. v. Wells Fargo Bank,*
    298 F.3d 768 (9th Cir. 2002) ...................................................................................3, 9, 12

*Radobenko v. Automated Equip. Co.,*
    520 F.2d 540, 543 (9th Cir. 1975) ....................................................................................7

*Randolph v. Budget Rent-A-Car,*
    97 F.3d 319 (9th Cir. 1996) ..............................................................................................9

*State Farm Fire & Cas. Co. v. Geary,*
    699 F. Supp. 756 (N.D. Cal. 1987) ...................................................................................8

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n.,*
    465 F.3d 1102 (9th Cir. 2006) ..........................................................................................7

## Statutes

Cal. Jury Instr. Civ. 13.01 ..........................................................................................................9

Fed. R. Civ. P. 56(a) ..................................................................................................................7

## Other Authorities

11 Moore et al., MOORE'S FEDERAL PRACTICE §56.40[1] (3d ed. 2007) ..........................8

11 Moore et al., MOORE'S FEDERAL PRACTICE §56.40[2] (3d ed. 2007) ..........................8

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

iii

{1964 / MISC / 00093872.DOC v1}

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 6, 2009, or as soon thereafter as this matter may be heard before the Honorable James Ware of the United States District Court for the Northern District of California, San Jose, California, Lead Plaintiff the New York City Pension Funds ("Lead Plaintiff") will, and hereby does, move for an order granting partial summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure regarding Juniper Network, Inc.'s ("Juniper" or the "Company") vicarious liability for actions taken and statements made by Defendants CEO Scott Kriens ("Kriens"), former CFO Marcel Gani ("Gani"), and former General Counsel Lisa Berry ("Berry") during the course and scope of their employments with Juniper and their memberships on Juniper's Stock Option Committee ("SOC").

This Motion is based on this Notice of Motion, the Supporting Memorandum of Points and Authorities, the Declaration of David Harrison, all pleadings and papers filed herein, the oral argument of counsel, and any other matters which may be submitted at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1. Whether Lead Plaintiff is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56 that Juniper is vicariously liable for any false statements contained in filings with the Securities and Exchange Commission ("SEC") that Defendants Kriens and/or Gani signed and/or filed within the course and scope of their employment at Juniper including the following Juniper SEC filings: July 30, 1999 Form 10-Q (Gani); October 29, 1999 Form 10-Q (Gani); March 29, 2000 Form 10-K (Gani, Kriens); May 12, 2000 Form 10-Q (Gani); August 10, 2000 Form 10-Q (Gani); November 9, 2000 Form 10-Q (Gani); March 27, 2001 Form 10-K (Gani, Kriens); May 8, 2001, Form 10-Q (Gani); August 6, 2001 Form 10-Q (Gani); November 1, 2001 Form 10-Q (Gani); March 29, 2002 Form 10-K (Gani, Kriens); May 15, 2002 Form 10-Q (Gani); August 14, 2002 Form 10-Q (Gani); November 7, 2002 Form 10-Q (Gani); March 10, 2003 Form 10-K (Gani, Kriens); May 8, 2003 Form 10-Q (Gani); August 7, 2003 Form 10-Q (Gani); November 14, 2003 Form 10-Q (Gani); February 20, 2004 Form 10-K (Gani, Kriens); May 3, 2004 Form 10-Q (Gani); August 5, 2004 Form 10-Q (Gani); November 2,

