1  BARBARA HART (*pro hac vice*)
   DAVID C. HARRISON (*pro hac vice*)
2  LOWEY DANNENBERG COHEN & HART, P.C.
   One North Broadway, Suite 509
3  White Plains, NY 10601-2310
   Telephone: 914-997-0500
4  Facsimile:  914-997-0035

5  *Lead Counsel for the New York City Pension Funds and the Putative Class*

6  WILLEM F. JONCKHEER S.B.N. 178748
   SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
7  Three Embarcadero Center, Suite 1650
   San Francisco, CA 94111
8  Telephone: 415-788-4220
   Facsimile:  415-778-0160

9
   *Local Counsel*
10

11                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
12                          SAN JOSE DIVISION

13

14

15                                          No. C 06-04327-JW

16                                          **LEAD PLAINTIFF'S NOTICE OF MOTION,
                                            MOTION, AND MEMORANDUM OF LAW IN
   IN RE JUNIPER NETWORKS, INC.             SUPPORT OF CLASS CERTIFICATION**
17 SECURITIES LITIGATION

18                                          DATE:       June 29, 2009
                                            TIME:       9:00 a.m.
19                                          BEFORE:     Hon. James Ware

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ..............................................................................1

STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3)) ......................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

PRELIMINARY STATEMENT ...........................................................................................2

STATEMENT OF FACTS ...................................................................................................2

PROCEDURAL HISTORY ..................................................................................................4

ARGUMENT ......................................................................................................................6

I.      THE NINTH CIRCUIT FAVORS CERTIFICATION OF SECURITIES CASES ........6

II.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED .........................................7

      A.     The Class Is Sufficiently Numerous That Joinder
           Is Impracticable ..................................................................................................7

      B.     Common Questions of Law and Fact Are Shared
           Among the Class ................................................................................................8

      C.     Lead Plaintiff's Claims Are Typical of the Claims of the Class ........................9

      D.     Lead Plaintiff Will Fairly and Adequately
           Protect the Interests of the Class .....................................................................10

III.    THE REQUIREMENTS OF RULE 23(b)(3) ARE ALSO SATISFIED ........................12

      A.     Common Questions of Law and Fact Predominate ...........................................13

           1.     Weekly Trading Volume .......................................................................17

           2.     Number of Securities Analysts Covering Juniper ..................................18

           3.     Number of Market Makers/Arbitrageurs in Juniper Stock ....................18

           4.     Eligibility to File Form S-3 ...................................................................18

           5.     Causal Relationship Between Unexpected Corporate
               Events and Rapid Response in Juniper's Common Stock Price ............18

           6.     Other Factors .........................................................................................19

      B.     Class Action Is the Superior Method for Resolving
           the Claims and Defenses at Issue in this Case ..................................................20

CONCLUSION ..................................................................................................................21

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF
CLASS CERTIFICATION – CASE NO. 06-04327-JW
{1964 / BRF / 00094279.DOC v1}

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3    *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005)............................................ 11

4    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)…….….……………………………    13

5    *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).................................................................. 6, 15, 16

6    *Biancur v. Hickey*, No. C 95-2145 FMS, 1997 WL 9857 (N.D. Cal. Jan. 7, 1997) ..................... 11

7

8    *Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) ...................................................................... 17

9    *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................. 6, 13, 14, 15

10   *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ...................................................... 17, 18, 19

11   *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) ................................................ 12

12   *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007)......................................................... 7, 16

13   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................. 7, 16

14

15   *Endo v. Albertine*, 147 F.R.D. 164 (N.D. Ill. 1993)...................................................................... 12

16   *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ...................................................................... 12

17   *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377 (D. Or. 1996) ...................................... 14

18   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 8

19   *Herbst v. Able*, 47 F.R.D. 11 (S.D.N.Y. 1969) ............................................................................ 14

20   *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216, 2006 WL 1716910 (W.D. Tenn. April 19,
        2006) .......................................................................................................................................... 16

21

22   *In re Alco Intern. Group, Inc., Sec. Litig.*, 158 F.R.D. 152 (S.D. Cal. 1994)................... 13, 20, 21

23   *In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01CV0649 K (AJB), 2003 WL 25419526
        (S.D. Cal. July 15, 2003) ..................................................................................................... 12, 16

24

25   *In re Bank One Sec. Litig/First Chicago S'holders Claims*, Case No. 00 CV 0767, 2002 WL
        989454 (N.D. Ill. May 14, 2002) ............................................................................................... 14

26   *In re Cirrus Logic Securities*, 155 F.R.D. 654 (N.D. Cal. 1994)............................................... 8, 9

27   *In re Consol. Memorex Sec. Cases*, 61 F.R.D. 88 (N.D. Cal. 1973)............................................ 13

28

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267 (N.D. Cal. May 3, 2006) .................................................................................................. 10

*In re Emulex Corp.*, 210 F.R.D. 717 (C.D. Cal. 2002) ........................................................... 7, 14

*In re Fleming Companies Inc. Sec. Deriv. Litig.*, No. 03 MDL 1530, 2004 WL 5278716 (E.D. Tex. Jun. 16, 2004) ............................................................................................................... 12

*In re Gap Stores Securities Litigation*, 79 F.R.D. 283 (N.D. Cal. 1978)..................................... 14

*In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476 (S.D.N.Y. 2002)................. 13, 14

*In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007).................................... 16

*In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008) ......................... 5

*In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, ____ F.R.D. ____, 2009 WL 196396 (N.D. Cal. Jan. 28, 2009) ................................................................................................... passim

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) ........................................... 21

*In re Magma Design Auto-mation, Inc. Sec. Litig.*, No. C 05-2394 CRB, 2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)................................................................................................ 6, 7, 16

*In re Micron Techs., Inc.*, 247 F.R.D. 627 (D. Idaho 2007) ........................................................ 15

*In re Nature's Sunshine Prods. Sec. Litig.*, 251 F.R.D. 656 (D. Utah 2008)................................. 7

*In re Ramtek Sec. Litig.*, No. C88-20195-JW, 1991 WL 56067 (N.D. Cal. Feb. 4, 1991) .......... 15

*In re Retek Inc. Sec. Litig.*, 236 F.R.D. 431 (D. Minn. 2006)...................................................... 16

*In re Sepracor Inc.*, 233 F.R.D. 52 (D. Mass. 2005) ................................................................... 12

*In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .......................................................................................................................... passim

*In re Unioil* Sec. Litig., 107 F.R.D. 615 (C.D. Cal. 1985)........................................................... 20

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*, 122 F.R.D. 251 (C.D. Cal. 1988)......................................................................................................... 13, 14

*Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006) .................... 5

*Lerwill v. Inflight M-tion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ........................................ 10

*Levine v. SkyMall, Inc.*, No. Civ. 99-166-PHX-ROS, 2002 WL 31056919 (D. Ariz. May 24, 2002) ....................................................................................................................................... 16

