| | |
|---|---|
| NINA F. LOCKER, # 123838<br>Email: nlocker@wsgr.com<br>STEVEN GUGGENHEIM, # 201386<br>Email: sguggenheim@wsgr.com<br>JONI OSTLER, # 230009<br>Email: jostler@wsgr.com<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br><br>*Counsel for Defendants Juniper Networks, Inc., Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy and William R. Stensrud (the "Juniper Defendants")* | JEFFREY B. RUDMAN (*Pro Hac Vice*)<br>Email: jeffrey.rudman@wilmerhale.com<br>EMILY R. SCHULMAN (*Pro Hac Vice*)<br>Email: emily.schulman@wilmerhale.com<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000<br><br>JONATHAN A. SHAPIRO (*Pro Hac Vice*)<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>Email: jonathan.shapiro@wilmerhale.com<br>1117 California Avenue<br>Palo Alto, CA 94304<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100<br><br>*Co-Counsel for Defendant Juniper Networks, Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>All Actions | CASE NO.: C06-04327-JW (PVT)<br><br>**THE JUNIPER DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Before: Hon. James Ware<br>Date: November 2, 2009<br>Time: 9:00 am |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 2, 2009 at 9:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable James Ware, United States District Court, 280 S. First Street, San Jose, California, defendants Juniper Networks, Inc. ("Juniper" or "the Company") and individual defendants Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy, and William R. Stensrud (collectively with Juniper, the "Juniper Defendants") will and hereby do move for an order entering judgment, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, that the alleged May 2006 disclosures are not corrective disclosures for which Plaintiffs can plead loss causation.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Joni Ostler in support thereof and attached exhibits filed concurrently herewith ("Ex. __"), the [Proposed] Order, all pleadings and papers filed herein, and such additional evidence and oral argument that the Court may consider and other matters properly before the Court.

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

1.   Whether disclosures merely identifying a risk of stock options backdating are "corrective disclosures" for which Plaintiffs may plead loss causation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Recent decisions in the Ninth Circuit, including this Court's decision in *In re Maxim Integrated Products, Inc. Securities Litigation* ("*Maxim*"), provide dispositive authority for granting judgment on the pleadings in this case. *Maxim* held that statements merely announcing a "risk" that a defendant may have backdated its stock options are not corrective disclosures for purposes of loss causation. *In re Maxim Integrated Prods., Inc. Sec. Litig.*, No. C 08-00832 (JW), 2009 WL 2136939, at *4 (N.D. Cal. July 16, 2009) ("*Maxim*") (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2009)).

Here, Plaintiffs' allegations premised on disclosures issued on May 16-19, 2006 ("May 2006 disclosures) are indistinguishable from those rejected in *Maxim*. For this and other reasons set forth below, Juniper respectfully requests that its Motion for Judgment on the Pleadings on loss causation as to the alleged May 2006 disclosures be granted.

## II.   PROCEDURAL BACKGROUND

On June 7, 2007, the Juniper Defendants moved to dismiss the Consolidated Amended Class Action Complaint for failure to state a claim pursuant to Rule 12(b)(6). With respect to loss causation, the Motion to Dismiss argued that Juniper's stock price history defeated Plaintiffs' allegations that revelation of the alleged fraud caused Juniper's stock price to fall. Mot. to Dismiss at 7-10. On March 31, 2008, this Court issued an Order granting in part and denying in part the Juniper Defendants' Motion to Dismiss.

Months thereafter, several decisions in the Ninth Circuit were issued clarifying the pleading requirements for loss causation under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 342 (2005). *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, No. C 08-00832 (JW), 2009 WL 2136939 (N.D. Cal. July 16, 2009); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-2674 (PHX) (RCB), 2009 WL 890479 (D. Ariz. Mar. 31, 2009) ("*Apollo*"). Based on these new cases, the Juniper Defendants now move for judgment on the pleadings with respect to the alleged May 2006 disclosures.[1]

---

[1] The Juniper Defendants did not raise the issue of loss causation with respect to the alleged May 2006 disclosures on the Motion to Dismiss because, at that time, *Metzler*, *Maxim* and *Apollo* had not been decided. Thus, the March 31, 2008 Order did not consider, much less resolve, the issue posed in this Motion. The Court may, in any event, modify its March 31, 2008 Order in light of subsequent authority and/or its inherent power to reconsider interlocutory orders prior to final judgment. *See Liao v. Ashcroft*, No. C 08-2776 (PJH), 2009 WL 1033393, at *1 (N.D. Cal. Apr. 16, 2009) ("[T]he trial court has the inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment.") (citation omitted); *see also In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 916-19 (E.D. Mich. 2005) (granting defendants' Rule 12(c) motion following *Dura*, which was issued after court's denial of defendants' motion to dismiss); *Glamorgan Coal Corp. v. Ratner's Group PLC*, No. 93 Civ. 7581 (RO), 1995 WL 406167, at *1-3 (S.D.N.Y. July 10, 1995) (granting defendants' Rule 12(c) motion following Supreme Court's clarification of definition of "prospectus"); *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, 854 F. Supp. 1466 (C.D. Cal. 1994) (granting, in part, defendant's Rule 12(c) motion based on new relevant decisions issued after court's denial of motion to dismiss).

