United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In Re Juniper Networks, Inc. Securities Litigation
_____________________________________/

NO. C 06-04327 JW

**AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

This is a putative securities fraud class action brought on behalf of investors who acquired Juniper Networks, Inc. ("Juniper") securities between July 12, 2001 and August 10, 2006 against Juniper and certain of Juniper's senior officers and directors (collectively, "Defendants").[1] Plaintiffs allege, *inter alia*, violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and Rule 10b-5 of the Securities and Exchange Commission ("SEC") resulting from Defendants' options backdating practices.

Presently before the Court is Lead Plaintiff New York City Pension Funds' Motion for Class Certification. (hereafter, "Motion," Docket Item No. 218.) The Court conducted a hearing on

---

[1] The Individual Defendants are Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert Calderoni, Kenneth Goldman, William Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy, and William Stensrud. Plaintiffs also allege causes of action against Ernst & Young, LLP.

United States District Court
For the Northern District of California

September 14, 2009. Based on the papers submitted to date and oral argument of counsel, the Court GRANTS Lead Plaintiff's Motion.[2]

## II. BACKGROUND

### A. Factual Allegations

In an Amended Consolidated Class Action Complaint ("ACC") filed on April 9, 2007,[3] Plaintiffs allege as follows:

> Lead Plaintiff is New York City Pension Funds. (ACC ¶ 27.) Defendant Juniper is an Internet networking equipment company which makes routers and other equipment that direct data traffic over computer networks. (Id. ¶ 34.) Its principal place of business is in Sunnyvale California. (Id.) Defendant Kriens has served as Chief Executive Officer ("CEO") and Chairman of Juniper since October 1996. (Id. ¶ 36.) Defendant Sindhu co-founded Juniper in February 1996 and served as CEO and Chairman until September 1996. Since that time, Sindhu has served as Juniper's Chief Technical Officer ("CTO") and as Vice Chairman. (Id. ¶ 39.) Defendant Gani served as Juniper's Chief Financial Officer ("CFO") from February 1997 and as Executive Vice President and CFO of the Company from July 2002 through December 31, 2004. (Id. ¶ 42.) Beginning January 1, 2005, Gani assumed the position of Juniper's Chief of Staff. (Id.) The other directors who sat on the board and the accounting firm Juniper had as an independent auditor during the relevant time period are also named as Defendants. (Id. ¶¶ 46-56.)
>
> Defendants materially misrepresented and concealed backdating and other accounting improprieties regarding the option grants Juniper issued between July 12, 2001 and August 10, 2006. (ACC ¶ 10.) These actions caused the Company's financial statements to violate generally accepted accounting principles ("GAAP") by understating compensation expenses

---

[2] The Court grants the Juniper Defendants' Administrative Motion for Leave to File Sur-reply in Opposition to Motion for Class Certification. (hereafter, "Sur-reply," Docket Item No. 316.)

[3] (See Docket Item No. 73.)

and overstating profits over Juniper's seven year life as a public company, which resulted in Juniper's stock price being artificially inflated throughout the Class Period. (Id. ¶ 2.)

On August 10, 2006, Juniper admitted that it would have to restate financial results from 2003 through March 2006. (ACC ¶ 15.) On December 20, 2006, Juniper admitted that it would incur a $900 million expense as a result of correcting the improper accounting of its option grants. (Id. ¶ 17.)

**B. Procedural History**

On July 14, 2006, Robert Garber filed a Complaint (the "Garber Complaint") on behalf of himself and all those who acquired Juniper securities between September 1, 2003 and May 22, 2006. On November 20, 2006, the Court consolidated the Garber Complaint with another case filed against Juniper and the Individual Defendants, and named New York City Pension Funds as the Lead Plaintiff. (See Docket Item No. 64.)

The operative complaint is the Amended Consolidated Class Action Complaint, in which Plaintiffs allege the following six causes of action: (1) Making false and misleading statements regarding Juniper's options granting practices in violation of § 10(b) of the Exchange Act and SEC Rule 10b-5 against Juniper, Kriens, Sindhu, and Gani; (2) Control person liability under § 20(a) of the Exchange Act for § 10(b) violations against the Individual Defendants; (3) Submitting false registration statements related to the Netscreen Registration statement in violation of § 11 of the Securities Act against all Defendants; (4) Control person liability under § 15 of the Securities Act for § 11 violations related to the Netscreen Registration statement against the Individual Defendants; (5) Submitting false registration statements related to the 2003 Notes Offering in violation of § 11 of the Securities Act against all Defendants except Ernst & Young LLP, Calderoni, and Goldman; and (6) Control person liability under § 15 of the Securities Act for § 11 violations related to the 2003 Notes Offering against the Individual Defendants except Calderoni and Goldman.

