| | |
|---|---|
| NINA F. LOCKER, # 123838<br>Email: nlocker@wsgr.com<br>STEVEN GUGGENHEIM, # 201386<br>Email: sguggenheim@wsgr.com<br>JONI OSTLER, # 230009<br>Email: jostler@wsgr.com<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone:  (650) 493-9300<br>Facsimile:  (650) 565-5100<br><br>*Counsel for Defendants Juniper Networks, Inc., Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy and William R. Stensrud (the "Juniper Defendants")* | JEFFREY B. RUDMAN (*Pro Hac Vice*)<br>Email: jeffrey.rudman@wilmerhale.com<br>EMILY R. SCHULMAN (*Pro Hac Vice*)<br>Email: emily.schulman@wilmerhale.com<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>60 State Street<br>Boston, MA  02109<br>Telephone:  (617) 526-6000<br>Facsimile:  (617) 526-5000<br><br>JONATHAN A. SHAPIRO (*Pro Hac Vice*)<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>Email: jonathan.shapiro@wilmerhale.com<br>1117 California Avenue<br>Palo Alto, CA  94304<br>Telephone:  (650) 858-6000<br>Facsimile:  (650) 858-6100<br><br>*Co-Counsel for Defendant Juniper Networks, Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>All Actions | CASE NO.: C06-04327-JW (PVT)<br><br>**THE JUNIPER DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Before: Hon. James Ware<br>Date:    November 2, 2009<br>Time:   9:00 am |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. UNDER *METZLER*, *MAXIM*, AND *APOLLO*, THE MAY 2006 DISCLOSURES ARE NOT CORRECTIVE DISCLOSURES FOR WHICH PLAINTIFFS CAN PLEAD LOSS CAUSATION .................................................................................................2

    A. This Case is On All Fours With *Maxim* and *Apollo* ...............................................2

    B. Plaintiffs' Attempts to Explain Why *Metzler*, *Maxim*, and *Apollo* are Not Dispositive are Unpersuasive .................................................................................5

    C. The Other Cases Plaintiffs Cite Do Not Bear on Whether the May 2006 Disclosures are Corrective Disclosures ...................................................................7

III. THIS MOTION IS NOT PROCEDURALLY DEFECTIVE .............................................9

IV. CONCLUSION ....................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, No. CV-08-2051-
    PHX-FJM, 2009 WL 2714017 (D. Ariz. Aug. 27, 2009) .................................................. 11

*Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) ................................................. 8

*Chi-Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352 (E.D. Wis. 1976), *amended on
    other grounds*, 422 F. Supp. 46 (E.D. Wis. 1976) ............................................................. 11

*Holloway v. Best Buy Co.*, No. C 05-5056 (PJH), 2009 WL 1533668 (N.D. Cal.
    May 28, 2009) ..................................................................................................................... 11

*In re Amica, Inc.*, 130 B.R. 792 (Bankr. N.D. Ill. 1991) ................................................................. 11

*In re Bristol-Meyers Squibb Sec. Litig.*, No. 00-1990, 2005 WL 2007004
    (D.N.J. Aug. 17, 2005) ......................................................................................................... 6

*In re Connectics Sec. Litig.*, No. C 07-2940 (SI), 2008 WL 3842938
    (N.D. Cal. Aug. 14, 2008) ................................................................................................ 8, 9

*In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005)......................................................... 5

*In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), *cert. denied*, 129
    S. Ct. 1993 (2009) ................................................................................................................ 7

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142
    (C.D. Cal. Oct. 16, 2007) ..................................................................................................... 6

*In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106 (C.D. Cal. 2003).............................. 7

*In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008) ......................... 9

*In re LDK Solar Sec. Litig.*, 548 F. Supp. 2d 1230 (N.D. Cal. 2008) ......................................... 8, 9

*In re Maxim Integrated Prods., Inc. Sec. Litig.*, No. C 08-00832 (JW),
    2009 WL 2136939 (N.D. Cal. July 16, 2009) ............................................................*passim*

*In re Quarterdeck Office Sys., Inc., Sec. Litig.*, 854 F. Supp. 1466 (C.D. Cal. 1994) .................. 11

*In re Shoretel Sec. Litig.*, No. C 08-0027, 2009 WL 2588881
    (N.D. Cal. Aug. 19, 2009) .................................................................................................... 6

*In re St. Paul Travelers Sec. Litig. II*, No. 04-4697 (JRT/FLN), 2007 WL 1589524
    (D. Minn. June 1, 2007) ..................................................................................................... 12

