| | |
|---|---|
| 1 | PILLSBURY WINTHROP SHAW PITTMAN LLP |
|   | KIRKE M. HASSON (CA Bar No. 61446) |
| 2 | kirke.hasson@pillsburylaw.com |
|   | ROBERT J. NOLAN (CA Bar No. 235738) |
| 3 | robert.nolan@pillsburylaw.com |
|   | ALEX SANTANA (CA Bar No. 252934) |
| 4 | alex.santana@pillsburylaw.com |
|   | 50 Fremont Street |
| 5 | San Francisco, CA  94105 |
|   | Telephone: (415) 983-1000 |
| 6 | Facsimile: (415) 983-1200 |
| 7 | Attorneys for the Audit Committee of |
|   | the Board of Directors of Juniper Networks, Inc. |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION | CASE NO.: C06-04327-JW (PVT) |
|---|---|
| This Document Relates To:<br><br>ALL ACTIONS. | **SUPPLEMENTAL BRIEF OF AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF JUNIPER NETWORKS, INC. IN RESPONSE TO THE COURT'S NOVEMBER 4, 2009, FURTHER INTERIM ORDER** |

1     The Audit Committee of the Board of Directors of Juniper Networks, Inc. ("Audit
2 Committee") respectfully submits this supplemental brief in response to the questions in the
3 Court's November 4, 2009 Further Interim Order regarding Parties' Mid-Deposition
4 Dispute Regarding Assertion of Attorney-Client Privilege.  We repeat below the Court's
5 questions.

6 **1.    "Whether or not the substance of the Audit Committee's interview of Fisher was disclosed to any of Juniper's outside auditors."**
7

8     On December 4, 2006, counsel for the Audit Committee attended a meeting with
9 representatives from Juniper Networks, Inc.'s ("Juniper's") outside auditors, Ernst &
10 Young ("E&Y"), wherein certain information obtained during the October 25, 2006
11 interview of Fisher, as selected by counsel for the Audit Committee, was shared with E&Y.
12     The disclosure to E&Y of information selected by counsel did not constitute a
13 waiver.  *See Securities and Exchange Commission v. Schroeder*, No. C07-03798, 2009 WL
14 1635202 at *3 (N.D. Cal. 2009) (Ware, J.); *Securities and Exchange Commission v.*
15 *Roberts*, 254 F.R.D. 371, 381-82 (N.D. Cal. 2008) (Patel, J.).
16     In *Securities and Exchange Commission v. Schroeder*, 2009 WL 1635202 (N.D.Cal.
17 June 10, 2009), Judge Ware overruled the objections to Magistrate Judge Lloyd, found at
18 2009 WL 1125579 (N.D. Cal. April 27, 2009).  There, plaintiff sought evidence regarding
19 the substance of interviews by counsel for a special investigating committee, arguing that
20 disclosures made to the company's outside auditors constituted a waiver of work product
21 protection.  As Judge Lloyd explained:
22
23     [U]nder the circumstances presented here this court finds that the better view, recently followed by another court in this district in a different stock option backdating case, is that espoused by *Merrill Lynch & Co. v.*
24     *Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004).  That court concluded that disclosures to outside auditors do not have the "tangible
25     adversarial relationship" requisite for waiver.  *Id.* at 447.  The court reasoned:
26
27         [A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an
28         adversarial relationship contemplated by the work product doctrine.

|   |   |
|---|---|
| 1 | Nor should it be. A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud.  Indeed, this is precisely the type of limited alliance that courts should encourage. |
| 2 | |
| 3 | |

*Id.* at 2009 WL 1125579 *9.  Similarly, in *Securities and Exchange Commission v. Roberts*, 254 F.R.D. 371, 382 (N.D. Cal. 2008), Judge Patel held that disclosure of information by counsel for an investigating committee to the company's auditors did not constitute a waiver:

> [T]his court finds that its holding furthers the strong public policy of encouraging critical self-policing by corporations.  Indeed, sanctioning a broad waiver here would have a chilling effect on the corporation's efforts to root out and prevent corporate fraud and disclose the results as necessary to its auditors.

