BARBARA HART (*pro hac vice*)
DAVID C. HARRISON (*pro hac vice*)
TODD S. GARBER (*pro hac vice*)
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
Telephone: 914-997-0500
Facsimile: 914-997-0035

*Lead Counsel for the New York City Pension Funds and the Putative Class*

WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-778-0160

*Local Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | No. C06-04327-JW (PVT) |
| | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG LLP; MEMORANDUM OF POINTS AND AUTHORITIES** |
| This Document Relates To: | |
| All Actions | No. C08-0246-JW (PVT) |
| | DATE: December 22, 2009<br>TIME: 10:00 am<br>BEFORE: Hon. Patricia V. Trumbull |

**TO: ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on Tuesday, December 22, 2009, at10:00 a.m. or as soon thereafter as the matter may be heard, Lead Plaintiff New York City Pension Funds will move before Hon. Patricia Trumbull, United States Magistrate Judge for the Northern District of California, United States Courthouse, 280 South First Street, San Jose, California 95113, for sanctions against defendant Ernst & Young LLP. This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of David Harrison, any arguments presented, and the pleadings heretofore filed herein.

## TABLE OF CONTENTS

**Page**

INTRODUCTION……………………………………………………………………..…….1

FACTS…………………………………………………………………………………….2

ARGUMENT……………………………………………………………………………...4

I. This Court has Broad Authority to Impose Severe Sanctions for E&Y's Discovery Misconduct and Abuse Of the Judicial Process………………………………………………….……4

II. Factors Considered By Courts Imposing Issue Preclusion Sanctions……………………………………………………………..6

III. Prejudicial Production of More Than 650,000 Pages of Documents At the Eleventh Hour Warrants Issue Preclusion Against E&Y………………………………………………..6

CONCLUSION…………………………………………………………………………..9

Based on the serious discovery abuses in this action by Defendant Ernst & Young, LLP ("E&Y), Lead Plaintiff respectfully requests that this Court enter an order (1) precluding E&Y from asserting the affirmative defenses asserted in E&Y's Answer, of: (a) good faith (Fourth Affirmative Defense); (b) due diligence ( Fifth Affirmative Defense); and (c) reasonable investigation ( Sixth, Eighth, Ninth, and Tenth Affirmative Defenses); (2) precluding E&Y from asserting the attorney client privilege or attorney work product protection in discovery in this case; (3) relieving Lead Plaintiff from the discovery cut-off, to the extent necessary to allow Lead Plaintiff sufficient time to review these newly produced documents and question E&Y witnesses; and (4) permitting Lead Plaintiff to recall witnesses, as needed to address fully the matters referenced in E&Y's willfully delayed production.

## INTRODUCTION

Defendant E&Y's conscious flouting of the discovery rules warrants sanctions. On November 3, 2009, less than two weeks before the first E&Y witness was scheduled to be deposed, less than 27 days before the discovery cut-off, and two months after E&Y represented that its production was all but complete, and after Lead Plaintiff has taken the deposition of many Juniper employees, E&Y suddenly produced more than 650,000 additional pages of documents with no excuse for its delay. E&Y's last-minute production comes nearly one year after discovery was first served on E&Y in this case, and represents a substantial portion of E&Y's entire production. Harrison Decl. ¶ 2.[1] The very late production appears to be an attempt by E&Y to delay the depositions of its personnel, and to prejudice Lead Plaintiff's prosecution of this action against all defendants on behalf of the class. E&Y's attempt to blame its misconduct on the breadth of Lead Plaintiff's discovery requests and the fact that both E&Y and Juniper would need to review documents for privilege is not well taken. If E&Y believed the scope of Lead Plaintiff's discovery request to be overly broad, the appropriate conduct would have been to seek redress from the Court, not to engage in the self help of discovery delay. Furthermore,

[1] References to "Harrison Decl. Ex. __." refer to the Declaration of David Harrison in Support of Lead Plaintiff's Motion for Sanctions Against Defendants Ernst & Young LLP filed herewith.

the fact that both E&Y and Juniper were required to review the newly produced documents does not explain the nearly one year delay in production, the massive size of the late production, or E&Y's failure to advise Lead Plaintiff of the insufficiencies in its document production prior to November 3, 2009.

