UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | Case No.: C 06-4327 JW (PVT) |
| | Case No.: C 08-00246 JW (PVT) |
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al., <br> Plaintiffs, <br> v. <br> LISA C. BERRY, <br> Defendant. | **ORDER R**E **P**ARTIES' **M**ID-**D**EPOSITION **D**ISPUTE **R**EGARDING **A**SSERTION OF **A**TTORNEY-**C**LIENT **P**RIVILEGE AND **W**ORK **P**RODUCT **P**ROTECTION |

On November 4, 2009, this court issued an interim order soliciting additional briefing to be submitted by Lead Plaintiff and the Audit Committee of the Board of Directors of Juniper Networks, Inc. (the "Audit Committee") regarding privilege and work product objections to deposition questions regarding what non-party deponent Brienne Fisher told the Audit Committee when it interviewed her. Lead Plaintiff and the Audit Committee have now submitted the additional briefs and declarations. Based on all briefs and declarations submitted by the Lead Plaintiff and the Audit

Committee, and the file herein,

IT IS HEREBY ORDERED that the motion for protective order filed by the Audit Committee is DENIED, and its privilege and work product objections are OVERRULED for the reasons stated herein.

IT IS FURTHER ORDERED that Lead Plaintiff's motion to compel the deposition testimony is GRANTED. The parties and non-party Fisher shall promptly meet and confer to set a date for the resumption of Fisher's deposition in order to answer questions about the communications that occurred during the Audit Committee's interview of Fisher.

**I.   THE INFORMATION SOUGHT IS NOT PRIVILEGED**

The attorney-client privilege is strictly construed, because it impedes full and free discovery of the truth. *See Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981). Attorney-client communications in the presence of a third party who is not the agent of either are generally not protected by the privilege. *See Weatherford v. Bursey*, 429 U.S. 545, 554 n. 4, (1977) (citing 8 J. Wigmore, Evidence s 2311, pp. 601-602 (McNaughton rev. ed.1961)). Moreover, the voluntary disclosure of a privileged attorney communication to a third party constitutes waiver of privilege. *Weil*, 647 F.2d at 24.

The "joint defense" or "common interest" doctrine is "an extension of the attorney client privilege." *See Waller v. Financial Corp. of America*, 828 F.2d 579, 583 n. 7 (9th Cir. 1987).

> "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected. 'The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter,' and it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." *See U.S. v. Schwimmer,* 892 F.2d 237, 243-44 (2nd Cir. 1989) (citations omitted).

The burden of establishing that the "joint defense" or "common interest" doctrine applies is on the party asserting the privilege. *See, e.g.*, *U.S. v. Bay State Ambulance and Hosp. Rental Service, Inc.*, 874 F.2d 20, 29 (1st Cir. 1989). Among other things, the party asserting the a claim resting on the common interest doctrine must show that "the communication in question was given in

confidence and that the client reasonably understood it to be so given." *See U.S. v. Schwimmer,* 892 F.2d at 244  "It is fundamental that the 'joint defense privilege cannot be waived without the consent of all parties to the defense.'" *See John Morrell & Co.*, 913 F.2d 544, 555-56 (8th Cir. 1990).[1]

In the present case, the Audit Committee has not carried its burden of establishing that the communications that occurred during the Audit Committee's interview of Fisher were privileged. The communications occurred in the presence of Fisher's attorney (a third party who was not the agent of either Juniper or its attorneys), and the Audit Committee has not shown that the "joint defense" or "common interest" doctrine applies.

Fisher's statements during her interview with the Audit Committee do not appear to have been made in the course of an "ongoing common enterprise"[2] between Fisher and the Audit Committee. The fact that Fisher may have had some legal interests that were similar to the Audit Committee's legal interests is insufficient to show that a joint strategy was actually decided upon and undertaken by her, the Audit Committee and their respective counsel. Moreover, the fact the Audit

