PILLSBURY WINTHROP SHAW PITTMAN LLP
KIRKE M. HASSON (CA Bar No. 61446)
kirke.hasson@pillsburylaw.com
ROBERT J. NOLAN (CA Bar No. 235738)
robert.nolan@pillsburylaw.com
ALEX SANTANA (CA Bar No. 252934)
alex.santana@pillsburylaw.com
50 Fremont Street
San Francisco, CA 94105
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for the Audit Committee of
the Board of Directors of Juniper Networks, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION | CASE NO.: C06-04327-JW (PVT) |
|---|---|
| This Document Relates To:<br><br>ALL ACTIONS. | DECLARATION OF KIRKE M. HASSON IN SUPPORT OF MOTION OF THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF JUNIPER NETWORKS, INC. FOR PROTECTIVE ORDER REGARDING THE DEPOSITION OF WILLIAM HEARST |

701869308v4

DECL. OF KIRKE M. HASSON
IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER
Case No. M:06-04327-JW (PVT)

I, Kirke M. Hasson, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and I am a member of the firm of Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), attorneys for the Audit Committee of the Board of Directors of Juniper Networks, Inc. ("Audit Committee"). I make this declaration in support of the Audit Committee's Motion for Protective Order and in opposition to Plaintiff's Motion to Compel. I have practiced law with Pillsbury continuously since 1974, and as a member of the firm since 1982. I was one of the two litigation partners who managed the investigation performed in 2006 for the Audit Committee. As such, I am aware and informed of the practices and procedures of the investigation and other facts as discussed below.

2. Between May and December 2006, the Juniper Audit Committee conducted an investigation into potential problems regarding the backdating of stock option grants.

3. As detailed below, the investigation was commenced and carried out in response to grand jury subpoenas issued by the U.S. Attorney's Office for the Northern District of California and Eastern District of New York, a notice of inquiry and request for information and documents from the Securities Exchange Commission ("SEC") and civil litigation filed by private plaintiffs.

4. On May 12, 2006, Juniper received questions from several stockholders regarding Juniper's stock option granting process generally and regarding several specific grants. The investors indicated that they had heard Juniper might be identified in a report regarding stock option backdating.

5. On May 16, 2006, the Center for Financial Research and Analysis ("CFRA") issued a report entitled "Options Backdating, Which Companies Are At Risk?" in which CFRA reviewed the option prices of 100 public companies and, based upon an analysis of the exercise prices of option grants with reference to the companies' stock prices, concluded that 17% of the subject companies were, in CFRA's view, "at risk for having backdated option grants during the period 1997 to 2002." The CFRA report identified

701869308v4

- 1 -

DECL. OF KIRKE M. HASSON
IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER
Case No. M:06-04327-JW (PVT)

Juniper as one of the "at risk" companies and referenced three of Juniper's stock option grants.

6. On May 19, 2006, Juniper received a grand jury subpoena issued by the U.S. Attorney's Office for the Eastern District of New York relating to the Company's historical stock option granting practices. On May 23, 2006, Juniper received a similar grand jury subpoena issued by the U.S. Attorney's Office for the Northern District of California. True copies of these subpoenas are attached hereto as Exhibits A and B.

7. On May 24, 2006, two securities actions were filed against Juniper, *In re Juniper Networks Derivative Actions*, No. C-06-03396 JW (N.D. Cal.) and *In Re Juniper Networks, Inc. Derivative Litigation*, No. 1-06-CV-064294 (Santa Clara Superior).

8. Also on May 24, 2006, the SEC notified Juniper that it was conducting an inquiry regarding the Company to determine whether there had been violations of the federal securities laws. A true copy of the SEC's notice of inquiry is attached hereto as Exhibit C.

9. On June 7, 2006, the SEC issued a formal request for information and documents to Juniper. A true copy of the SEC's request is attached hereto as Exhibit D.

10. I understand the Audit Committee decided on May 23 to select Pillsbury as counsel. On June 8, 2006, the Audit Committee formally engaged Pillsbury as independent counsel to conduct the investigation.

11. The Audit Committee commenced the investigation and sought assistance of Pillsbury in response to the above events and because of the threat and reality of civil and criminal litigation based on the allegations against Juniper regarding alleged stock options backdating. Part of the engagement of Pillsbury was to defend the Company in connection with the DOJ subpoenas and the SEC inquiry. The engagement included investigation of facts and provision of advice to deal with the potential exposure of the company to civil and criminal proceedings.

12. Pillsbury retained KPMG LLP to assist it as independent forensic accountants in conducting an investigation on behalf of the Audit Committee. Between its

1  engagement and December 2006, Pillsbury, aided by the forensic accountants at KPMG
2  LLP, undertook to investigate the facts and to provide legal advice to the Audit Committee
3  regarding potential exposure of the Company on the subjects of the DOJ subpoenas, the
4  SEC's investigation and document request, and the private actions, including defenses to
5  potential exposure. The investigation was undertaken in this form directly because of the
6  above events and threats of potential exposure.

7   13.   Pillsbury and KPMG advised the Audit Committee and conducted an
8  investigation that involved the review of approximately 785,000 documents and interviews
9  of 35 current and former directors, officers and employees. The information gathered
10 reflects our firm's mental impressions, theories and analysis.

11   14.   During the investigation, Pillsbury was the primary communicator with the
12 U.S. Attorney's Office and the SEC on behalf of the Audit Committee. We expected that
13 Pillsbury's work could also be used as part of the Company's defense in civil litigation.

14   15.   Plaintiff's letter of December 7 to the Court refers to three documents as
15 supposedly having constituted a waiver. One is the Company's Form 10-K filing for 2006;
16 pages 32 through 35 of that filing are attached hereto as Ex. E. The other two are letters
17 from the Company to the SEC, dated January 12 and 17, 2007, copies of which are attached
18 as Exhibits F and G, respectively. Although some portions of the Company's Form 10-K
19 identify and reference the investigation and summarize some of its conclusions (such as the
20 first four paragraphs under "Stock Option Investigation" at Ex. E, pp. 32-33), the bulk of
21 the discussion in the referenced sections concerns the details of how the Company
22 determined to restate its financial statements, by establishing measurement dates according
23 to certain accounting rules (e.g., Ex. E, pp. 33-35). It was not a subject of the investigation
24 to determine how to restate the Company's financial statements or how to establish
25 measurement dates; that work was not done by Pillsbury or KPMG.

26

27 I declare under penalty of perjury under the laws of the United States that the foregoing is
28 true and correct.

701869308v4   - 3 -   DECL. OF KIRKE M. HASSON
IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER
Case No. M:06-04327-JW (PVT)

1 | Executed at San Francisco, California, this 14th day of December, 2009.

*[signature: Kirke M. Hasson]*
Kirke M. Hasson

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28