Case5:06-cv-04327-JW Document481 Filed12/22/09 Page1 of 20

LATHAM & WATKINS LLP
Peter A. Wald (Bar No. 85705)
David M. Friedman (Bar No. 209214)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
Patrick E. Gibbs (Bar No. 183174)
Andrew M. Farthing (Bar No. 237565)
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

Attorneys for Defendant
Ernst & Young LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | CASE NO. 5:06-CV-04327-JW<br><br>DEFENDANT ERNST & YOUNG LLP'S OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR SANCTIONS<br><br>Before: Hon. Patricia V. Trumbull<br>Date: January 12, 2010<br>Time: 10:00 a.m. |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page2 of 20

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. ARGUMENT ........ 6

A. Because EY Did Not Violate Any Discovery Orders, Fed. R. Civ. P. 37, And Cases Imposing Sanctions for Violations of Court Orders, Are Irrelevant ........ 7

B. Issue Preclusion Sanctions Under the Court's Inherent Authority Are Likewise Inappropriate ........ 8

1. Plaintiffs Have Shown No Misconduct at All ........ 9

2. Plaintiffs Have Suffered No Prejudice ........ 10

3. The Availability of Less Drastic Sanctions Weighs Heavily Against Plaintiffs' Motion ........ 12

4. The Remaining Factors Weigh Against Sanctions ........ 12

C. Plaintiffs' Request For An Order Precluding EY From Asserting The Attorney-Client Privilege Or Work Product Protection Is Unwarranted ........ 13

D. Plaintiffs' Request For Further Relief Is Unwarranted And Unnecessary ........ 14

E. Plaintiffs' Insinuations of Spoliation Are Meritless ........ 14

F. Plaintiffs' Motion Should Be Denied Because They Did Not Meet And Confer ........ 15

IV. CONCLUSION ........ 15

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

EY'S OPP. TO LEAD PLF.'S MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page3 of 20

## TABLE OF AUTHORITIES

**Page**

### CASES

*Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406 (9th Cir. 1990) ........ 7, 11

*Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991) ........ 14

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) ........ 7, 8, 9, 11

*CFTC v. Noble Metals, Int'l*, 67 F.3d 766 (9th Cir. 1995) *cert. denied*, 519 U.S. 815 (1996) ........ 7, 9

*Doe v. City of San Mateo*, No. C 07-05596 SI, 2009 WL 1636142 (N.D. Cal. June 8, 2009) ........ 15

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ........ 7, 11

*Geico Casualty Co. v. Beauford*, No. 8:05-CV-697-T-24EAJ, 2006 WL 2990454 (M.D. Fla. Oct. 19, 2006) ........ 13

*G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978) ........ 8, 11

*Henry v. Gill Indus., Inc.*, 983 F.2d 943 (9th Cir. 1993) ........ 8

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ........ 8

*Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir. 1998) ........ 11

*In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722 ........ 9

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........ 9

*In re Prestige Brands Holding, Inc.*, No. 05 CV 06924(CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ........ 9

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ........ 6, 8, 10, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page4 of 20

*Lewis v. Telephone Empl. Credit Union*,
87 F.3d 1537 (9th Cir. 1996) .......... 10

*Malone v. U.S. Postal Service*,
833 F.2d 128 (9th Cir. 1987) .......... 11

*Myron v. Terhune*,
No. C 99-21265 JW (PR), 2008 WL 4891046 (N.D. Cal. Nov. 12, 2008).......... 15

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
786 F.2d 1447 (9th Cir. 1986) .......... 8, 12

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) .......... 9

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) .......... 7, 11

*RIO Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) .......... 8

*Shepherd v. Am. Broadcasting Cos., Inc.*,
62 F.3d 1469 (D.C. Cir. 1995) .......... 7

*So v. Land Base, LLC*,
No. CV 08-03336 DDP (AGRx), 2009 WL 2407954 (C.D. Cal. Aug. 4, 2009).......... 15

*Toth v. Trans World Airlines*,
862 F.2d 1381 (9th Cir. 1988) .......... 8

*U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*,
857 F.2d 600 (9th Cir. 1988) .......... 8

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) .......... 10, 11

*Update Art, Inc. v. Modlin Pub., Ltd.*,
843 F.2d 67 (9th Cir. 1988) .......... 8

*Wanderer v. Johnson*,
910 F.2d 652 (9th Cir. 1990) .......... 8

*Welch v. Eli Lilley & Co.*,
No. 1:06-cv-0641-RLY-JMS, 2009 WL 700199 (S.D. Ind. Mar. 16, 2009).......... 13

*William T. Thompson Co. v. Gen. Nutrition Corp.*,
593 F.Supp. 1443 (C.D.Cal.1984) .......... 9

