| | |
|---|---|
| NINA F. LOCKER, State Bar # 123838<br>Email: nlocker@wsgr.com<br>STEVEN GUGGENHEIM, State Bar # 201386<br>Email: sguggenheim@wsgr.com<br>JONI OSTLER, State Bar # 230009<br>Email: jostler@wsgr.com<br>CRYSTAL M. GAUDETTE, State Bar # 247712<br>Email: cgaudette@wsgr.com<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone:  (650) 493-9300<br>Facsimile:   (650) 565-5100<br><br>*Counsel for Defendants Juniper Networks, Inc., Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy and William R. Stensrud ("Juniper Defendants")* | JEFFREY B. RUDMAN (*Pro Hac Vice*)<br>Email: jeffrey.rudman@wilmerhale.com<br>EMILY R. SCHULMAN (*Pro Hac Vice*)<br>Email: emily.schulman@wilmerhale.com<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>60 State Street<br>Boston, MA  02109<br>Telephone:  (617) 526-6000<br>Facsimile:   (617) 526-5000<br><br>JONATHAN A. SHAPIRO (*Pro Hac Vice*)<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>Email: jonathan.shapiro@wilmerhale.com<br>1117 California Avenue<br>Palo Alto, CA  94304<br>Telephone:    (650) 858-6000<br>Facsimile:     (650) 858-6100<br><br>*Co-Counsel for Defendant Juniper Networks, Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION<br><br>_____<br>This Document Relates To:<br><br>All Actions<br>_____ | CASE NO.: C06-04327-JW (PVT)<br><br>**THE JUNIPER DEFENDANTS' JOINDER IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR SANCTIONS AGAINST ERNST & YOUNG LLP**<br><br>DATE:         January 12, 2009<br>TIME:         10:00 a.m.<br>BEFORE:   Hon. Patricia V. Trumbull |

Juniper Networks, Inc. ("Juniper" or the "Company"), and individual defendants Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy, and William R. Stensrud (collectively with Juniper, the "Juniper Defendants") respectfully submit this joinder in defendant Ernst & Young LLP's ("EY") opposition to Lead Plaintiff's Motion for Sanctions Against Ernst & Young LLP ("Motion" or "Mot.").

## INTRODUCTION

In what appears to be yet another attempt by Plaintiff to exceed the generous deposition limits it has already been given, in its Motion for Sanctions against EY, Plaintiff asks this Court to enter an order, *inter alia*, permitting Plaintiff "to recall witnesses, as needed to address fully the matters referenced in E&Y's . . . [November 2009] production." Mot. at 1. Plaintiff claims it has been "materially prejudiced" with respect to the "prosecution of this action" because Plaintiff had already deposed certain Juniper employees, including certain of the Juniper Defendants, before EY produced additional documents on November 2, 2009. *Id.* at 1, 8-9. Yet Plaintiff was well aware that EY was going to produce further documents at the time it chose to go forward with these depositions. And Plaintiff never once suggested that it needed to delay those depositions until the EY production was complete. Thus, as explained below, Plaintiff's claim of prejudice is wholly unsupported. In fact, the only real prejudice is the prejudice that witnesses would be forced to suffer if Plaintiff were allowed to re-open depositions it voluntarily took despite knowing about the allegedly incomplete EY production,

It bears noting that Plaintiff does not even explain why the documents in EY's November production would be relevant to depositions of the Juniper witnesses and Juniper Defendants it has already deposed, much less identify specific documents that it did not have previously that could justify reopening any of the depositions it chose to go forward with. At bottom, EY's November 2, 2009 production of documents is just a pretext for Plaintiff to claim a wholesale right to reopen discovery. Plaintiff's request should be denied.

**RELEVANT FACTUAL BACKGROUND**

Although discovery commenced in this action in November 2008, Plaintiff only took one deposition before September 1, 2009. *See* Declaration of Joni Ostler in Support of the Juniper Defendants' Joinder in Opposition to Lead Plaintiff's Motion for Sanctions Against Ernst & Young LLP ("Ostler Decl.") filed herewith, at ¶ 2. This deposition was Juniper's 30(b)(6) designee on topics relating to certain of Juniper's restatement work, taken in April 2009. *Id.* On September 1, 2009, Juniper's co-defendant and outside auditor EY produced additional documents to Plaintiff. Declaration of David Harrison in Support of Lead Plaintiff's Motion for Sanctions Against Defendant Ernst & Young (Dkt. 428) ("Harrison Decl.") at Ex. 2.

