| | |
|---|---|
| PILLSBURY WINTHROP SHAW PITTMAN LLP | WILSON SONSINI GOODRICH & ROSATI Professional Corporation |
| KIRKE M. HASSON (CA Bar No. 61446) kirke.hasson@pillsburylaw.com | NINA F. LOCKER (CA Bar No. 123838) nlocker@wsgr.com |
| ROBERT J. NOLAN (CA Bar No. 235738) robert.nolan@pillsburylaw.com | STEVEN GUGGENHEIM (CA Bar No. 201386) sguggenheim@wsgr.com |
| ALEX SANTANA (CA Bar No. 252934) alex.santana@pillsburylaw.com | JONI OSTLER (CA Bar No. 230009) jostler@wsgr.com |
| 50 Fremont Street San Francisco, CA  94105 Telephone: (415) 983-1000 Facsimile: (415) 983-1200 | 650 Page Mill Road Palo Alto, CA 94304-1050 Telephone:  (650) 493-9300 Facsimile:   (650) 565-5100 |

*Attorneys for the Audit Committee of the Board of Directors of Juniper Networks, Inc.*

*Counsel for Defendants Juniper Networks, Inc., Scott Kriens, Pradeep Sindhu, Marcel Gani, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy and William R. Stensrud ("Juniper Defendants")*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re JUNIPER NETWORKS, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>All Actions<br>_____ | CASE NO.: C06-04327-JW (PVT)<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "DOCUMENTS PREPARED FOR AND/OR SHARED WITH DEFENDANT ERNST & YOUNG" BY JUNIPER AND ITS AUDIT COMMITTEE**<br><br>DATE:      February 2, 2010<br>TIME:      10:00 a.m.<br>BEFORE:   Hon. Patricia V. Trumbull |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................1

RELEVANT FACTUAL BACKGROUND ....................................................................................1

ARGUMENT ..................................................................................................................................3

I.    DISCLOSURE TO ERNST & YOUNG DID NOT RESULT IN A WAIVER OF WORK PRODUCT PROTECTION ...................................................................................4

II.    PLAINTIFF HAS ACCESS TO THE FACTS AND IS SEEKING OPINION WORK PRODUCT WITH NO SHOWING OF SUBSTANTIAL NEED OR UNDUE HARDSHIP ............................................................................................................8

CONCLUSION .............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Employers Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-3002 PVT, 2007 WL 2947423 (N.D. Cal. Oct. 6, 2007) .................................................................................................. 9

*Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-CV-2152, 1998 U.S. Dist. LEXIS 23207 (S.D. Fla. May 18, 1998) ............................................................................................. 6

*Hickman v. Taylor*, 329 U.S. 495 (1947) ........................................................................................ 9

*Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992) ................................. 9

*In re Grand Jury Subpoena (Mark Torf / Torf Envtl. Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) ............................................................................................................................................ 4

*In re JDS Uniphase Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 76169 (N.D. Cal. Oct. 5, 2006) ............................................................................................................................. 5, 6

*In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 U.S. Dist. LEXIS 18215 (S.D.N.Y. Dec. 23, 1993) ........................................................................................................... 6

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176 (N.D. Ill. 2006) ............................................................................................................................................ 6

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004) ............... *passim*

*Middlesex Retirement System v. Quest Software, Inc.*, CV 06-6863-DOC (RNBx) (C.D. Cal. July 8, 2009) ............................................................................................................. 6

*Middlesex Retirement System v. Quest Software, Inc.*, CV 06-6863-DOC (RNBx) (C.D. Cal. September 18, 2009) .............................................................................................. 6

*S.E.C. v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008) .............................................................. *passim*

*S.E.C. v. Schroeder*, No. C07-03798 (JW) (HRL), 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009), *objections overruled by S.E.C. v. Schroeder,* 2009 WL 1635202 (N.D. Cal. Jun 10, 2009) ....................................................................................... 4, 5, 6, 7

*S.E.C. v. Schroeder,* 2009 WL 1635202 (N.D. Cal. Jun 10, 2009) ................................................ 5

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) ..................................................... 6, 7

### RULES

American Institute of Certified Public Accountants Rule § 301.01 ............................................... 8

Juniper Networks, Inc. ("Juniper" or the "Company") and the Audit Committee of its Board of Directors respectfully submit this memorandum in opposition to Plaintiff's Motion to Compel Production of "Documents Prepared for and/or Shared with Ernst & Young" by Juniper and its Audit Committee ("Motion" or "Mot.").

