## SCHEDULE A[1]

| | Document | Potential Deponents (Deposition Dates In Parentheses) Or Document Requests | Example of Line of Questioning |
|---|---|---|---|
| 1. | EY-JNPR-TEAM-043316-37 ("Audit Considerations Checklist for 2006 Audit Engagements") | Andrew Cotton (11/24/09); Lisa Schwartz (12/8/09); Brad Feller (12/16/09); Scott Kriens (10/7-8/09); (10/26/09); Leilani Eames (10/29/09); Rob Atherton (11/23/09); Lisa Berry (12/1/09); William Hearst (12/4/09); Lisa Schwartz (12/8/09); Marcel Gani (12/14-15/09); Amanda Powell (12/18/09). | EY-JNPR-TEAM-043320, shows that E&Y determined that "risk indicators are present that might indicate potential problems with past grant practices [such as during 1999-2003], including the potential for material misstatements in previously issued financial statements."

Lead Plaintiff would have questioned witnesses as to whether they agreed with this determination by E&Y, and more importantly, as to whether they were aware of these "risk indicators" during audits of Juniper's financials from 1999 to 2004?

EY-JNPR-TEAM-043321, states, for current share-based payment activities, that "Teams generally should discuss with those responsible for plan administration the process to authorize and approve share-based payments, including the process for documenting such approval." It also indicates, for current share-based payment activities, that "the engagement team considered inquiring directly of the compensation committee or applicable board committee regarding their oversight of the process used to grant stock options, including the process used to determine the grant date and exercise price."

Lead Plaintiff would have questioned witnesses as to whether these discussions ever occurred between 1999 and 2004? Did theses witnesses understand Juniper's process to authorize and approve share-based payments?

EY-JNPR-TEAM-043321-22, states, for current share-based payment activities, that E&Y "reviewed minutes of meetings of the compensation committee or board of directors (as applicable) to determine if the grant dates designated for share-based payments (particularly significant stock option grants to key executives) in the company's accounting records correspond to the actual date the appropriate board committee met and approved the respective grants."

Lead Plaintiff would have questioned witnesses as to whether these same practices were in place between 1999 and 2004? If not when did the change occur? Why did the change occur? If so, why was E&Y unable to detect the backdating that was obvious on the face of many grants? |

---

[1] For the Court's convenience, copies of the documents cited by Lead Plaintiff are attached to the accompanying Declaration of David C. Harrison.

{1964 / CHT / 00100185.DOC v1}

| | | |
|---|---|---|
| 2. | EY-JNPR-DF-KKAN-018952-57 ("Risks for which Controls Must Be Addressed" dated 12/31/2006) | Andrew Cotton (11/24/09); Lisa Schwartz (12/8/09); Brad Feller (12/16/09); Scott Kriens (10/7-8/09); (10/26/2009); Leilani Eames (10/29/09); Rob Atherton (11/23/09); Lisa Berry (12/1/09); William Hearst (12/4/2009); Lisa Schwartz (12/8/09); Marcel Gani (12/14-15/09); Amanda Powell (12/18/09). | EY-JNPR-DF-KKAN-018956, describes elaborate auditing procedures to address the "significant risk" relating to "Inappropriate recognition of Stock based compensation due to incorrect recording of stock option grant date." It states that E&Y would perform certain procedures to address the significant risk of inappropriate recognition of stock based compensation due to incorrect recording of stock option grant date. These procedures include "Obtain[ing] a listing of all stock option grants and agree[ing] details to Board Minutes. Test[ing] grants to non-employees or any grant modifications.] It also states that E&Y would perform certain procedures to address the significant risk of inappropriate recognition of stock based compensation due to incorrect recording of stock option grant date. These procedures include "Review[ing] board or authorized committee minutes and inquir[ing] of management for any stock option agreements. Determin[ing] that options have been appropriately accounted for and disclosed."<br><br>Furthermore, the document states that E&Y would perform certain procedures to address the significant risk of inappropriate recognition of stock based compensation due to incorrect recording of stock option grant date. These procedures include "Inquir[ing] of company's management of any suspected fraud in determining the measurement dates of the options granted." Finally, it states that E&Y would perform certain procedures to address the significant risk of inappropriate recognition of stock based compensation due to incorrect recording of stock option grant date. These procedures include "Agree[ing] the options granted and the grant date and price of the options to the BOD or compensation committee meeting minutes."<br><br>Lead Plaintiff would have questioned witnesses as to whether these procedures reflect E&Y's attempt to remediate its previous deficient auditing procedures to detect options backdating practice? Whether these procedures were in place between 1999 and 2004, and if these procedures had been in place between 1999 and 2004, would it have helped the inexperienced auditing staff such as Lisa Schwartz detect Juniper's options backdating fraud? Whether the audit team ever performed any of these procedures between 1999 and 2004? |

