LATHAM & WATKINS LLP
  Peter A. Wald (Bar No. 85705),
    peter.wald@lw.com
  David M. Friedman (Bar No. 209214),
    david.friedman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
  Patrick E. Gibbs (Bar No. 183174),
    patrick.gibbs@lw.com
  Andrew M. Farthing (Bar No. 237565),
    andrew.farthing@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

Attorneys for Defendant
Ernst & Young LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | CASE NO. 5:06-CV-04327-JW<br><br>DEFENDANT ERNST & YOUNG LLP'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITIONS AND TO QUASH SUBPOENAS<br><br>Before: Hon. Patricia V. Trumbull<br><br>Requested Date: March 9, 2010<br>Requested Time: 10:00AM |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that if Defendant Ernst & Young LLP's motion for shortened time is granted, on March 9, 2010, at 10:00 AM, or as soon thereafter as this matter may be heard before Magistrate Judge Patricia V. Trumbull of the United States District Court for the Northern District of California, San Jose, California, Defendant Ernst & Young LLP will and hereby does move pursuant to Federal Rule of Civil Procedure 26(c) for a protective order, and for an order quashing the subpoenas to third parties Mike Flint, Emily Mau, and Michael S. Clark, served on February 17, 2010.

This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the Declaration of David M. Friedman in Support of Motion for Protective Order And To Quash Subpoenas, oral argument of counsel, and any other matter that may be submitted at or prior to the hearing.

Dated: March 1, 2010

LATHAM & WATKINS LLP

By /s/ David M. Friedman
David M. Friedman

Attorneys for Defendant
Ernst & Young LLP

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

Should a protective order be granted and certain subpoenas quashed to prevent the depositions of Defendant Ernst & Young LLP ("EY") witnesses noticed for the first time, months after the close of fact discovery?

## I.   INTRODUCTION

More than two months after the close of fact discovery, Plaintiffs unilaterally noticed depositions or issued subpoenas for five EY-related witnesses from whom Plaintiffs did not seek testimony before fact discovery closed. Having reached a tentative settlement with Juniper Networks and the individual defendants, Plaintiffs now seek, in essence, to reopen fact discovery as against EY. Plaintiffs argue that this is authorized by the Court's December 18 order amending the discovery plan, which allowed Plaintiffs to take up to eight additional depositions totaling no more than twenty-eight additional hours. But in seeking that order, Plaintiffs relied principally on their alleged need to depose additional *Juniper* witnesses, not EY witnesses. And in the wake of the December 18 order, Plaintiffs identified four additional Juniper witnesses, and three additional EY witnesses (each of whom EY has already agreed to produce). If, as it appears, Plaintiffs now intend to abandon the additional Juniper depositions, then the principal justification for amending the discovery plan no longer exists. At a minimum, before deposing any additional EY witnesses, Plaintiffs should be required to make a separate showing of good cause, which they have not even tried to do here.

Moreover, Plaintiffs seek the deposition of two EY Rule 30(b)(6) witnesses on topics that are irrelevant to Plaintiffs' remaining claim, and as numerous courts have held.

EY's motion for a protective order should be granted, and subpoenas for EY witnesses Michael S. Clark, Mike Flint, and Emily Mau, should be quashed.

## II.   FACTUAL BACKGROUND

On November 20, 2008, this Court entered a stipulated discovery plan providing Plaintiffs 30 depositions in total for all defendants – 20 more than provided for by the Federal Rules of Civil Procedure. (Doc. 179.) The discovery plan also provided that fact discovery would close on December 1, 2009. (*Id.*)

On September 29, 2009, Plaintiffs moved for an amendment of the discovery plan to allow for 45 depositions, and both the Juniper Defendants and EY opposed on the grounds that Plaintiffs did not show a particularized need for the extra depositions. (Docs. 377-378.) In the course of briefing this motion, Plaintiffs told the Court that they intended to use three of the fifteen additional depositions on EY-related witnesses. (Doc. 387, at 2.)[1]

On November 2, 2009, the Court granted in part Plaintiffs' motion, but stated that it was "not inclined to grant Lead Plaintiffs' request for 15 more full [seven-hour] depositions." (Doc. 409.) The Court ordered the parties to meet and confer regarding a reasonable amount of additional deposition time. (*Id*.) The parties could not agree: Plaintiffs proposed 20 seven-hour depositions, consisting of 6 EY witnesses and 14 Juniper-related witnesses. (Doc. 424.) Juniper Defendants and EY jointly proposed 4 seven-hour depositions (*i.e.,* 28 hours). (Doc. 426.)

