LATHAM & WATKINS LLP
  Peter A. Wald (Bar No. 85705),
    peter.wald@lw.com
  David M. Friedman (Bar No. 209214),
    david.friedman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
  Patrick E. Gibbs (Bar No. 183174),
    patrick.gibbs@lw.com
  Andrew M. Farthing (Bar No. 237565),
    andrew.farthing@lw.com
140 Scott Drive
Menlo Park, California  94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

Attorneys for Defendant
Ernst & Young LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | CASE NO. 5:06-CV-04327-JW<br><br>DEFENDANT ERNST & YOUNG LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITIONS AND TO QUASH THIRD PARTY SUBPOENAS<br><br>Before:  Hon. Patricia V. Trumbull<br><br>Requested Date: March 9, 2010<br>Requested Time: 10:00 A.M. |

## I. INTRODUCTION

Plaintiffs readily admit that, more than two months after the close of fact discovery, they are making entirely new requests for depositions of Ernst & Young LLP ("EY") personnel, and that they are doing so because they no longer need the Juniper depositions that this Court previously granted them. Plaintiffs made no effort to show good cause for these additional EY depositions during the fact discovery period, and they have failed to show good cause for them now.

Contrary to Plaintiffs' suggestions, no Court order allowed Plaintiffs to wait and see whether they could reach a settlement with the primary defendants in this case, and then simply substitute EY witnesses for the Juniper witnesses they requested in their motion to amend the discovery plan. Plaintiffs should not be allowed to reopen fact discovery just because they have reached a tentative settlement with other defendants and failed to use all of the depositions they were granted before the discovery period closed. Plaintiffs have known for years that they had alleged a "complex claim for potentially $100 million in damages against EY." Opp. at 2. They had more than a year to take discovery on that claim, and they in fact received massive amounts of discovery from EY. Simply put, the fact that Plaintiffs no longer need the additional discovery they sought from Juniper does not justify granting them additional discovery from EY that they never requested during fact discovery.

In any event, a protective order should also be granted to preclude the taking of two EY Rule 30(b)(6) witnesses as the topics requested are simply irrelevant to Plaintiffs' claim. Plaintiffs' citations to the contrary involve cases where the defendant auditor was alleged to have engaged in fraud, which Plaintiffs have explicitly disclaimed in this case. Here, the issue is whether EY conducted its audit of Juniper in accordance with Generally Accepted Auditing Standards ("GAAS"). This issue is not informed by EY's audit manuals, how it conducted audits of other clients, or how recent developments have changed how audits are performed. The irrelevance of these issues is only made more clear by the fact that Plaintiffs never requested these depositions during the more than one year period in which fact discovery was open.

EY's motion for a protective order should be granted, and subpoenas for EY witnesses Michael Clark, Michael Flint, and Emily Mau, should be quashed.[1]

## II. ARGUMENT

### A. Plaintiffs' Deposition Requests Are Untimely.

After the close of discovery on December 1, 2009, in an order dated December 18, 2009, this Court granted Plaintiffs the opportunity to take additional depositions up to 28 hours of deposition time to be spread among no more than eight deponents. Dkt. 476. In response to that order, on December 23, 2009, Plaintiffs requested from EY the depositions of Messrs. Fong,[2] Browne and Richardson, and requested Juniper witnesses to fill the remaining slots.[3] Friedman Decl. (Dkt. 565) Ex. A. EY is willing to produce those three witnesses, subject to Mr. Browne's medical condition. *Id.* ¶ 4. Although the Court did not specify the timeframe in which those individuals would need to be deposed, the order granting additional depositions was issued the same day as another order pursuant to a stipulation *to which EY was not a party* whereby Plaintiffs and the Juniper Defendants agreed to conduct depositions after the discovery cutoff in December 2009 and January 2010. Dkt. 474. At no time has there been any order that would purport to permit Plaintiffs to make discovery requests for the first time in February 2010, and the Local Rules make such requests unenforceable. *See* Civ. L. R. 26-2. Nor can Plaintiffs show "good cause" to permit new depositions after the cutoff because they had more than a year to seek discovery from EY, and in fact received massive amounts of discovery from EY.

---

[1] Plaintiffs have not issued a subpoena for Mr. Browne's deposition at this time, and therefore it would be premature to seek a protective order or to quash such a subpoena. Therefore, questions of his medical condition and whether his deposition can proceed at this time are not properly before the Court. *See* Dkt. 346 (denying motion to compel because subpoena had not yet been served). EY has agreed to produce Mr. Browne should he be able to testify, and will be providing Plaintiffs with information concerning Mr. Browne's current medical condition.