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

1

{1964 / BRF / 00093962.DOC v1}

1  2004 Form 10-Q (Gani); March 4, 2005 Form 10-K (Kriens); March 7, 2006 Form 10-K
2  (Kriens); November 17, 2003 Registration Statement (Gani, Kriens); Registration Statement on
3  Form S-8 dated March 14, 2000 (Gani, Kriens); Registration Statement on Form S-8 dated
4  August 18, 2000 (Gani, Kriens); Registration Statement on Form S-8 dated December 12, 2000
5  (Gani, Kriens); Registration Statement on Form S-8 dated March 29, 2001 (Gani, Kriens);
6  Registration Statement on Form S-8 dated December 21, 2001 (Gani, Kriens); Registration
7  Statement on Form S-8 dated July 8, 2002 (Gani, Kriens); NetScreen Registration Statement
8  dated 3/10/04 (Gani, Kriens); Registration Statement on Form S-8 dated 4/21/04 (Gani, Kriens);
9  Registration Statement on Form S-8 dated 8/18/04 (Gani, Kriens); Registration Statement on
10 Form S-8 dated 5/3/05 (Kriens); Registration Statement on Form S-8 dated 7/6/05 (Kriens);
11 Registration Statement on Form S-8 dated 3/7/06 (Kriens). Harrison Decl. Ex. 1.

12      2.    Whether Lead Plaintiff is entitled to judgment as a matter of law pursuant to
13 Federal Rule of Civil Procedure 56 that Juniper is vicariously liable for the backdating of stock
14 option grants by the SOC through the conduct of its members Kriens, Gain, and/or Berry, all of
15 whom performed their duties as members of the SOC within the course and scope of their
16 employment at Juniper.

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER
NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

2

{1964 / BRF / 00093962.DOC v1}

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Mindful of this Court's February 4, 2009 ruling that the Juniper Defendants' Motion for Summary Adjudication Regarding Loss Causation on August 10, 2006 was premature until after the completion of discovery, Lead Plaintiff respectfully submits the instant motion. This motion strictly addresses Juniper's vicarious liability and is timely and ripe for resolution because it is based exclusively upon defendant's corporate admissions.

Juniper has already admitted (1) the backdating of stock option grants through the Company's Stock Option Committee ("SOC"), and (2) the filing of false financial reports for several years, signed by Juniper's CEO and CFO, that failed to record compensation expenses associated with these "in-the-money" option grants.[1] Juniper's own calculations concede that the false reporting and concealment resulted in the failure to record approximately $900 million in compensation expenses. Answer, ¶ 3; Harrison Decl., Ex. 3.

Juniper, as a matter of law, is responsible for its senior officers' acts with respect to that backdating and false reporting, because it is undisputed that:

- Scott Kriens, Marcel Gani, and/or Lisa Berry, comprising the sole members of the SOC, (1) granted backdated stock options to Juniper employees, and (2) did so while acting in the course and scope of their employment as Juniper's CEO, CFO and General Counsel, respectively, and as the members of the SOC.[2]

---

[1] *See* Preclearance Submission to the Securities and Exchange Commission dated January 17, 2007, Bates nos. JNPR-CA 20048-54, Ex. 2 to Harrison Decl.; Juniper Defendants' Answer to Amended Consolidated Class Action Complaint dated June 23, 2008 ("Answer"), Dkt. No. 141, ¶¶ 19, 36, 42, 124, Ex. 3 to Harrison Decl.

[2] Because Lead Plaintiff seeks to establish vicarious liability under the federal securities laws, the Court must look primarily to federal common law, but California law is "instructive to the extent it helps delineate the traditional respondeat superior and agency principles." *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 776 n.4 (9th Cir. 2002) (quotation and citations omitted).

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

3

{1964 / BRF / 00093962.DOC v1}

- Kriens and/or Gani (1) signed the various Juniper SEC filings containing the false statements at issue in this action; and (2) did so while acting within the course and scope of their employment as Juniper's CEO and CFO respectively.

Granting this motion will be productive because it will foreclose the contention that the misconduct of its senior officers cannot be attributed to the Company.