*McPhail v. First Command Fin'l Planning Inc.*, 247 F.R.D. 598 (S.D. Cal. 2007)..... 6, 10, 11, 13

*Plumbers & Pipe-fitters Local 572 Pension Fund v. Cisco Systems, Inc.*, No. C 01-20418-JW, 2004 WL 5326262 (N.D. Cal. May 27, 2004) (Ware, J.) ................................................ 6, 15, 17

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124 (S.D. Cal. 1996) ........... 9, 12, 14

*Shields v. Smith*, 1992 WL 295179 (N.D. Cal. Aug. 14, 1992) ...................................................... 11

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.*, 546 F.3d 196 (2d Cir. 2008) ...................................................................................................................... 19

*The New York City Employees' Retirement System, et al., v. Berry*, No. 08-0246-JW (N.D. Cal.) 5

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987) ............................................................ 7

*Weiss v. Tenney Corp.*, 47 F.R.D. 283 (S.D.N.Y. 1969) ............................................................... 14

*Yamner v. Boich*, No. C-92-20597-RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ............. 20

**Other Authorities**

S. Rep. No. 104-98, re-printed in 1995 USCCAN 679.................................................................. 10

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... passim

1

**NOTICE OF MOTION AND MOTION**

2    PLEASE TAKE NOTICE that on June 29, 2009 at 9:00 a.m., or as soon thereafter as this

3 matter may be heard before the Honorable James Ware of the United States District Court for the

4 Northern District of California, San Jose, California, Lead Plaintiff the New York City Pension

5 Funds ("Lead Plaintiff" or the "NYC Funds") will move for an order certifying the following

6 class (the "Class"), pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure,

7 consisting of

8
> All persons and entities who purchased or otherwise acquired the
> publicly traded securities of Juniper Networks, Inc. from July 11,

9
> 2003 through August 10, 2006, inclusive (the "Class Period") and
> were damaged thereby, including (a) those who received or

10
> acquired Juniper common stock issued pursuant to a registration
> statement on SEC Form S-4, dated March 10, 2004, for the

11
> Company's merger with NetScreen Technologies Inc.; and
> (b) purchasers of Zero Coupon Convertible Senior Notes due June

12
> 15, 2008 issued pursuant to a registration statement on SEC Form
> S-3, dated November 20, 2003.  Excluded from the Class are the

13
> Defendants and the current and former officers and directors of the
> Company, their immediate families, their heirs, successors, or

14
> assigns and any entity controlled by any such person.

15    Lead Plaintiff also seeks appointment of the NYC Funds as the Class Representative,

16 Lead Counsel Lowey Dannenberg Cohen & Hart, P.C. ("LDCH") as Class Counsel, and

17 Schubert Jonckheer Kolbe & Kralowec LLP ("the Schubert Firm") as Liaison Counsel.

18    This Motion is based on this Notice of Motion, the Supporting Memorandum of Points

19 and Authorities, the Declaration of David Harrison, the Declaration of Michael Marek, the

20 Declaration of Carolyn Wolpert, all pleadings and papers filed herein, the oral argument of

21 counsel, and any other matters which may be submitted at the hearing.

22

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

23    1.    Whether the Action should be certified as a class action pursuant to Rule 23 of the

24 Federal Rules of Civil Procedure.

25    2.    Whether Lead Plaintiff New York City Pension Funds should be appointed as the

26 Class Representative.

27

28

1   3.  Whether Lead Counsel Lowey Dannenberg Cohen & Hart, P.C. should be

2 appointed as Class Counsel, and Schubert Jonckheer Kolbe & Kralowec LLP as Liaison

3 Counsel.

4       **MEMORANDUM OF POINTS AND AUTHORITIES**

5         **PRELIMINARY STATEMENT**

6   Juniper Networks, Inc. ("Juniper" or the "Company") is prominently implicated in one of

7 the nation's most pervasive corporate scandals, in which executives falsified financial statements

8 and backdated and fraudulently disclosed stock option grants, in order to benefit corporate

9 insiders and employees at the expense of the Company and public investors.  By concealing the

10 fact that in-the-money options were backdated to make it appear as if they had been issued on the

11 reported grant dates, Defendants were able to confer immediate financial gains upon themselves

12 and other grantees without recording any compensation costs, thereby inflating earnings for

13 Juniper from the time the Company went public in June 1999 through March 2006.  Juniper was

14 ultimately required to restate its financial results and to record almost $900 million in

15 compensation expenses.

16   This Action, like most securities fraud actions, is perfectly suited for class certification.

17 The NYC Funds and Lead Counsel, Lowey Dannenberg Cohen & Hart, will fairly and

18 adequately protect the interests of the Class they seek to represent.  Lead Plaintiff's claims are

19 typical of the claims of the other Class members who allegedly purchased Juniper securities at

20 prices inflated by Defendants' misconduct.  Common questions predominate over any questions

21 affecting only individual members of the Class, since all Class members seek to prove a common

22 course of conduct involving similar misrepresentations and omissions.  By certifying this case as

23 a class action, Lead Plaintiff, and thousands of other investors similarly situated who suffered

24 substantial damages, will be permitted to efficiently and effectively prosecute this Action.

25   Lead Plaintiff requests that the Court enter an order certifying the proposed Class,

26 appointing it the Class Representative, and appointing Lead Counsel as Class Counsel and the

27 Schubert Firm as Liaison Counsel.

28

1

## STATEMENT OF FACTS

2    On June 24, 1999, Juniper became a public company through an initial public offering of

3 its stock ("IPO").  Harrison Decl. Ex. 1 at JNPR-CA 020050.  Juniper grew rapidly following its

4 IPO, hiring hundreds of employees through early June 2003.  *Id.*  To support this rapid growth

5 and to achieve its recruiting and compensation objectives, Juniper relied heavily on the use of

6 stock options in lieu of cash compensation.  *Id.*  Juniper granted stock options to nearly all new

7 full-time employees.  *Id.*  Juniper also granted options to existing Juniper employees, based on

8 performance or other factors.  *Id.*  To accomplish this massive undertaking involving the

9 administration of tens of millions of stock option grants, on July 21, 1999, the Board of Directors

10 established the Stock Option Committee ("SOC").  *Id.*

11    The SOC was comprised of: Chief Executive Officer Scott Kriens; then General Counsel,

12 Vice President and Corporate Secretary Lisa Berry; and then Chief Financial Officer Marcel

13 Gani.  The SOC was responsible for granting and administering Juniper's stock options to the

14 Company's non-officer employees in accordance with the terms of Juniper's stock option plans,

15 and also controlled the timing of the options grants to corporate officers and directors.  *Id.*

16    The members of the SOC (a) caused the Company to issue more than 100 million

17 backdated or otherwise intentionally mispriced stock options, which enriched themselves and

18 their colleagues and (b) signed and filed false public filings with the SEC, which inflated net

19 income by approximately $900 million.  *Id.*  As members of the SOC, Kriens, Berry, and Gani

20 knew the consequences of their deception.  Indeed, covering up in-the-money option grants by

21 creating fictitious SOC minutes was the point.  The phony SOC minutes, in turn, were used to

22 justify not recording compensation expenses in the Company's financial statements.