### III. STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). The standard that applies to a motion for judgment on the pleadings is the same standard that applies to a motion to dismiss pursuant to Rule 12(b)(6): *i.e.*, "the court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party." *In re Verisign Corp. Sec. Litig.*, No. C 02-02270 (JW), 2005 WL 2893783, at *3 (N.D. Cal. Nov. 2, 2005) (citing *W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985)). "A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts stated under a cognizable theory." *Verisign*, 2005 WL 2893783, at *3 (citation omitted).

As demonstrated below, recent decisions in the Ninth Circuit – including this Court's *Maxim* decision – clarify the definition of "corrective disclosure" for the purposes of a Section 10(b) claim. Under these cases, the alleged May 2006 disclosures are not corrective disclosures for which Plaintiffs can plead loss causation.

### IV. THE ALLEGED MAY 2006 DISCLOSURES ARE NOT CORRECTIVE DISCLOSURES FOR WHICH PLAINTIFFS CAN PLEAD LOSS CAUSATION.

As explained in *Dura*, loss causation is the "causal connection between the [defendant's] material misrepresentation and the [plaintiff's] loss". *Dura Pharms.*, 544 U.S. at 338 (citing 15 U.S.C. §78u-4(b)(4)). Under *Dura*, a plaintiff pleading loss causation must provide "notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation[.]" *Id.* at 347; *see also In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1026 (9th Cir. 2008) (complaint must set forth "sufficient" allegations to provide the defendant with "some indication that the drop in [the defendant's] stock price was causally related to [the defendant's] financial misstatements[.]"). A plaintiff may plead loss causation by showing that a corrective disclosure – *i.e.*, a disclosure revealing the alleged fraud to the market – caused the stock price to decline. *See Daou*, 411 F.3d at 1025-26 (plaintiffs adequately pled loss

causation by alleging that defendants overstated revenues and that stock price dropped immediately after defendants revealed "true financial condition").

Recent decisions in the Ninth Circuit interpreting *Dura* establish that statements solely identifying a "risk" of fraud are not corrective disclosures. In *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008), the plaintiffs alleged that Corinthian Colleges manipulated their enrollment numbers for the purpose of fraudulently obtaining federal funding. *Id.* at 1055-56. One of the "corrective disclosures" upon which the plaintiffs relied was a *Financial Times* story disclosing a financial aid-related investigation at Corinthian Colleges. *Id.* at 1063. The Ninth Circuit determined, however, that the *Financial Times* story was not a corrective disclosure because it did nothing more than reveal the "risk" of widespread fraud at Corinthian Colleges. *Id.* at 1064. ("[N]either *Daou* nor *Dura* support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct.")

Following *Metzler*, this Court held in *Maxim* that statements merely identifying a risk of fraud are not "corrective disclosures" for which plaintiffs can plead loss causation. As in *Metzler*, *Maxim* made a key distinction between disclosures that the defendant affirmatively engaged in fraud **and** disclosures that the defendant *may have* engaged in fraud:

> In *In re Daou Systems*, the Ninth Circuit found that, among other disclosures, an anonymous stock analyst's statement opining that a company was "manufacturing earnings" was sufficient to plead loss causation based on a corrective disclosure. 411 F.3d at 1026. In contrast, the analyst reports identified by Plaintiffs here indicate only a "risk for potential earnings restatement," that Maxim "may have engaged in aggressive practices," and that backdating could be expected to be a "contentious issue" when being rated by other analysts. Such speculative statements are insufficient under Ninth Circuit law.

*Id.* at *6 (citation omitted). According to *Maxim*, statements falling in the second category – *i.e.*, those that "do not themselves indicate anything more than a 'risk' or potential' that Defendants engaged in widespread fraudulent conduct" – are not corrective disclosures. *Id.* at *6. Thus, the following disclosures – each of which "provide[d] notice that Maxim *may* have illicitly backdated stock options" – were insufficient to plead loss causation:

- A Merrill Lynch report identifying Maxim as a "standout" company for its "aggressive" options dating practices;

- A Credit Suisse report asserting that options would be a "contentious issue" given Maxim's "aggressive stance on options and options accounting";
- Company press releases announcing an SEC investigation regarding stock options backdating and subpoena from the U.S. Attorney's office regarding stock option grants and practices; and
- A Citigroup report downgrading Maxim's rating to incorporate "stock option grant analysis that suggests the company may have engaged in aggressive practices" and may "potentially result in restatement."