On March 31, 2008, the Court granted in part and denied in part Defendants' Motion to Dismiss. (Docket Item No. 133.) The Court dismissed Plaintiffs' claim for securities fraud under § 10(b) against Defendant Sindhu with leave to amend, and dismissed Plaintiffs' § 10(b) claim with

United States District Court
For the Northern District of California

prejudice as time-barred to the extent it was based on representations made prior to July 14, 2001. (Id. at 17.)

Presently before the Court is Lead Plaintiff's Motion for Class Certification.

## III. STANDARD

The decision to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. See Fed. R. Civ. P. 23; Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977). The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007) (citing Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous analysis," it determines that the prerequisites of Rule 23(a) have been satisfied. General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).

In reviewing a motion for class certification, a court generally is bound to take the substantive allegations of the complaint as true. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. See Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citation omitted). In fact, "courts are not only at liberty to but *must* consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." Dukes, 509 F.3d at 1178 n.2 (internal quotations and citation omitted) (emphasis added).

## IV. DISCUSSION

Plaintiffs move to certify the following class: "All persons and entities who purchased or otherwise acquired the publicly traded securities of Juniper Networks, Inc. from July 11, 2003 through August 10, 2006, inclusive (the "Class Period") and were damaged thereby, including (a) those who received or acquired Juniper common stock issued pursuant to a registration statement on

United States District Court
For the Northern District of California

SEC Form S-4, dated March 10, 2004, for the Company's merger with NetScreen Technologies Inc.; and (b) purchasers of Zero Coupon Convertible Senior Notes due June 15, 2008 issued pursuant to a registration statement on SEC Form S-3, dated November 20, 2003. Excluded from the Class are the Defendants and the current and former officers and directors of the Company, their immediate families, their heirs, successors, or assigns and any entity controlled by any such person." (Motion at 1.)

The Court considers whether class certification is appropriate in this case.

**1. Rule 23(a) Certification**

Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)).

**a. Numerosity**

Plaintiffs contend that the putative class satisfies the numerosity requirement because Juniper stock was traded during the class period on the NASDAQ Stock Exchange ("NASDAQ") at an average trading volume of 50 million shares per week. (Motion at 8.) Plaintiffs also contend that there are $400 million of Notes outstanding that traded actively with substantial weekly turnover. (Id. at 8 n.7.) Although Defendants do not contest class certification on the basis of numerosity, the Court examines this factor for completeness.[4]

[4] Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003).

United States District Court
For the Northern District of California

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). A class of one thousand members "clearly satisfies the numerosity requirement." Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978). Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks. See Yamner v. Boich, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994) (citing Zeidman v. J. Ray McDermott & Co., 652 F.2d 1030, 1039 (5th Cir. 1981)).

In this case, Juniper stock was traded on the NASDAQ daily. Plaintiffs provide evidence that Juniper stock's weekly volume of trading on the NASDAQ was over 50 million shares. (Declaration of Michael A. Marek in Support of Motion for Class Certification ¶ 23, hereafter, "Marek Decl.," Docket Item No. 220.) Based on this information, the Court finds that Plaintiffs have sufficiently shown that the number of investors who purchased Juniper stock during the Class Period are potentially in the thousands.

Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule 23(a).

**b. Commonality**

Plaintiffs contend that the commonality requirement of Rule 23(a) is met because the Court will be required to address a series of questions that will affect all members of the putative class. (Motion at 9.) Defendants do not dispute commonality, but the Court will examine it for completeness.

Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact common to the class." This requirement "has been construed permissively." Hanlon, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule." Id. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Repeated misrepresentations by a

United States District Court
For the Northern District of California

company to its stockholders satisfy the commonality requirement of Rule 23(a)(2). Blackie, 524 F.2d at 902.

In this case, the following issues are common to the entire class: (1) whether Defendants violated the federal securities laws; (2) whether Defendants omitted or misrepresented material facts about Juniper's stock option granting practices during the Class Period; (3) whether Defendants acted with the requisite state of mind; (4) whether the market price of Juniper's securities during the Class Period was artificially inflated due to the material omissions and misrepresentations described in the Complaint; and (5) whether the market price of Juniper's securities declined when the misconduct was revealed to the market. (See Motion at 8; ACC ¶ 73.) Thus, for each member of the putative class, the core factual and legal issues are the same.