*In re Teco Energy, Inc. Sec. Litig.*, No. 04-CV-1948-T-27EAJ, 2006 WL 2884960
    (M.D. Fla. Oct. 10, 2006) .................................................................................................... 8

*In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................ 6, 8

*In re Verisign Corp. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 2893783 (N.D. Cal. Nov. 2, 1976) ............................................................................................................ 12

*In re Wash. Mut. Inc. Sec. Deriv. & ERISA Litig.*, No. 08-MD-1919, 2009 WL 1393679 (D. Wash. May 15, 2009) .................................................................................. 6, 8

*In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................ 7

*Intamin, Ltd. v. Magnetar Tech.Corp.*, 623 F. Supp. 2d 1055 (C.D. Cal. 2009) ......................... 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2009) ..................... *passim*

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc*., 411 F. Supp. 2d 1172 (N.D. Cal. 2005) ................................................................................................... 8

*Provencio v. Vazquez*, No. 07-CV-00069-AWI-BAK, 2009 WL 2365554 (E.D. Cal. July 29, 2009) ........................................................................................................... 7

*Rudolph v. UTStarcom*, No. 07-4578, 2008 WL 4002855 (N.D. Cal. Aug. 21, 2008) ................... 5

*Sch. Dist. No. 5 v. Lundgren,* 259 F.2d 101 (9th Cir. 1958) ........................................................ 11

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-2674 (PHX) (RCB), 2009 WL 890479 (D. Ariz. Mar. 31, 2009) ....................... *passim*

*Weiss v. Amkor Technology, Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) .................................. 6, 8

**RULES**

Fed. R. Evid. 201(b) ....................................................................................................................... 7

Fed. R. Civ. P. 8(a) ......................................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 11

Fed. R. Civ. P. 12(c) ............................................................................................................... 11, 12

Fed. R. Civ. P. 56 ......................................................................................................................... 11

## I. INTRODUCTION

In an Order issued after the Juniper Defendants filed the instant Motion, the Court made a finding that should be dispositive here. In its September 25, 2009 ruling on class certification, the Court found that, as of May 26, 2006, only "*some suspicion* had been cast on Juniper's options practices ...."[1] In making that finding, the Court specifically considered the disclosures made in May 2006, including the May 16 CFRA Report at issue here, the May 22 press release (disclosing Juniper's receipt of a subpoena from the Department of Justice), and the four derivative lawsuits filed as of May 26.[2] The Court's finding compels the conclusion that the May 2006 Disclosures are not corrective as a matter of law. As the Juniper Defendants demonstrated in their opening brief, the recent decisions in *Metzler*, *Maxim*, and *Apollo* hold that, like the May 2006 Disclosures here, disclosures which revealed only the "risk" or "potential" that a company's prior statements were false are not corrective disclosures.[3]

In their opposition, Plaintiffs contend that the Juniper Defendants misread *Metzler*, *Maxim*, and *Apollo*, but the decisions in those cases are clear, and the conclusion to be drawn from them ineluctable. As this Court held in *Maxim*, statements which provide notice that a company "*may* have illicitly backdated stock options" – like the virtually identical statements at issue in that case and this one – are not corrective disclosures. 2009 WL 2136939, at *6 (emphasis in original). Tellingly, *all* of the cases upon which Plaintiffs rely either pre-date *Metzler* or do not address the question here.

Recognizing that there is no reasoned basis upon which to distinguish *Metzler*, *Maxim*, and *Apollo*, Plaintiffs contend that the instant Motion is procedurally barred. Plaintiffs'

---

[1] Order Granting Class Certification (Dkt. No. 342 ) filed 9/25/09 ("9/25/09 Order") at 15:16-17 (emphasis added); *see also* Amended Order Granting Class Certification (Dkt. No. 381) filed 10/16/09 ("10/16/09 Order") (same).

[2] 9/25/09 Order at 14:9-23; 10/16/09 Order at 14:9-23 (same).

[3] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2009); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, No. C 08-00832 (JW), 2009 WL 2136939, at *6 (N.D. Cal. July 16, 2009); *see also Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-2674 (PHX) (RCB), 2009 WL 890479 (D. Ariz. Mar. 31, 2009).

arguments *assume*, however, that the Court has previously ruled on the issue presented here. But that assumption is incorrect. This Court has never considered, much less decided, whether the May 2006 Disclosures are corrective. While Plaintiffs also contend that Rule 12(c) is an inappropriate vehicle to adjudicate that question, courts routinely utilize a variety of procedural mechanisms to narrow issues for trial, including granting judgment on the pleadings under Rule 12(c) with respect to some (but not all) alleged corrective disclosures. In short, and as set forth more fully below, Plaintiffs' opposition is without merit and the Juniper Defendants respectfully ask that the instant Motion be granted.