*Accord*, *In re JDS Uniphase Corp. Securities Litigation*, 2006 U.S. Dist. LEXIS 76169 at *11 (N.D. Cal. Oct. 5, 2006) (Laporte, J.) (disclosure to outside auditors does not waive work product because it does not increase the danger that true adversaries will obtain the information); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004) (holding that no waiver occurs where information is shared with outside auditors).

**2.  "Whether Juniper has any joint defense agreement with Fisher, and if so, whether Fisher holds a privilege to preclude Juniper from disclosing to the government or any third party the substance of the communications at the Audit Committee interview (*see, e.g., John Morrell & Co.*, 913 F.2d 544, 555-56 (8th Cir. 1990) ('It is fundamental that the "joint defense privilege cannot be waived without the consent of all parties to the defense."') (citation omitted))."**

The Audit Committee and Ms. Fisher enjoyed a "common interest," but were not parties to a "joint defense agreement."

A joint defense agreement, of the type discussed in *Morrell*, is but one type of relationship protected by the broader common interest doctrine.  In *Morrell*, the corporate employer had shared seventeen privileged documents under a joint defense agreement with a class of employees, where both that class and the employer were conducting litigation adverse to the union.  *Id.* at 555.  Through an expert for the class, the union came into possession of five of the documents, but the court held this was not a waiver of privilege by the employer.  *Id.* at 555-56.  The holding of the court was that the class of employees

1 could not waive the employer's privilege, and the court's quotation should be understood in
2 that context. *Id*. at 556. No issue was presented whether the employee class could have
3 prevented the employer from waiving privilege as to its seventeen documents, and indeed,
4 the employer had waived privilege as to a different four of the seventeen documents. *Id*.
5   Whatever may have been the terms of the joint defense agreement in *Morrell*, the
6 common interest doctrine is broader than simply "joint defense agreements," and the
7 privilege is protected where there is a common interest, even if the confidentiality
8 obligations of the recipient party are implicit. *See Hewlett-Packard Co. v. Bausch & Lomb,*
9 *Inc.*, 115 F.R.D. 308, 311 (N.D. Cal. 1987) (discussing common interest doctrine and
10 noting, "In cases such as this, where the disclosure was in fact voluntary but not intended to
11 create a waiver, the court agrees with Professor Marcus that one should look at the 'explicit
12 or implicit undertaking by the recipient of the information to hold it in confidence.'");
13 *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300,
14 310 (D.N.J. 2008) (noting that common interest doctrine applies to privileged information
15 exchanged during a merger); *Aronson v. McKesson HBOC, Inc.*, No. 99-CV-20743, 2005
16 WL 934331, at *7 n.10 (N.D. Cal. Mar. 31, 2005) ("[t]he common-interest doctrine
17 prevents clients from waiving the attorney-client privilege when attorney-client
18 communications are shared with a third person who has a common legal interest with
19 respect to these communications."); *see also* Richard L. Marcus, *The Perils of Privilege:*
20 *Waiver and the Litigator,* 84 Mich. L. Rev. 1605, 1637-38 (Aug. 1986) (discussing the
21 costly impact of broad waiver rules in litigation and noting "courts are fairly free in finding
22 common interests sufficient to avoid a waiver" including where parties and nonparties "who
23 have a common foe" share information). In many instances, as here, one party <u>holds</u> the
24 privilege and the other party is required to keep the information confidential. *See*, *e.g.*,
25 *Hewlett-Packard Co.*, 115 F.R.D. at 308-09.
26
27
28

1     Here, the holder of the attorney-client and work product privileges was the Audit

2 Committee, not Fisher.[1]  She was informed at the time of the October 25, 2006 interview

3 that the attorney-client privilege and work-product protection covering the interview