At this late stage, such a massive production is patently prejudicial to Lead Plaintiff and the class. Lead Plaintiff must now begin the review of this massive production while simultaneously conducting deposition of Juniper Defendant witnesses, while also attempting to now reschedule E&Y witnesses, all against a discovery cut-off less than one month away. In addition, Lead Plaintiff has been denied the benefit of these documents for depositions it has already taken. Accordingly, Lead Plaintiff respectfully requests that this Court enter an order (1) precluding E&Y from asserting the affirmative defenses asserted in E&Y's Answer, of: (a) good faith (Fourth Affirmative Defense); (b) due diligence ( Fifth Affirmative Defense); and (c) reasonable investigation ( Sixth, Eighth, Ninth, and Tenth Affirmative Defenses); (2) precluding E&Y from asserting the attorney client privilege or attorney work product protection in discovery in this case; (3) relieving Lead Plaintiff from the discovery cut-off, to the extent necessary to allow Lead Plaintiff sufficient time to review these newly produced documents and question E&Y witnesses; and (4) permitting Lead Plaintiff to recall witnesses, as needed to address fully the matters referenced in E&Y's willfully delayed production.

## **FACTS**

Lead Plaintiff served its only request for the production of documents on E&Y on November 11, 2008. Harrison Decl. ¶ 2 . E&Y served its responses and objections on December 11, 2008, more than 11 months ago. Harrison Decl. ¶ 3. E&Y made its initial production of documents in January of 2009 consisting primarily of audit work papers it previously produced to the Securities and Exchange Commission. E&Y then supplemented its production in April 2009. E&Y represented on April 15, 2009 that the following week it would produce 142,000 pages of documents and that after that production, the only remaining

documents to be produced consisted of “desk” files. Harrison Decl. Ex 1. E&Y stated that “these documents are currently being reviewed for privilege by EY and by counsel for Juniper’s Audit Committee. Once those reviews have been completed, the non-privileged documents will be produced [and] [t]he documents withheld will be appropriately logged.” *Id.* (Emphasis added). In September 2009, after nearly five months had elapsed from its last production, E&Y produced 400,000 pages of documents from its “desk files.” Harrison Decl. Ex. 2. In a letter dated September 4, 2009, E&Y represented that production of the desk files was completed and that a “last batch” would be produced after review by Juniper’s Audit Committee for claims of privilege, which should be finished by the end of that month. Harrison Decl. Ex. 3. Lead Plaintiff immediately sent E&Y a letter objecting to this untimely production, calling the production “outrageous” and noting the prejudice that the late production would cause Lead Plaintiff. Harrison Decl. Ex. 4. Lead Plaintiff also highlighted in its letter that E&Y’s behavior was unfortunately “consistent with the ‘hide the ball’ behavior [E&Y] engaged in with respect to the missing work papers.” *Id.*

Nevertheless, based upon E&Y’s representation that its production would soon be completed, and all that remained was a “last batch” of documents to be produced, Lead Plaintiff agreed that E&Y would produce its privilege log by September 30 and that the Audit Committee would soon produce a log for documents it was withholding on claims of privilege and work product. Harrison Decl. Ex. 2. Based on these representations, Lead Plaintiff reviewed the production of documents believing that E&Y had virtually completed its production and then scheduled depositions.

During its review, Lead Plaintiff determined that crucial E&Y work papers from the key and largest option grant period, the year 2000, were missing from the production, and pressed E&Y counsel for an explanation. E&Y eventually conceded that some 1999 and all 2000 year-end audit work papers had not been produced. On August 25, 2009, David Friedman (“Friedman”) acknowledged that the work papers, which contain documents pertinent to the inception of the option backdating scheme, crucial disputes between E&Y and Juniper, and a

significant amount of the backdated option grants had been unaccountably "lost."[2]

Now, two months later, after many deposition have occurred, less than 27 days before the close of discovery, and less than two weeks before E&Y witnesses would have to testify under oath, E&Y has produced without explanation or justification, more than 8,000 documents consisting of more than 650,000 pages of documents. Harrison Decl. Ex. 2. Combined with the missing Year 2000 audit work papers, the production of this massive amount of documents less than one month before the discovery cut-off is highly prejudicial to Lead Plaintiff's ability to prepare and take its upcoming depositions of both E&Y and Juniper witnesses, as well as prejudicial in relation to the deposition Lead Plaintiff has already conducted.