---

[1] The Audit Committee makes much of the fact that the employer in *Morrell* was able to unilaterally waive privilege as to four otherwise protected documents that it had turned over to the employee class. However, those documents were created by the employer prior to–and separate and apart from–the common interest communications that occurred between the employer and the employee class and their attorneys. Different rules apply to waiver with regard to pre-existing privileged documents that are shared in the course of joint defense or common interest endeavors than apply to communications that occur during a joint defense or common interest meeting itself.
As to the pre-existing privileged documents that are shared in the course of joint defense or common interest endeavors, the original holder of the privilege for such documents naturally retains the right to waive the privilege. *See Morrell*, 913 F.2d at 555-56.
With regard to communications that actually occur during a joint defense or common interest meeting, all parties must agree to any waiver of the privilege. Otherwise, for example, a criminal defendant could decide after the fact to testify at trial as to admissions made by his co-defendant during their joint defense meetings. That is not the law. *See, United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979) ("McPartlin was entitled to the protection of the attorney-client privilege, because his statements were made in confidence to an attorney for a co-defendant for a common purpose related to both defenses"). Thus, if the Audit Committee's interviews with Juniper's employees and former employees were protected by the common interest doctrine, it would have been required to obtain the employees' consent before disclosing to a third party, such as its outside auditors or the SEC, the substance of the statements made by those employees during the interviews.

[2] In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 311 (N.D. Cal. 1987), relied on by the Audit Committee, *did* involve an actual " common enterprise" – the negotiations for a potential sale of a division of one company to another company. The court held that disclosure of a privileged attorney opinion letter to the potential buyer did not waive the privilege because the disclosure was necessary to the sale negotiations. No such common enterprise has been shown in the present case. Moreover, that case involved a pre-existing privileged document rather than communications that occurred during a joint defense or common interest meeting.

Order, *page 3*

Committee expressly informed Fisher that it could waive the privilege (which it erroneously assumed would attach to the communications) demonstrates that there was no such common enterprise. On the contrary, the Audit Committee claimed the exclusive right to decide whether or not to disclose information from the interview to others. The Audit Committee's express reservation of the right to disclose Fisher's statements to others shows that Fisher had no reasonable expectation that her statements would be kept confidential. Absent such an expectation of confidentiality, no common interest based privilege attached. *See U.S. v. Schwimmer,* 892 F.2d at 244.

In any event, even if the attorney-client privilege initially attached to the communications, the Audit Committee's disclosure of the substance of the communications to Juniper's outside auditors effected a waiver of the privilege. *See Weil v. Investment/Indicators, Research & Management*, 647 F.2d at 24; *see also, U.S. v. Ruele*, 583 F.3d 600, 612 (9th Cir. 2009) ("*any* voluntary disclosure of information to a third party waives the attorney-client privilege"). The cases cited by the Audit Committee all involved a finding of no waiver of *work product* protection, not attorney-client privilege. In fact, in *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004), Merrill Lynch conceded that disclosure of otherwise privileged information to its independent auditors waived the attorney-client privilege. *See, id.* at 444.

## II. THE AUDIT COMMITTEE HAS NOT ESTABLISHED THAT INFORMATION SOUGHT IS PROTECTED WORK PRODUCT

With regard to the assertion of work product protections, the Audit Committee has not shown that the interview occurred in anticipation of litigation. The Audit Committee submitted no declarations showing that the purpose of its interviews was in any way related to litigation. Its entire factual showing amounts to nothing more than pointing out that litigation was pending at the time the interview occurred. However, the mere fact that a company has a committee conduct an investigation at the same time that litigation is pending is insufficient to show that the purpose of the investigation is in any way connected to the litigation.

As Lead Plaintiff points out, work product protection is available only for information that would not have been generated "but for" litigation. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D.Cal 2003), quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal. 1987). As the

court explained in *Kelly*,

> "The work product doctrine does not apply to information collected or communications made in the normal course of business. It applies only to material generated primarily for use in litigation, material that would not have been generated but for the pendency or imminence of litigation." *See Kelly v. City of San Jose*, 114 F.R.D. at 659, citing *Hickman v. Taylor*, 329 U.S. 495 (1947).

There is no evidence in the record that the Audit Committee would not have interviewed Fisher "but for" the pending litigation, or that the Audit Committee has or had any role at all with regard to the pending litigation. Thus, there is no basis for a finding that the Audit Committee is anything other than an "audit committee" within the meaning of 15 U.S.C. section 7201(3), or that it has any purpose other than a *business* purpose of overseeing Juniper's accounting and financial reporting processes and Juniper's audits of its financial statements. *See* 15 U.S.C. § 7201(3). Thus, work product protection does not apply, and the work product objection is overruled.

Dated: *12/9/09*

PATRICIA V. TRUMBULL
United States Magistrate Judge