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) .......... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page5 of 20

**RULES**

Civ. L. R. 37-1(a) .......... 15

Fed. R. Civ. P. 37 .......... 15

Fed. R. Civ. P. 37(a)(1) .......... 15

Fed. R. Civ. P. 37(b) .......... 7

**TREATISES**

7-37 Moore's Federal Practice (Civil), § 37.51 .......... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page6 of 20

## I. INTRODUCTION

Based on a record that is completely devoid of any discovery misconduct by Ernst & Young LLP ("EY"), Plaintiffs' Motion for Sanctions (the "Motion") seeks some of the most drastic discovery sanctions possible – up to and including an issue preclusion order that is tantamount to a terminating sanction against EY. Plaintiffs seek these draconian sanctions even though they do not claim that EY violated any discovery orders. In fact, Plaintiffs never even moved to compel any document production from EY. Nor do Plaintiffs claim that EY has improperly withheld anything from discovery. Indeed, EY has produced about 2.4 million pages of documents to Plaintiffs. Plaintiffs' only complaint is that EY produced approximately 8,300 documents to them in November 2009 – too close (in Plaintiffs' view) to the discovery cutoff. As Plaintiffs acknowledge, EY never told Plaintiffs, before November, that its production was complete. In fact, EY repeatedly told Plaintiffs that it was not. Specfically, EY told Plaintiffs that it would be producing additional documents, but that the production would take substantial time to complete due to the scope of Plaintiffs' requests and the fact that counsel for Juniper's Audit Committee, which asserted attorney-client privilege and/or work product protection over certain documents in EY's possession, was conducting a separate privilege review. Simply put, EY has not engaged in any discovery misconduct.

Nor have Plaintiffs suffered any prejudice from EY's production of documents in November. Plaintiffs' repeated reference to 650,000 pages of documents from that production is misleading. The vast majority of these are multiple copies of massive spreadsheets provided to EY by Juniper, many, many pages of which are actually blank. Just 310 or so of the documents make up over 580,000 of those pages. Many other documents from the November production are simply duplicate copies of documents that EY produced to Plaintiffs nearly a year ago. Tellingly, Plaintiffs' motion does not identify a single document from EY's November production, much less explain how the timing of EY's production of any particular document has prejudiced Plaintiffs' ability to prepare their case. Plaintiffs' repeated reference to the December 1, 2009 discovery cutoff is likewise misleading, as both Juniper and EY previously agreed to allow Plaintiffs to depose numerous witnesses after December 1, and those depositions are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page7 of 20

moving forward. The manifest lack of any prejudice precludes the award of any sanctions at all, much less the draconian sanctions Plaintiffs seek. Plaintiffs' Motion should be denied.

## II. FACTUAL BACKGROUND

In May 2006, certain published reports suggested that Juniper (as well as several other companies) may have backdated stock options to its directors and officers. Compl. ¶ 14. EY, Juniper's outside auditor, began looking into the matter immediately. Declaration of Andrew M. Farthing ("Farthing Decl.") Ex. 1. As part of that inquiry, EY retrieved archived workpapers relating to its past audit work for Juniper. *Id.* At the time, EY was unable to locate the workpapers relating to the Juniper audit for the year 2000. *Id.* EY immediately began an exhaustive search for the missing 2000 workpapers. On May 30, 2006, approximately one week after EY's search commenced, EY received a request from the SEC to preserve documents relating to EY's audits of Juniper. Farthing Decl. Ex. 2. One and half months later, on July 14, 2006, Plaintiffs filed this action naming only Juniper and some of its current and former officers and directors as defendants. As all of these events unfolded, EY continued, unsuccessfully, to search for the 2000 workpapers. Declaration of Paul Koreneff ("Koreneff Decl.") Ex. A at 45:2-10, 46:22-47:25, 50:24-51:17.

Plaintiffs did not name EY as a defendant in this action until January 17, 2007. At that time, Plaintiff asserted a single claim for relief against EY, and that claim remains the only cause of action asserted against EY. Specifically, Plaintiffs claim that EY violated Section 11 of the Securities Act of 1933 in connection with a Registration Statement filed by Juniper as part of its April 2004 acquisition of a company called NetScreen Technologies, Inc. (the "NetScreen Registration Statement"). *See* Compl. ¶¶ 364-73. The NetScreen Registration Statement incorporated Juniper's 2003 audited financial statements by reference from Juniper's 2003 Form 10-K, and EY consented to the inclusion of its 2003 audit opinion for Juniper in the NetScreen Registration Statement. *Id.* at ¶ 368; Farthing Decl. Ex. 3 at 81 and Exhibit 23.3. For SEC reporting purposes, Juniper's 2003 Form 10-K, and thus EY's audit opinion, covered some of Juniper's financial statements for the years 2001 and 2002, in addition to 2003, but none from 2000 or prior years. Farthing Decl. Ex. 4. Discovery in this action began after Judge Ware