The second deposition Plaintiff took was on September 18, 2009. Ostler Decl. ¶ 2. Thus, between EY's September 1, 2009 production and the next deposition, Plaintiff had nearly three full weeks to review the documents EY produced. Thereafter, Plaintiff moved forward with the depositions of fourteen additional Juniper witnesses (current and former employees and individual defendants) in September, October and November 2009. Plaintiff did so despite the fact that EY's letter to Plaintiff on September 4, 2009 unequivocally stated that EY had still more desk files to produce. Harrison Decl. Ex. 3, at 2. During this time, Plaintiff never hinted to Juniper's counsel that EY's allegedly "delayed" September 1, 2009 production of documents had hindered Plaintiff's ability to question any of the Juniper witnesses. Plaintiff did not suggest that any depositions of Juniper witnesses should be delayed until EY's production was complete. And, Plaintiff did not seek any relief from the Court with respect to the timing of depositions or the discovery deadline to accommodate the additional EY production Plaintiff knew was coming.

It was not until November 12, 2009, when Plaintiff filed its present motion for sanctions against EY, that Plaintiff first claimed that EY's production of documents in September and November was a reason to re-open the depositions of Juniper witnesses. Juniper promptly informed Plaintiff that it was willing to adjourn the depositions of Juniper witnesses to the extent Plaintiff claimed it needed additional time to review EY's production. Ostler Decl. ¶ 3. On November 16, Plaintiff accepted Juniper's offer and adjourned the depositions of Juniper employee William Carey and defendants Marcel Gani and Kenneth Goldman. *Id.* ¶ 4. Plaintiff

nonetheless chose to go forward with the depositions of Juniper employee Robert Atherton on November 23 and defendant William R. Hearst III on December 4, 2009. Notably, by the time of these depositions, Plaintiff had several weeks to review EY's November 2 production.

## ARGUMENT

Plaintiff's motion requests an order allowing Plaintiff the unlimited ability to recall witnesses based on EY's November 2009 production of documents. Mot. at 1, 8-9. This request is unfounded and should be rejected for two reasons. *First*, Plaintiff has not actually shown any prejudice from EY's production vis-à-vis any of the depositions that have proceeded in the case. *Second,* as Plaintiff's own Motion makes clear, Plaintiff knew in September 2009 that EY's production was not complete, yet Plaintiff chose to proceed with Juniper depositions all the same. Thus, any purported "prejudice" Plaintiff suffered was of its own making.

For these reasons, more fully explained below, Plaintiff's request to re-depose witnesses should be rejected.

### I. PLAINTIFF FAILS TO SHOW ANY ACTUAL PREJUDICE FROM TAKING JUNIPER DEPOSITIONS WITHOUT EY'S NOVEMBER 2009 PRODUCTION

Plaintiff fails to substantiate its claim that EY's November 2009 production "materially prejudiced" Plaintiff's ability to prosecute this case. *See* Mot. at 1, 8-9. In particular, Plaintiff argues that it did not have the chance to review EY's November 2009 production before deposing several Juniper witnesses. *Id.* at 8-9.[1] Yet Plaintiff does not point to a single EY document or related topic area about which Plaintiff did not fully have an opportunity to question a Juniper witness. Thus, while Plaintiff has the burden of showing how its ability to depose Juniper witnesses has been prejudiced by another party's allegedly late production, Plaintiff's claim of harm is wholly unsupported (even if it were not a "harm" entirely of Plaintiff's own making).

---

[1] Plaintiff argues that it will have to take the deposition of Juniper's former Chief Financial Officer before having time to review EY's November 2009 production. Mot. at 8-9. However, that did not happen. Plaintiff adjourned the deposition of Juniper's former CFO to December 14, 2009. Ostler Decl. ¶ 4. Plaintiff therefore had plenty of time to review EY's November 2009 production before that deposition.

Plaintiff's inability to articulate any prejudice is not surprising when one considers the nature of the documents produced. The documents in questions are those of Juniper's outside auditor. As such the universe of relevant EY documents would consist of: (1) documents that Juniper provided to EY during the course of EY's audits; or (2) documents that EY generated of its own accord in order to perform the Juniper audits.

With respect to the first category – documents that Juniper provided to EY during the course of EY's audits – Plaintiffs would already have received many, if not all, of these same documents from Juniper. Many of those same documents were also contained in EY's earlier productions to Plaintiff. Ostler Decl. ¶ 5. Thus, any EY production of this category of documents in November 2009 would be largely duplicative of documents Plaintiff already had. And, again, Plaintiff does not identify a single document that suggests otherwise, let alone point to a specific document that justifies reopening the deposition of Juniper witnesses Plaintiff has already deposed.[2]

The second category – documents that EY generated of its own accord while performing the Juniper audits – would surely be relevant to question EY witnesses, but Plaintiff has offered no reason to believe that any Juniper witnesses would ever have seen such internal EY documents, let alone be able to testify about them. Therefore, Plaintiff could not claim any need to re-depose any Juniper witnesses based on EY's production of such internal EY documents in November 2009.