**INTRODUCTION**

This is the latest of several motions, noticed for hearing on February 2, where Plaintiff claims that the work product protection attached to Juniper's investigation into stock option backdating was waived to the extent that information was shared with Juniper's auditors, Ernst & Young ("EY"). As discussed below and in earlier filings, the better view, and the controlling rule in this District, is that sharing such work product with outside auditors is not a waiver.

**RELEVANT FACTUAL BACKGROUND**

**Background of the Audit Committee Investigation.** This is a securities fraud class action in which Plaintiff alleges that Juniper and certain of its current and former officers intentionally backdated stock options in years past, resulting in false financial statements. The possibility of errors in Juniper's stock option accounting came to light in early 2006. In the wake of a subpoena from the United States Attorney and a request for information from the Securities and Exchange Commission, Juniper's Audit Committee hired the law firm of Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") to assist in the Audit Committee's investigation into Juniper's historical option granting practices. *See* Motion of the Audit Committee of the Board of Directors of Juniper Networks, Inc. for Protective Order Regarding the Deposition of William Hearst ("AC Mot."), filed December 14, 2009, at 3-4, 13-14 (Dkt. No. 465); Declaration of Kirke Hasson in support thereof ("Hasson 12/14 Decl.") at ¶¶ 2-11 (Dkt. No. 466). Pillsbury, in turn, hired forensic accountants KPMG to assist. Hasson 12/14 Decl. ¶ 12. Pillsbury's investigation continued through 2006. *Id.* Juniper ultimately determined that it would need to restate its financial statements, and issued restated financial statements in March 2007, which were audited by EY. *Id.* Ex. E.

**The Information Shared With EY.** As the Audit Committee investigation progressed, EY requested that Pillsbury and KPMG share with EY certain work product-protected

information regarding the investigation. Declaration of Kirke M. Hasson in Support of Opposition to Plaintiff's Motion to Compel Production of "Documents Prepared for and/or Shared with Defendant Ernst & Young" By Juniper and Its Audit Committee ("Hasson Decl.") ¶¶ 3-5. EY needed certain information in order to adequately audit Juniper's restated financial statements.[1] *Id.* ¶ 4.

**Juniper's Privilege Assertions.** When discovery in this action commenced in November 2008, Plaintiff served document requests to both Juniper and EY. In timely served objections, Juniper objected to each of Plaintiff's document requests to the extent it called for the production of documents containing work product, and in particular, objected to the Plaintiff's demand for all documents prepared by the Audit Committee during its investigation of Juniper's historical option granting practices. Declaration of Joni Ostler in Support of Opposition to Plaintiff's Motion to Compel Production of "Documents Prepared for and/or Shared with Defendant Ernst & Young" By Juniper and Its Audit Committee ("Ostler Decl.") ¶ 2. In subsequent discussions with Plaintiff's counsel beginning in January 2009 and stretching into July 2009, Juniper's counsel and counsel for its Audit Committee repeatedly informed Plaintiff of their position that the Audit Committee did not waive work product protection by sharing certain Pillsbury and KPMG work product with EY. *Id.* ¶ 3; Hasson Decl. ¶ 9. In addition, Pillsbury reviewed documents that EY proposed to produce to Plaintiff, and instructed EY to either withhold or redact documents that reflected or contained Pillsbury's or KPMG's work product, which EY did. Hasson Decl. ¶ 8.

It was not until the first week of December 2009 – after fact discovery had closed – that Plaintiff indicated for the first time its intention to bring a motion to compel challenging Juniper's assertion of work product protection with respect to information that Pillsbury and KPMG had shared with EY. Ostler Decl. ¶ 4. As recently as November 4, 2009, Plaintiff had

---

[1] Plaintiff does not allege that Juniper's restated financials are incorrect. Rather, Plaintiff's claims relate solely to financial statements issued in *prior* periods.

disclaimed any intention of seeking work product that had been shared with EY.  *See id.* Ex. 1 at 14:17-15:12.  On December 8, 2009, Plaintiff filed the present motion to compel.[2]

## ARGUMENT

Plaintiff argues that Juniper must produce any documents listed on the four privilege logs attached to the Declaration of David Harrison ("Harrison Decl.") (Dkt. 457).  Mot. at 1.  Plaintiff argues that Juniper's disclosure of work product information to EY waived work product protection for information in those documents of EY.  *Id*. at 2.  The principal issue before the Court is whether Juniper's Audit Committee waived its work product protection by sharing certain work product with EY.  This is because all the documents at issue were withheld or redacted on the basis of attorney work product protection.  *See* Harrison Decl. Exs. A, B, C.[3]  Therefore, this opposition focuses on Plaintiff's argument with respect to waiver of work product protection.