| | | | |
|---|---|---|---|
| 3. | EY-JNPR-TEAM-042410-11 (Hand-written notes titled "Juniper Options Review") | Andrew Cotton (11/24/09); Lisa Schwartz (12/8/09); Brad Feller (12/16/09); Scott Kriens (10/7-8/09); (10/26/09); Leilani Eames (10/29/09); Rob Atherton (11/23/09); Lisa Berry (12/1/09); William Hearst (12/4/09); Lisa Schwartz (12/8/09); Marcel Gani (12/14-15/09); Amanda Powell (12/18/09). | Lead Plaintiff would have questioned these witnesses in an attempt to discovery who drafted this document?  What was the purpose of the review described therein?  Who was involved in the review?  What documents were reviewed in reaching the conclusions expressed therein?  Are there any more documents relating to this review? <br><br> EY-JNPR-TEAM-042410, states for the year 2003, "on T102.1, we say that we selected 25 employees & tested the options grant date, price, etc.  Where is our documentation of 25 employees?" <br><br> Lead Plaintiff would have questioned these witnesses about the 25 employees, the questions asked of these unidentified 25 employees, the testing process, and the documentation or lack thereof of the granting process. <br><br> The document further states that the "documentation is not the best.  Noted that tie out of options to BOD was completed by option type." <br><br> What documentation was not the best?  Who discovered that the documentation was not the best?  Was this discussed internally with the audit team?  Was the fact that the documentation was not the best raised with Juniper?  Why did E&Y sign off on Juniper's financials if the documentation was not the best?  Did they request Juniper provide better documentation in the future?  What documents are missing?  What documentation would E&Y have wanted that was not provided?  Who was responsible for proper maintenance of the documentation that was "not the best?  Were these Juniper documents or E&Y documents?  Was the "documentation not the best" for 1999, 2000, 2001, and 2002?  Why not? |

| | | | |
|---|---|---|---|
| 4. | EY-JNPR-DF-SLAZ-041328-30 (1/2/2007 email from Robert Browne to Ginnie Carlier re "Fw: OCA letters/technical memoranda and meetings with National", and attached forwarded emails therein) | Andrew Cotton (11/24/09); Lisa Schwartz (12/8/09); Brad Feller (12/16/09) | Lead Plaintiff would have questioned these witnesses in an attempt to discover what kind of understanding the National office of E&Y had in connection with Juniper's options backdating, how they assessed their option granting procedures in place during 1999 through 2003, and how they sought to remediate the deficient auditing procedures.<br><br>On EY-JNPR-DF-SLAZ-041329, in a 1/2/2007 email to Sam Lazarakis, Thomas Hibner, Robert Browne, etc., Michael Clark states, regarding the upcoming calls with National to discuss stock option matters, that "National folks will want to know about everything – people issues, impact on prior audits, tax matters (in detail!), planned remediation, 404 implications, 123R implications. We should cover everything in the materials."<br><br>Lead Plaintiff would have questioned whether the witnesses were interviewed by Michael Clark or his team regarding your audit of Juniper's option granting process during 1999 through 2003. What did the witnesses tell them? Did they ask the witnesses for input so that they can remediate the deficient auditing procedures? Do the witnesses think the audit of Juniper's option grants would have been more effective if this remediation had been in place during 1999 through 2003? |
| 5. | EY-JNPR-DF-KKAN-002125-63 ("Draft Integrated Audit Results & Communications Report to the Audit Committee of the Board of Directors" dated 2/27/2007) | Andrew Cotton (11/24/09); Lisa Schwartz (12/8/09); Brad Feller (12/16/09) | On EY-JNPR-DF-KKAN-002151, E&Y identifies "Inappropriate recognition of stock based compensation due to incorrect recording of stock option grant date" as a fraud risk and states, under "Summary of Tests of Controls and Substantive Procedures, "Trace grants in the current year to approved Board of Directors minutes. Assess whether the grant date is the date of the last signature on the UWC or other supporting documentation and meets the definition of "Grant date" in accordance with SFAS 123(R)."<br><br>Lead Plaintiff would have questioned the witnesses whether their audit team ever "trace[d] grants in the current year to approved Board of Directors minutes". Do the witnesses think this procedure could have helped their audit team detect Juniper's options backdating scheme? Did the witnesses' audit team ever assess whether the grant date is the date of the last signature on the UWC? Did the witnesses' audit team assess whether the grant date is the date of the last signature on the UWC in connection with the June 9, 2000 UWC, which authorized option grants for Stratton Sclavos and William Stensrud? Do the witnesses think this procedure would have helped your team detect Juniper's options backdating scheme? |

| 6. | EY-JNPR-TEAM-040909 (handwritten notes) | Andrew Cotton (11/24/09); Brad Feller (12/16/09) Amanda Powell (12/18/09); Brienne Fisher (10/15/2009); Marcel Gani (12/14-15/09); Scott Kriens (10/7-8/09) | EY-JNPR-TEAM-040909 relates to "delegated authority" of Committees to issue stock options. Lead Plaintiff would have questioned witnesses about whether a determination was made as to the Compensation Committee's and Stock Option Committee's "delegated authority" by Juniper's Board regarding option grants. If so, what was the level of authority?<br><br>Whether certain grants approved by the SOC and Compensation Committee were consistent with their delegated authority?<br><br>If not, whether further inquiry was or should have been made? |
| --- | --- | --- | --- |
| 7. | EY-JNPR-TEAM-038826-28 (Chart identifying E&Y personnel privy to information about Juniper/ Netscreen Merger, with handwriting) | Interrogatory or 30(b)(6) Deposition | Who prepared chart?<br><br>Whose handwriting?<br><br>Why was it prepared?<br><br>Whether similar charts were prepared relating to E&Y personnel first becoming aware of the impending restatement announcement on August 10, 2006. |
| 8. | EY-JNPR-DF-FMIH-148867 (Listing of Regulatory Communications with SEC/DOJ NASDAQ regarding stock options investigation) | Interrogatory or 30(b)(6) Deposition | Who prepared list?<br><br>Who reviewed correspondence?<br><br>Who at E&Y participated in the regulatory communications? |