A few weeks after the parties had submitted their proposals for additional depositions, Plaintiffs and Juniper (but not EY) agreed by stipulation to allow Plaintiffs to depose seven Juniper witnesses, as well as any additional Juniper witnesses allowed by the Court, in December 2009 and January 2010, despite the December 1, 2009 discovery cut-off. (Doc. 437.) That stipulation was approved by the Court in an order dated December 18, 2009. (Doc. 474.)

On the same day, the Court also issued its order amending the discovery plan. The Court's order allowed Plaintiffs to take up to eight additional depositions for no more than 28 additional hours of deposition time. (Doc. 476.) Pursuant to that order, on December 23, Plaintiffs' counsel identified four additional Juniper witnesses (a 30(b)(6) witness regarding metadata, Steve Morss, Robert Calderoni, and Robert Gerghty) and three additional EY witnesses (Jeff Fong, Robert Browne, and Chris Richardson) they wished to depose. Declaration of David M. Friedman In Support Of Motion For Protective Order And To Quash Subpoenas

---

[1] The specific individuals Plaintiffs sought to depose changed over the course of the briefing. Plaintiffs' last word on the subject on November 10, 2009 was that they needed to take 16 additional depositions, 6 of which would be from EY. (Doc. 424.)

("Friedman Decl.") ¶ 2, Ex. A. The parties agreed to produce the requested witnesses. *Id.* ¶ 4; *see also id.* ¶5, Ex. B.

Plaintiffs and Juniper then agreed to postpone the depositions of Juniper witnesses in light of pending settlement discussions. Plaintiffs and Juniper postponed the depositions of at least six Juniper witnesses, including some witnesses that Plaintiffs had identified before the discovery plan was amended, and some witnesses Plaintiffs had identified pursuant to the December 18, 2009 Order. *Id.* ¶ 6; *see also id.* ¶¶ 7-8, Exs. C-E. As a result, Plaintiffs did not take three Juniper depositions that they had requested before the amendment of the discovery plan (*i.e.*, Ken Goldman, Luke Fewel, and Robert Calderoni), and they did not take any of the four Juniper depositions they requested pursuant to the December 18, 2009 Order (the 30(b)(6) witness regarding metadata, Robert Calderoni, Steve Morss, and Robert Gergughty). *Id.* ¶ 6; *see also id.* ¶¶ 7-8, Exs. C-E.

On February 8, 2010, Plaintiffs, the Juniper Defendants, and defendant Berry informed this Court that they tentatively had reached a settlement. Friedman Decl. ¶ 10. At a discovery hearing the next day, Plaintiffs argued, despite the settlement, they needed additional discovery from third parties and Juniper witnesses so that they could pursue the remaining claim against EY. Plaintiffs also said they wished to depose "multiple additional" EY witnesses because the EY claim has now come into "focus." *Id.* ¶ 11, Ex. F at 71:13-21, 70:12-13 ("It's true there's not a word of E&Y in our papers…"), 77:20-22 ("We may now select to focus on EY witnesses … because of the posture of the case."). The Court acknowledged EY's concern that fact discovery could impermissibly "blow up" as to EY, and if so, the parties might well be back before the Court. *Id.* at 85:11-16. The Court ordered the parties to meet and confer. *Id.*

EY's concern was well founded: On February 11, 2010, Plaintiffs indicated that they would seek depositions from eight EY witnesses: Jeff Fong, Mike Flint, Michael S. Clark, Emily Mau, three Rule 30(b)(6) depositions, and one unidentified EY employee. Friedman Decl. ¶ 12, Ex. G. Of these, only one (Jeff Fong) had been previously identified by Plaintiffs under the November 23, 2009 Order. *Id.* ¶ 2, Ex. A. After an unsuccessful meet and confer, Plaintiffs

served subpoenas for Jeff Fong, Mike Flint, Michael S. Clark, and Emily Mau and noticed two Rule 30(b)(6) depositions on subject matter concerning, among other things:

- The purpose of EY's professional practice director group ("PPD"), the time in which it became aware of stock option backdating at *any* of EY's clients, and remedial measures it took to detect or prevent stock option backdating;

- PPD's requests in 2006 and 2007 for information concerning the restatement at Juniper, and PPD's training to EY employees after May 2006 concerning stock option backdating;

- Audit methodologies and controls developed and implemented by EY to detect stock option backdating at *any* of EY's clients prior to 2006; and

- Any modifications made to the audit methodologies and controls after the revelation of stock option backdating at *any* of EY's clients.