[2] Mr. Fong, who is not a current EY employee, was not available for deposition in late December or January. EY therefore offered dates for his deposition in February 2010. The fact that EY consented to his deposition occurring in February was not a concession permitting Plaintiffs to be able to notice other depositions, never previously requested, in February and March 2010.

[3] Plaintiffs chose to defer the depositions of those Juniper witnesses pending the early February mediation with the Juniper Defendants. Friedman Decl. ¶ 6.

Plaintiffs now argue that their ability to designate witnesses within the limits of the December 18, 2009 order granting additional depositions is unbounded and that they have "total discretion." Opp. at 1. But this Court issued the December 18 order based on a specific motion filed by Plaintiffs, arguing that there was good cause for the additional depositions, based overwhelmingly on Plaintiffs' need to depose additional Juniper witnesses. Plaintiffs have never even tried to make such a showing as to these additional EY witnesses. Plaintiffs' "total discretion" argument also ignores the discovery cutoff. If they truly had "total discretion" to select new deponents at any time, the discovery cutoff would be meaningless. Discovery cutoffs exist and should be enforced to ensure the orderly disposition of cases. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one.")

EY is willing to produce all of the witnesses Plaintiffs requested from EY shortly after this Court's December 18, 2009 order. EY now moves for a protective order because these further depositions were never requested until now, and were not requested as part of Plaintiffs' motion to amend the discovery plan.[4] Plaintiffs purposefully delayed taking the depositions of Juniper witnesses it noticed both before and after the Court's December 18, 2009 Order,[5] and now, two months after the close of fact discovery, seeks to replace those witnesses with EY witnesses never previously requested because of the settlement with the Juniper defendants. Had Plaintiffs requested these additional depositions during fact discovery, or in response to the Court's December 18, 2009 Order, EY would not contend the requests are untimely.

---

[4] Although Plaintiffs did identify Michael Clark as a potential deponent in its moving papers to amend the discovery plan, they did not identify him as a witness in their subsequent briefing on the motion, after the Court's December 18, 2009 order, or in any correspondence with EY until February 2010.

[5] Plaintiffs claim that they took the deposition of Robert Calderoni, a Juniper witness whose deposition this Court permitted to take place in December 2009 or January 2010. Dkt. 474. In fact, Plaintiffs delayed Mr. Calderoni's deposition pending the mediation in February 2010, and it never occurred.

A protective order and an order quashing subpoenas is warranted here to prevent Plaintiffs from circumventing the Court-ordered case management deadlines, including the fact discovery cutoff.

### B. The Topics In Plaintiffs' 30(b)(6) Notices Are Irrelevant.

A protective order should also be granted precluding the two Rule 30(b)(6) depositions relating to EY's internal audit methodologies (whether or not they were used at Juniper), information related to audits at other companies, and audit methodology changes after 2006. These topics are not relevant to the remaining claim asserted against EY.

Plaintiffs argue that "recent case law" supports the relevancy of the topics in their two new Rule 30(b)(6) deposition notices. But the primary authority Plaintiffs rely upon is inapposite. *See* Opp. at 9, citing *Official Unsecured Creditors Committee of Media Vision Tech., Inc. v. Jain,* 215 F.R.D. 587, 589 (N.D. Cal. 2003). In *Media Vision*, the court found that the internal audit procedures in place at the time of the audit in question "may be relevant to show the auditors acted with scienter by conducting the audits in an irregular way," *i.e.,* because the auditors did not follow "E&Y's standard or preferred policy and practice." *Id.* at 588. Indeed, the court acknowledged that the manuals were relevant because "Plaintiffs' claims [did] *not* merely assert professional negligence wherein GAAP and GAAS standards ... may be dispositive" and instead "[t]hey allege a broader theory of fraud under which evidence probative of scienter such as procedural irregularities may be relevant." *Media Vision*, 215 F.R.D at 589 (emphasis added).

In this case, Plaintiffs cannot dispute that "GAAS and GAAP – not internal audit manuals and methodologies – establish the standards by which the conduct of [EY] is to be measured." *In re Assisted Living Concepts, Inc., Sec. Litig.*, No. 99-167-AA, 2001 U.S. Dist. LEXIS 12864, at *3 (D. Or. 2001). It is for this reason that courts have refused to allow the discovery of information related to internal audit methodologies and audit manuals where scienter is not at issue, as is the case here. *See, e.g., id.* (denying discovery of internal audit manuals); *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216 (N.D. Cal. 1992) (same); *In re Conticommodity Servs., Inc. Sec. Litig.*, MDL No. 644, 1988 WL 56172, at *2 (N.D. Ill. May