## RELEVANT UNDISPUTED FACTS

On June 24, 1999, Juniper became a public company through an initial public offering of its stock ("IPO"). Harrison Decl. Ex. 2 at JNPR-CA 020050. Kriens and Gani served as Juniper's senior-most executives from its inception as a publicly traded company and throughout the relevant period.[3] Juniper grew rapidly following its IPO, hiring hundreds of employees through early June 2003. *Id.*; Harrison Decl. Ex. 3 at Def. Ans. ¶¶ 36, 42. To support this rapid growth and to achieve its recruiting and compensation objectives, Juniper relied heavily on the use of stock options in lieu of cash compensation. Harrison Decl. Ex. 2 at JNPR-CA 020050. Juniper granted stock options to nearly all new full-time employees. *Id.* Juniper also granted options to existing Juniper employees, based on performance or other factors. *Id.* To accomplish this massive undertaking involving the administration of tens of millions of stock option grants, on July 21, 1999, the Board of Directors established the SOC. *Id.*

---

[3] Defendant Kriens has served since October 1996 as Chief Executive Officer and Chairman of Juniper. Harrison Decl. Ex. 3 at Def. Ans. ¶ 36. Defendant Kriens participated in the issuance of and signed the Company's false and misleading SEC filings during the Class Period, including Juniper's annual reports for fiscal years 2003 through 2005 on Forms 10-K, and the registration statements for the NetScreen merger and the offering of the Notes. *Id.* Defendant Gani served as Juniper's Chief Financial Officer from February 1997 and as Executive Vice President and Chief Financial Officer of the Company from July 2002 through December 31, 2004. Harrison Decl. Ex. 3 at Def. Ans. ¶ 42. Beginning January 1, 2005, Mr. Gani assumed the position of Juniper's Chief of Staff. *Id.* Defendant Gani participated in the issuance of and signed the Company's false and misleading SEC filings during the Class Period, including Juniper's annual report for fiscal year 2003 on Form 10-K, the Company's reports on Forms 10-Q for each quarter of 2003 and 2004, and the registration statements for the NetScreen acquisition and the Notes offering. *Id.*

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

4

{1964 / BRF / 00093962.DOC v1}

From its inception in 1999 through year end 2003, the SOC was comprised of Kriens, Gani and Lisa Berry.[4] *Id.* The SOC was responsible for granting and administering Juniper's stock options to the Company's non-officer employees in accordance with the terms of Juniper's stock option plans. *Id.*

As the Company's top officers, Kriens and Gani participated in the issuance of, and/or signed, the Company's false and misleading SEC filings, including annual reports and registration statements. Harrison Decl. Ex. 3 at Def. Ans. ¶¶ 36, 24. CFO Gani also signed the Company's SEC Form 10-Q reports for each quarter from the time Juniper went public in 1999 through 2004, when he resigned, and was responsible for assuring the Company's financial reporting complied with accounting standards. Harrison Decl. Ex. 3 at Def. Ans. ¶ 42. Pursuant to requirements of the Sarbanes-Oxley Act of 2002 ("SOX"), Kriens and Gani were responsible as a matter of law for evaluating and advising the investing public concerning the adequacy of the Company's internal controls and the accuracy of its financial statements. 15 U.S.C. § 7241; 15 U.S.C. § 7262; 18 U.S.C. § 1350. Beginning with the filing of Juniper's SEC Form 10-Q for the second quarter of 2002, Kriens and Gani filed certifications with the Company's SEC Forms 10-Q and 10-K falsely representing that (a) they had evaluated the Company's internal controls and procedures and disclosed any material deficiencies or changes in those controls and procedures in the 10-Q or 10-K, as well as to Juniper's outside auditors and internal audit committee; and (b) the financial statements contained in the reports fairly presented the Company's financial condition. Harrison Decl. Ex. 3 at Def. Ans ¶¶ 142, 147-50, 159-61, 166, 176, 183, 208, 213, 220, 225, 230, 241, 252.

Similarly, Juniper's financial statements included in the Company's SEC filings, approved and signed by Kriens and Gani, repeatedly and falsely represented that no compensation costs were recognized for stock options grants, because the exercise prices of all

---

[4] Defendant Lisa Berry served as Juniper's General Counsel beginning June 18, 1999, and, beginning in July 1999 as a member of the SOC until her departure at year-end 2003. Harrison Decl. Ex. 2 at JNPR-CA 020050.