23    Juniper's financial statements included in the Company's SEC filings, signed at various

24 times by Kriens, Gani, and Berry, repeatedly misrepresented that no compensation costs were

25 recognized for stock options grants, because the exercise prices of all options granted under the

26 plans were equal to the market prices of the underlying stock on the grant dates.  Harrison Decl.

27 Ex. 2.  As a result, Juniper's earnings were inflated during the Class Period by hundreds of

28

1    millions of dollars.  Defendants Kriens and Gani also signed certifications which misrepresented

2    that Juniper's financial results were accurate and the Company's disclosures and internal

3    financial controls were effective.  Harrison Decl. Ex. 3.

4         Defendants' misrepresentations were disseminated to the public throughout the Class

5    Period in Juniper's annual and quarterly SEC filings, as well as in annual proxy statements.

6    Harrison Decl. Ex. 2.  The registration statements issued in connection with (a) the Company's

7    stock-for-stock merger with NetScreen Technologies, Inc. ("NetScreen") in April 2004, [1] and

8    (b) Juniper's registration of zero coupon convertible senior notes due June 15, 2008 ("the

9    Notes") in November 2003, were also materially false and misleading because they incorporated

10   by reference the Company's SEC filings.  *Id.*

11        As the facts concerning Juniper's involvement in backdating stock options were revealed,

12   the price of Juniper shares declined 28% from $16.87 per share on May 17, 2006 to $12.20 per

13   share on August 11, 2006.[2]

14                              **PROCEDURAL HISTORY**

15        Beginning in May 2006, the financial media began to expose Juniper's improper options

16   granting practices, which led to investigations by Juniper's Audit Committee as well as the

17   Securities and Exchange Commission ("SEC") and U.S. Attorney.  On November 20, 2006, the

18   NYC Funds were appointed Lead Plaintiff of the consolidated class actions, and on April 9,

19   2007, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Complaint").

20   In the Complaint, Lead Plaintiff alleges claims under Sections 10(b) and 20(a) of the Securities

21

22   [1] Lead Plaintiff purchased acquired 85,225 Juniper shares pursuant to the NetScreen merger.
     (Cmpt. ¶ 33.)  References to "Cmpt. ¶¶ ____" refer to paragraphs of the Complaint.

23   [2] On May 18, 2006, Juniper's stock price declined by 4.5% from $16.87 to $16.10 on volume

24   higher than 18 million shares, 2.7 times its 6.6 million share average daily volume.  On May 19,
     2006, the stock fell another 6.5% from $16.10 to $15.06, on volume exceeding 33 million shares,

25   five times the daily average.  On August 10, 2006, Juniper shares declined to a closing price of
     $12.90 per share from a close of $13.41 per share on August 9, on heavy trading of 14 million

26   shares.  On August 11, 2006, Juniper's stock price continued to fall 5.4%, from its previous
     day's close of $12.90 per share to $12.20 per share, on extraordinary trading volume of 35

27   million shares.  Thus, the drop of $1.21 per share represented a two-day decline of 9%.  *See* Exs.
     I and K to the Declaration of Michael Marek dated March 2, 2009 submitted herewith ("Marek

28   Decl.").

Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933 against Juniper, certain of its current and former senior officers and directors, and the Company's long-time auditor, Ernst & Young LLP ("E&Y").[3]  On March 31, 2008, this Court denied Defendants' motion to dismiss, finding each element: scienter, loss causation, and damages, was adequately pled.  *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008).  The parties are currently conducting discovery pursuant to a Discovery Plan entered into on November 20, 2008.

By this motion, Lead Plaintiff seeks to represent purchasers of Juniper common stock and Notes.  The Class Period begins on July 11, 2003, the first trading day after Juniper released its earnings for the second quarter of 2003 and concludes on August 10, 2006, the date Juniper announced it would restate its financial results from at least January 1, 2003 through the first quarter of 2006.[4]

This action satisfies all of the requirements of Fed. R. Civ. P. 23.  The proposed class is so numerous that joinder of all members is impracticable; there are questions of fact and law common to the class which predominate; the claims or defenses of the representative party are typical of the claims or defenses of the class; the representatives will fairly and adequately protect the interests of the class; questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and a class action is the superior means to resolve the issues raised by this case.  Accordingly, the Court should certify this action as a class action, designate Lead Plaintiff the NYC Funds as Class Representative,

---

[3]  Lead Plaintiff subsequently filed a separate complaint against Lisa C. Berry, Juniper's former General Counsel, Vice President, and Secretary (the "Berry Complaint").  *The New York City Employees' Retirement System, et al., v. Berry*, No. 08-0246-JW (N.D. Cal.).

[4]  Although this Class Period differs from the period identified in the complaint, Lead Plaintiff has moved promptly to modify the class period to comport with the now complete class analysis of its expert.  This is manifestly timely and proper at the inception of the motion.  Indeed, "amendment of a class definition at this stage in the litigation is procedurally appropriate, as the Court retains jurisdiction to modify the class until there is a decision on the merits."  *Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132, 136 n.3 (E.D. Pa. 2006) (plaintiff's amendment to class definition in class certification reply brief was procedurally appropriate).

1    and designate Lead Counsel Lowey Dannenberg Cohen & Hart, P.C. as counsel for the Class and

2    the Schubert Firm as Liaison Counsel.

3                                                       **ARGUMENT**

4    **I.       THE NINTH CIRCUIT FAVORS CERTIFICATION OF SECURITIES CASES**

5                The Courts of the Ninth Circuit recognize that securities fraud actions are prime

6    candidates for class action treatment.  *See, e.g., Plumbers & Pipe-fitters Local 572 Pension Fund*

7    *v. Cisco Systems, Inc.*, No. C 01-20418-JW, 2004 WL 5326262, at *4 (N.D. Cal. May 27, 2004)

8    (Ware, J.) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)); *In re Magma Design Auto-*

9    *mation, Inc. Sec. Litig.*, No. C 05-2394 CRB, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16,

10   2007) ("As in almost all lawsuits by shareholders of public companies, the investors in this case

11   easily satisfy the requirements of Rule 23"); *McPhail v. First Command Fin'l Planning Inc.*, 247

12   F.R.D. 598, 609 (S.D. Cal. 2007) ("Ninth Circuit decisions favor a liberal use of class actions to

13   enforce federal securities laws"); *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002

14   WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("the law in the Ninth Circuit is very well

15   established that the requirements of Rule 23 should be liberally construed in favor of class action

16   cases brought under the federal securities laws").