*Id.* at *5-6 (internal quotations omitted).

The *Apollo* decision is in accord. In *Apollo*, the district court held that an analyst report asserting that the Apollo Group's options granting history "look[ed] highly questionable" was not a corrective disclosure. *Apollo*, 2009 WL 890479, at *54. As the district court there observed, the analyst report "at most" revealed the "risk" that the Apollo Group had committed fraud. *Id.* at *54 ("Having a 'questionable' grant history, even a 'highly questionable grant history' is not equivalent to revealing a fraud, or at least some aspect of a fraud, however."). Moreover, the analyst report warned investors that its suspicions regarding Apollo Group's options practices were not definitive. *Id.* at *55 (quoting report: "[I]t is *impossible* to tell *definitively* if a company has backdated options from the disclosure in its SEC finings [sic]."). The analyst report's "speculative observations" did not "comport with the loss causation pleading requirements of *Dura* as recently elucidated by the Ninth Circuit [in *Metzler*]." *Id.*

This case is indistinguishable from *Maxim* and *Apollo*. In this case, as in *Maxim* and *Apollo*, the alleged fraud consists of misrepresentations regarding stock option granting practices and the failure to properly record compensation expenses for those stock options. *See* Amended Consolidated Class Action Complaint ("Compl.") ¶¶ 10, 123-264; *Maxim*, 2009 WL 2136939, at *1-2; Apollo, 2009 WL 890479, at *3-5. In this case, as in *Maxim* and *Apollo*, the alleged May 2006 disclosures revealed only the risk of this alleged fraud:[2]

---

[2] Copies of the alleged May 2006 disclosures – *i.e.*, the May 16 CFRA Report, May 18 *Wall Street Journal* article, May 18 JP Morgan Report, May 19 TheStreet.com article, the May 19 *Los Angeles Times* article, and the May 22 Juniper Press Release – are attached as Exhibits A-F to the accompanying declaration of Joni Ostler, and all are properly the subject of judicial notice because they are incorporated by reference in the Amended Consolidated Class Action Complaint. *See* Compl. ¶¶ 270-78; *see also Myers-Armstrong v. Actavis Totowa, LLC*, No. C

(continued...)

| MAXIM | APOLLO | JUNIPER |
|---|---|---|
| Merrill Lynch Report: Maxim identified as "'standout'" company with regard to its "'aggressive'" option dating practices. 2009 WL 2136939 at *5; *see also id.* at *5 n.7 ("The Merrill Lynch report emphasizes that it is 'not taking any position in this report on whether companies have actually backdated options . . . .'"). | Lehman Brothers Report: ***"Apollo['s] . . . option grant history looks highly questionable . . . ."*** 2009 WL 890479 at *54. "[It] is *impossible* to tell *definitively* if a company has backdated options from the disclosure in its SEC fi[l]ings. . . ." *Id.* at *55. | May 16 CFRA Report: Identifies Juniper as company with "highest risk of options backdating." Ex. A at 1. "The purpose of this analysis is to highlight companies which *could* be at risk for having backdated options . . . . [W]e are not able to conclusively state whether or not backdating occurred." *Id.* at 3. |
|  |  | May 18 WSJ article: Reports that CFRA identified Juniper as at risk of options backdating. *See* Ex. B. |
| Citigroup Research Report: "'[S]tock option grant analysis . . . suggests [Maxim] may have engaged in aggressive practices'" that could "'potentially result in a financial restatement.'" *Id.* at *5. |  | May 18 JP Morgan Report: "We found fifteen option grants to named Juniper executive officers of which six were granted at the month low price." Ex. C at 8. |
|  |  | May 19 TheStreet.com article: Reports that CFRA and JP Morgan identified Juniper as at risk of options backdating and a company with "questionable grant dates," "troublesome option datings" and "suspicious pattern of grants". Ex. D at 1. |
|  |  | May 19 Los Angeles Times article: Reports that CFRA identified Juniper as at risk of options backdating and notes that CFRA "cannot conclusively say there was any backdating . . . ." Ex. E at 2. |

---

(...continued from previous page)

08-04741 (WHA), 2009 WL 1082026, at *5 n.6 (N.D. Cal. Apr. 22, 2009) ("Judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of incorporation by reference; such documents are treated as part of the complaint, not extrinsic evidence, and are properly considered on a Rule 12(c) motion.").