Accordingly, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a)(2).

**c. Typicality**

Plaintiffs contend that the typicality requirement is satisfied because the claims of all members of the putative class derive from the same legal theories and set of operative facts, namely, the alleged misrepresentations. (Motion at 10.) Defendants contend that several of Plaintiffs' investment advisors received a report from the Center for Financial Research and Analysis ("CFRA Report") on May 16, 2006, two days before the public knew of the report, identifying Juniper as a "high risk" company for options backdating, yet failed to act on that information immediately.[5] Defendants further contend that all of the Plaintiffs continued to purchase Juniper stock after May 26, 2006, by which time, according to Defendants, "serious questions had been raised regarding the accuracy of Juniper's prior statements about its stock option granting practices." (Id. at 26.)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like the commonality requirement, the typicality requirement is permissive: "representative claims are 'typical' if they are reasonably

---

[5] (The Juniper Defendants' Opposition to Motion for Class Certification at 25, hereafter, "Opposition," Docket Item No. 267.)

United States District Court
For the Northern District of California

co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The test is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon, 976 F.2d at 508. A court should not find typicality satisfied if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. (internal citation omitted). Courts have held, however, that "where the fraud is only partially revealed (and the stock price only partially adjusted), or where factual uncertainty persists regarding the extent to which a disclosure revealed the fraud, the presumption [of reliance on the alleged misrepresentations] is not defeated and the class can contain members who purchased both before and after the alleged corrective disclosure." In re LDK Solar Sec. Litig., 255 F.R.D. 519, 528 (N.D. Cal. 2009); see also Connecticut Ret. Plans and Trust Funds v. Amgen, Inc., CV 07-2536 PSG, slip op. at 10 (C.D. Cal. Aug. 12, 2009) ("[W]hat is significant to the [c]ourt is not the degree to which [p]laintiff was misled but whether it and the other class members were in fact misled. Consequently, the [c]ourt finds that any differences in the extent to which [p]laintiff and other class members were misled is insufficient to preclude class certification.").

In this case, the fact that some of Plaintiffs' investment managers received a market report from CFRA opining that Juniper was at risk for backdating is not sufficient to show Plaintiffs will be preoccupied with a unique defense. Similarly, Plaintiffs' purchases of Juniper securities after "serious questions"[6] had been raised, even if those questions can be considered partial corrective disclosures, does not show that Plaintiffs will be preoccupied with a unique defense. All members

[6] Among the facts that Defendants contend raised "serious questions" are: (1) On May 22, 2006, Juniper announced that its audit committee had commenced an internal investigation regarding Juniper's historical stock option granting practices and that it had received a request for information regarding its historical stock option grants from the U.S. Attorney for the Eastern District of New York, and (2) By May 26, 2006, four derivative lawsuits were filed against Juniper's officers and directors contending that they had engaged in a fraudulent scheme to backdate Juniper's stock option grants and had caused Juniper to file financial statements which materially understated the Company's stock option compensation expenses. (Id. at 22.)

United States District Court
For the Northern District of California

of the putative class were allegedly injured by the same course of conduct, even if not to the same degree.

Accordingly, the Court finds that Plaintiffs have met the typicality requirement of Rule 23(a).

**d. Adequacy of Representation**

Plaintiffs contend that they are adequate class representatives because they are represented by counsel experienced in the field of class action securities litigation and there is no conflict of interest between Plaintiffs and the absent class members. (Motion at 11-12.) Defendants do not dispute adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Two questions are considered when determining the adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Here, there is no evidence that Plaintiffs or their counsel have any conflicts of interest with other class members. Further, upon review of the law firm resume submitted by Plaintiffs' counsel, the Court finds that counsel has sufficient experience in securities litigation and class actions such that they are capable of adequately and vigorously prosecuting this litigation.[7]

Accordingly, the Court finds that Plaintiffs have met the adequacy of representation requirement of Rule 23(a).

**2. Rule 23(b) Certification**

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b).

---

[7] (See Motion at 11; Declaration of Neil L. Selinger In Support of Motion by the New York City Pension Funds as Lead Plaintiff and Approval of Lead Counsel, Ex. 3, Resume of Lowey Dannenberg Bemporad & Selinger, P.C., Docket Item No. 11.)