**II.   UNDER *METZLER*, *MAXIM*, AND *APOLLO*, THE MAY 2006 DISCLOSURES ARE NOT CORRECTIVE DISCLOSURES FOR WHICH PLAINTIFFS CAN PLEAD LOSS CAUSATION**

   **A.   This Case is On All Fours With *Maxim* and *Apollo***

As the Juniper Defendants demonstrated in their opening brief, the Ninth Circuit held in *Metzler* that disclosures which merely reveal "a 'risk' or 'potential' for widespread fraudulent conduct" are not corrective disclosures. *Metzler*, 540 F.3d at 1064; *see* Mot. at 3-4. Relying on *Metzler*, this Court in *Maxim* and the District Court of Arizona in *Apollo* held that disclosures which merely reveal that a company is at "risk" of options backdating are not corrective disclosures. *Maxim*, 2009 WL 2136939, at *6; *Apollo*, 633 F. Supp. 2d at 820-21. As the Juniper Defendants also demonstrated, this case is indistinguishable from *Maxim* and *Apollo* both in terms of the alleged fraud and the disclosures at issue:[4]

- **Misrepresentations:** As in *Maxim* and *Apollo*, the alleged fraud in this case consists of misrepresentations regarding stock option granting practices and the failure to properly

---

[4] Plaintiffs' Opposition identifies five alleged disclosures in May 2006: the May 16 CFRA Report, May 18 JP Morgan Report, May 18 *Wall Street Journal* article, May 19 Thestreet.com article and May 19 *Los Angeles Times* article. Opp. at 5-7. Of these five, Plaintiffs do not appear to dispute that the third party research reports – *i.e.*, the May 16 CFRA Report and the May 18 JP Morgan Report – are the key disclosures to be analyzed on this Motion. According to Plaintiffs' own characterization of their allegations, the May 18 *Wall Street Journal* article and other financial media did nothing more than "publicize[]" the research reports' conclusion that Juniper was at risk for options backdating. Opp. at 5; *id.* at 6-7; *see* Consol. Am. Compl. ¶¶ 273-76.

record compensation expenses for those stock options. *See* Consol. Am. Compl. ¶¶ 10, 123-264, *Maxim*, 2009 WL 2136939, at *1-2, *Apollo*, 633 F. Supp. 2d at 818;

- **Risk of Options Backdating:** As in *Maxim* and *Apollo*, the disclosures at issue here, *i.e.*, the third party research reports, revealed the risk that the company had backdated options. *Compare* CFRA Report at 3 (identifying Juniper as having a "higher option backdating risk") *and* JP Morgan Report at 2 (identifying Juniper's "pattern of low exercise prices") *with* Merrill Lynch Report at 1 (analyzing "excess returns" as indicative of "backdate[d] options" and identifying Maxim as a "standout company" at the "top" of the list);[5] Citigroup Report at 3 (downgrading Maxim to Hold from Buy because of its "unfavorable options backdating exposure"); Lehman Brothers Report at 2, 4 (analyzing Apollo's "option granting history" and concluding that it "looks highly questionable," leaving the company "highly susceptible to future scrutiny [for options backdating]");[6]

- **No Definitive Conclusions:** As in *Maxim* and *Apollo*, the third party research reports at issue here disclaimed that their observations regarding the company's risk of options backdating were conclusive. *Compare* CFRA Report at 3 ("[W]e are not able to conclusively state whether backdating occurred.") *and* JP Morgan Report at 1 ("For quite possibly the first time ever, ***we are drawing no conclusions, making no inferences and offering no opinions in this report***.") (emphasis in original) *with* Merrill Lynch Report at 2 ("We want to emphasize that we are not taking any position in this report on whether companies have actually backdated options ...."); and Lehman Brothers Report at 2 ("We reiterate that it is

---

[5] Plaintiffs contend that the Merrill Lynch Report did not examine backdating. Opp. at 18 ("Unlike in this case, the report did not purport to identify backdating of reported grant dates."). No fair reading of the report could lead to such a conclusion. That report, entitled "Options Pricing – Hindsight is 20/20," clearly analyzed excess returns for the purpose of identifying companies at risk for options backdating. *See* Merrill Lynch Report at 2 ("We don't think there should be any systematic excess returns if ... companies haven't systematically taken advantage of their ability to backdate options."). In fact, the Merrill Lynch Report noted that it used a methodology similar to the one CFRA used to identify companies at risk for having backdated options. *Id.* at 3.