4 belonged to the Audit Committee and that the Audit Committee could waive those

5 protections without notice to her.  Declaration of Kirke M. Hasson in Supp. of the Audit

6 Committee of the Board of Directors of Juniper Networks, Inc.'s Motion for Protective

7 Order Regarding Deposition of Brienne Fisher ("Hasson Decl.") ¶ 7 (Dkt. 397).  In turn,

8 Fisher agreed to keep the information discussed during the interview confidential and not to

9 disclose the substance of the interview to any third party.  *Id.*  Neither Fisher nor her

10 counsel objected to the admonition provided by counsel for the Audit Committee.

11 **3.    "Whether or not work product protection applies to statements Fisher made to the Audit Committee during its interview of her, including whether or not the interview was conducted 'in anticipation of litigation.'"**

12

13    Interviews by the Audit Committee expressly contemplated litigation; in fact, by the

14 time of the Fisher interview, this litigation had already been filed.  This action was filed in

15 July 2006.  *See* Class Action Complaint (Dkt. 1).  The Audit Committee interviewed Fisher

16 on October 25, 2006, three months after litigation against the company had commenced.  At

---

[1] Under *Upjohn*, there can be no question the privilege belongs to the Audit Committee. *See Upjohn Co. v. United States*, 449 U.S. 383, 385 (1981).  When a lawyer explicitly is acting only as counsel for the corporation in a privileged conversation with an employee of the company, the privilege is that of the company.  Moreover, as discussed at the November 4, 2009 hearing, the Ninth Circuit has extended the attorney-client privilege to interviews of former employees.  *See In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981).  Plaintiffs incorrectly asserted at the November 4 hearing that *In re Coordinated Pretrial Proceedings* did not involve persons interviewed after the termination of their employment.  The pre-deposition interviews in that case were of both former and current employees (s*ee In re Coordinated Pretrial Proceedings*, 502 F. Supp. 1092, 1095, 1097-98 (C.D. Cal 1980)), and accordingly the Ninth Circuit observed that "[f]ormer employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties."  658 F.2d at 1361 n.7.  Other Circuits are in accord.  *See, e.g., In re Barbara H. Allen*, 106 F.3d 582, 606 (4th Cir. 1996) (noting that the interviews at issue were of former employees and stating, "we hold that the analysis applied by the Supreme Court in *Upjohn* to determine which employees fall within the scope of the privilege applies equally to former employees.").

1   least seven other federal cases and two state cases were also filed before Fisher's interview

2   occurred.[2]

3       The statements made by Fisher during her interview constitute work product. *See*

4   *Gay v. P.K. Lindsay Co.*, 666 F.2d 710 (1st Cir. 1981) (holding that statement made by

5   defendant company's president to counsel constituted work product); *BPI Energy, Inc. v.*

6   *IEC (Montgomery), LLC*, No. 07-186-DRH, 2008 WL 4225843 (S.D. Ill. Sept. 12, 2008)

7   (holding that employee statement to counsel constituted work product); *Garnier v. Illinois*

8   *Tool Works, Inc.*, No. 04-CV-1825 (NGG) (KAM), 2006 WL 1211201, at *2 (E.D.N.Y.

9   May 4, 2006) (same); *Spruill v. Winner Ford of Dover, Ltd.*, 175 F.R.D. 194, 202 (D. Del.

10  1997) (same).