## ARGUMENT

### I. This Court has Broad Authority to Impose Severe Sanctions for E&Y's Discovery Misconduct and Abuse of the Judicial Process

After Lead Plaintiff battled for 12 months to obtain the class's needed discovery, reviewed more than 2 million pages of documents, and flew attorneys to locations across the country for days of depositions, E&Y unconscionably presented Lead Plaintiff with the task of spending hundreds of hours reviewing 650,000 pages of documents that were newly produced in response to a discovery request served on E&Y back on November 11, 2008. Adding to the egregiousness of E&Y's conduct is the fact that with E&Y's first witness scheduled for deposition on November 20, the delay E&Y will cause is exactly what E&Y has sought: E&Y has been constantly attempting to put off the depositions of its witnesses, and given timely deposition dates only upon Court order. See Rule 30(b)(6) ruling (Dkt. 367). Unfortunately, as a result of E&Y's late production, Lead Plaintiff has no choice but to adjourn *sine die* all but one

[2] The issue of spoliation and a negative inference relating to E&Y's missing Year 2000 audit work papers will most likely be addressed by a future motion after the close of discovery.

of the depositions of E&Y personnel, until Lead Plaintiff has had sufficient time to review E&Y's newly produced documents.[3]

It is well-established that it is within a court's discretion to enter severe sanctions against a party, based on a party's failure to comply with discovery rules or a court order. Fed. R. Civ. P. 37(c); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (citing both Fed. R. Civ. P. 26(g) and Fed. R. Civ. P. 37 as a basis for a sanction of adverse factual findings). The Ninth Circuit has held that "district courts have the inherent power to control their dockets and may impose sanctions, *including dismissal*, in exercise of that discretion." *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998) (court's emphasis) (citing *Oliva v. Sullivan*, 958 F.2d 272 (9th Cir. 1992)). In addition, "[t]his circuit has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power... to exclude testimony of witnesses whose use at trial would unfairly prejudice an opposing party." *Unigard Security Insurance Company v. Lakewood Engineering & Manufacturing Corporation*, 982 F.2d 363, 368 (9th Cir. 1992) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).

Whether the Court relies on Rule 37 or its inherent power, the standards that guide the Court's discretion are the same. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990) (court uses "cases involving dismissal under Rule 37 and inherent powers interchangeably"). This is a case of obstruction. *See Payne v. Exxon Corp.*, 121 F.3d 503 (9th Cir. 1997) (affirming dismissal where plaintiffs did not provide discovery responses or provided inadequate responses, despite several orders compelling responses); *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990) (affirming $25 million default judgment as sanction for defendants' failure to produce documents, failure to appear for depositions, and repeated violation of discovery orders); *Adriana*, 913 F.2d 1406 (affirming dismissal for violation of court orders to

---

[3] In an abundance of caution, Lead Plaintiff is maintaining one of the scheduled depositions of E&Y personnel (Andrew Cotton currently the latest scheduled E&Y deponent within the discovery period), in the event an extension of the discovery cut-off to take additional E&Y witnesses is not granted. Lead Plaintiff does so without waiver of its right and express intention to potentially recall Mr. Cotton after review of the newly produced documents is complete. Lead Plaintiff advised E&Y's counsel that it was adjourning other E&Y witnesses until after its review.

produce documents and failure to appear for depositions); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381 (9th Cir. 1988) (affirming dismissal for refusal to respond to requests to produce, despite court orders compelling responses); *G-K Prop. v. Redev. Agency of City of San Jose*, 577 F.2d 645 (9th Cir. 1978) (affirming dismissal where plaintiff withheld evidence relevant to key defense issue after being ordered repeatedly to produce it).