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

EY'S OPP. TO LEAD PLF.'S MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page8 of 20

approved the parties' discovery plan in an order dated November 17, 2008. Dkt. 179.[1] Plaintiffs propounded their first set of discovery requests on EY on November 11, 2008. Farthing Decl. Ex. 6. On December 11, 2008, EY served its objections and responses to Plaintiffs' request. Farthing Decl. Ex. 7. The next day, EY produced to Plaintiffs all documents that EY had previously produced to the SEC in response to a request for all documents related to options at Juniper from 1999 to 2006. Farthing Decl. Ex. 8.[2] This production included portions of the audit workpapers related to stock options for the years 1999 (after the Company went public) through 2005, interim stock option testing documents for certain quarters in the fiscal year 2006, and "desk files" from 1999-2006.[3] *Id.* EY produced additional documents to Plaintiffs on January 9, 2009, by which time EY had produced to Plaintiffs the vast majority of the documents relevant to their sole claim against EY. These documents included the full set of audit workpapers for years 2001 to 2003—the only years covered by the audited financial statements incorporated into the NetScreen Registration Statement. Farthing Decl. Ex. 9. EY's production to Plaintiffs during the first two months of discovery in this case was massive: As of January 9, 2009, EY had produced to Plaintiffs more than 1.2 million pages of documents. Farthing Decl. Ex. 10.

In April 2009, EY produced another 142,000 pages of documents to Plaintiffs, including documents relating to its audit of Juniper's restated financial statements, tax provision workpapers from 2001-2003 and 2005, and NetScreen-related workpapers. Farthing Decl. Exs. 10-11. At that time, EY informed Plaintiffs' counsel that EY would be producing additional desk files to Plaintiffs (even though EY believed the desk files were not likely relevant to Plaintiffs' claims), but that EY's production of those documents would have to await not only

---

[1] Even before Judge Ware's order, in August 2008, EY provided Plaintiffs with the audit workpapers for the years 2001, 2002, and 2003 that related to stock options to prepare for a mediation. Farthing Decl. Ex. 5.

[2] The statement in Plaintiffs' brief that EY's first production to Plaintiffs was not made until January 2009, Mot. at 2, is erroneous.

[3] "Desk files" are all documents that are not part of EY's workpapers, including documents such as e-mails and other documents that are maintained in files or on the computers of EY personnel.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page9 of 20

EY's privilege and work product review, but also a separate review by counsel for Juniper's Audit Committee.[4] Farthing Decl. Ex. 10. Although EY made clear that its production was not yet complete, Plaintiffs' counsel did not, at that time, ask for a date certain by which EY's production would be complete, nor did Plaintiffs seek an order compelling EY to produce documents or complete its production by a date certain.

On September 1, 2009, following review by the Audit Committee's counsel, EY produced an additional 447,103 pages of documents to Plaintiffs. Farthing Decl. Ex. 14. These documents included emails and other desk files related to EY's audit of Juniper's restated financial statements or otherwise related to stock options, which were created after EY's production to the SEC (and thus would not have been included in EY's December 2008 production to Plaintiffs). Farthing Decl. Exs. 14-15. By September 1, 2009, EY had produced approximately 1.8 million pages to Plaintiffs. Farthing Decl. Ex. 16.

On September 4, 2009, counsel for EY informed Plaintiffs' counsel that EY would be producing additional documents to Plaintiffs following a privilege review by counsel for Juniper's Audit Committee. Farthing Decl. Exs. 15-16 ("As recently as last week, we indicated that although EY's review was complete, Juniper was still reviewing the remaining documents for applicable privilege…."). On September 16, 2009, counsel for EY again informed Plaintiffs that EY would be producing additional documents. EY's counsel explained that while EY had finished its document review, counsel for Juniper's Audit Committee was still reviewing these documents for privilege and/or work product, and that EY would produce the

---

[4] As the Court is aware, Juniper's Audit Committee has asserted attorney-client privilege and work product protection over certain documents and information relating to its investigation of stock option practices at Juniper, including documents and information possessed by EY. EY has not taken any position on the Audit Committee's privilege and work product assertions, but the Audit Committee has directed EY to allow its counsel to review EY's files and remove or redact information that the Committee believes is privileged or work product before producing such documents to Plaintiffs. EY has provided Plaintiffs with privilege logs identifying documents withheld from production based on EY's assertions of privilege and work product protection, while Juniper's Audit Committee has provided Plaintiffs with separate privilege logs identifying documents and information withheld by the Committee. Farthing Decl. Exs. 12-13.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page10 of 20

documents as soon as that review was complete.[5] Farthing Decl. Exs. 16-17. EY's counsel also made clear that EY would not oppose an extension of the fact discovery cut-off. Farthing Decl. ¶ 19. Although EY was clear in its September 16, 2009 letter that its production was not complete, Plaintiffs' did not seek an order compelling EY to produce the additional documents or complete its production by a date certain.