In addition, the documents that EY produced in November 2009 were desk files relating to EY's audit of Juniper's 2006 financials and its 2006 restatement. Ostler Decl. ¶ 6. But the vast majority of the Juniper witnesses Plaintiff deposed prior to receiving EY's November 2 production were Juniper employees and former employees who had nothing whatsoever to do with the preparation of Juniper's 2006 financials or 2006 restatement. Of the depositions

---

[2] To the extent Plaintiff has chosen to "hide the ball" and wait until its reply papers to actually identify particular document(s) to support its argument that depositions of Juniper witnesses should be re-opened, the Juniper Defendants (and the non-party former Juniper employees) request that the Court allow them to file an additional submission or hold oral argument so they can address any such new contention raised by Plaintiff.

Plaintiff has requested, the one Juniper witness who was most involved in preparing Juniper's restatement is not set to be deposed until December 29. Ostler Decl. ¶ 6. Thus, by the time of that deposition, Plaintiff will have had almost two full months to review EY's November 2 production. Also, although Plaintiff deposed William R. Hearst III, a member of Juniper's Audit Committee, on December 4, 2009, Plaintiffs had *a full month* to review EY's document production in its entirety prior to Mr. Hearst's deposition. Of course, this lawsuit is not even about the 2006 restatement. Rather, it is about Juniper's purportedly intentional failure to properly account for historical stock option grants in years long before 2006. Moreover, it is Juniper's understanding that many of the documents EY produced on November 2, 2009 were duplicative of documents in EY's earlier productions. Ostler Decl. ¶ 5. Given all of this, Plaintiff's claim of prejudice simply does not add up.

## II. PLAINTIFF KNEW EY'S PRODUCTION WAS NOT COMPLETE BUT CHOSE TO PROCEED WITH JUNIPER DEPOSITIONS ANYWAY

Even if Plaintiff could identify a document in EY's November 2009 production that Plaintiff would have used to question a Juniper witness (which Plaintiff has not done), any prejudice to Plaintiff was of its own making. As Plaintiff's own Motion shows, Plaintiff knew at least as early as September 4, 2009 that a further EY production was forthcoming. *See* Harrison Decl., Ex. 3; Mot. at 3. As stated above, Plaintiff's depositions of Juniper fact witnesses did not begin until September 18, 2009. If Plaintiff truly believed it needed *all* EY documents before deposing certain witnesses, Plaintiff could have adjourned specific depositions until EY's production was complete. If necessary, Plaintiff could also have asked for an extension of the discovery cutoff in conjunction with the adjournment of any depositions. Indeed, after Plaintiff filed its motion for sanctions in November 2009, Juniper offered and Plaintiff voluntarily adjourned the depositions of certain Juniper witnesses so Plaintiff could review EY's production more thoroughly – and Juniper agreed to allow those depositions to take place after the discovery cutoff. Ostler Decl. ¶¶ 3-4.

This is exactly the course that Plaintiff took with respect to the deposition of defendant Kenneth Levy. Plaintiff abruptly adjourned Mr. Levy's deposition in November 2009 because Plaintiff wanted to wait until Lisa Berry and KLA-Tencor completed document production

before Mr. Levy's deposition.  Ostler Decl. ¶ 7.  Plaintiff and Mr. Levy thereafter agreed that Mr. Levy's deposition could take place after the discovery cutoff.  *Id.*

This logical solution would have obviated any claimed "prejudice" to Plaintiff and would also have prevented the prejudice to witnesses of being deposed twice.  Yet, with full knowledge that EY's production was not complete, Plaintiff chose to proceed with the depositions of Juniper witnesses anyway – making the strategic decision to use EY's production of documents later as an excuse to ask for a second bite at the apple with certain witnesses.  Having chosen that deposition strategy, it is ludicrous for Plaintiff to now claim that it has been prejudiced by it.

## CONCLUSION

For the foregoing reasons, the Juniper Defendants join in EY's Opposition to Lead Plaintiffs' Motion for Sanctions, and ask that such motion be denied.

Dated:  December 22, 2009

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ Joni Ostler
         Joni Ostler

Counsel for the Juniper Defendants