At the outset, it is important to note that nowhere in Plaintiff's Motion does Plaintiff contend that the work performed by Pillsbury in the Audit Committee investigation was *not* entitled to work product protection in the first instance.  Nor did Plaintiff ever contend, during any meet and confer conversation or correspondence throughout the entire history of fact

---

[2] The present motion is styled as a motion to compel "documents prepared for and/or shared with" EY.  That title is potentially misleading, because neither Pillsbury nor KPMG prepared any of the documents at issue for EY.  Hasson Decl. ¶ 5.  Some of the documents at issue are documents that reflect work product that was shared with EY.  However, Exhibit B to the Declaration of David Harrison is a privilege log that catalogues attorney-client privileged and work product protected information of the Audit Committee itself, much of which has no connection to and was never shared with EY.  *Id*. ¶ 6.  Exhibit D to the Declaration of David Harrison is a privilege log that catalogues attorney-client privileged and work product protected information for Juniper itself, much of which has no connection to and was never shared with EY.  Ostler Decl. ¶ 7.

[3] Plaintiff's motion states that certain documents on Juniper's privilege log (Harrison Decl. Ex. D) were withheld on the basis of attorney-client privilege alone.  Mot. at 2 n.2.  Subsequent to Plaintiff's motion to compel, Juniper re-reviewed its privilege log and determined that those documents were not privileged and were included on Juniper's privilege log in error.  Those documents have been produced.

discovery in this case, that Pillsbury's work was not entitled to work product protection.[4] Ostler Decl. ¶ 6.

## I. DISCLOSURE TO ERNST & YOUNG DID NOT RESULT IN A WAIVER OF WORK PRODUCT PROTECTION

Plaintiff argues that Juniper's Audit Committee waived its work product protection with respect to information shared with Juniper's outside auditors EY. Mot. at 2-4. That argument lacks merit, and has been definitively rejected in this District.

As previously explained in the Audit Committee's Motion for Protective Order filed December 14, 2009, the disclosure of information to outside auditors does not constitute a waiver of work product protection. *See* Dkt. No. 465 at 15-17. Courts in the Northern District of California have repeatedly so held. *See S.E.C. v. Schroeder*, No. C07-03798 (JW) (HRL), 2009 WL 1125579, at *3 (N.D. Cal. Apr. 27, 2009), *objections overruled by S.E.C. v. Schroeder,* 2009 WL 1635202 (N.D. Cal. Jun 10, 2009); *S.E.C. v. Roberts*, 254 F.R.D. 371, 381-82 (N.D. Cal.

---

[4] On November 9, 2009, Plaintiff changed its tune, retreating from its admission that the investigation was protected work product, and taking the new and afterthought position that the investigation itself was not protected work product. Lead Plaintiff's Submission in Opposition to Audit Committee's Motion for a Protective Order as to Statements Made by Former Employee Brienne Fisher to the Audit Committee's Counsel at 7. Citing to an inaccurate statement of law in this circuit, Plaintiff led this Court to an order regarding the interview of one of the witnesses. *See* December 9, 2009 Order regarding the Audit Committee's interview of Brienne Fisher. Dkt. No. 458. On December 18, 2009, Juniper's Audit Committee filed a motion for leave to file a motion for reconsideration of that portion of the Court's December 9, 2009 Order that found that the Audit Committee's investigation was not entitled to work product protection. Dkt. No. 477. As explained in detail in the Audit Committee's Motion for Protective Order filed December 14, 2009, however, Pillsbury's work is indeed entitled to work product protection, because Pillsbury's work was commenced and conducted because of, and in direct response to, government investigations and civil lawsuits. *See* Dkt. No. 465 at 7-15. Juniper expected and intended that Pillsbury, through its investigative work, would advise Juniper's Audit Committee regarding Juniper's potential exposure to criminal and civil litigation and act on Juniper's behalf in responding to subpoenas and requests for information from the Department of Justice and the Securities and Exchange Commission. *Id.* at 14. Juniper also expected Pillsbury's investigation and analyses would be used to assist in Juniper's defense of the private civil litigation that had been filed even before the investigation commenced, and also in defense of any litigation later filed by either the Department of Justice or the Securities and Exchange Commission. *Id.* Pillsbury was hired specifically because of and in response to the threat of civil and criminal litigation, and the work Pillsbury performed was unquestionably done at least in part to advise and defend Juniper in response to threatened and actual litigation. *Id.* Accordingly, under Ninth Circuit precedent, Pillsbury's work is entitled to work product protection. *Id.*; *In re Grand Jury Subpoena (Mark Torf / Torf Envtl. Mgmt.)*, 357 F.3d 900, 909 (9th Cir. 2004) (documents prepared *at least in part* to help advise and defend company anticipated litigation are entitled to work product protection).