Friedman Decl. ¶¶ 13-17, Exs. H-L.

EY now seeks a protective order precluding any depositions of EY witnesses not previously identified by Plaintiff's pursuant to the December 18, 2009 Order, and quashing the subpoenas issued for Emily Mau, Mike Flint,[2] and Michael S. Clark.

## III. LEGAL STANDARD

The Court may enter a protective order "forbidding … discovery" for "good cause," *i.e.,* in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1063 (9th Cir. 2004). Because the court in "the best position to weigh the fairly competing needs and interests of the parties affected by discovery," it has "substantial latitude to fashion [a] protective order[.]" *Phillips v. GMC*, 307 F.3d 1206, 1211-1212 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Similarly, the Court "must quash or modify a subpoena that subjects a person to an undue burden." *Subpoena Duces Tecum to AOL, LLC,* 550 F. Supp. 2d 606, 611-12 (E.D. Va. 2008)

---

[2] The subpoena served for Mike Flint calls for his deposition to take place in Menlo Park, California. Mr. Flint, however, resides in Utah, and the subpoena is therefore objectionable pursuant to Fed. R. Civ. P. 45(b)(2).

## IV. ARGUMENT

### A. Plaintiffs' Deposition Requests Violate The Court's Scheduling Orders.

A protective order is warranted here because Plaintiffs' deposition notices and subpoenas violate the Court-ordered discovery schedule. Fact discovery closed on December 1, 2009. (Doc. 179.) The Court permitted only certain depositions to occur in December 2009 and January 2010, notwithstanding the December 1 cut-off. (Doc. 476.) Rather than taking many of the Juniper depositions they were allowed to take during December and January, Plaintiffs chose to postpone them in light of pending settlement discussions with Juniper.

Setting aside, for now, the question of whether Plaintiffs should be allowed to "substitute" EY witnesses for the Juniper witnesses they identified pursuant to the December 18 order, there is no stipulation or order allowing Plaintiffs to take any depositions after January 2010. That fact alone is good cause for entering a protective order. *See* Civ. L-R. 26-2 ("Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown."); *see also Digital Envoy, Inc. v. Google, Inc.*, No. C 04 01497 RS, 2006 U.S. Dist. LEXIS 24865, at *18-19 (N.D. Cal. Mar. 28, 2006) ("Even assuming Digital Envoy had reason to believe that some depositions might go forward after the [fact discovery] deadline … no stipulation or order was in effect extending [that] deadline.").

### B. This Court's December 18 Order Did Not Authorize Plaintiffs To Re-open Discovery Against EY.

Timing aside, there is no basis for Plaintiffs' attempt to substitute several new EY witnesses for the Juniper witnesses they no longer wish to depose.

First, the Court's December order was not entered in a vacuum – it was based upon a motion in which Plaintiffs claimed they needed at least 15 more seven-hour depositions due to the multitude of defendants and claims. The motion focused principally on Plaintiffs' expressed need to depose additional Juniper witnesses. Indeed, Plaintiffs claimed they needed at least 36 depositions of Juniper witnesses. Plaintiffs' papers in support of their motion contain virtually nothing about the EY witnesses currently in dispute. In their reply brief, in fact,

1  Plaintiffs told the Court that they intended to use only three of the fifteen additional depositions
2  on witnesses affiliated with EY, and Plaintiffs have already deposed those three witnesses.
3  Having premised their motion on the multiplicity of claims and defendants, and having told the
4  Court they planned to use the vast majority of additional depositions to depose Juniper witnesses,
5  Plaintiffs should not be allowed to simply drop the additional Juniper witnesses they requested
6  and use the additional deposition slots to depose EY witnesses whom they never identified in
7  support of their motion to amend the discovery plan.