25, 1988) (to determine whether the auditor failed to properly audit financial statements "requires an examination of the prevailing professional standards, not an examination of standards imposed by the accounting firm itself."); *Davis v. Coopers & Lybrand,* No. 90 C 7173, 1992 WL 159504, at *1 (N.D. Ill. June 25, 1992) (no showing of "actual need to discover" accounting firm's internal guidelines); *Tonnemacher v. Sasak*, 155 F.R.D. 193, 195 (D. Ariz. 1994) ("[T]his Court finds the opinion in *Worlds of Wonder* to be more persuasive…. Plaintiffs have not identified any situation in which the manuals could be helpful in understanding Touche's audit procedures or the meaning of its workpapers."). Plaintiffs, having expressly "exclud[ed] and disclaim[ed] any allegation that could be construed as alleging fraud," Compl. ¶ 364, cannot rely upon cases like *Media Vision* because the courts in those cases determined the materials were relevant to scienter and fraud – issues not present here.[6]

Similarly, Plaintiffs' argument that changes in audit methodologies are relevant to the claim against EY ignores the standards on which the claim is governed. The issue is whether EY's audits complied with GAAS and GAAP, as they were interpreted at the time. The fact that new accounting guidance from the Public Company Accounting Oversight Board (an entity which did not even exist in 2003) was issued in 2006 does not inform whether EY's audit in 2003 complied with GAAS at that time. Plaintiffs simply cite no law to suggest otherwise. Nor do Plaintiffs cite any law to suggest that such audit changes would be admissible despite Federal Rule of Evidence 407, which precludes evidence of subsequent remedial measures to prove negligence. *See*, *e.g.*, *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) (evidence of improvements to financial accounting controls are inadmissible under Fed. R. Evid.

---

[6] Plaintiffs claim that testimony concerning audit manuals and audit methodologies should also be produced because certain workpapers from the 2000 audit were lost. This is a non sequitur. The audit methodologies and audit manuals will not inform what work EY did on the 2000 audit. The work that was done at Juniper in 2000 can be learned by deposing the auditors who worked on the 2000 audit, as Plaintiffs have already done. (Plaintiffs have deposed Lisa Schwartz, Brad Feller, and Andrew Cotton, and are going to depose Jeff Fong, all of whom worked on the 2000 audit). Also, the 2000 audit is not relevant to the claim against EY, as the financial statements for that year were not incorporated into the NetScreen registration statement. Ultimately, the fact that certain workpapers were lost from the year 2000 does not make information concerning audit methodologies relevant to the sole claim against EY.

407).

Finally, Plaintiffs 30(b)(6) deposition notices seek information relating to EY's auditing work at *other* clients. Whether or not EY's clients other than Juniper also had to restate their financials due to issues concerning option backdating, and how EY audited those clients, do not bear on any issue in this case. Though Plaintiffs assert they need this discovery to determine whether EY was "generally deficient," they do not explain why that matters as to the one claim in this case.[7] They cannot.[8]

## III. CONCLUSION

For the foregoing reasons, EY respectfully requests that the Court grant EY's motion for a protective order and to quash subpoenas.

Dated: March 8, 2010

                   LATHAM & WATKINS LLP

                   By   /s/ David M. Friedman
                     David M. Friedman
                     Attorneys for Defendant
                     Ernst & Young LLP

---

[7] Plaintiffs' reliance on *Viacom Int'l Inc. v. YouTube, Inc.*, C-08-80211 JF (PVT), 2009 WL 102808 (N.D. Cal. Jan. 14, 2009), is puzzling. Opp. at 9-10. There, because YouTube asserted a defense that plaintiffs "can effectively police their content on [YouTube's Internet site]," YouTube was permitted to discover information involving various third parties' efforts to police YouTube's site. *Id*. at *4-5. In short, *Viacom* has nothing to do with this case – obviously there may be instances where discovery of third parties is appropriate. But whether or not EY's audits of other clients complied with GAAS is irrelevant to the issues surrounding EY's audit of Juniper.

[8] Plaintiffs also claim that the information should be produced because there is a protective order in place. However, numerous courts have found that information like EY's internal auditing procedures are highly sensitive trade secrets. Even the cases Plaintiffs cite find this to be true. *See, e.g., Gohler v. Wood*, 162 F.R.D. 691, 693-4 (D. Utah 1995) (Because "Deloitte's audit practice manuals constitute trade secrets" "plaintiffs must show the disclosure of the manuals is both relevant and necessary."). Although some courts have allowed limited production of the specific auditing procedures under a protective order, this Court should not because the sensitive information is completely irrelevant and unnecessary to the issues in this case.