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

5

{1964 / BRF / 00093962.DOC v1}

1  options granted under the plans were equal to the market prices of the underlying stock on the
2  grant dates. Harrison Decl. Ex. 4. Juniper's Proxy Statements falsely represented that because
3  stock options served as incentive compensation which aligned "the interest of the Company's
4  executive officers with the long-term interests of the stockholders, stock options are granted at
5  market price on the date of the grant and will provide value to the executive officers only when
6  the price of the Company's Common Stock increases over the exercise price." Harrison Decl.
7  Ex. 5. As shown below, Juniper has admitted that these statements and others like them were
8  false.
9        Specifically, Juniper announced on December 20, 2006 that its Audit Committee had
10 concluded that between June 1999 and June 2003, the dates for a large number of grants made by
11 the SOC were chosen with the benefit of hindsight as to the price of the Company's stock, so as
12 to give favorable exercise prices. Harrison Decl. Ex. 6. The Audit Committee, through its
13 independent forensic accountants, KPMG, carried out an investigation of all of Juniper's option
14 grants between June 24, 1999, the date of Juniper's initial public offering, and May 23, 2006.
15 Harrison Decl. Ex. 2 at JNPR-CA 020047-48. KPMG found that Juniper's backdating resulted
16 in an estimated total additional compensation expense of $876.6 million, $86.9 million of which
17 arose from grants to Section 16 Officers. Harrison Decl. Ex. 2 at JNPR-CA 020049. The
18 December 20 release broadly outlined the irregularities found by the review: (1) there were
19 numerous instances where option grants were backdated so as to give favorable exercise prices;
20 (2) the Audit Committee identified serious concerns regarding the actions of certain former
21 management in connection with the stock option granting process; (3) formal documentation of
22 stock option grants often lagged the reported grant dates; (4) management failed to exercise
23 sufficient responsibility for the stock option granting process; and (5) CEO Kriens received two
24 option grants prior to 2001 in which the reported grant dates were prior to the actual date his
25 options were approved. Harrison Decl. Ex. 6.
26       On or about March 9, 2007, Juniper filed with the SEC the 2006 Form 10-K and the
27 quarterly Reports on Form 10-Q for June 30, 2006 and September 30, 2006. Juniper provided a

28 LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER
NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

6

{1964 / BRF / 00093962.DOC v1}

summary of the Audit Committee's investigation in Item 7 of its 2006 Form 10-K. Harrison Decl. Ex. 7. Juniper, in that 2006 Form 10-K summarized the Audit Committee's findings of improper accounting and other evidence of management's wrongdoing were summarized in the 2006 Form 10-K as follows:

> The Company has concluded that the measurement dates of a large number of grants to non-Officers during the period between June 1999 and December 2004 were incorrect. The Company's practice has been to grant stock options, except where prohibited, to nearly all full-time employees in connection with joining the Company. To facilitate the granting of options to Juniper Networks' rapidly growing workforce, the Board of Directors established a Stock Option Committee to grant options to non-Officer employees. <u>Between June 1999 and June 2003, the dates for a large number of grants made by the Stock Option Committee were chosen with the benefit of hindsight as to the price of the Company's stock, so as to give favorable exercise prices.</u>

(Emphasis added.) Harrison Decl. Ex. 7.

## ARGUMENTS AND AUTHORITIES

### I.  Summary Judgment Standard

A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Radobenko v. Automated Equip. Co.*, 520 F.2d 540, 543 (9th Cir. 1975). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *Home Diagnostics Inc. v. Lifescan, Inc.*, 120 F. Supp. 2d 864, 865 (N.D. Cal. 2000). Summary judgment also may be based on an opposing party's admissions of fact. *See, e.g., Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n.*, 465 F.3d 1102, 1111-12 (9th Cir. 2006). Here, the motion is effectively based in its entirety upon Juniper's admissions about the company and its officers and directors, in the form of Juniper's SEC filings, its public statements, and its Answer in this action. Accordingly, the determination of Lead Plaintiff's summary judgment motion would not

7

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

{1964 / BRF / 00093962.DOC v1}

require any discovery by either party, and would not interfere with the normal progress of the remainder of the action.