17               This Action, like other securities fraud class actions, alleges that the Defendants

18   perpetrated a "fraud on the market" – *i.e.*, that the Defendants misled the market for the

19   Company's securities, and that all persons who purchased the securities during the period when

20   the misrepresentations inflated the market price were damaged in the same way.  However,

21   individual purchasers may not have suffered large enough damages to make the costs and

22   expenses of a complex lawsuit worthwhile.

23               Nearly 35 years ago, in *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), the Ninth

24   Circuit stated that the availability of the class action to redress frauds perpetrated on numerous

25   persons by the use of similar misrepresentations has been "consistently upheld."  These

26   sentiments apply with equal force today.  *See, e.g., In re THQ, Inc. Sec. Litig.*, 2002 WL

27   1832145, at *2 ("[C]lass actions have proved useful 'where a large number of purchasers or

28

1   holders of securities claim to have been defrauded by a common course of dealing on the part of

2   the defendants'") (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th

3   Cir. 1964)); *Magma*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007).[5]

4          The questions raised by a class certification motion are purely procedural; the Court does

5   not determine the merits of the plaintiff's case when considering a motion for class certification.

6   *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, ____ F.R.D. ____, 2009 WL 196396 (N.D.

7   Cal. Jan. 28, 2009) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)); *Magma*,

8   2007 WL 2344992, at *1 ("arguments evaluating the weight of evidence or the merits of a case

9   are improper at the class certification stage") (quoting *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214,

10  1227 (9th Cir. 2007)).[6]

11         Rule 23, Fed. R. Civ. P., governs class certification.  Lead Plaintiff must satisfy the four

12  requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the

13  two requirements for certification under Rule 23(b)(3), namely, that common questions of law

14  and fact predominate and that a class action is the superior means to resolve the issues raised by

15  this case.  As demonstrated below, each of these requirements is satisfied.

16  **II.**     **THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED**

17         **A.**     **The Class Is Sufficiently Numerous That Joinder Is Impracticable**

18         Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

19  "impracticable."  Impracticable does not mean impossible, only that it would be difficult or

20  inconvenient to join all members of the class.  *Harris*, 329 F.2d at 913-14; *see also Wehner v.*

21  *Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).

22         In securities litigation, district courts regularly find the numerosity requirement satisfied

23

24  [5] The passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA") has not
    changed the standard for certifying a class action.  *See In re Emulex Corp.*, 210 F.R.D. 717 (C.D.

25  Cal. 2002).

26  [6]  Courts in the Ninth Circuit and elsewhere have reconfirmed that the question of loss causation
    is a common, merits-based issue that is inappropriate for resolution at the class certification

27  stage.  *See e.g.*, *In Re LDK Solar*, 2009 WL 196396, at *11; *In re Micron Techs., Inc.*, 247
    F.R.D. 627, 634 (D. Idaho 2007); *In re Nature's Sunshine Prods. Sec. Litig.*, 251 F.R.D. 656,

28  665 (D. Utah 2008).

1  with respect to a purported class of purchasers of nationally traded securities on the basis of the

2  number of shares sold during the class period.  *See Emulex*, 210 F.R.D. at 719 ("[T]he Class

3  would include hundreds or thousands of purchasers since approximately five million shares of

4  Emulex stock were traded daily during the Class Period.  Individual joinder of members of a

5  class this size would be impracticable").  Throughout the Class Period, Juniper's common stock

6  was actively traded on the NASDAQ Stock Exchange in a developed and efficient market.

7  Cmpt. ¶ 334; Marek Decl. ¶¶ 12, 22-77.  Average monthly trading volume exceeded 50 million

8  shares weekly.  Marek Decl. ¶ 23.  The average number of Juniper common shares outstanding at

9  years ended December 2002-2006 was 489 million.  *Id.*, ¶ 23.[7]

10  Accordingly, numerosity cannot be disputed.  Indeed, the Juniper Defendants admit that

11  the Class exceeds 100 persons and that the Class is so numerous that joinder of all Class

12  members would be impracticable.[8]

13  **B.      Common Questions of Law and Fact Are Shared Among the Class**

14  Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of

15  the] class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is "construed permissively."

16  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Not all questions of fact and

17  law need be common to satisfy Rule 23(a)(2).  Rather, "the existence of shared legal issues with

18  divergent factual predicates is sufficient, as is a common core of salient facts coupled with

19  disparate legal remedies within the class."  *Id.  See also In re THQ*, 2002 WL 1832145, at *3

20  (quoting *Hanlon*, 150 F.3d at 1019).  Courts have found that a single issue common to the

21  proposed class satisfies Rule 23(a)(2).  *Id.*

22  Securities fraud actions alleging such a common course of conduct and based on a "fraud

23  on the market" satisfy the commonality requirements of Rule 23(a)(2).  *See In re THQ*, 2002 WL

24  1832145, at *3 (citing *Blackie*, 524 F.2d at 902); *In re Cirrus Logic Securities*, 155 F.R.D. 654,

25

26  [7]  Similarly, there are $400 million of Notes outstanding that traded actively with substantial weekly turnover.

27  [8]  Harrison Decl. Ex. 4, Juniper Networks, Inc.'s Objections and Responses to Plaintiffs' First
28  Set of Requests for Admissions and Interrogatories, Response Nos. 1-3.

657 (N.D. Cal. 1994).  Here, Lead Plaintiff alleges that Defendants' public statements falsely described and accounted for Juniper's stock option grants.  These issues present quintessential examples of "common questions" of law and fact requiring class certification.  Underlying the common questions is a nucleus of operative facts pertaining to Defendants' scheme to conceal the granting of in-the-money options, in violation of Juniper's stock option plans, and avoid recording compensation expenses which would have substantially reduced the Company's reported earnings.  These common questions of law and fact include: (a) whether the federal securities laws were violated by Defendants; (b) whether Defendants made material misrepresentations or omitted to state material facts concerning the Company's stock option granting practices; (c) whether Defendants participated in the course of conduct complained of in the Complaint; (d) whether Defendants acted with the requisite state of mind; (e) whether the market price of Juniper's securities during the Class Period was artificially inflated due to the material omissions and misrepresentations described in the Complaint, and declined when the misconduct was revealed in the market; and (f) whether and to what extent the members of the Class have sustained damages as a result of Defendants' conduct.  *See* Cmpt. ¶ 73.

Defendants admit that there is at least one question of law and one question of fact common to all proposed Class members.[9]  Thus, the commonality requirement of Rule 23(a) is satisfied.

### C.   Lead Plaintiff's Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  The test for typicality is not demanding, and focuses on: (1) whether class members' claims arise from the same course of conduct, resulting in the same or similar injury as that of the Class Representative, and (2) whether each class member makes similar legal arguments to prove defendants' liability.  *See Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996); *Cirrus Logic*, 155 F.R.D. at 657.  Claims are deemed typical if they are reasonably co-extensive with

---

[9] Harrison Decl. Ex. 4, Juniper Networks, Inc.'s Objections and Responses to Plaintiffs' First Set of Requests for Admissions and Interrogatories Response No. 4.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION – CASE NO. 06-04327-JW
{1964 / BRF / 00094279.DOC v1}

9

those of absent class members; they need not be substantially identical.  *Schaefer*, 169 F.R.D. at 128-30 (typicality met despite differences in purchaser composition – institutional rather than small investors – and plaintiff's reliance on the oral representations of his broker); *McPhail*, 247 F.R.D. at 610 ("need to calculate individual damages does not defeat typicality").