| Announcement re Subpoena From U.S. Attorney's Office: Maxim "'received a subpoena from the U.S. Attorney for the Northern District of California . . . relating to its stock option grants and practices.'" *Id.* at *5. | | May 22 Announcement re Subpoena From U.S. Attorney's Office:[3] Juniper "received a request for information from the office of the United States Attorney for the Eastern District of New York relating to the Company's granting of stock options." Ex. F. |
|---|---|---|

As in *Maxim* and *Apollo*, the May 16 CFRA Report did nothing more than speculate that Juniper "*could* be" at risk for having backdated options. Ex. A at 1 (emphasis in original); *see also Maxim*, 2009 WL 2136939, at *6 ("While each of these disclosures provides notice that Maxim *may* have illicitly backdated stock options, none of them goes beyond speculation."); *Apollo*, 2009 WL 890479, at *54 ("Having a 'questionable' grant history, even a 'highly questionable grant history' is not equivalent to revealing a fraud, or at least some aspect of a fraud, however."). In identifying this risk, the May 16 CFRA Report expressly warned investors that its observations were not conclusive or definitive. *See* CFRA Report at 3 ("The purpose of this analysis is to highlight companies which *could* be at risk for having backdated options . . . . [W]e are not able to conclusively state whether or not backdating occurred."). These disclaimers underscore that the May 16 CFRA Report consists solely of the same "speculative observations" rejected in *Maxim* and *Apollo*. *Apollo*, 2009 WL 890479, at *55 ("speculative observations" of risk, particularly when combined with express disclaimers regarding conclusiveness, do not satisfy the pleading requirements of *Dura*).

The other alleged May 2006 disclosures are no different in kind from the observations that had already been reported in the May 16 CFRA Report:

---

[3] Although Plaintiffs do not contend that Juniper's May 22 announcement was a corrective disclosure for which they seek damages, *Maxim* and *Apollo* would defeat such a contention as a matter of law. *See* Ex. F; *Maxim*, 2009 WL 2136939, at *6 ("Maxim disclosures regarding compliance with an SEC investigation, subpoenas from the United States Attorney's office, and the formation of its own Special Committee to investigate options granting practices do not reveal the alleged fraud.") (citation omitted); *Apollo*, 2009 WL 890479, at *56-57 (rejecting announcement of subpoena from U.S. Attorney's office as corrective disclosure).

- The May 18 *Wall Street Journal* article reported CFRA's observation that Juniper was at risk of options backdating and reiterated that the May 16 CFRA Report "doesn't prove that backdating occurred . . . ." Ex. B at 2; *see Apollo*, 2009 WL 890479, at *55 (quoting report that was not corrective disclosure: "it is *impossible* to tell *definitively* if a company has backdated options from the disclosure in its SEC finings [sic].").

- The May 18 JP Morgan Report similarly noted Juniper's risk of options backdating and was even more tentative about its observations. Ex. C at 8; *see id.* at 1 ("For quite possibly the first time ever, **we are drawing no conclusions, making no inferences and offering no opinions in this report**."). *Compare with Apollo*, 2009 WL 890479, at *55 (rejecting analyst report, which acknowledged that its analysis was merely "**an attempt to determine if any questionable activity exists**").

- The May 19 TheStreet.com article and May 19 *Los Angeles Times* reported that CFRA and JP Morgan identified Juniper as at risk of options backdating. Ex. D at 1 (noting "questionable grant dates" and "troublesome grant dates" identified in May 16 CFRA Report and May 18 JP Morgan Report); Ex. E at 1 (repeating CFRA: Juniper was "'at risk' for having backdated option grants"). *Compare with Maxim*, 2009 WL 2136939, at *5 (quoting report that was not corrective disclosure: "[S]tock option grant analysis . . . suggests the company may have engaged in aggressive practices" that could "potentially result in a financial restatement.").

As is apparent, the May 2006 disclosures did nothing more than indicate Juniper's *risk* for options backdating and thus, they do not constitute "corrective disclosures" for purposes of loss causation, as recent cases, including this Court's decision in *Maxim*, make clear.

## V. CONCLUSION

In sum, all of the alleged May 2006 disclosures are exactly like the risk disclosures rejected by *Maxim* and *Apollo*. For the same reasons, Juniper's Motion for Judgment on the Pleadings should be granted.

Dated: September 2, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Nina F. Locker
    Nina F. Locker

Attorneys for Defendants Juniper Networks, Inc., Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy and William R. Stensrud

1    I, Joni Ostler, am the ECF user whose identification and password are being used to file
2 THE JUNIPER DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS.  In
3 compliance with General Order 45.X.B, I hereby attest that Nina F. Locker has concurred in this
4 filing.

6 Dated: September 2, 2009                         WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation

9                                                 By:      /s/ Joni Ostler
                                                           Joni Ostler