United States District Court
For the Northern District of California

Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two conditions: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Zinser, 253 F.3d at 1188-89 (citing Hanon, 976 F.2d at 508).

**a. Predominance**

Plaintiffs contend that common questions of law and fact predominate because Defendants' alleged conduct affected all members of the putative class by artificially inflating the price of Juniper's securities through misleading statements and material omissions. (Motion at 13-14.) Defendants contend that Juniper's stock price was not artificially inflated by the alleged misrepresentations, thereby rebutting the fraud-on-the-market presumption of reliance that Plaintiffs would use to show class-wide reliance. (Opposition at 12-14.)

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." AmChem, 521 U.S. at 623. The question of predominance presumes the existence of common issues; thus, a mere showing of commonality is not enough. Hanlon, 150 F.3d at 1022; see also AmChem, 521 U.S. at 623-24 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement). Predominance focuses on the relationship between the common and individual issues. Hanlon, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id.

Reliance on misstatements, including material omissions, is an element of a cause of action under Rule 10b-5. Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988). "Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." Id. at 247. The fraud-on-the-market presumption of reliance is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material

United States District Court
For the Northern District of California

information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999) (quoting Basic, 485 U.S. at 241-42). "Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an 'efficient market,' thereby establishing a 'fraud on the market.'" Id.[8]

The presumption of reliance, however, is rebuttable. Basic, 485 U.S. at 248 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."). A presumption of reliance cannot exist where such a presumption would be unreasonable in light of corrective information that has entered the market.[9] When the applicability of the fraud-on-the-market presumption of reliance is questioned at the class certification phase, a court "must conduct a rigorous examination into whether plaintiffs are entitled to use [the presumption]."[10] In re Micron, 247 F.R.D. at 633 (citing Dukes, 509 F.3d at 1177 n.2).

---

[8] The Ninth Circuit has endorsed the five factors articulated in Cammer v. Bloom, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), when determining whether there is an efficient market. These factors include: (1) whether the stock trades at high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file a Form S-3 registration statement with the SEC; and (5) whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." Binder, 184 F.3d at 1065 (quoting Cammer, 711 F. Supp. at 1286-87).

[9] See In re Fed. Nat'l Mortgage Ass'n Sec., Derivative and "ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C. 2008) ("Examples include a lack of market response to the alleged misrepresentations, that the market was aware that the misrepresentations were false, or that investors would have purchased or sold the securities even with full knowledge of the misrepresentation.").

[10] Although courts must refrain from addressing the merits of a plaintiff's causes of action on a motion for class certification, courts must also "consider evidence which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case." Dukes, 509 F.3d at 1177 n.2. In this case, the Court finds that the applicability of the fraud-on-the-market presumption must be considered in order to evaluate the predominance requirement of Rule 23(b)(3). See, e.g., In re Micron Techs., Inc. Sec. Litig., 247 F.R.D. 627, 633 (D. Idaho 2007); In re Fed. Nat'l Mortgage Ass'n, 247 F.R.D. at 38.

United States District Court
For the Northern District of California

In this case, Plaintiffs made a *prima facie* showing that the fraud-on-the-market presumption of reliance applied because Plaintiffs sufficiently established that Juniper's stock was actively traded on an efficient market—the NASDAQ. (See Motion at 16-17; Marek Decl. ¶ 77.) Plaintiffs' expert analyzed the Cammer factors in sufficient detail to show that the market was efficient. (See Motion at 17-19; Marek Decl. ¶¶ 22-42, 59-76.) Plaintiffs provided evidence that Juniper's stock traded at a high weekly volume, and that numerous analysts covered the stock. (See Motion at 17-18; Marek Decl. ¶¶ 23, 28-29.) Plaintiffs also showed that over 100 market makers traded Juniper's stock, and that Juniper met the requirements for registering securities on Form S-3. (See Motion at 18; Marek Decl. ¶¶ 37, 39.) Finally, Plaintiffs established a cause and effect relationship between unexpected corporate events and quick response in Juniper's stock price by analyzing a series of dates on which announcements relevant to Juniper occurred, including seven dates on which Juniper announced earnings results unexpected by analysts, and August 10, 2006, on which Juniper announced it would need to revise its financial statements going back to January 1, 2003. (See Motion at 18-19; Marek Decl. ¶¶ 59-76.)