[6] The Merrill Lynch, Citigroup, and Lehman Bros. reports are attached as Exhibits B, C, and D to the accompanying Declaration of Jennifer Lee. The Court may take judicial notice of these

(continued...)

   impossible to tell definitively if a company has backdated options from the disclosure in its
   SEC finings [sic].");

- **Other Risks:** As in *Maxim* and *Apollo*, the third party research reports at issue here revealed the company's risk for a potential earnings restatement, management terminations, and government investigations resulting from options backdating. *Compare* CFRA Report at 2 (noting "Accounting restatement risk," "SEC investigation risk," and "Management credibility risk") *with* Citigroup Report at 27 (noting Maxim's option grants could "potentially result in a financial restatement" and SEC investigation); Lehman Brothers Report at 1 (noting that Apollo's option grants could result in "scrutiny by the SEC and other gov't bodies").

There is, thus, no meaningful difference between the research reports found not to be corrective disclosures in *Maxim* and *Apollo*, and the CFRA and JP Morgan Reports, upon which Plaintiffs rely.

Importantly, the Court's recent class certification order should be conclusive on this point. In its Order, the Court found that the disclosures made through May 26, 2006, including the CFRA Report, the press release announcing the DOJ subpoena, and the derivative suits, cast only "some suspicion" on Juniper's option granting practices. 9/25/09 Order at 15:16; 10/16/09 Order at 15:16. Disclosures revealing "some suspicion" of options backdating are no different in kind than disclosures revealing the "risk" or "potential" of options backdating. In fact, the three terms are synonymous. Thus, under *Maxim* and *Apollo*, the May 2006 Disclosures do not constitute corrective disclosures as a matter of law. *See, e.g.*, *Maxim,* 2009 WL 2136939, at *4 ("When identifying corrective statements that reveal the fraud, a plaintiff must identify disclosures revealing more than a "'risk' or 'potential' for widespread fraudulent conduct.") (citing *Metzler,* 540 F. 3d at 1063-64).

---

(...continued from previous page)

reports as set forth in the Juniper Defendants' Request for Judicial Notice, filed concurrently herewith.

**B.     Plaintiffs' Attempts to Distinguish *Metzler*, *Maxim*, and *Apollo* are Not Persuasive**

In their Opposition, Plaintiffs proffer three arguments in attempting to explain why *Metzler*, *Maxim*, and *Apollo* are not dispositive. None has merit.

First, Plaintiffs assert that the Juniper Defendants "distorted" *Metzler* in arguing that only statements conclusively establishing a defendant's guilt will constitute corrective disclosures. Opp. at 11. But the Juniper Defendants never made this argument. Rather, the Juniper Defendants argued that – consistent with *Metzler*, *Maxim,* and *Apollo* – a disclosure merely revealing a "'risk' or the 'potential' for widespread fraudulent conduct" is not a corrective disclosure. *See* Mot. at 4-8. Such a disclosure only "reveal[s] the *potential existence of future corrective information*" and is, therefore, not itself corrective. *Maxim*, 2009 WL 2136939, at *6 (emphasis added). In contrast, a corrective disclosure must reveal to the market the falsity of the prior representation. *Apollo*, 633 F. Supp. 2d at 820 (a corrective disclosure must reveal "'the truth of a misrepresentation'") (citation omitted); *Maxim*, 2009 WL 2136939, at *4 ("A corrective disclosure must reveal some aspect of the alleged fraud to the market.") (citation omitted); *cf. In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1025-26 (9th Cir. 2005) (loss causation adequately pled: plaintiffs alleged that defendants overstated revenues and that stock price declined after defendants revealed company's "true financial condition").

Recognizing that a corrective disclosure need only reveal "some aspect of the alleged fraud," the Juniper Defendants do not dispute that the July 19, 2006 press release (disclosing Juniper's audit committee's preliminary conclusion that there were errors in the Company's accounting for certain stock option grants), and the August 10, 2006 press release (disclosing Juniper's intent to restate its financial statements to record as yet unquantified, additional stock option compensation expenses) may constitute corrective disclosures. Those disclosures are not addressed herein.[7]

---

[7] Plaintiffs cite to *Rudolph v. UTStarcom*, No, 07-4578, 2008 WL 4002855 (N.D. Cal. Aug. 21, 2008) and similar cases in other jurisdictions for the proposition that the disclosure of an internal investigation regarding a company's option granting practices is a corrective disclosure.
(continued...)