11      For example, in *BPI Energy, Inc.*, 2008 WL 4225843, at *1, plaintiff brought a

12  motion to compel the transcript of an employee interview which was taken in "deposition

13  form" because the employee was represented by personal counsel when the deposition-style

14  statement was taken. The defendant company argued that the employee's statement was

15  protected work product because it was taken to investigate potential disputes with the

16  plaintiff in anticipation of the litigation. *Id*. at *2. In denying the plaintiff access to the

17  employee's statement, the court held that neither the presence of the employee's counsel

18  nor the presence of a court reporter could destroy the work product protection covering the

19  interview. *Id*. at *3. The court reasoned that it would, "not serve public policy to deprive a

20  deponent who could be making statements with criminal implications to be deprived of

21  counsel." *Id*. The court also held that the employee was not an "adversary" that could

---

[2] *See In re Juniper Networks Derivative Actions*, No. C-06-03396 JW (N.D. Cal.) (filed 5/24/06); *Shemtov v. Kriens, et al.*, No. C-06-03406 JW (N.D. Cal.) (filed 5/26/06); *Rizzo v. Sindhu et al.*, No. C-06-03466 JW (N.D. Cal.) (filed 5/26/06); *Kaya v. Gani et al.*, No. C06-03452 JW (N.D. Cal.) (filed 5/26/06); *Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Kriens et al.*, No. C-06-03708 JW (N.D. Cal.) (filed 6/9/06); *Buckley v. Kriens, et al.*, No. C-06-04984 JW (N.D. Cal.) (filed 8/17/06); *Indiana State District Council of Laborers and HOD Carriers Pension Fund v. Kriens et al.*, No. C-06-04717 JW (N.D. Cal.) (filed 8/30/06); *In Re Juniper Networks, Inc. Derivative Litigation*, No. 1-06-CV-064294 (Santa Clara Superior) (filed 5/24/06); *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Kriens*, No. 1-06-CV-064853 (Santa Clara Superior) (filed 6/2/06).

1  destroy work product because the statement was not taken in anticipation of litigation with

2  the employee, but rather, in anticipation of litigation with the plaintiff.  *Id*.  Finally, the

3  court stated that the plaintiff had no substantial need for the employee's statement since the

4  plaintiff could depose the employee.  *Id*.  As in *B.P.I. Energy*, the statements made by

5  Fisher during her interview are protected by the work product privilege.

6  **4.    "Whether or not Juniper's failure to object on grounds of work product
         protection to deposition questions about the Audit Committee's interview of
7        Fisher waived any such protection that otherwise would have applied."**

8  When Ms. Fisher was asked about the substance of the communications in the

9  interview, counsel for Juniper promptly asserted privilege and called upon the witness not

10 to answer.  Fisher Rough Tr., Oct. 15, 2009, at 57-58, Ex. A to Decl. of Joni Ostler in Supp.

11 of Suppl. Brief of Audit Committee of the Board of Directors of Juniper Networks, Inc. in

12 Response to the Court's November 4, 2009 Further Interim Order ("Ostler Decl.").  This

13 was exactly the objection procedure specified by this Court's orders specifying how counsel

14 were to make objections in this case.  Ostler Decl. ¶¶ 6-7, Ex. B.  This Court had earlier

15 ruled that counsel was not entitled to state anything other than "objection, privileged, I

16 instruct the witness not to answer," or, if only part of the question sought privileged

17 information, "objection to the extent the question calls for privileged information."  *See*

18 October 5, 2009 Order Re Allocation of Time Among the Parties for Deposition

19 Questioning (Dkt. 370); October 9, 2009 Amended Order Re Allocation of Time Among

20 the Parties for Deposition Questioning (Dkt. 371).  Obeying those orders, counsel objected

21 at the deposition on grounds of privilege.[3]

22

---

23 [3] Although work product is sometimes referenced as being a "protection" it is also sometimes referenced as a "privilege."  For example, Article V of Federal Rule of
24 Evidence Code, which treats both the attorney-client and work product privileges, is titled simply "Privileges."  This is consistent with cases – from the Supreme Court, the Ninth
25 Circuit and this Court – that regularly refer to work product as a privilege.  *See, e.g., Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001)
26 (referring to the "work product privilege"); *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (same); *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 23 (1983) (same); *In re
27 Grand Jury Subpoena (Torf)*, 357 F.3d 900, 909 (9th Cir. 2004) (same); *United States v. Henke*, 222 F.3d 633, 642 (9th Cir. 2000) (same); *Padgett v. City of Monte Sereno*, No.
28                                                                                        (continued…)