Under Rule 37 of the Federal Rules of Civil Procedure, a district court may impose evidentiary or issue sanctions against that party, including "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A).

## II. Factors Considered By Courts Imposing Issue Preclusion Sanctions

In deciding whether to grant a motion for sanctions for noncompliance with discovery, the Court should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). Further, the Court may, in deciding whether to grant a motion for sanctions, "properly consider all of a party's discovery misconduct ..., including conduct which has been the subject of earlier sanctions." *Payne v. Exxon Corp.*, 121 F.3d at 508. Since the "first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a ... sanction[,] ... the key factors are prejudice and the availability of lesser sanctions." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal quotation marks omitted).

## III. Prejudicial Production of More Than 650,000 Pages of Documents At the Eleventh Hour Warrants Issue Preclusion Against E&Y

Applying the five-factor balancing test to our case, E&Y's discovery violations have seriously impaired the public interest in expeditious resolution (Factor 1) and the Court's

need to manage its docket due to the fact that Lead Plaintiff now requires a continuance of the discovery schedule (Factor 2). Likewise, the repeated production by E&Y of massive amounts of additional documents at this late stage of discovery, combined with the fact that E&Y is unable to locate its Year 2000 audit work papers casts an ongoing pall upon E&Y's integrity and thus, the expectation that this case is capable of a fair and just resolution on the merits has been undermined (Factor 4) and a no lesser sanction than preclusion of E&Y's fact-intensive affirmative defenses and E&Y's assertion of privilege can adequately promote justice (Factor 5).[4]

As for factor 3, Lead Plaintiff has been severely prejudiced by E&Y's conduct. The Ninth Circuit Court of Appeals has repeatedly found that a party suffers prejudice if the concealing party's actions impair other parties' ability to go to trial or threaten to interfere with the rightful decision of the case. *See, e.g., Anheuser-Busch, Inc., v. Natural Beverage Distributors*, 69 F.3d 337, 353-54 (9th Cir. 1995); *Adriana*, 913 F.2d at 1412. The Court of Appeals in *G-K Properties* held:

> Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for the noncompliance. Fed.R.Civ.P. 37(b). Here the court dismissed the plaintiffs' action with prejudice. It acted properly in so doing. We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents.

---

[4] Lead Plaintiff believes the conduct of E&Y merits the sanction of a default judgment against E&Y and would certainly endorse this Court's use of its discretion in ordering such a remedy. Lead Plaintiff has requested the less drastic remedy of issue preclusion to comply with Ninth Circuit authority citing the availability of a less drastic remedy as a factor courts consider in granting sanctions motions. *CFTC v. Noble Metals, Int'l. Inc.*, 67 F.3d 766, 770 (9th Cir. 1995) (noting courts consideration of the risk of prejudice to the sanctioned party and the availability of less drastic sanctions while affirming summary judgment for plaintiff, after court deemed allegations in complaint true under Rule 37(b)(2)(A)). Since Courts also consider whether the sanctions requested would "ensure that a party will not benefit from its own [discovery abuses]." *Update Art, Inc. v. Modiin Publishing Ltd.*, 843 F.2d 67, 70 (2d Cir. 1988) (affirming summary judgment for plaintiff on damages in copyright case after defendants repeatedly violated discovery orders), a default judgment certainly would ensure that E&Y does not benefit from its repeated and inexcusable efforts to generate lengthy delays.

577 F.2d at 647.[5]

The fact that E&Y finally produced the hundreds of thousands of pages of documents does not eliminate the prejudice Lead Plaintiff and the class suffered and will continue to suffer. In *Payne*, the Court affirmed the dismissal of an action based on the plaintiffs' discovery misconduct even though the plaintiffs eventually produced the requested documents. 121 F.3d at 508. The court held:

> Belated compliance with discovery orders does not preclude the imposition of sanctions. <u>Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts</u>.... The issue is not whether [the plaintiffs] eventually obtained the information that they needed, or whether [defendant is] now willing to provide it, but whether [defendant's] repeated failure to provide documents in a timely fashion prejudiced the ability of [the plaintiffs] to prepare their case for trial. <u>Many of the discovery responses eventually tendered by the [defendant] came only as the discovery period was drawing to a close</u>, or after it had already closed. [The plaintiffs] were therefore deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy.