Following the privilege and work product review by counsel for Juniper's Audit Committee, EY produced the final batch of desk files and emails on November 2, 2009. Farthing Decl. Ex. 18. The November 2 production, although comprising approximately 670,000 pages, contained only about 8,300 documents. Koreneff Decl. ¶ 3. Approximately 310 of those documents comprise the vast majority (more than 580,000) of the pages contained in this production. *Id.* These 310 or so documents consist primarily of spreadsheets provided to EY by Juniper in connection with stock compensation expense calculations in 2006 and 2007 under FAS 123(R) (an issue that is not relevant to Juniper's restatement of financial results at issue in this case). *Id.* Many of these spreadsheet pages, moreover, are blank sheets that were printed out due to formatting issues. *Id.* Plaintiffs' complaint about receiving 670,000 pages of documents in November, in other words, vastly overstates the amount of information Plaintiffs received as part of this production.

Of the information Plaintiffs did receive in November 2009, moreover, much of it is either totally irrelevant to Plaintiffs' Section 11 claim against EY, or simply duplicates documents previously produced to Plaintiffs. In fact, the vast majority of documents in the November production were created *after* EY first collected documents for production to the SEC in mid-2006 – that is, long after the events that gave rise to Juniper's restatement. Koreneff Decl. ¶ 4. To the extent that the November production includes documents created before mid-2006, they are simply duplicates of earlier workpapers – all of which had been produced to

---

[5] In its September 16, 2009 letter, counsel for EY stated that it had expected to complete its production by the end of the month. However, counsel for Juniper's Audit Committee did not complete its review when expected, and as a result, the remaining 8,300 documents were not produced until November 2, 2009. At no time from September 16, 2009 until October 20, 2009 did Plaintiffs ask whether EY's production was complete.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page11 of 20

Plaintiffs by January 2009 – that had been copied as part of EY's audit of Juniper's restated financial statements.[6] *Id.*

Although the November 2009 production was largely irrelevant and/or duplicative of previously produced documents, EY has agreed to produce several of its witnesses after the December 1, 2009 discovery cut-off.[7] In fact, since December 1, Plaintiffs have deposed three EY witnesses (Lisa Schwartz, Brad Feller and Amanda Powell), have one more on calendar for January 6, 2010, and one more will be scheduled in the future if and when the witness' medical condition permits. Farthing Decl. ¶ 22. In addition, purportedly to allow Plaintiffs to depose Juniper witnesses about information in EY's November 2009 production, Plaintiffs and Juniper entered into a stipulation allowing Plaintiffs to take depositions of Juniper personnel after the December 1, 2009 cutoff. Dkt. 437.[8] Plaintiffs and Juniper also agreed to adjourn the February 1, 2010 due date for opening expert reports. *Id.* On December 18, 2009, the Court granted in part Plaintiffs' motion to take additional depositions and also granted Plaintiffs' and the Juniper defendants stipulated and proposed order allowing Plaintiffs to take depositions of Juniper defendants after the December 1, 2009 cutoff. Dkts. 474, 476.

## III. ARGUMENT

There are two sources of authority a district court can use to sanction a party for discovery abuses: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th

---

[6] Some of the documents included in the November 2009 production also relate to the audit of Juniper's 2007 financial statements, which are not relevant to any of Plaintiffs' claims. Those documents were mistakenly included in EY's document production.

[7] EY agreed to produce a few of its witnesses in December 2009 because counsel for Ms. Berry in the related litigation was not available in October and November, when the depositions were originally scheduled. Farthing Decl. ¶ 21.

[8] Despite this agreement, Plaintiffs have used very little information from the November 2009 production at deposition. Of the 355 exhibits used at depositions taken by Plaintiffs since the November 2009 production was made, just two are documents produced for the first time in November 2009. Farthing Decl. ¶ 25. Both documents were created in December 2006 and relate to EY's audit of Juniper's restated financial statements. *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page12 of 20

Cir. 2006) (internal quotations and citations omitted). Plaintiffs here purport to rely upon both, but for the reasons discussed below, neither Rule 37 nor this Court's inherent authority supports any sanctions at all against EY, much less the severe sanctions Plaintiffs seek in their motion.