2008); *In re JDS Uniphase Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 76169, at *11 (N.D. Cal. Oct. 5, 2006) (Laporte, J.); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 449 (S.D.N.Y. 2004).

In *Schroeder*, 2009 WL 1635202, Judge Ware overruled the objections to Magistrate Judge Lloyd's order found at 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009). There, defendant sought evidence regarding the substance of interviews by counsel for a special investigating committee, arguing that disclosures made to the company's outside auditors constituted a waiver of work product protection. As Judge Lloyd explained:

> [U]nder the circumstances presented here, this court finds that the better view, recently followed by another court in this district in a different stock option backdating case, is that espoused by *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004). That court concluded that disclosures to outside auditors do not have the "tangible adversarial relationship" requisite for waiver. *Id.* at 447. The court reasoned:
>
>> [A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine. Nor should it be. A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud. Indeed, this is precisely the type of limited alliance that courts should encourage.

*Schroeder*, 2009 WL 1125579, at *9.

Similarly, in *Roberts*, 254 F.R.D. at 382, Judge Patel held that disclosure of information by counsel for an investigating committee to the company's auditors did not constitute a waiver. In *Roberts*, as here, the Board committee investigated allegations of stock option backdating, using independent counsel who interviewed dozens of persons. Judge Patel recognized that the resulting interview notes "are classic attorney work product," *id.* at 375, and recognized that the relationship between the company and its auditor in such a situation is "not an 'adversary or a conduit to a potential adversary.'" *Id.* at 381 (citation omitted). Rejecting the argument that, *in other contexts*, the outside auditor is an "independent watchdog," Judge Patel recognized that in *this* context "the Special Committee and the auditors have a common goal – correct past wrongdoings that occurred . . . – and a common body whose interests they represent" and thus in this context "the auditors

and the Special Committee have aligned interests." *Id*. at 382. The court further found that policy supports this determination:

> [T]his court finds that its holding furthers the strong public policy of encouraging critical self-policing by corporations. Indeed, sanctioning a broad waiver here would have a chilling effect on the corporation's efforts to root out and prevent corporate fraud and disclose the results as necessary to its auditors.

*Id.*; *accord In re JDS Uniphase Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 76169, at *11 (disclosure to outside auditors does not waive work product because it does not increase the danger that true adversaries will obtain the information); *Merrill Lynch & Co.*, 229 F.R.D. at 449 (holding that no waiver occurs where information is shared with outside auditors).[5]

In arguing to the contrary, Plaintiff relies on two slip opinions from a case in the Central District of California: *Middlesex Retirement System v. Quest Software, Inc.*, CV 06-6863-DOC (RNBx) (C.D. Cal. July 8, 2009) ("*Quest 1*") and *Middlesex Retirement System v. Quest Software, Inc.*, CV 06-6863-DOC (RNBx) (C.D. Cal. September 18, 2009) ("*Quest 2*") (attached as exhibits E and F to the Harrison Decl., Dkt. No. 457). Mot. at 2-3. As those decisions acknowledged, they are not consistent with authority in the Northern District of California, which has *rejected* Plaintiff's position and held that a disclosure to outside auditors does *not* constitute a waiver because auditors are not in an adversarial relationship to the company – and hence, are not a conduit to a potential adversary. *See Quest 1* at 10 (citing *S.E.C. v. Schroeder*, No. C07-03798, 2009 WL 1125579, at *9 (N.D. Cal. Apr. 23, 2009), *objections overruled by* 2009 WL 1635202 (N.D. Cal. June 10, 2009)); *JDS Uniphase* 2006 U.S. Dist. LEXIS 76169, at *1-2; *Roberts*, 254 F.R.D. at 375 (N.D. Cal. 2008)); *Quest 2* at 5.[6]