8  Second, following the Court's December 18 order, Plaintiffs identified the three
9  additional EY witnesses they wished to depose (Jeff Fong, Chris Richardson, and Robert
10 Browne), and EY has already agreed to produce them to the extent possible.[3] Because Plaintiffs'
11 most recent deposition notices and subpoenas do not relate to the parties' agreement or any
12 previously noticed depositions, they are "undeniably untimely" under this Court's Local Rules.
13 *See, e.g., Sys. Am., Inc. v. Rockwell Software, Inc.*, No. C 03-02232 JF (RS), 2007 U.S. Dist.
14 LEXIS 83144, at *6-7 (N.D. Cal. Oct. 29, 2007) (citing Civ. L.R. 26-2) (deposition notice
15 untimely where it did not comport with the parties' agreement as to how the deposition would
16 proceed after the close of fact discovery).

17 Third, Plaintiffs' settlement with the Juniper defendants does not justify what
18 amounts to re-opening fact discovery against EY. Plaintiffs had over a year to take whatever
19 discovery they thought they needed from EY. They received millions of pages of documents
20 from EY. They have now deposed six EY witnesses, and EY has already agreed to produce two
21 more. The fact that Plaintiffs no longer wish to depose a number of Juniper witnesses does not
22 amount to "good cause" for reopening fact discovery against EY and deposing a number of EY
23 witnesses whom Plaintiffs did not identify during fact discovery, and did not identify pursuant to
24 the Court's December 18 order. *See, e.g., Clinton v. Cal. Dep't of Corr.*, No. Civ S-05-1600-
25 LKK-CMK-P, 2009 U.S. Dist. LEXIS 42205, *17-18 (E.D. Cal. May 11, 2009) (plaintiff cannot

---

[3] EY agreed to produce Mr. Browne if his health improves and permits him to be deposed. Unfortunately, Mr. Browne is still unavailable for a deposition due to his medical condition.

1  propound discovery requests after cut off simply because "he does not have enough evidence to
2  prove his case"); *Medcorp, Inc. v. Pinpoint Techs., Inc.*, No. 08-cv-00867-MSK-KLM, 2009
3  U.S. Dist. LEXIS 66405, at *6-7 (D. Colo. July 14, 2009).

      **C.**      **Plaintiffs' 30(b)(6) Deposition Notices Are Irrelevant to the Sole Claim Asserted Against EY.**

      Plaintiffs' two Rule 30(b)(6) deposition notices seek discovery on deposition topics that are irrelevant to Plaintiffs' remaining claim against EY, and as a result, a protective order should be granted precluding the depositions from going forward.

      Plaintiffs only claim against EY is that EY violated Section 11 of the Securities Act of 1933 in connection with a Registration Statement filed by Juniper as part of its April 2004 acquisition of a company called NetScreen Technologies, Inc. (the "NetScreen Registration Statement"). *See* Compl. ¶¶ 364-73. The NetScreen Registration Statement incorporated Juniper's 2003 audited financial statements by reference from Juniper's 2003 Form 10-K, and EY consented to the inclusion of its 2003 audit opinion for Juniper in the NetScreen Registration Statement. To prevail on Plaintiffs' claim they must show (1) that the portion of the NetScreen registration statement that EY certified contained a misrepresentation and (2) that the misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. *See, In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1994), *cert. denied*, 520 U.S. 1103 (1997); 15 U.S.C. § 77k(a). Even if Plaintiffs make such a showing, EY can avoid liability if it shows that it is entitled to the due diligence defense by showing that its audit work for the relevant period complied with GAAS. *See Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 697-703 (S.D.N.Y. 1968) ("Compliance with GAAS should ordinarily satisfy the due diligence obligation."); *see also Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir. 1994) ("[A]n accountant's good faith compliance with Generally Accepted Accounting Principles and Generally Accepted Auditing Standards discharges the accountant's professional obligation to act with reasonable care.").

      Thus, the only relevant issue is whether EY's audit work for the relevant period complied with GAAS. None of the testimony called for in Plaintiffs' 30(b)(6) depositions is

1  relevant to this limited issue.  *See, e.g.*, *SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir.
2  1979) (auditor discharged its professional obligations because the audit conformed with GAAS);
3  *accord Vosgerichian v. Commodore Int'l*, 832 F. Supp. 909, 911 n.2 (E.D. Pa. 1993), *vacated on*
4  *other grounds*, 862 F. Supp. 1371 (E.D. Pa. 1994); *Hochfelder v. Ernst & Ernst*, 503 F.2d 1100,
5  1108 (7th Cir. 1974) (duty to audit in accordance with GAAS "does not differ from the duty
6  which is otherwise imposed by law . . . or the accounting profession itself."), *rev'd on other*
7  *grounds*, 425 U.S. 185 (1976); *Matter of Hawaii Corp.*, 567 F. Supp. 609, 617 (D. Haw. 1983)
8  ("Generally, an accountant or auditor discharges his professional obligations by complying with
9  industry standards, Generally Accepted Accounting Principles (GAAP) and Generally Accepted
10 Accounting Standards (GAAS).").