Rule 56 does not require that the relief granted be dispositive of the full matter in controversy, but instead allows a party to move for summary judgment "upon all or any part" of a claim. Fed. R. Civ. P. 56(a); James Wm. Moore *et al.*, 11 MOORE'S FEDERAL PRACTICE §56.40[1] (3d ed. 2007). Thus, a party may move for summary judgment on certain elements of a claim - a motion for "partial summary judgment." *See, e.g., Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("It is clear that Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim[.]") Motions for partial summary judgment often serve to narrow the issues for trial. *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) ("Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried"). The partial summary judgment is merely a determination before the trial that certain issues shall be deemed established in advance of the trial. The procedure was intended to avoid a useless trial of facts on issues over which there was really never any controversy. *Farrell Lines, Inc.*, 641 F.2d at 769 n.3; 11 MOORE'S FEDERAL PRACTICE §56.40[2] (3d ed. 2007) ("In availing itself of the ability granted by Rule 56 to issue orders which resolve significant questions, a court can focus the litigation on the true matters in controversy"). Decision of Lead Plaintiff's motion, based on the uncontroverted facts, could efficiently determine a portion of the Section 10(b) liability issues at an early stage of this litigation, allowing the Court and parties then to focus the pretrial discovery, motion practice and trial on the remaining issues of loss causation and damages.

## II. Respondeat Superior and "Course and Scope"

The Courts, including those in the Ninth Circuit, have held that a "corporate entity can be vicariously liable under section 10(b) for the fraud of its officers." *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1088 (N.D. Cal. 2001). It is a fact that "corporations are incapable of acting except by and through their agents and employees." *Id.* The Ninth Circuit "recognizes

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

8

{1964 / BRF / 00093962.DOC v1}

respondeat superior liability for a corporation under 10(b) and 10b-5 based on common law agency principles." *In re Hienergy Technologies, Inc.*, No. SACV04-1226 DOC (JTLX), 2005 WL 3071250, at *8 (C.D. Cal. Oct. 25, 2005); *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576-78 (9th Cir. 1990).

In general, an employer will be held vicariously liable for the acts of its employees based on the doctrine of respondeat superior "if its employee's acts were committed within the course and scope of [their] employment." *In re Brocade Sec. Litig.*, No. C 05-02042, 2008 WL 2050847, at *2 (N.D. Cal. May 13, 2008); *see also Meyer v. Holley*, 537 U.S. 280, 285-86 (2003) (vicarious liability rules "ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."). The Ninth Circuit has held that conduct occurs within the course and scope of employment when: "1) the conduct occurred substantially within the time and space limits authorized by the employment; 2) the employee was motivated, at least in part, by a purpose to serve the employer; and 3) the act was of a kind that the employee was hired to perform." *Brocade*, 2008 WL 2050847, at *2 (citing *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 776 (9th Cir. 2002)).[5]

California law requires even less exacting standards to hold a company liable under the doctrine of respondeat superior, requiring only that: (1) the act performed was to have been either required or incident to the employee's duties, **or** (2) the employee's misconduct was reasonably foreseeable by the employer. *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 327 (9th Cir. 1996).

### III. Juniper Is Vicariously Liable For False Statements Contained In Its SEC Filings As Kriens And Gani Acted Within The Course And Scope Of Their Employment When Signing And Filing the Documents With The SEC.

As the Company's top officers, Defendants Kriens and Gani participated in the issuance of, and signed, SEC filings that the Juniper Defendants admit were false. Harrison Decl. Ex. 3 at

---

[5] *See also* Cal. Jury Instr. Civ. 13.01 ("It is not necessary that the conduct of the agent be expressly authorized by the principal or be undertaken for the benefit of the principal for the conduct to be within the scope of the agent's [authority] [or] [employment]. Conduct which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's [authority] [or] [employment]").