The "purpose of the typicality requirement is to assure that the interests of the named representative align with the interests of the class."  *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *4 (N.D. Cal. May 3, 2006).  Generally, claims are typical if they arise from the same or similar injury, if the action is based on conduct which is not unique to the named plaintiffs, and if other class members have been injured by the same or similar course of conduct.  *In re THQ*, 2002 WL 1832145, at *3.

Here, all members of the Class were victims of an alleged common course of fraudulent conduct throughout the Class Period and sustained damages as a result.  Since Lead Plaintiff's theories of liability are identical to those of the Class, it is axiomatic that no conflict exists.  Lead Plaintiff asserts the same claims and makes the same legal and factual arguments as does the Class.  The liability, causation, and damage elements of the claims against Defendants – as well as Defendants' defenses thereto – will succeed or fail on the same factual and legal theories for the Lead Plaintiff and the Class.  Because Lead Plaintiff's claims arise from the same misrepresentations and omissions which give rise to securities law violations, Lead Plaintiff's claims are typical of those of the Class.  *In re LDK Solar*, 2009 WL 196396, at *12.[10]

### D.     Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) states that the representative plaintiff must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is satisfied where (1) counsel for the class is qualified and competent, and (2) the representatives' interests are not

---

[10] Moreover, Lead Plaintiff is an institutional investor and precisely the type of investor Congress sought, through the PSLRA, to summon and empower to represent investors in securities class actions.  *See, e.g.,* S. Rep. No. 104-98, at 11, re-printed in 1995 USCCAN 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts . . .  Institutions with large stakes in class actions have much the same interests as the plaintiff class generally").

1    antagonistic to the interests of absent class members.  *In re LDK Solar.*, 2009 WL 196396, at *13

2    (citing *Lerwill v. Inflight M-tion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

3         In determining the adequacy of representation the emphasis should be on the

4    qualifications of counsel.[11]  *Biancur v. Hickey*, No. C 95-2145 FMS, 1997 WL 9857 at *8 (N.D.

5    Cal. Jan. 7, 1997); *Shields v. Smith*, 1992 WL 295179, at *5 (N.D. Cal. Aug. 14, 1992).  Lead

6    Counsel's vigorous pursuit of this Action since its appointment as Lead Counsel in November

7    2006, shown by the detail of the Complaint and success in defeating Defendants' motion to

8    dismiss, evidences the adequacy of counsel here.  Lead Counsel is experienced in the field of

9    class action securities litigation, as acknowledged by the Court herein in appointing them to

10   represent Lead Plaintiff (Dkt. No. 64), and based on the resume submitted to the Court in

11   connection with the NYC Fund's Lead Plaintiff motion.  (Dkt. No. 11).  *See McPhail*, 247

12   F.R.D. at 611 (plaintiffs satisfied the first prong of Rule 23(a)(4) by submitting the resumes of

13   qualified counsel with extensive experience in class action litigation).

14        Moreover, there is no antagonism or disabling conflict of interest between Lead Plaintiff

15   and other class members.  Lead Plaintiff, like the other class members, has been damaged as a

16   result of the allegedly false and misleading statements made by Defendants and is committed to

17   conducting the vigorous prosecution required to remedy such damages as evidenced by the

18   investor certification submitted in connection with the New York City Pension Funds Lead

19   Plaintiff application, and by the declaration of Carolyn Wolpert submitted herewith.  Ms.

20   Wolpert, an Assistant Corporation Counsel and Deputy Chief of the Pensions Division in the

21   Office of the Corporation Counsel of the City of New York has submitted a declaration stating

22   that Lead Plaintiff (1) is familiar with the claims at issue in the litigation, (2) understands its

23   duties as the class representative, and (3) has been actively involved in all aspects of the case

24   since the appointment of the NYC Funds as Lead Plaintiff.  Wolpert Decl. ¶¶ 7-10.  This

25   declaration is evidence of Lead Plaintiff's adequacy as class representative.  *See Abels v. JBC*

26   *Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (finding class representative

27

28   [11] This requirement dove tails with the requirements under Rule 23(g)(4) that Class Counsel fairly and adequately represent the interests of the class.

1    declaration stating that he "understands his responsibilities as class representative" evidence of

2    adequacy).  Like all class members, Lead Plaintiff seeks to prove that Defendants violated the

3    federal securities laws and that Defendants' conduct caused damages that have injured all Class

4    members.  The interests of Lead Plaintiff in "obtaining the maximum possible recovery is

5    therefore coextensive with the interests of members of the class."  *In re Applied Micro Circuits*

6    *Corp. Sec. Litig.*, No. 01CV0649 K (AJB), 2003 WL 25419526, at *5 (S.D. Cal. July 15, 2003).

7            The NYC Funds has an interest in maximizing recovery for purchasers of both stocks and

8    bonds.  It is well settled that a plaintiff pursuing a Securities Act claim on behalf of purchasers of

9    one security may represent the interests of purchasers of other types of securities of the same

10   issuer in a class action, where, as here, the alleged harm stems from the same allegedly improper

11   conduct.  *See, e.g., In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser

12   of options as lead plaintiff for class that included purchasers of all defendant company's equity

13   securities); *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993) (appointing lead plaintiffs

14   who purchased only common stock to represent class of purchasers of debentures, notes and

15   common stock); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) (appointing

16   lead plaintiff who purchased only call options to represent class of purchasers of call options and

17   common stock).[12]

18           Accordingly, Lead Plaintiff and Lead Counsel satisfy Rule 23(a)(4)'s adequacy

19   requirement.

20   **III.     THE REQUIREMENTS OF RULE 23(b)(3) ARE ALSO SATISFIED**

21           In addition to meeting the prerequisites of Rule 23(a), this Action also satisfies the

22   requirements of Rule 23(b)(3), which requires that the proposed class representatives establish

23   that common questions of law or fact predominate over individual questions and that a class

24   action is superior to other available methods of adjudication.  *See In re LDK Solar*, 2009 WL

25   196396, at *4.  Indeed, a class action is the superior, if not only, method available to fairly and

26

27   [12] *See also In re Fleming Companies Inc. Sec. Deriv. Litig.*, No. 03 MDL 1530, 2004 WL
     5278716, at *48-49 (E.D. Tex. Jun. 16, 2004) (class representative who purchased stocks can
28   represent purchasers of debt instruments in the same lawsuit).

1    efficiently litigate this securities action.  *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668-69 (9th Cir.

2    1995); *Schaefer*, 169 F.R.D. at 130-31.