Defendants have failed to rebut the presumption of reliance. The fact that several of Juniper's large institutional investors received the CFRA Report by email two days before word of the report was publicly disseminated (e.g., via newspaper articles), even if the report could be considered a partial corrective disclosure, is not enough for the Court to find that the market had sufficient corrective information to render the fraud-on-the-market presumption unreasonable. (See Opposition at 11.) Furthermore, Defendants offered no supporting facts to show why those institutional investors did not engage in a sell-off of Juniper's stock on May 16 or May 17 before the public was informed of the report and Juniper's stock price declined.[11] The Court is unpersuaded by Defendants' argument in light of the fact that on May 18 and May 19 Juniper's stock price declined by a total of 11% when news articles publicly disclosed the CFRA Report and another report by JP

---

[11] (See Opposition at 13-16; Declaration of Michael A. Marek in Rebuttal to the June 1, 2009 Declaration of Lucy Allen ¶¶ 17-19, hereafter, "Marek Rebuttal Decl.," Docket Item No. 311.)

United States District Court
For the Northern District of California

Morgan that identified Juniper as a company at risk for backdating.[12] Finally, Defendants' speculative contention that the drop in Juniper's stock price on May 18 and May 19 may have resulted from other negative press about Juniper (e.g., Microsoft's entry into Juniper's market) disseminated on May 18 is insufficient to rebut the presumption of reliance. (See Opposition at 15 n.12.) In sum, the Court finds that Defendants have not "sever[ed] the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price."[13] See Basic, 485 U.S. at 248.

Accordingly, the Court finds that Plaintiffs have met the predominance requirement of Rule 23(b)(3).

**b. Superiority**

Plaintiffs contend that a class action is superior to separate actions for each member of the putative class because the number of class members is too large, and the typical claim is too small. (Motion at 20-21.) Defendants do not contest superiority.

In determining superiority, courts must consider the four factors of Rule 23(b)(3): (1) the class members' interests in individually controlling a separate action; (2) the extent and nature of litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the manageability of a class action. See Zinser, 253 F.3d at 1190; Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505, 514 (N.D. Cal. 2007). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190.

In this case, the Court is not aware of any other action brought on behalf of members of the putative class, and the parties do not identify any. (See Motion at 21.) Moreover, as discussed

---

[12] (See Lead Plaintiff's Reply Memorandum in Support of Class Certification at 9, hereafter, "Reply," Docket Item No. 309.)

[13] For substantially the same reasons, the Court rejects Defendants' contention that the class should exclude any investors who received the CFRA Report prior to the close of the market on May 17, 2006. (See Opposition at 19-20.)

above, it is almost certain that there will be thousands of class members. Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum. See Epstein v. MCA, Inc., 50 F.3d 644, 668 (9th Cir. 1995), rev'd on other grounds, 516 U.S. 367 (1996). Finally, the Court does not see any particular management difficulties regarding this case proceeding as a class action.

Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

**3. Class Period**

Defendants contend that the class period should end on May 26, 2006, rather than August 10, 2006, the date on which Juniper announced that it would have to restate its previous financial statements going back to January 1, 2003, and that its existing financial statements could therefore not be relied on. (See Opposition at 20-21.) Defendants contend that by May 26, 2006 the market knew that the accuracy of Juniper's statements regarding its stock options practices were "at best, uncertain," because (1) on May 18, 2006 news of the CFRA Report had been publicly reported, (2) on May 22, 2006 Juniper announced that its audit committee had commenced an internal investigation regarding Juniper's past stock option grants, and reported that it had received a request for information from the U.S. Attorney for the Eastern District of New York regarding its past stock option grants, and (3) on May 26, 2006 four derivative lawsuits were filed against Juniper's officers and directors alleging that they had engaged in a fraudulent scheme regarding stock options backdating. (Opposition at 22.) Thus, Defendants contend that after May 26, 2006, purchases of Juniper stock "could not, as a matter of law, have been made in reliance upon Juniper's prior statements regarding the granting of stock options and its stock option compensation expenses." (Opposition at 20-21.)