Second, Plaintiffs make the related argument that a corrective disclosure need not "mirror" the language of the alleged fraud. *See* Opp. at 12. This argument, however, misses the point. There is no dispute that the May 2006 Disclosures address the issue of stock option granting practices and that, therefore, the subject of those disclosures is *related* to the subject of the alleged fraud. But the issue of whether the *subject matter* of the disclosure is sufficiently related to the alleged misrepresentation to be deemed corrective is entirely separate from the issue posed in this Motion, *i.e.*, whether the disclosure of a "risk" can be said to reveal the alleged fraud. The cases upon which Plaintiffs rely address only the former question and, thus, are inapposite.[8]

Third and finally, Plaintiffs assert that the alleged stock price declines associated with the May 2006 Disclosures meaningfully distinguish this case from *Metzler*, *Maxim*, and *Apollo*. That proposition is, however, incorrect. In *Metzler*, the Ninth Circuit held that alleged stock price declines, while relevant to establishing a plaintiff's economic loss, are *not* relevant to determining

---

(...continued from previous page)

Opp. at 15. To the extent *UTStarcom* holds that an alleged disclosure of a risk satisfies loss causation, it is no longer good law on that point in light of *Metzler*, which was decided after *UTStarcom*. Moreover, regardless of the law in other jurisdictions, other cases in this Circuit have held that the disclosure of an internal investigation or government investigation is *not* a "corrective disclosure." *See, e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. Oct. 16, 2007) (disclosures announcing SEC inquiry and formation of special committee to review company's stock option practices were not corrective disclosures); *Weiss v. Amkor Technology, Inc.*, 527 F. Supp. 2d 938, 944 (D. Ariz. 2007) (disclosure announcing formation of special committee to review company's stock option practices was not "corrective" disclosure).

[8] *See In re Bristol-Meyers Squibb Sec. Litig.*, No. 00-1990, 2005 WL 2007004, at *18-20 (D.N.J. Aug. 17, 2005) (rejecting defendants' argument that disclosure revealing drug's side effects was unrelated to, and therefore not corrective of, alleged misrepresentations regarding drug's safety); *In re Wash. Mut. Inc. Sec. Deriv. & ERISA Litig.*, No. 08-MD-1919, 2009 WL 1393679, at *18 (D. Wash. May 15, 2009) (rejecting defendant's argument that disclosure revealing adverse information regarding defendant's financial health was unrelated to, and not corrective of, alleged misrepresentations regarding defendant's loan loss allowance); *see also In re Shoretel Sec. Litig.*, No. C 08-0027, 2009 WL 2588881, at *3-4 (N.D. Cal. Aug. 19, 2009) (press release disclosing lower than expected financial results was sufficiently related to, and therefore corrective of, misrepresentation regarding ability to monitor financial metrics and compliance with revenue policies); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 978 n.18 (N.D. Cal. 2009) (press release disclosing problems with disclosure controls and revenue recognition directly contradicted prior representations regarding the quality of disclosure controls and revenue recognition).

whether a disclosure is corrective – *i.e.*, reveals the falsity of a prior representation. As the Court explained:

> So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market "understood" a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price.

540 F. 2d at 1064. Notably, the alleged 11% stock price decline (spanning two days) here is indistinguishable from those alleged in *Maxim* (including one stock price drop of 10.0%, *Maxim* Compl. ¶ 305), and *Metzler*, where the Court characterized a 10.0% drop as "modest," *Metzler*, 540 F.3d at 1064. Under *Metzler*, allegations of price decline cannot convert an otherwise non-actionable disclosure into a "corrective" disclosure.[9]

### C. The Other Cases Plaintiffs Cite Do Not Bear on Whether the May 2006 Disclosures are Corrective Disclosures

None of the cases Plaintiffs cite discuss, much less dispute, the central point of this Motion, namely, that disclosures which merely reveal "a 'risk' or 'potential' for widespread fraudulent conduct" are not corrective disclosures. The Ninth Circuit's decision in *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1993 (2009), addressed the narrow issue of temporal proximity, where the plaintiffs alleged that the stock price declined three months after the issuance of the purported disclosure. *Id.* at 1058. Unlike the present case, there was no dispute that the disclosure at issue was corrective. *Id.* at 1057-58.