Counsel intended that objection to cover both attorney-client communications and work product. Ostler Decl. ¶ 6. And this was further specified during the Court hearing on the very day of the deposition, October 15, where counsel for the Audit Committee expressly stated to the Court that it was objecting on the basis of the attorney-client *and* work product privileges. *See* Ostler Decl. ¶ 8, Ex. C (Transcript of October 15, 2009 Telephonic Hearing (Dkt. 417)). Plaintiffs never argued at that hearing or otherwise that the objection was not preserved.

Finally, even if counsel had not explained the privilege claim at the time of the deposition, so long as the protected information was not actually disclosed – and it was not – the failure to object at that time would not waive the objection. Objections to questions at deposition are waived only if the ground for the objection "might have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(B). This is a substantive objection not subject to being cured, e.g., by rephrasing of the question.

**5.    "Whether Lead Plaintiff has a 'substantial need' for information regarding what Fisher told the Audit Committee."**

Plaintiffs have failed to articulate any "substantial need" to know the substance of Fisher's interview. Where, as here, the party has the opportunity to depose the witness, the party does not have a substantial need for work product. *See Carrasco v. Campagna*, No. C-03-4727 SBA (EMC), 2007 WL 81909, at *3 (N.D. Cal. Jan. 9, 2007) (holding that there was no substantial need to discover the substance of interviews where the party deposed or had the opportunity to depose the witnesses, because both the questions asked and answers provided constituted work product); *O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. A party also does not demonstrate

---

(…continued)
C-04-03946 JW, 2007 WL 4554322, at *1 (N.D. Cal. Dec. 20, 2007) (Ware, J.) (same); *Beinin v. Center for Study of Popular Culture*, No. C06-02298 JW, 2007 WL 1795693, at *2 (N.D. Cal. June 20, 2007) (Ware, J.) (same); *see also* 22A Corpus Juris Secundum, Criminal Law § 724 (2009) (titled, "Work-product privilege").

substantial need when it merely seeks corroborative evidence."); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 510 (S.D. Cal. 2003) ("Convio has not met its burden of showing substantial need. Convio can depose the witnesses…. The mere possibility that these statements may have some impeachment value does not create a substantial need for their production."); *see also* Mot. of Audit Committee of Juniper Networks, Inc. for Protective Order Regarding the Deposition of Brienne Fisher (Dkt. 396), at pp. 13-14 (citing cases).

Because plaintiffs have made no effort to articulate a substantial need to determine the questions asked and answers given during Fisher's interview, they are not entitled to depose Fisher about the substance of the October 25, 2006 interview. Indeed, plaintiffs have already had the opportunity to depose Fisher, and she provided detailed answers to plaintiffs' questions. *See* Ostler Decl., Ex. A. Plaintiffs therefore cannot claim they have a substantial need here to travel on the work product of the Audit Committee and discover the questions asked and responses provided by Fisher during the October 25, 2006 interview.

Moreover, in addition to "substantial need," plaintiffs would also need to show an inability, without undue hardship, to obtain the information from another source. *See* Fed. R. Civ. Proc. 26(b)(3); *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 24-25 (1983). Plaintiffs face no undue hardship in obtaining Fisher's knowledge of Juniper's stock options granting practices because she has already agreed to two days of deposition, during which plaintiffs inquired and can further inquire as to relevant information. *See B.C.F.*, 168 F.R.D. at 166.

Dated: November 9, 2009.

PILLSBURY WINTHROP SHAW PITTMAN LLP
KIRKE M. HASSON
ROBERT J. NOLAN
ALEX SANTANA
50 Fremont Stree
San Francisco, CA 94105

By  */s/ Kirke M. Hasson*
Kirke M. Hasson
Attorneys for the Audit Committee of the Board of Directors of Juniper Networks, Inc.