*Id.* (emphasis added).[6]

Lead Plaintiff has already taken 15 depositions in this case including Juniper's Chief Executive Officer, and will have to take at least another five depositions including that of the

---

[5] *See also Fair Housing of Marin v. Combs*, 285 F.3d 899, 905-06 (9th Cir. 2002) (party's actions prejudiced opposing party "by depriving it of any meaningful opportunity to follow up on the time sensitive information or to incorporate it into litigation strategy."); *Wiltec Guam v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 603-04 (9th Cir. 1988) (cases in which the Ninth Circuit have upheld orders of dismissal "have often involved serious disruptions of the district court's trial schedule."); *Malone v. U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987)("Dilatory conduct" that "greatly impeded resolution of the case and prevented the district court from adhering to its trial schedule" weighed in favor of dismissal on the first two factors).

[6] *See also Fair Housing*, 285 F.3d. at 906 ("Combs argues that the sanctions were inappropriately entered against him because he eventually produced the documents. The district court properly considered and rejected this argument."); *Anheuser-Busch*, 69 F.3d at 354 ("This court has squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance."); *North Am. Watch Corp.*, 786 F.2d at 1451 ("Belated compliance with discovery orders does not preclude the imposition of sanctions. Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts.").

former Chief Financial Officer, before it can even begin a meaningful review of newly produced E&Y documents, and an analysis of how they bear upon the class's claims and E&Y's defenses. This has materially prejudiced Lead Plaintiff's prosecution of the class's case. In particular, Lead Plaintiff has been deprived of a reasonable and timely opportunity to investigate fully the bases of those of E&Y's affirmative defenses that are based on complex factual considerations of due diligence, reasonable investigation and good faith (E&Y's Fourth, Fifth, Sixth, Eighth, Ninth and Tenth Affirmative Defenses) (Dkt. 87). In sum, E&Y's litigation strategy of willful concealment and repeated delays warrants an order precluding certain E&Y affirmative defenses and E&Y's assertions of privilege.

## CONCLUSION

For the forgoing reasons, Lead Plaintiff respectfully requests that this Court enter an order (1) precluding E&Y from asserting the affirmative defenses asserted in E&Y's Answer, of: (a) good faith (Fourth Affirmative Defense); (b) due diligence ( Fifth Affirmative Defense); and (c) reasonable investigation ( Sixth, Eighth, Ninth, and Tenth Affirmative Defenses); (2) precluding E&Y from asserting the attorney client privilege or attorney work product protection in discovery in this case; (3) relieving Lead Plaintiff from the discovery cut-off, to the extent necessary to allow Lead Plaintiff sufficient time to review these newly produced documents and question E&Y witnesses; and (4) permitting Lead Plaintiff to recall witnesses, as needed to address fully the matters referenced in E&Y's willfully delayed production.

DATED: November 12, 2009

LOWEY DANNENBERG COHEN & HART, P.C.

/S/
BARBARA J. HART

DAVID C. HARRISON
TODD S. GARBER
One North Broadway, 5th Floor
White Plains, NY 10601-2310
914-997-0500 (telephone)
914-997-0035 (facsimile)

*Counsel for Lead Plaintiff*

WILLEM F. JONCKHEER
SCHUBERT JONCKHEER KOLBE
& KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
415-788-4220 (telephone)
415-788-0161 (facsimile)

*Local Counsel*

**ECF CERTIFICATION**

I, Willem F. Jonckheer, am the ECF User whose identification and password are being used to file this submission. In compliance with General Order 45.X.B, I hereby attest that Barbara J. Hart has concurred in this filing.

DATED: November 12, 2009 SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP

By: /s/ Willem F. Jonckheer

Willem F. Jonckheer