**A. Because EY Did Not Violate Any Discovery Orders, Fed. R. Civ. P. 37, And Cases Imposing Sanctions for Violations of Court Orders, Are Irrelevant**

Plaintiffs' motion cites Rule 37, as well as a host of cases imposing sanctions for violations of discovery orders, as authority for the draconian sanctions they seek here. But sanctions under Rule 37 are only available for failure to comply with a court order. Fed. R. Civ. P. 37(b); *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995) ("Rule 37(b) therefore cannot support the sanctions before us today" because no court order compelling discovery was made.). Here, EY did not violate any Court orders regarding discovery. Indeed, Plaintiffs never even moved for such an order.

For this reason alone, Rule 37 and the numerous cases cited by Plaintiffs that impose sanctions for violations of court orders (and often violations of *multiple* orders) are completely inapposite here. Indeed, if anything, the very stark contrast between these cases and the facts presently before the Court makes clear that there is no basis for sanctions here. *See* Mot. at 5-8 & nn. 4-6, *citing Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (sanction of default appropriate against litigant that "repeatedly flouted even his basic discovery obligations, often violating court orders" and "misrepresented to both counsel and to the district court that the documents did not exist"); *Payne v. Exxon Corp.*, 121 F.3d 503, 505 (9th Cir. 1997) (sanctions appropriate against party that had violated three different orders compelling discovery); *CFTC v. Noble Metals, Int'l*, 67 F.3d 766, 771 (9th Cir. 1995) (sanctions appropriate against litigants that "willfully violated the court's orders"), *cert. denied*, 519 U.S. 815 (1996); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 341-44 (9th Cir. 1995) (sanctions appropriate against party that violated gag order and lied about destruction of documents in response to court order compelling their production, where documents were discovered to still exist after first trial was completed); *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1409-10 (9th Cir. 1990) (sanctions appropriate against party that had violated eight

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page13 of 20

court orders); *Wanderer v. Johnson*, 910 F.2d 652, 654, 656 (9th Cir. 1990) (sanctions appropriate where court issued "at least nine orders compelling production of documents," with which the sanctioned party repeatedly failed to comply).[9]

**B. Issue Preclusion Sanctions Under the Court's Inherent Authority Are Likewise Inappropriate**

In determining whether to award issue preclusion or other sanctions for discovery misconduct, courts typically consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

In this case, Plaintiffs' request for an order precluding EY from asserting its affirmative defenses of good faith, due diligence, and reasonable investigation (Mot. at 1) would essentially strip EY of its ability to defend itself. *See, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983); *In re Prestige Brands Holding, Inc.*, No. 05 CV 06924(CLB), 2006

---

[9] *See also* Mot. at 6-8 & nn.4-6, *citing RIO Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002) (award of sanctions affirmed for violation of order compelling discovery when combined with wrongful evasion of service of process in order to punish "impudent international defendant"); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947-49 (9th Cir. 1993) (sanction of dismissal appropriate against litigant who wrongfully failed to appear for deposition twice, failed to produce documents, failed to pay monetary sanctions ordered by the trial court, and as a result of litigant's delay, only other individual who participated in the conversations that formed the subject of the lawsuit passed away without having his deposition taken); *Toth v. Trans World Airlines*, 862 F.2d 1381, 1384-85 (9th Cir. 1988) (sanctions appropriate against party that failed to comply with multiple court orders, despite two extensions of time in which to comply); *Update Art, Inc. v. Modlin Pub., Ltd.*, 843 F.2d 67, 70 (9th Cir. 1988) (sanctions appropriate after "innumerable discovery conferences resulting in a series of court orders compelling appellants to respond to discovery requests" when appellants "repeatedly failed to comply with the discovery orders, despite numerous extensions of time to respond"); *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1449 (9th Cir. 1986) (affirming sanction of dismissal for failure to comply with order compelling production of documents and falsely representing to the court in a sworn affidavit that the documents were not in litigant's possession); *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978) (sanctions appropriate when party refused to produce documents as required by three court orders); *cf. U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 601-04 (9th Cir. 1988) (district court abused its discretion by entering an order of issue preclusion despite litigant's failure to appear for deposition, violation of pretrial scheduling order, and violation of order compelling production of documents).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page14 of 20

WL 2147719, at *9 (S.D.N.Y. July 10, 2006); *In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722, 723-24. Thus, the requested relief is tantamount to a default sanction against EY. Given the severity of the relief they have requested, Plaintiffs must meet the even higher standards applicable to a request for sanction of dismissal or default. *See, e.g.*, 7-37 MOORE'S FEDERAL PRACTICE (Civil), § 37.51 ("If deeming certain facts established is tantamount to disposing of claims, appellate courts require the same justification that is required for a dismissal or default sanction."); *see also Noble Metals*, 67 F.3d at 770-72 (allowing such sanctions only in "extreme circumstances" where there has been willfulness or bad faith).