---

[5] *See also In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 U.S. Dist. LEXIS 18215, at *21 (S.D.N.Y. Dec. 23, 1993) (no waiver of work product privilege because an auditor is "not reasonably viewed as a conduit to a potential adversary."); *Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-CV-2152, 1998 U.S. Dist. LEXIS 23207, at *13-14 (S.D. Fla. May 18, 1998) (disclosure to an outside auditor does not waive work product protection because accountants are not considered a conduit to a potential adversary and there is an expectation of confidentiality); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (holding that independent auditors do not have an adversarial relationship with their clients).

[6] In addition, as Plaintiff notes, in deciding that outside auditors were conduits to potential adversaries, Magistrate Block was persuaded by dicta from *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984). Mot. at 3; *Quest 1* (Harrison Decl. Ex. E) at 10. *Arthur Young*, however, did not involve attorney work product at all, let alone the question whether a company's attorney
(continued...)

Plaintiff argues that the Court should follow the *Quest* decision in this instance because, according to Plaintiff, EY's interests and the interests of Juniper's Audit Committee were purportedly "not aligned" (Mot. at 3-4), resurrecting the exact "watchdog" argument Judge Patel explicitly rejected in *Roberts*. Plaintiff thus misses the point recognized by Judges Patel, Lloyd and Ware in the Northern District, that *in this context* the interests of the committee and the auditors are aligned.

The relevant inquiry is whether the disclosure of work product to a third party enables an *adversary* to gain access to the work product. *Schroeder*, 2009 WL 1125579, at *8; *Roberts*, 254 F.R.D. at 382. It therefore makes no difference whether EY's interests were perfectly aligned with those of the Audit Committee, or whether the sharing of work product served a "litigation purpose," as long as EY and the Audit Committee did not have an adversarial relationship and EY was not a conduit to a potential adversary. *Schroeder*, 2009 WL 1125579, at *9; *Roberts*, 254 F.R.D. at 382; *accord Merrill Lynch*, 229 F.R.D. at 446-47 (waiver analysis focuses on existence of adversarial relationship).

In that regard, the majority of courts to address similar factual circumstances – *i.e.,* a company's investigative committee sharing certain work product with the company's outside auditors – have found that disclosure to auditors does *not* waive work product protection because the work product is shared with the auditors in furtherance of the *common goal* of correcting past errors in financial statements. *Schroeder*, 2009 WL 1125579, at *9; *Roberts*, 254 F.R.D. at 382; *Merrill Lynch*, 229 F.R.D. at 448.

Juniper's relationship with EY, and the nature of the work product disclosures made to EY in this case, is indistinguishable from the facts presented in *Schroeder*, *Roberts*, and *Merrill Lynch*. Juniper's Audit Committee shared certain work product with EY as necessary to allow both Juniper and EY to work side-by-side on the common task of determining the existence and

---

(...continued from previous page)
work product protection is waived by sharing work product with the company's auditors. Rather, in *Arthur Young*, the Supreme Court declined to recognize a new "auditor" work product privilege that would shield auditors' work papers from disclosure in response to an IRS subpoena. 465 U.S. at 815-21.

1  scope of accounting errors in Juniper's historical financial statements, and correcting those
2  accounting errors by issuing restated numbers. As in *Schroeder*, *Roberts*, and *Merrill Lynch*,
3  Juniper's Audit Committee responded to EY's requests for information so that EY could further
4  assess Juniper's internal controls and assist in EY's audit of Juniper's restatement. 229 F.R.D. at
5  448. These tasks were part of the joint effort of both Juniper and EY to detect errors, understand
6  how those errors occurred, and correct those errors. Moreover, EY, as Juniper's outside auditor,
7  was under an ethical obligation to keep information confidential except under limited
8  circumstances not present here. *See Merrill Lynch*, 229 F.R.D. at 448 (holding that outside
9  auditors were "under an ethical and professional obligation to maintain materials received from
10 its client confidential, unless disclosure was required by law or accounting standards"); *see also*
11 American Institute of Certified Public Accountants Rule § 301.01, *available at*
12 http://www.aicpa.org/about/code/et_300.html ("A member in public practice shall not disclose
13 any confidential client information without the specific consent of the client.").
14        Accordingly, in the case at bar, although Pillsbury shared certain information, as selected
15 by Pillsbury, with Juniper's outside auditors EY, those disclosures did not waive the work
16 product protection that applied to the shared information.