11         First, Plaintiffs' request for testimony concerning internal audit methodologies
12 and control information are simply irrelevant to Plaintiffs' Section 11 claim, as numerous courts
13 have held.  *See In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216 (N.D. Cal. 1992)
14 (denying the production of internal audit manuals and stating "[A]udit manuals do not establish
15 the standards against which [the auditor]'s conduct of the . . . audit is to be measured.  That
16 standard is established by GAAS and GAAP, publicly disseminated standards recognized
17 throughout the accounting industry."); *see also In re Conticommodity Servs., Inc. Sec. Litig.*,
18 MDL No. 644, 1988 WL 56172, at *2 (N.D. Ill. May 25, 1988) (to determine whether the auditor
19 failed to properly audit financial statements "requires an examination of the prevailing
20 professional standards, not an examination of standards imposed by the accounting firm itself.").
21 Particularly in cases where, as here, audit work papers have been produced and auditors have
22 been extensively deposed, courts have held that internal guidelines and audit manuals are neither
23 necessary nor relevant, and thus, are not discoverable.  *See, e.g.*, *Worlds of Wonder*, 147 F.R.D.
24 at 216 ("The audit manuals do not show how the WOW audit was conducted.  Only the work
25 papers do that."); *Davis v. Coopers & Lybrand*, No. 90 C 7173, 1992 WL 159504, at *1 (N.D.
26 Ill. June 25, 1992) (work papers detailed reasons for auditor's decisions and provided inquiry
27 into what auditors did on engagement; further, plaintiff had access to AICPA standards on
28 GAAS and GAAP; thus, no showing of "actual need to discover" accounting firm's internal

1 guidelines).

2    Second, Plaintiffs' deposition notices seek information related to audits of
3 companies other than Juniper, including information concerning stock option backdating at other
4 companies. This information is also irrelevant to the issue of whether the relevant Juniper
5 financial statements contained a misstatement, and whether EY's audits *of Juniper* during the
6 relevant time period complied with GAAS.

7    Third, Plaintiffs' 30(b)(6) deposition notices of information relating to the
8 changes in audit methodologies in 2006 are irrelevant to the issue of whether an audit performed
9 years earlier complied with GAAS at the time of the audit. *See* Fed. R. Evid. 407. Moreover, as
10 of the 2006 audit, stock options were not accounted for under APB 25, the accounting provision
11 that permeates throughout this litigation. Instead, options are now accounted for under a
12 completely different accounting rule, FAS 123R. Friedman Decl. ¶ 18, Ex. M. In addition,
13 changes in audit methodologies occurred after the Public Company Accounting Oversight Board
14 had issued new guidance concerning the risks related to stock option accounting. Friedman
15 Decl. ¶ 19, Ex. N. In short, the audit procedures EY performed under a totally different
16 accounting and auditing regime are irrelevant to the question of whether EY performed a
17 "reasonable investigation" at the time of its 2003 audit.

18    Finally, in addition to being irrelevant and unnecessary, EY's audit
19 methodologies, policies, procedures, and training information are protected trade secrets, and
20 should not be the subject of deposition testimony. The protective order in place is simply
21 insufficient to protect this highly sensitive information. *See Worlds of Wonder*, 147 F.R.D. at
22 216-17 (refusing to produce auditor training materials and audit manuals because they provide
23 such a competitive advantage that "if they fell into the hands of a competitor, it would be
24 disastrous."); *Insulate America v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005) (quashing
25 subpoena despite protective order).

26
27
28

## V. CONCLUSION

For the foregoing reasons, EY respectfully requests that the Court grant EY's motion.

Dated: March 1, 2010

                                                    LATHAM & WATKINS LLP

                                                    By   /s/ David M. Friedman
                                                           David M. Friedman
                                                           Attorneys for Defendant
                                                            Ernst & Young LLP