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

9

{1964 / BRF / 00093962.DOC v1}

Def. Ans. ¶¶ 3, 15, 19, 36, 42. Kriens signed Juniper's annual reports for fiscal years 2001-2005 and Gani signed Juniper's annual reports for fiscal years 2001-2004, at the times that Kriens was serving as Juniper's CEO and Gani as its CFO. Harrison Decl. Ex. 3 at Def. Ans. ¶¶ 36, 42.

The instructions provided by the SEC for filing a Form 10-K specifically provide that "[t]he report must be signed by the registrant, and on behalf of the registrant by its principal executive officer or officers, its principal financial officer or officers, its controller or principal accounting officer, and by at least the majority of the board of directors or persons performing similar functions." Harrison Decl. Ex. 8.[6]

Pursuant to requirements of the SOX, Kriens and Gani were also responsible for evaluating and advising the investing public concerning the adequacy of the Company's internal controls and the accuracy of its financial statements. 18 U.S.C. § 1350; 15 U.S.C. § 7241; 15 U.S.C. §7262. Beginning with the filing of Juniper's SEC Form 10-Q for the second quarter of 2002, Kriens and Gani filed certifications with the Company's SEC Forms 10-Q and 10-K falsely representing that (a) they had evaluated the Company's internal controls and procedures and disclosed any material deficiencies or changes in those controls and procedures in the 10-Q or 10-K, as well as to Juniper's outside auditors and internal audit committee; and (b) the financial statements contained in the reports fairly presented the Company's financial condition. Harrison Decl. Ex. 3 at Def. Ans ¶¶ 142, 147-50, 159-61, 166, 176, 183, 208, 213, 220, 225, 230, 241, 252. These requirements demonstrate that, under both the federal standard of respondeat superior and the California doctrine, Kriens and Gani were acting with the authority of Juniper and in the course and scope of their employment at Juniper at the time they signed the SEC filings under either the federal standard of respondeat superior or the California doctrine.

Their motivation in signing the admittedly false annual reports was, at least in part, to serve Juniper's interests. Kriens and Gani signed annual reports and registration statements which contained financial statements to assure Juniper's compliance with federal regulations.

---

[6] Instructions provided by the SEC for filing Form 10-Q and Form S-8 cite similar signature requirements. Harrison Decl. Ex. 8.

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER
NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

10

{1964 / BRF / 00093962.DOC v1}

which failed to expense compensation costs for intentionally backdated stock options. Harrison Decl. Ex. 3 at Def. Ans. ¶¶ 3, 15, 19.[7]

The signing of Juniper's SEC filings by Kriens and Gani occurred within the time and space limits authorized by their employment, at a time when Kriens and Gani were motivated to serve Juniper, and the acts were the kind that Kriens as CEO and Gani as CFO were hired to perform. As such, Juniper can be held vicariously liable for false statements made in the filings.

Under California law the case for liability against Juniper is even more compelling as, an "employee acts within the course and scope of employment when he performs an act required by or incident to his duties . . . [and] [t]he employee need not have intended to further the employer's interest. *Brocade*, 2008 WL 2050847, at *5 (citations omitted). There is no question that Kriens' and Gani's signing of Juniper's SEC filings arose from their duties as officers of Juniper. *Id.* In addition, Kriens' and/or Gani's conduct was foreseeable by Juniper. The signing of an allegedly-materially false 10-K by executive offices is "no[t] so unusual or startling that it would be unfair to impute the loss that resulted to [Juniper]" and an executive officer "who willfully signs a false Form 10-K does not completely abandon or substantially deviate from his employment duties." *Id*.

For the foregoing reasons, as a matter of law, Juniper can be held liable for the false statements contained in its SEC filings signed by Defendants Kriens and Gani, as both were acting within the course and scope of their employments at the time the false statements were made.