3        A.        **Common Questions of Law and Fact Predominate**

4        Where a complaint alleges a "common course of conduct" of misrepresentations,

5    omissions and other wrongdoing that affect all members of the class in the same manner,

6    common questions predominate.  *Blackie*, 524 F.2d at 905-08; *In re Alco Intern. Group, Inc.,*

7    *Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994)  "[W]hen determining whether common

8    questions predominate courts focus on the liability issue . . . and if the liability issue is common

9    to the class, common questions are held to predominate over individual questions."  *In re Indep.*

10   *Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002).[13]  *See Blackie*, 524

11   F.2d at 902; *In re Consol. Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973).  For this

12   reason, the Supreme Court noted in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997),

13   that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud."

14   *See also In re THQ*, 2002 WL 1832145, at *8 ("Plaintiffs' claim – which is based on a series of

15   misrepresentations and market manipulations – clearly satisfies the requirement that common

16   questions predominate over those affecting individual members") (citing *In re United Energy*

17   *Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal.

18   1988)).

19       As discussed above, there are a host of common questions of law and fact as to the Class

20   which plaintiffs seek to certify.  These questions clearly predominate over individual questions

21   because defendants' alleged course of conduct affected all Class members in the same manner

22   and, through similar false statements and omissions, artificially inflated the price of Juniper's

23

---

24   [13] It is well-settled that the calculation of damages - an inherently individualized issue that courts
     have repeatedly found does not defeat predominance - will not defeat class certification.  *See*
25   *Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does
     not defeat class action treatment."); *McPhail*, 247 F.R.D. at 609-10; *Alco*, 158 F.R.D. at 155 ("In
26   particular, individual questions as to the amount of damages is not a bar to certification .... If
     factual differences of this nature were a bar to class certification then class actions would be
27   stripped of its utility."); *U.S. Fin.*, 64 F.R.D. at 448 n.5

28

securities.[14]  It is difficult to discern liability issues in this case that are not common to all members of the Class.  *See, e.g., Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399-400 (D. Or. 1996); *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122 F.R.D. at 256; *Emulex*, 210 F.R.D. at 721 (granting motion for class certification where "[t]he predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class").

In contrast, there are no significant (let alone predominant) individual issues even with respect to issues such as reliance.  Plaintiffs' Section 11 claims relating to the NetScreen and Notes registration statement do not require proof of individual reliance.  While reliance is an element of the Rule 10b-5 claim, Lead Plaintiff is entitled to a presumption of reliance under the "fraud on the market" doctrine.  *See* Cmplt. ¶ 334.

Courts have long recognized that claims under § 11 of the Securities Act are particularly well-suited for class treatment, insofar as plaintiffs allege misrepresentations and omissions in the same document(s), and issues of individual reliance will not predominate because reliance is not an element of a §11 claim.  *See Herbst v. Able*, 47 F.R.D. 11, 18 (S.D.N.Y. 1969) ("under Section 11 . . . individual reliance is not an issue and class actions are particularly appropriate"); *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 289 (S.D.N.Y. 1969)(same); *In re Bank One Sec. Litig/First Chicago S'holders Claims*, Case No. 00 CV 0767, 2002 WL 989454, at *4 (N.D. Ill. May 14, 2002) ("Courts have repeatedly held that cases like this one, which proceed primarily under Section 11 of the 1933 Act, are particularly well-suited to class treatment").  Significant judicial economies are achieved by "one rather than ninety-one determinations of such common questions as to whether the registration statement contained a material misrepresentation."  *In re*

---

[14]  The fact that every Class member may not be identically situated is immaterial.  The fact that different members of the Class may have invested at different times, and may have been exposed to different misrepresentations and/or omissions committed by defendants, does not preclude a finding that common issues predominate because plaintiffs have alleged a continuous course of conduct.  *Harris*, 329 F.2d at 914-15; *see Blackie*, 524 F.2d at 902 (endorsing the approach taken by the Court of Appeals in *Harris*, 329 F.2d 909); *Indep. Energy*, 210 F.R.D. at 486 (holding that predominance requirement was easily satisfied in cases where claims were based on a common legal theory of material misrepresentations and omissions, even though factual circumstances might vary).

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION – CASE NO. 06-04327-JW
{1964 / BRF / 00094279.DOC v1}

14

*Gap Stores Securities Litigation*, 79 F.R.D. 283, 305 (N.D. Cal. 1978).  The Complaint pleads these elements and, because every member of the Class has to establish these same facts to prove a Section 11 claim, these common questions will predominate at trial.

As to the Rule 10b-5 claims, reliance is presumed under the "fraud on the market" doctrine.  *Basic*, 485 U.S. at 247.  The fraud-on-the-market presumption of reliance depends on the theory that, in an efficient market, all information - including any misrepresentations and omissions - is incorporated into the value of a security, and investors rely on the integrity of the market for that security.  *Id.*  The Supreme Court in *Basic* opined:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

485 U.S. at 241-42 (citation omitted).

Rebutting the presumption of reliance is extremely difficult.  As stated by the Supreme Court, "[i]t is hard to imagine that there ever is a buyer or seller who does not rely on market integrity.  Who would knowingly roll the dice in a crooked crap game?"  *Basic*, 485 U.S. at 246-47 (citations and footnotes omitted).  "Requiring a plaintiff to show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed . . . or if the misrepresentation had not been made . . . would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market."  *Id.* at 245 (citations omitted).  Furthermore, "the defense of non-reliance is not a basis for denial of class certification."  *In re Ramtek Sec. Litig.*, No. C88-20195-JW, 1991 WL 56067, at *5 (N.D. Cal. Feb. 4, 1991) (Ware, J) (citing *Blackie v. Barrack*, 524 F.2d at 901 n.17 (9th Cir.1975)).

The central inquiry in determining whether the fraud-on-the-market presumption of reliance can be applied is whether the security is traded in an efficient market.  *Basic*, 485 U.S. at 248 n.27.  An efficient market is one which material information on a company is widely

1   available and is reflected in the value of the security.  *In re LDK Solar*, 2009 WL 196396, at *16;

2   *Cisco*, 2004 WL 5326262, at *4; *In re Micron Techs.,* 247 F.R.D. at 633-35.

3   Lead Plaintiff has submitted the Declaration of Michael A. Marek, the founding member

4   of Financial Markets Analysis, LLC ("FMA"), which confirms that the NASDAQ, the market on

5   which Juniper shares trade and traded, is a highly efficient market.  Numerous courts agree.[15]

6   Lead Plaintiff has therefore made a sufficient showing that the market for Juniper stock was

7   efficient, which warrants applying the presumption of reliance at the class certification stage.