Plaintiffs contend that the proper class period end date is August 10, 2006, because on that date Juniper admitted that its accounting for stock options had been improper and advised investors to not rely on its historic financial results. (See Reply at 18.) As evidence that the events pointed to by Defendants leading up to May 26, 2006 did not fully correct Juniper's alleged fraud, Plaintiffs

United States District Court
For the Northern District of California

point to the fact that Juniper's stock price fell by 9.2% over the course of August 10 and 11 after Juniper's announcement. (See id.; Marek Rebuttal Decl. ¶¶ 41-44 & Ex. L.)

In determining the duration of a securities fraud class based on a fraud-on-the-market theory, the Court must determine whether "a curative disclosure had been made so as to render it unreasonable for an investor, or the market, to continue to be mislead by the defendants' alleged misrepresentations." In re Fed. Nat'l Mortgage Ass'n, 247 F.R.D. at 38 (citing cases). Where companies disclose accounting irregularities, courts generally find it unreasonable as a matter of law for investors to rely afterward on the company's prior financial statements.[14] "[A] class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market." In re WorldCom, 219 F.R.D. at 307. "Whether a particular announcement (i.e., 'release') actually cured a prior misrepresentation is, of course, a sensitive issue to rule on at [the class certification] stage of the proceedings, because it comes so close to assessing the ultimate merits in the case." In re Fed. Nat'l Mortg. Ass'n, 247 F.R.D. at 39. Thus, courts have often limited their analysis to a determination of whether there is "a substantial question of fact as to whether the release cured the market or was itself misleading." Id.

In this case, the Court finds that Defendants' contentions show only that some suspicion had been cast on Juniper's options practices as of May 26, 2006. At that time, Juniper itself had made no announcement of wrongdoing.[15] The Court finds that it was not unreasonable for an investor or

---

[14] Id. at 39; see also In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 307 (S.D.N.Y. 2003) (selecting date on which company first announced need for restatement as end of class period over defendants' request to shorten the period since questions remained about when and how the market was informed about the conduct at issue prior to that date); In re LTV Sec. Litig., 88 F.R.D. 134, 147-48 (N.D. Tex. 1980) (ending class period on day company requested suspension of trading and reported that adjustments would have a "materially adverse impact" on the company's results, even though the exact amount of the restatement was not known until later).

[15] In fact, just two weeks earlier, on May 12, 2006, Juniper reassured its largest institutional shareholder, Alliance Bernstein, that "Juniper's options receive an exercise price equal to the closing market price on the date of the grant." (Reply at 19 & n.35.) Juniper also stated on May 9, 2006 in its Form 10-Q for the quarter ending March 31, 2006 that its stock options were issued at the market price on the reported date of the grant. (Id. at 10 n.16.)

United States District Court
For the Northern District of California

the market to continue to be misled by Juniper's misstatements until after August 10, 2006. Accordingly, the class period will end on August 10, 2006.

**4. "In-Out" Traders**

Defendants contend that Plaintiffs' proposed class definition should be modified to exclude investors who did not hold Juniper stock past the first corrective disclosure (so-called, "in-out" traders) since such investors, according to Defendants, have no damages. (Opposition at 23.) Plaintiffs contend that it is premature to exclude "in-out" traders at the class certification stage because "whether a particular in-and-out purchaser is damaged will depend on the different levels of inflation in the securities at the times of those transactions." (Reply at 19-20.)

Proof of causation of economic loss is an element of a cause of action for securities fraud. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 338, 341 (2005). "Thus, in order to determine whether in-and-out traders should remain part of the proposed class, it is necessary to demonstrate that they might be able to prove a loss, i.e., damages." In re BearingPoint, Inc. Sec. Litig., 232 F.R.D. 534, 544 (E.D. Va. 2006) (discussing Dura).

In this case, in-out traders who sold their securities prior to May 18, 2006, the first date on which Plaintiffs allege that partially curative disclosures were disseminated to the public marketplace, cannot logically prove economic loss based on Juniper's alleged misrepresentations. In-out traders who sold their securities between May 18, 2006 and August 10, 2006, inclusive, however, might be able to prove such economic loss.

Accordingly, the class shall exclude any person who sold their Juniper securities prior to May 18, 2006.

**5. Standing to Represent a Class of Note Purchasers**

Defendants contend that Plaintiffs lack standing to represent a class of note purchasers because Plaintiffs did not purchase notes and did not purchase any type of security pursuant to Juniper's November 17, 2003 Notes Registration Statement. (See Opposition at 17-18.) Plaintiffs contend that they will adequately represent both stockholders and note purchasers because the alleged harm to both groups stems from the same alleged conduct. (Motion at 12.)