---

[9] For this same reason, the "market commentary" Plaintiffs point to (*see* Opp. at 7, 14), which they contend attributes Juniper's alleged stock price declines to the May 2006 Disclosures, is irrelevant to whether the disclosures were corrective. Such "market commentary" is also not the proper subject of judicial notice. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007) ("analyst reports ... may only be considered when they are submitted to establish whether and when certain information was provided to the market *not the truth of the matters asserted in the reports*") (emphasis added and quotations omitted) (citing *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1116 (C.D. Cal. 2003)). Plaintiffs' expert's testimony is, similarly, inapposite, and inadmissible. Mr. Marek did not offer testimony as to whether any particular disclosure was corrective, nor could he proffer a legal opinion as to what constitutes a corrective disclosure, much less have his views on that point "judicially noticed." *See, e.g.*, *Provencio v. Vazquez*, No. 07-CV-00069-AWI-BAK, 2009 WL 2365554, at *10 n.4 (E.D. Cal. July 29, 2009) (expert testimony is "not judicially noticeable under Federal Rule of Evidence 201(b).").

JUNIPER DEFS' REPLY ISO MOTION
FOR JUDGMENT ON THE PLEADINGS
CASE NO. C06-04327-JW (PVT)

-7-

Similarly, the Ninth Circuit's decision in *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), solely determined whether, pursuant to Rule 8(a), the allegations provided "sufficient detail to give defendants ample notice of plaintiffs' loss causation theory, and to give ... some assurance that the theory has a basis in fact." *Id.* at 989-90. The issue of "fair notice" is, however, entirely separate from the issue of whether *each* alleged disclosure reveals the falsity of a prior representation, rather than merely the "risk" of fraudulent conduct. Indeed, a number of the cases Plaintiffs cite stand for nothing more than the unremarkable proposition that a plaintiff may provide fair notice of its loss causation theory by alleging a series of partial disclosures. *See* Opp. at 12-13. But that proposition does not bear on the *further* analysis of whether *each* of those alleged disclosures is itself corrective. *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 945-48 (D. Ariz. 2007) (dismissing one of three corrective disclosures for failure to reveal alleged fraud); *In re Teco Energy, Inc. Sec. Litig.*, No. 04-CV-1948-T-27EAJ, 2006 WL 2884960, at *5 (M.D. Fla. Oct. 10, 2006) (loss causation "frequently employ[s] a step-by-step approach, examining each alleged corrective disclosure for reference to previous misrepresentations and omissions").[10]

Finally, Plaintiffs' reliance on *In re LDK Solar Securities Litigation*, 548 F. Supp. 2d 1230 (N.D. Cal. 2008), is also misplaced. Opp. at 16. In that case, the plaintiffs alleged that LDK artificially inflated its stock price by misrepresenting the company's inventory. *LDK Solar*, 548 F. Supp. 2d at 1238. Piper Jaffray published a research note discussing allegations by the company's controller that LDK had poor internal controls and inaccurate inventory accounting. *Id.* at 1239. This note was followed by a *Barrons* article, which, based on discussions with the controller and other sources, stated that the company had serious problems with the quality of its inventory and may have overstated its inventory by $92 million. *Id.* The

---

[10] For this reason, many of the cases upon which Plaintiffs rely are inapposite. *UTStarcom*, 617 F. Supp. 2d at 977 (loss causation may be alleged through a series of partial disclosures); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 411 F. Supp. 2d 1172, 1178 (N.D. Cal. 2005) (same); *In re Wash. Mut. Inc. Sec. Deriv. & ERISA Litig.*, 2009 WL 1393679, at *18 (same); *see also In re Connectics Sec. Litig.*, No. C 07-2940 (SI), 2008 WL 3842938, at *11 (N.D. Cal. Aug. 14, 2008) (accepting as true plaintiffs' allegation that disclosure regarding
(continued...)

1   court held that the plaintiffs' allegations relating to these disclosures were sufficient to plead loss

2   causation. *Id.* at 1251. The decision was issued before the Ninth Circuit's decision in *Metzler*,

3   however, and does not address, much less analyze, whether the disclosures were corrective. To

4   the contrary, the only issue the *LDK* court addressed was the defendants' argument that the

5   plaintiffs had not adequately alleged loss causation because the alleged loss was a result of

6   changed market conditions and macroeconomic and industry factors. *Id.*

7   In short, Plaintiffs offer no reasoned basis for distinguishing *Metzler*, *Maxim*, and *Apollo*,

8   and there is none. The holdings in those cases are equally applicable here, and the result should be

9   the same: The May 2006 Disclosures should be dismissed.