In that regard, default or terminating sanctions are warranted only if the sanctioned party's abuses "eclipse entirely the possibility of a just result." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006) (terminating sanctions warranted only if the sanctioned party's abuses "eclipse entirely the possibility of a just result"); *William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F.Supp. 1443, 1456 (C.D.Cal.1984) (holding that default was proper because of party's "willful destruction of documents and records that deprived [the opposing party] of the opportunity to present critical evidence on its key claims to the jury").[10] Thus, a finding of willfulness, fault or bad faith is required. *Anheuser-Busch*, 69 F.3d at 348 (issue preclusion sanctions that have the effect of a default are warranted only when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.") (internal quotations and citations omitted). As discussed below, Plaintiffs do not come close to meeting this stringent standard here.

**1. Plaintiffs Have Shown No Misconduct at All**

As a threshold matter, Plaintiffs have failed to show that EY has even engaged in any discovery misconduct at all. EY has produced millions of pages of documents in response to

---

[10] Indeed, when imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case, issue preclusion sanctions are a violation of due process. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983); *see Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (party requesting sanction must show that issue preclusion order "bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page15 of 20

Plaintiffs' request. Although EY's production occurred on a rolling basis over many months, EY repeatedly informed Plaintiffs that its production was not yet complete. Having failed to show that EY engaged in any discovery misconduct at all, Plaintiffs cannot make even this threshold showing for discovery sanctions.

**2. Plaintiffs Have Suffered No Prejudice**

Where discovery misconduct has been shown, the key factor to be considered is the risk of prejudice to the party seeking sanctions. *Leon*, 464 F.3d at 958; *Unigard*, 982 F.2d at 368 (9th Cir. 1992) (holding that evidence preclusion is appropriate only if allowing the evidence "would unfairly prejudice an opposing party"); *Lewis v. Telephone Empl. Credit Union*, 87 F.3d 1537, 1558 (9th Cir. 1996) (sanctions must be "carefully fashioned" and may not "unduly interfere[] with [a party's] ability to produce relevant evidence.").

Here, Plaintiffs have offered no evidence of any prejudice. Although they complain that they have already taken several depositions without the benefit of EY's November 2009 production (Mot. at 7-9), Plaintiffs have made no showing that any of the documents produced by EY in November have anything to do with any of those witnesses, or that they were not already available to Plaintiffs through previous productions by EY or Juniper. Indeed, Plaintiffs' motion does not even discuss the *content* of EY's November production. In fact, as discussed above, EY's November production consists of documents that are either largely irrelevant or duplicative of documents previously produced by EY. Having made no showing at all about the content of EY's production, Plaintiffs cannot possibly show sufficient prejudice to warrant the drastic sanctions they seek.

Nor is there any basis for Plaintiffs to complain about their ability to prepare for future witnesses. Plaintiffs' Motion complains repeatedly about receiving documents approximately one month before the December 1, 2009 discovery cutoff, but Plaintiffs fail to mention that both EY and Juniper have already agreed to allow Plaintiffs to depose both current and former personnel after the December 1 discovery cutoff. Indeed, Plaintiffs only deposed one EY witness (other than a 30(b)(6) witness regarding the 2000 workpapers) before the December 1 cutoff. EY has produced or will produce at least four witnesses after the December 1 cutoff,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page16 of 20

including one witness who will be produced on January 6, 2010. Farthing Decl. ¶ 22. Plaintiffs have had ample opportunity to review the November production before proceeding with those depositions.

Indeed, the cases cited by Plaintiffs demonstrate the difference between cases where prejudice has occurred and the lack thereof in this case. For example, Plaintiffs rely on *Adriana* (Mot. at 5, 7), which held that "[d]elay alone has been held to be insufficient prejudice." 913 F.3d at 1411-12. But the court in *Adriana* awarded sanctions based on Adriana's "repeated failure to appear at scheduled depositions" on six separate occasions, and "continuing refusal to comply with court-ordered production of documents" despite multiple court orders. *Id.* EY's production of about 8,300 largely irrelevant and duplicative documents a few weeks before the discovery cut-off (and many weeks before Plaintiffs actually deposed most EY witnesses) does not come close.