17 **II.    PLAINTIFF HAS ACCESS TO THE FACTS AND IS SEEKING OPINION
           WORK PRODUCT WITH NO SHOWING OF SUBSTANTIAL NEED OR
18         UNDUE HARDSHIP**

19        Plaintiff's present motion seeks the wholesale production of all documents containing
20 work product that was shared with EY. Mot. at 1. Accordingly, the documents Plaintiff seeks
21 contain opinion work product. Indeed, that is the very reason Plaintiff seeks them. The opinions
22 and thought processes of counsel are fundamentally the only category of information related to
23 the Audit Committee's investigation to which Plaintiff does not already have access. Plaintiff
24 has had fulsome discovery into the *facts* underlying its claims – *i.e.*, that certain of Juniper's
25 current and former officers backdated stock option grants in the years 1999 – 2003. Indeed,
26 Plaintiff already has at its disposal every piece of information that the Audit Committee and its
27 counsel had, and Plaintiff does not contend otherwise. Plaintiff has reviewed the same
28 documents and deposed the same witnesses. The *facts* are there for Plaintiff's use.

Plaintiff's attacks on the Audit Committee's assertion of work product protection are not about Plaintiff seeking access to facts or evidence. Plaintiff wants to know what the Audit Committee's counsel *thought* about the facts and evidence, what the Audit Committee's counsel *concluded* about the facts and evidence, and what the Audit Committee's counsel *believed* based on the very same evidence to which Plaintiff has the same access. In short, Plaintiff's aim is to get access to the thought processes, mental impressions, reasoning, conclusions and opinions of the Audit Committee's counsel. This is classic opinion work product and is entitled to the most stringent protection. *See Roberts*, 254 F.R.D. at 374-75 (party seeking opinion work product must show more than mere substantial need or undue hardship; opinion work product is discoverable only if it is "'*at issue* in the case and the need for the material is compelling'") (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original)); *see also Employers Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-3002 PVT, 2007 WL 2947423, at *5 (N.D. Cal. Oct. 6, 2007).

Plaintiff has shown no justification at all for ordering the production of opinion work product here. In fact, Plaintiff does not even hint that it has any need whatsoever for access to the withheld work product – let alone that Pillsbury's opinions and mental impressions are "at issue" and that Plaintiff has a "compelling need" for them.[7] *Roberts*, 254 F.R.D. at 374-75 (quoting *Holmgren*, 976 F.2d at 577). Absent such a showing, there is no basis to order that Pillsbury's opinion work product be disclosed. As the Supreme Court observed in *Hickman v. Taylor*, "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." 329 U.S. 495, 510 (1947).

---

[7] Indeed, if Plaintiff truly believed that it had any need at all – let alone "compelling need" – for Pillsbury's work product in order to prepare its case, then certainly Plaintiff would have acted more promptly in pressing its argument. Juniper's counsel informed Plaintiff of its position vis-a-vis work product no later than January 16, 2009, yet Plaintiff waited almost an entire year (and after the *end* of fact discovery) to file this motion. Ostler Decl. ¶¶ 2-4. This conduct belies any possible contention that Plaintiff has any need whatsoever for this work product.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion.

Dated: January 12, 2010                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                                           By:   /s/  Kirke M. Hasson
                                                 Kirke M. Hasson

                                           *Attorneys for the Audit Committee of the Board of Directors of Juniper Networks, Inc.*

Dated: January 12, 2010                    WILSON SONSINI GOODRICH & ROSATI
                                           Professional Corporation


                                           By:   /s/ Joni Ostler
                                                 Joni Ostler

                                           *Counsel for the Juniper Defendants*

## ECF CERTIFICATION

I, Joni Ostler, am the ECF User whose identification and password are being used to file this OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "DOCUMENTS PREPARED FOR AND/OR SHARED WITH DEFENDANT ERNST & YOUNG" BY JUNIPER AND ITS AUDIT COMMITTEE.  In compliance with General Order 45.X.B, I hereby attest that Kirke M. Hasson has concurred in this filing.

Dated: January 12, 2010                    WILSON SONSINI GOODRICH & ROSATI
                                           Professional Corporation


                                           By:   /s/ Joni Ostler
                                                 Joni Ostler