IV. **Juniper Is Liable For The Intentional Backdating Of Stock Options Conducted By Its Stock Option Committee, As Kriens, Gani and/or Berry Were Acting Within The Course and Scope Of Their Employment As Members Of The Stock Option Committee When The Stock Option Committee Engaged in Options Backdating at Juniper.**

To facilitate the granting of stock options to its growing workforce, Juniper formed the SOC in July 1999. Harrison Decl. Ex. 2 at JNPR-CA 020050. The SOC was authorized to make

---

[7] *See also, In re Take-Two Interactive, Inc. Sec. Litig.*, 551 F. Supp. 2d 247, 295 (S.D.N.Y. 2008) (committee members' motive to benefit the company and its executives and employees by backdating provided a strong motive to falsify the financials).

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

11

{1964 / BRF / 00093962.DOC v1}

1 stock option grants to non-executive employees under the Company's stock plans and
2 Defendants Kriens, Gani, and Berry were the sole members of the SOC from inception through
3 year end 2003. *Id.*

4 During the period of June 1999-June 2003, the dates for a large number of grants made
5 by the SOC were chosen with the benefit of hindsight as to the price of the Company's stock [*i.e.*
6 backdated], so as to give favorable exercise prices. Harrison Decl. Ex. 6. The SOC was
7 motivated, at least in part, by a purpose to serve Juniper. Its acts in fact did benefit Juniper, since
8 options were used to recruit, retain and incentivize key employees and the subsequent misstated
9 financials bolstered Juniper's stock. Harrison Decl. Ex. 2 at JNPR-CA 020050. Finally, the acts
10 – which, in the case of the SOC, were those involved in the administration of the stock option
11 plan which included overseeing the preparation of grant lists, choosing grants dates and
12 preparing and signing SOC minutes - were of the kind that the members of the SOC were
13 charged with performing. *Id.* Therefore under the test articulated in *Oki Semiconductor Co. v.*
14 *Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 776 (9th Cir. 2002)), Kriens, Gani, and/or Berry,
15 through the actions of the SOC, were acting within the course and scope of their employment
16 when the SOC intentionally backdated stock options.

17 Furthermore, under California law, Juniper is vicariously liable for the acts of the SOC,
18 as the evidence shows that the SOC was responsible for stock option administration and all
19 aspects of such administration would be the duty of its members. *Id.*; Harrison Decl. Ex. 2 at
20 JNPR-CA 020050. Therefore the conduct of the members of the SOC is the type that could be
21 reasonably foreseeable by Juniper as it would not be unusual or startling. *Brocade*, 2008 WL
22 2050847, at *2.

23 For the foregoing reasons, Juniper can be held vicariously liable for the backdating of
24 stock options performed by its Stock Option Committee.

## CONCLUSION

26 For the foregoing reasons, Lead Plaintiff respectfully urge that this motion for partial
27 summary adjudication should be granted and an order should be issued finding (1) that Juniper is

12

28 LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER
NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

{1964 / BRF / 00093962.DOC v1}

1  vicariously liable for any false statements contained in its SEC filings signed by Defendant
2  Kriens or Gani within the course and scope of their employment, and (2) that Juniper is
3  vicariously liable for the intentional backdating of stock options granted by its SOC through the
4  conduct of its members Kriens, Gain, and/or Berry – all of whom performed their duties as
5  members of the SOC within the course and scope of their employment as Juniper.

DATED: February 12, 2009

LOWEY DANNENBERG COHEN & HART, P.C.

/S/
_____
BARBARA J. HART
DAVID C. HARRISON
JEANNE D'ESPOSITO
One North Broadway, 5th Floor
White Plains, NY  10601-2310
914-733-7228 (telephone)
914-997-0035 (facsimile)

*Counsel for Lead Plaintiff*

WILLEM F. JONCKHEER
SCHUBERT JONCKHEER KOLBE
   & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
415-788-4220 (telephone)
415-788-0161 (facsimile)

*Local Counsel*

LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST JUNIPER
NETWORKS, INC. RELATING TO COURSE AND SCOPE – CASE NO. 06-04327-JW

13

{1964 / BRF / 00093962.DOC v1}