8   Courts in the Ninth Circuit have found that "[a] motion for class certification is an

9   inappropriate forum" for a factual determination regarding the efficiency or inefficiency of the

10  market during the Class Period, *In re Applied Micro Circuits,* 2003 WL 25419526, at *4 (citing

11  *Eisen*, 417 U.S. 156, 179 (1974); and *Basic v. Levinson*, 485 U.S. at 249 n.29 ("proof of [whether

12  securities are traded on a well-developed, efficient, and information-hungry market] is a matter

13  for trial").  At the same time, however, some courts have begun to conduct factual reviews of the

14  evidence supporting the efficiency of the market to allow a presumption of reliance under the

15  fraud-on-the-market doctrine.  *See, e.g., In re Micron Techs.,* 247 F.R.D. at 633 (citing *Dukes*,

16  509 F.3d at 1178 n.2; *but see In re Magma*, 2007 WL 2344992, at *1 ("It is axiomatic, however,

17  that 'arguments evaluating the weight of evidence or the merits of a case' are improper at the

18  class certification stage") (quoting *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1217 (9th Cir.

19  2007)).   Accordingly, to meet any level of scrutiny, Lead Plaintiff has obtained confirmation

20  from a noted expert in the field of market efficiency that Juniper securities traded on an efficient

21  market.

22

23

---

24  [15]  *See, e.g., In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 91 and n.97 (S.D.N.Y. 2007) (recognizing that NASDAQ is "an open, developed and generally efficient securities market");

25  *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216, 2006 WL 1716910 at *8 (W.D. Tenn. April 19, 2006) (based on this court's research, the overwhelming case authority holds that securities

26  listed on the NASDAQ trade in an efficient market) (citing cases); *In re Retek Inc. Sec. Litig.*, 236 F.R.D. 431, 437 n.3 (D. Minn. 2006) (noting "[s]ome courts assume market efficiency based

27  solely on the fact the security trades on NASDAQ"); *Levine v. SkyMall, Inc.*, No. Civ. 99-166-PHX-ROS, 2002 WL 31056919 at *4 (D. Ariz. May 24, 2002) ("[T]here is a presumption that

28  that the NASDAQ is an efficient market for all of the securities traded on it").

1    Specifically, and as set forth below, the declaration of Mr. Marek of FMA,[16] provides

2    detailed support for his conclusion that the market for Juniper securities was highly efficient.  As

3    such, a presumption of reliance under the fraud-on-the-market presumption is appropriate.

4    The Ninth Circuit has endorsed the five factors articulated in *Cammer v. Bloom*, 711

5    F. Supp. 1264, 1286-1287 (D.N.J. 1989), when determining whether there is an efficient market.

6    These factors include: (1) whether the stock trades at high weekly volume; (2) whether securities

7    analysts follow and report on the stock; (3) whether the stock has market makers and

8    arbitrageurs; (4) whether the company is eligible to file a Form S-3 registration statement with

9    the SEC; and (5) whether there are "empirical facts showing a cause and effect relationship

10   between unexpected corporate events or financial releases and an immediate response in the

11   stock price."  *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quoting *Cammer v.*

12   *Bloom*, 711 F. Supp. 1264, 1286-1287 (D.N.J. 1989)).  *See also In re LDK Solar*, 2009 WL

13   196396, at *6; *Cisco*, 2004 WL 5326262, at *4.  In his declaration, Mr. Marek analyzes each of

14   the five factors for determining whether a market for a given security is efficient along with three

15   additional factors that some courts have considered: (6) the Company's market capitalization;

16   (7) the relative size of the bid/ask spread for the security; and (8) the degree to which the shares

17   are widely held by the public rather than insiders - that are routinely applied, concluding each is

18   satisfied with respect to Juniper.  Marek Decl. ¶¶ 19-20.

19                  **1.      Weekly Trading Volume**

20   Juniper's stock is, and was during the Class Period, actively traded on the NASDAQ

21   stock exchange, a highly efficient and automated market.  *See* Marek Decl. ¶¶ 12, 22-27.  The

22   average weekly turnover of Juniper common stock during the Class Period was between 5.6%

23   and 9%, far in excess of *Cammer*'s 2% benchmark needed to support a "strong presumption that

24   the market for the security is an efficient one."  711 F. Supp. at 1286; Marek Decl. ¶ 22-27.

25
26   [16]  Mr. Marek has regularly issued opinions and given testimony regarding (1) market efficiency; (2) materiality of information; (3) loss and damage causation; (4) the valuation of publicly traded
27   securities based upon hypothetical absence of alleged misstatements and the disclosure of alleged omissions and misrepresentations; and (5) damage calculations, have been accepted in numerous
28   United States Federal District Court matters.  *See* Marek Decl. ¶¶ 2, 4.

### 2.   Number of Securities Analysts Covering Juniper

Juniper also regularly communicated with public investors via market communication mechanisms, including regular dissemination of press releases and information regarding its revenues, trends, earnings, and guidance regarding future revenues and earnings, Marek Decl. ¶¶ 28-31, and was followed and reported on by at least 22 securities analysts. *Id.* This "multitude of Company-specific activities and reports issued by the more than 22 securities analysts, constituted significant coverage of Juniper and its common stock during the Class Period" supporting market efficiency. *Id.*; *Cammer*, 711 F. Supp. at 1286.

### 3.   Number of Market Makers/Arbitrageurs in Juniper Stock

Additionally, Juniper's stock traded through numerous market makers during the Class Period. The average number of market makers that traded Juniper stock was 123, as compared with the NASDAQ of 20 over the same time period. Marek Decl. Ex. G. In additional, of the average of 123 market makers that traded Juniper stock during the Class Period, 26 of those market makers accounted for at least 1% of Juniper NASDAQ trading activity, leading to a strong inference of market efficiency. *Cammer*, 711 F. Supp. at 1271, 1286; Marek Decl. ¶ 37 and Ex. F.

### 4.   Eligibility to File Form S-3

Juniper's SEC filings were current and it met the requirements for registering securities on Form S-3 during the Class Period. Marek Decl. at ¶ 39. The ability of a company to file a "short form" registration statement on Form S-3 "is an often-cited indicator that there is sufficient information about the company already in the market." *Id.* Pursuant to rules and forms governing the registration of securities under the Securities Act of 1993 established in 1982 and in effect throughout the Class Period, Form S-3s are filed "in reliance on the efficient market theory." *Id.* Therefore, by virtue of Juniper's eligibility to file a Form S-3 during the Class Period, according to the SEC, Juniper traded in an efficient market. Marek Decl. ¶¶ 39-42.

### 5.   Causal Relationship Between Unexpected Corporate Events and Rapid Response in Juniper's Common Stock Price

If a plaintiff can demonstrate that the stock price regularly rose or fell in prompt response

1   to market information, this fact would be significant in establishing an efficient market.