United States District Court
For the Northern District of California

"[Courts] often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned."[16] Furthermore, plaintiffs with a valid securities claim may represent the interests of purchasers of other types of securities in a class action where the alleged harm stems from the same allegedly improper conduct. See In re DDi Corp. Sec. Litig., 2005 WL 3090882 (C.D. Cal. 2005).

The Court finds that purchasers of the 2003 Notes trace their injury to the false financial statements incorporated into the 2003 Notes Registration Statement. (See Reply at 20; ACC ¶ 189.) The Notes Registration Statement is not the basis for a claim because the source of the injury to the noteholders arises not from the Notes Registration Statement itself, but from the false financial statements referenced by the Notes Registration Statement. Thus, alleged harm to note purchasers and stock purchasers stems from the same allegedly improper conduct.

Accordingly, the Court finds that Plaintiffs have standing to represent a class of purchasers of the 2003 Notes.

## V. CONCLUSION

The Court GRANTS Lead Plaintiff New York City Pension Funds' Motion for Class Certification. The Court certifies Plaintiffs' class as follows:

> All persons and entities who purchased or otherwise acquired the publicly traded securities of Juniper Networks, Inc. from July 11, 2003 through August 10, 2006, inclusive, and who did not sell such acquired securities before May 18, 2006, and were damaged, including (a) those who received or acquired Juniper common stock issued pursuant to a registration statement on SEC Form S-4, dated March 10, 2004, for the Company's merger with NetScreen Technologies Inc.; and (b) purchasers of Zero Coupon Convertible Senior Notes due June 15, 2008 issued pursuant to a registration statement on SEC Form S-3, dated November 20, 2003. Excluded from the Class are the Defendants and the current and former officers and directors of the Company, their immediate families, their heirs, successors, or assigns and any entity controlled by any such person.

---

[16] Freudenberg v. E*Trade Fin. Corp., Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008); see also In re Sepracor Inc., 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser of options as lead plaintiff for class that included purchasers of all of defendant company's equity securities).

On or before **October 9, 2009**, the parties shall file a proposed form of class notice and a joint proposal for dissemination of notice.

Dated: October 16, 2009

JAMES WARE
United States District Judge

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alfred Glenn Yates yateslaw@aol.com
Barbara J. Hart bhart@lowey.com
Crystal Mothershead Gaudette cgaudette@wsgr.com
David C. Harrison dharrison@ldbs.com
David Michael Friedman david.friedman@lw.com
Deborah A. Rogozinski drogozinski@lowey.com
Eric Gregory Wallis ewallis@reedsmith.com
Felicia Ann Draper fdraper@sflaw.com
James Neil Kramer jkramer@orrick.com
Jason T. Baker jbaker@alexanderlaw.com
Jeanne D'Esposito jdesposito@lowey.com
Jennifer Jean Lee jlee@wsgr.com
Jennifer Lloyd Kelly jkelly@fenwick.com
Jon Michaelson jon.michaelson@klgates.com
Jonathan Acker Shapiro jonathan.shapiro@wilmerhale.com
Joni L. Ostler jostler@wsgr.com
Joseph M. Barton joebartonesq@gmail.com
Mark Cotton Molumphy mmolumphy@cpmlegal.com
Melinda Haag mhaag@orrick.com
Michael M. Goldberg info@glancylaw.com
Mozhgan Saniefar msaniefar@orrick.com
Nancy E. Harris nharris@orrick.com
Patrice L. Bishop service@ssbla.com
Patrick Edward Gibbs patrick.gibbs@lw.com
Peter Allen Wald peter.wald@lw.com
Peter Arthur Binkow info@glancylaw.com
Rebecca Felice Lubens rlubens@orrick.com
Reed R. Kathrein reed@hbsslaw.com
Richard Bemporad rbemporad@lowey.com
Richard W. Cohen rcohen@lowey.com
Robert C. Schubert rschubert@schubertlawfirm.com
Steven Guggenheim sguggenheim@wsgr.com
Viviann C Stapp viviann.stapp@lw.com
Willem F. Jonckheer wjonckheer@schubert-reed.com
William M. Audet waudet@audetlaw.com
Zesara C. Chan zchan@sflaw.com

**Dated: October 16, 2009** **Richard W. Wieking, Clerk**

**By: /s/ JW Chambers**
**Elizabeth Garcia**
**Courtroom Deputy**