10  **III.    THIS MOTION IS NOT PROCEDURALLY DEFECTIVE**

11  The balance of Plaintiffs' arguments concern only the procedural efficacy of this Motion,

12  and all *assume* the Court has previously ruled on the issue presented here. That assumption is

13  incorrect. This Court has never considered, much less decided, whether the May 2006

14  Disclosures are corrective. The Juniper Defendants' Motion to Dismiss raised – and the Court

15  addressed – a *different* legal issue – *i.e.*, whether Plaintiffs' allegations presented "fair notice" of

16  Plaintiffs' loss causation theory. *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037,

17  1049-50 (N.D. Cal. 2008) (with respect to loss causation, finding "Plaintiffs' allegations give

18  Defendants fair notice of the grounds upon which their § 10(b) claim rests").

19  Nor was the issue whether the May 2006 Disclosures were "corrective" ever argued,

20  much less decided, on the motion for class certification. In fact, the Juniper Defendants made

21  clear in their briefs and at oral argument that they were taking Plaintiffs' allegations regarding

22  corrective disclosures as true *only* for purposes of opposing class certification, and specifically

23  reserved their challenge to the legal sufficiency of those allegations for this Motion. *See* Juniper

24  Defendants' Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 267) at 1, 2

25  ("Class Cert. Opp."); Juniper Defendants' Sur-Reply in Opposition to Motion for Class

26

27       (...continued from previous page)

28  defendant's need to restate financial statements "must" have leaked in time to affect the stock price that same day, without considering whether disclosure was "corrective").

JUNIPER DEFS' REPLY ISO MOTION                -9-
FOR JUDGMENT ON THE PLEADINGS
CASE NO. C06-04327-JW (PVT)

Certification (Dkt. No. 316) at 2 n.1.[11]  Likewise, in ruling on class certification, the Court was careful not to prejudge any of the corrective disclosures as a matter of law.  9/25/09 Order at 12:17-19 (without considering sufficiency of May 2006 CFRA Report, stating that "*even if the report could be considered a partial corrective disclosure*, it is not enough for the Court to find that the market had sufficient corrective information to render the fraud-on-the-market presumption unreasonable") (emphasis added).

Nonetheless, Plaintiffs argue that, in opposing class certification, the Juniper Defendants as much as conceded that the May 2006 Disclosures were corrective.  Nothing could be further from the truth.  Plaintiffs contend the Juniper Defendants "acknowledged that serious questions had been raised regarding the accuracy of Juniper's prior statements about its stock option granting practices" following the May 2006 Disclosures (Opp. at 10), but Plaintiffs' quotation is selective, and misleading.  The full sentence, which concerns Lead Plaintiffs' continued purchases of Juniper stock even after derivative suits had been filed on May 26, 2006, reads:

> In addition, all nine Plaintiffs (through their investment advisors) continued to make purchase of Juniper stock even after May 26 – *i.e.*, well after serious questions had been raised regarding the accuracy of Juniper's prior statements about its stock option granting practices and its stock option compensation expenses.  *See* Compl. at pp. 109-144 ....

Class Cert. Opp. at 26:6-9.  This sentence cites to *Plaintiffs*' Consolidated Amended Complaint, and does nothing more than adopt Plaintiffs' own characterization of their allegations regarding corrective disclosures as true for purposes of establishing that Lead Plaintiffs were not typical.  The Juniper Defendants did not concede the accuracy of Plaintiffs' allegations, did not concede that any specific disclosure was in fact a corrective disclosure, and the Court did not rule on this point.

---

[11] *See also* September 14, 2009 Hr'g Tr. at 11:14-22 ("[F]or purposes of opposing the motion for class certification, the Juniper Defendants accepted ... [Plaintiffs' allegations regarding the May 2006 corrective disclosures] as true in order to establish lack of price impact by showing that the alleged misrepresentations did not result [in] inflation consistent with the Plaintiffs' allegations of corrective disclosures and consistent with their allegations of market efficiency."); *see id.* at 10:11-11:9, 11:23-12:12 (explaining that the Juniper Defendants' Motion for Judgment on Pleadings will dispose of the alleged May 2006 disclosures as a matter of law).