Nor does this case resemble *Anheuser-Busch*, on which Plaintiffs also rely. Mot. at 7-8 & n.6. In *Anheuser-Busch*, the defendants falsely told the court and opposing counsel that key documents ordered to be produced by the court had been destroyed in a fire, when in fact they still existed, and their existence did not come to light until after a trial had occurred. 69 F.3d at 342-43. In *G-K Properties*, another case cited by Plaintiffs (Mot. at 6-7), the court found prejudice because it had to delay the trial date after plaintiffs failed to comply with two orders compelling production. 577 F.2d at 647. And in *Payne* (cited at Mot. at 5-6, 8), the court found prejudice where plaintiffs tendered discovery responses near to or after the close of discovery, and only after multiple orders compelling production. 121 F.3d at 505, 508.[11] Plaintiffs here have not shown, and cannot show, prejudice of any kind, much less the type of prejudice that supported sanctions in cases like *Adriana*, *Anheuser-Busch*, *G-K Properties*, and *Payne*. *See also Fair Housing of Marin*, 285 F.3d at 905 (finding prejudice where defendant "misrepresented

---

[11] The other cases cited in Plaintiffs' Motion are completely inapposite, imposing sanctions for such behavior as judge shopping, blatant spoliation and failure to comply with a pretrial disclosure order. *See* Mot. at 5, 8 n.5, *citing Hernandez v. City of El Monte*, 138 F.3d 393, 400 (9th Cir. 1998); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 365, 368-69 (9th Cir. 1992); *Malone v. U.S. Postal Service*, 833 F.2d 128, 129 (9th Cir. 1987).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

EY'S OPP. TO LEAD PLF.'S MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page17 of 20

to both counsel and to the district court that the documents did not exist); *N. Am. Watch Corp.*, 786 F.2d at 1449, 1451 (finding prejudice where defendants "falsely represented to the court by way of affidavit that they did not have" control over the requested documents, and only produced them the day before a deposition and despite the "imminence of the trial date").

**3. The Availability of Less Drastic Sanctions Weighs Heavily Against Plaintiffs' Motion**

Another important factor weighing against Plaintiffs' request for issue preclusion sanctions is the availability of lesser sanctions. *Leon*, 464 F.3d at 958. Because Plaintiffs have shown no prejudice – and, indeed, no discovery misconduct by EY at all – no sanctions of any kind are appropriate. But even if Plaintiffs had suffered prejudice from, for example, having deposed several witnesses without the benefit of key documents, such prejudice could be cured with sanctions far short of what Plaintiffs seek here. Indeed, Plaintiffs have requested such lesser sanctions in their motion by requesting relief from the discovery cutoff and an order allowing them to recall witnesses. Mot. at 1, 9. Even these lesser sanctions are unnecessary: both EY and Juniper previously agreed to allow Plaintiffs to take depositions after the December 1 cut-off, so Plaintiffs will have ample opportunity to question witnesses about the documents in EY's November production. Farthing Decl. ¶ 22.

Moreover, because Plaintiffs had virtually all of the relevant EY documents by January 2009, it is highly unlikely that Plaintiffs will be able to show a *bona fide* need for additional time with any of the witnesses they have already deposed. But in the unlikely event that Plaintiffs were to make such a showing, EY is willing to meet and confer with Plaintiffs to discuss additional deposition time with such witnesses.

**4. The Remaining Factors Weigh Against Sanctions**

Another factor to be considered is the public's interest in expeditious resolution of litigation. *Leon*, 464 F.3d at 958. This factor, to the extent it is even implicated here, weighs against sanctions. First, a trial date in this case has not yet been set, and therefore it has not been

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page18 of 20

delayed by EY's production of documents in November.[12] Second, as set forth above, Plaintiffs have been in possession of the key EY documents, including all audit workpapers related to the claim against EY, since early January 2009. Farthing Decl. Exs. 8-9. Third, the November production was largely duplicative of documents produced before, but from other custodians. Koreneff Decl. ¶ 4. Finally, it should go without saying that the public policy favoring disposition of cases on their merits weighs heavily in favor of EY and against an award of sanctions that would essentially strip EY of its ability to defend the lack of merit of Plaintiffs' allegations.

### C. Plaintiffs' Request For An Order Precluding EY From Asserting The Attorney-Client Privilege Or Work Product Protection Is Unwarranted

Plaintiffs also request an order precluding EY from asserting the attorney-client privilege or work product protection. This request, for which Plaintiffs do not cite any legal or factual basis, is completely unwarranted. "The waiver of the attorney-client privilege is an extreme sanction and is reserved for cases of unjustifiable delay, inexcusable conduct or bad faith." *Geico Casualty Co. v. Beauford*, No. 8:05-CV-697-T-24EAJ, 2006 WL 2990454, at *1 (M.D. Fla. Oct. 19, 2006); *Welch v. Eli Lilley & Co.*, No. 1:06-cv-0641-RLY-JMS, 2009 WL 700199, at *14 (S.D. Ind. Mar. 16, 2009) ("Finding a waiver of the attorney-client privilege is a serious sanction."). Plaintiffs make no attempt to demonstrate why they believe they are entitled to this very rare form of relief, or even what EY's November production has to do with EY's assertion of the attorney-client privilege or work product protection. EY has produced a privilege log to Plaintiffs (Farthing Decl. Ex. 12), and Plaintiffs have not challenged a single entry on that log. Under the circumstances, Plaintiffs' request for an order stripping EY of the attorney-client privilege and work product protection in this case is meritless.