2   *Cammer*, 711 F. Supp. At 1287.  In analyzing the fifth *Cammer* factor, the Marek Declaration

3   sets forth, in great detail, a cause and effect relationship between unexpected corporate events

4   that were widely disseminated and a rapid response in Juniper's common stock price.  Marek

5   Decl. at ¶¶ 59-76.  Through media coverage of Juniper, the Company's press releases and SEC

6   filings, and the reports of securities analysts who followed the stock and issued reports during the

7   relevant period, there was a steady and widely disseminated flow of information concerning

8   Juniper that was readily available to the investment community and to the market.  *Id.* ¶¶ 59-60.

9   Mr. Marek performed an event study and identified a total of 14 days on which events occurred

10  that were potentially likely to have been viewed as events of interest.  *Id.* ¶ 62.  He then

11  performed a comparative analysis between those 14 dates and the remaining 765 Class Period

12  dates.  *Id.* ¶ 67.  Marek assessed Juniper's sensitivity to market-wide and industry factors during

13  the Class Period via statistical analyses.  *Id.* ¶¶ 64.  As a result of this event study, Mr. Marek

14  concluded that average residual price return for the 14 event dates was 7.8%, which was 6 times

15  the 1.3% return for all the other dates of the Class Period.  The average residual price return was

16  even higher (12.6%) for seven of the 14 event dates on which the Company's announced

17  earnings results that were unexpected by analysts.  Marek concluded that the "large discrepancy

18  is indicative of an efficiently-traded security, that is, one which exhibited a cause and effect

19  relationship between material, unexpected corporate events and a rapid response in price.  *Id.*

20  ¶¶ 66-67 and Ex. L.  Such an event study is accepted as *prima facie* evidence of an efficient

21  market.  *See Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.*, 546 F.3d

22  196, 207-208 (2d Cir. 2008).

### 6.   Other Factors

24          In addition to the five *Cammer* factors supporting the finding of an efficient market, the

25  additional three factors that have been considered by some courts also support a finding of an

26  efficient market.  First, Juniper's market capitalization ranged from $5.5 billion to $14.8 billion

27  during the Class Period, making Juniper a "Large-Cap" company, which will facilitate an

1   efficient market.  Marek Decl. ¶¶ 43-44.  Second, the bid/ask spread on Juniper stock was very

2   narrow, an average 0.07%, a relatively low bid/ask spread in line with the bid/ask spread for the

3   S&P 500 index over the same time period.  *Id.* ¶¶ 47-48 and Ex. I.  Third, Juniper's common

4   stock was widely held with the average insider ownership during the Class Period declining from

5   7.3% to 4.0%.  *Id.* ¶¶ 49-58.  Each of these additional factors further supports the conclusion that

6   Juniper common stock traded in an efficient market during the Class Period.  *Id.* at ¶ 77.

7          As a result of the foregoing, Lead Plaintiff will be able to present common legal and

8   factual arguments as to all elements of their claims, including reliance.[17]  Accordingly, the

9   predominance element of Rule 23(b)(3) is satisfied.

10      **B.     Class Action Is the Superior Method for Resolving
                the Claims and Defenses at Issue in this Case**

11          This case also meets Rule 23(b)(3)'s second requirement: that the class action be

12   "superior to other available methods for the fair and efficient adjudication of the controversy."

13   Fed. R. Civ. P. 23(b)(3).  Like the predominance element, courts generally find class actions to

14   be the superior mechanism for litigating securities fraud actions due to the large number of

15   possible class members.  *See In re THQ*, 2002 WL 1832145, at *8 (citing *In re Unioil* Sec. Litig.,

16   107 F.R.D. 615, 622 (C.D. Cal. 1985)); *Yamner v. Boich*, No. C-92-20597RPA, 1994 WL

17   514035, at *5 (N.D. Cal. Sept. 15, 1994).  The class action device offers judicial efficiencies

18   because it permits common claims and issues to be tried only once, with binding effect on all

19   parties.  Class representation is the only way to afford relief to those whose claims are too small

20   to permit them to bring individual suits.  As the Ninth Circuit stated in *Epstein*, 50 F.3d at 688 "it

21   is difficult to imagine a case where class certification would be more appropriate.  Without it,

22   thousands of identical complaints by former [ ] shareholders would have to be filed – the very

23   result the class action mechanism was designed to avoid."  *See also Alco*, 158 F.R.D. at 155

24   ("The Ninth Circuit has repeatedly endorsed class actions for securities actions").

25          Rule 23(b)(3) states that the following matters are pertinent to the question of superiority:

26

27   _____

     [17]   Lead Plaintiff's evidence in this regard, as well as any rebuttal by Defendants, will be
28   common to the entire Class.

(A)  the class members' interests in individually controlling the
      prosecution or defense of separate actions;
(B)  the extent and nature of any litigation concerning the
      controversy already begun by or against class members;
(C)  the desirability or undesirability of concentrating the litigation
      of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Each of these factors favors class certification here.  First, individual members do not have an interest in pursuing separate actions.  While a large investor theoretically might have a large enough stake to make it economically viable to bring his own suit, the class action device is the only viable vehicle by which the vast majority of persons injured by Defendants' wrongful conduct may obtain a remedy.  Second, there is no other class action litigation on behalf of purchasers of Juniper securities.  Third, the nationwide geographical dispersion of the class members, based upon Juniper securities trading on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum.  *See Alco*, 158 F.R.D. at 153-54 ("Whether or not the Class numbers in the hundreds or in the thousands, joinder is clearly impractical where a large group of people, dispersed all across the country, are involved").

Finally, there are no management difficulties which would preclude this action from being maintained as a class action.  Any potential management problems can be addressed and resolved by the parties' experienced counsel or by this Court.  See Wolpert Dec. ¶¶ 6-10.  In any event, the "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 148-49 (C.D. Cal. 2007) (collecting cases).

For these reasons, the proposed Class satisfies the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, Lead Plaintiff has met its burden of showing that the elements of Rule 23(a) and (b)(3) are satisfied.  Accordingly, Lead Plaintiff respectfully requests the Court to enter an order granting Lead Plaintiff's motion for class certification, and appointing

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF
CLASS CERTIFICATION – CASE NO. 06-04327-JW
{1964 / BRF / 00094279.DOC v1}

21

1    the New York City Pension Funds as Class Representative, Lowey Dannenberg Cohen & Hart,

2    P.C. as Class Counsel, and the Schubert Firm as Liaison Counsel.

3

4    DATED: March 2, 2009

5                                                    LOWEY DANNENBERG COHEN & HART, P.C.

6

7                                                    _____/s/_____

     BARBARA J. HART
8    DAVID C. HARRISON
     JEANNE D'ESPOSITO
9    One North Broadway, 5th Floor
     White Plains, NY  10601-2310
10   914-733-7228 (telephone)
     914-997-0035 (facsimile)

11
     *Counsel for Lead Plaintiff*
12

13                                                   _____/s/_____

     WILLEM F. JONCKHEER
14   SCHUBERT JONCKHEER KOLBE
        & KRALOWEC LLP
15   Three Embarcadero Center, Suite 1650
     San Francisco, CA 94111
16   415-788-4220 (telephone)
     415-788-0161 (facsimile)

17
     *Local Counsel*
18

19

20

21

22

23

24

25

26

27

28