In any case, this Court has inherent authority to reconsider, set aside, modify, or amend interlocutory orders at any time prior to entry of a final judgment. *Sch. Dist. No. 5 v. Lundgren*, 259 F.2d 101, 104-05 (9th Cir. 1958); *see Intamin, Ltd. v. Magnetar Tech.Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009) ("'[t]he doctrine of the law of the case is applicable only to final judgments. The district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment.'") (citation omitted). In fact, the rules regarding reconsideration are designed not "to prohibit courts from reconsidering arguments previously made before the court, but rather to justify a court's refusal to hear such arguments *when they have already been given full consideration*." *In re Quarterdeck Office Sys., Inc., Sec. Litig.*, 854 F. Supp. 1466, 1470 (C.D. Cal. 1994) (emphasis added). This Court has never analyzed the May 2006 Disclosures in light of *Metzler*, *Maxim*, and *Apollo*.

Finally, Plaintiffs contend that a Rule 12(c) motion may not be used to resolve less than a claim. Opp. at 8. They are wrong.[12] Courts regularly use a variety of procedural mechanisms – including motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment – to narrow cases and issues for trial. *See Holloway v. Best Buy Co.*, No. C 05-5056 (PJH), 2009 WL 1533668, at *4 (N.D. Cal. May 28, 2009) ("[The] Court finds no reason not to consider Best Buy's motion for judgment on the pleadings as to less than entire causes of action.") (citing cases). Indeed, with particular relevance here, courts have used both Rule 12(b)(6) and Rule 12(c) to dismiss specific alleged corrective disclosures, even where doing so would not dismiss the entire count or claim. *See, e.g.*, *Maxim*, 2009 WL 2136939, at *8 (dismissing two of three claimed corrective disclosures for failure to plead loss causation);

---

[12] *In re Amica, Inc.*, 130 B.R. 792, 796 (Bankr. N.D. Ill. 1991), the lone case Plaintiffs cite for this point (*see* Opp. at 8), is contrary to numerous other cases, including ones within its own Circuit. *See, e.g.*, *Chi-Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352, 358 (E.D. Wis. 1976) ("[J]udgment on the pleadings with respect to a part of a claim is implied by the parallel provision for partial summary judgment under Rule 56."), *amended on other grounds*, 422 F. Supp. 46 (E. D. Wis. 1976); *see also In re Quarterdeck*, 854 F. Supp. at 1471-76 (granting motion for judgment on the pleadings in part, dismissing certain misstatements and omissions alleged in the complaint that were deficient and inactionable); *American Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, No. CV-08-2051-PHX-FJM, 2009 WL 2714017, at *2 (D. Ariz. Aug. 27, 2009) (dismissing specific statements under Rule 12(c) that did not give rise to liability for false advertising).

1   *Apollo*, 633 F. Supp. 2d 763, 824 (same); *In re Verisign Corp. Sec. Litig.*, No. C 02-02270 JW,
2   2005 WL 2893783, at *5-7 (N.D. Cal. Nov. 2, 2005) (Ware, J.) (granting motion for judgment on
3   the pleadings and dismissing three of four alleged corrective disclosures) (not for citation); *see*
4   *also In re St. Paul Travelers Sec. Litig. II*, No. 04-4697 (JRT/FLN), 2007 WL 1589524, at *4 (D.
5   Minn. June 1, 2007) (granting motion for partial judgment on the pleadings with respect to one
6   of plaintiffs' two theories of fraud, for which plaintiffs failed to sufficiently allege loss
7   causation).  Dismissal of the May 2006 Disclosures pursuant to Rule 12(c) is, thus, appropriate.

## IV.    CONCLUSION

For the reasons stated herein and in the Juniper Defendants' opening brief, the Juniper Defendants respectfully ask that the instant Motion be granted.

Dated:  October 19, 2009                          WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation


                                                  By:  ____/s/ Nina F. Locker_____
                                                        Nina F. Locker

                                                  Attorneys for Defendants Juniper Networks,
                                                  Inc., Scott Kriens, Pradeep Sindhu, Marcel
                                                  Gani, Robert M. Calderoni, Kenneth Goldman,
                                                  William R. Hearst III, Stratton Sclavos, Vinod
                                                  Khosla, Kenneth Levy and William R. Stensrud

1  I, Jennifer Lee, am the ECF user whose identification and password are being used to file
2  THE JUNIPER DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON
3  THE PLEADINGS.  In compliance with General Order 45.X.B, I hereby attest that Nina F.
4  Locker has concurred in this filing.

6  Dated:  October 19, 2009               WILSON SONSINI GOODRICH & ROSATI
                                          Professional Corporation

9                                         By:    /s/ Jennifer Lee
                                                    Jennifer Lee