---

[12] For the same reason, the factor relating to the Court's need to manage its dockets also weighs in EY's favor and against sanctions. In addition, this factor further weighs in favor of EY because it is Plaintiffs that have cluttered the Court's docket by improperly filing this motion for sanctions without first moving to compel, or even meeting and conferring before filing this motion. Farthing Decl. ¶ 23.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

EY'S OPP. TO LEAD PLF.'S
MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

Case5:06-cv-04327-JW Document481 Filed12/22/09 Page19 of 20

**D. Plaintiffs' Request For Further Relief Is Unwarranted And Unnecessary**

Finally, Plaintiffs' request for further relief in the form of relief from the discovery cutoff and the ability to recall witnesses should also be denied. Both EY and the Juniper defendants have allowed depositions to occur after the fact discovery cutoff. Farthing Decl. 22; Dkt. 437. Plaintiffs have made no showing as to why particular witnesses would need to be recalled to testify on topics raised for the first time in the November production, but to the extent they could make such a showing, the proper method of addressing that would be for the parties to meet and confer, and then seek Court involvement only if necessary. Sanctions are unwarranted and unnecessary.

**E. Plaintiffs' Insinuations of Spoliation Are Meritless**

Plaintiffs' Motion suggests that EY concealed from Plaintiffs that certain workpapers for 1999 and 2000 had not been produced, that the 2000 workpapers are missing, and that this purported misconduct justifies issue preclusion sanctions. Mot. at 3, 7. Plaintiffs are wrong on all accounts. Far from being missing or hidden, the 1999 workpapers relating to audits after Juniper's initial public offering[13] have been produced. Farthing Decl. Ex. 20.[14] In addition, all 2000 workpapers that EY has been able to locate have also been produced. *Id.* Although EY has been unable to locate the bulk of the 2000 workpapers despite repeated and exhaustive searches, there can be no legitimate argument that those documents were spoliated because the record shows that they were missing before EY was placed on notice that they were potentially relevant to litigation. *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

---

[13] EY has not produced documents relating to audits performed before Juniper's initial public offering because they are irrelevant to this action. *See* Farthing Decl. Ex. 20. Plaintiffs have never moved to compel production of those documents.

[14] EY's production is bates-numbered in such a way as to permit easy identification of the year's audit to which they relate. For example, the 2000 workpapers are marked as EY 00 000001-000036, and the 2001 workpapers are marked EY 01 000001-000878 (produced on December 15, 2008) and EY-JNPR-WP-01-000001-002383 (produced on January 9, 2009). *See* Farthing Decl. Exs. 8-9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

EY'S OPP. TO LEAD PLF.'S MOTION FOR SANCTIONS
Nos. 5:06-CV-04327-JW

**F. Plaintiffs' Motion Should Be Denied Because They Did Not Meet And Confer**

Plaintiffs did not meet and confer with EY before filing the Motion. Farthing Decl. ¶ 23; *see also id.* at Ex. 19. Local Rule 37-1(a) provides that "The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civ. L. R. 37-1(a). Accordingly, Plaintiffs' motion should be summarily denied on this basis alone. *See Doe v. City of San Mateo*, No. C 07-05596 SI, 2009 WL 1636142, at *1 (N.D. Cal. June 8, 2009); *Myron v. Terhune*, No. C 99-21265 JW (PR), 2008 WL 4891046, at *1 (N.D. Cal. Nov. 12, 2008); *accord So v. Land Base, LLC*, No. CV 08-03336 DDP (AGRx), 2009 WL 2407954, at *2 (C.D. Cal. Aug. 4, 2009) (same result applying the Central District's local rules); *see also* Fed. R. Civ. P. 37(a)(1) (requiring a motion to compel to "include a certification that the movant has in good faith conferred with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").

**IV. CONCLUSION**

For the foregoing reasons, EY respectfully requests that Plaintiffs' motion be denied.

Dated: December 22, 2009

LATHAM & WATKINS LLP

By /s/ Patrick E. Gibbs
Patrick E. Gibbs
Attorneys for Defendant
Ernst & Young LLP