1  BARBARA HART (*pro hac vice*)
   DAVID C. HARRISON (*pro hac vice*)
2  LOWEY DANNENBERG COHEN & HART, P.C.
   One North Broadway, Suite 509
3  White Plains, NY  10601-2310
   Telephone: 914-997-0500
4  Facsimile:  914-997-0035
5  *Lead Counsel for the New York City Pension Funds and the Class*

6  WILLEM F. JONCKHEER S.B.N. 178748
7  SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
   Three Embarcadero Center, Suite 1650
8  San Francisco, CA  94111
   Telephone: 415-788-4220
9  Facsimile:  415-778-0160
   *Local Counsel*
10

11 MICHAEL A. CARDOZO
   Corporation Counsel of the City of New York
12 Carolyn Wolpert
   100 Church Street
13 New York, NY  10007
   Telephone: 212-788-0748
14

15 *Attorneys for the New York City Pension Funds*

16              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
17                 SAN JOSE DIVISION

18 ────────────────────────────          No. C06-04327-JW (PVT)
19 IN RE JUNIPER NETWORKS, INC.
   SECURITIES LITIGATION                 **UNOPPOSED APPLICATION OF LEAD**
20                                        **PLAINTIFF IN SUPPORT OF**
                                          **PRELIMINARY APPROVAL OF PROPOSED**
21 ────────────────────────────          **PARTIAL CLASS SETTLEMENT, PLAN OF**
                                          **ALLOCATION, FORM OF SETTLEMENT**
22 THE NEW YORK CITY EMPLOYEES'           **NOTICE, AND PROPOSED AWARD OF**
   RETIREMENT SYSTEM, et al.,             **ATTORNEYS' FEES AND**
23                                        **REIMBURSEMENT OF EXPENSES**
                         Plaintiffs,
24
                                          No. C08-0246-JW (PVT)
25     v.

26 LISA C. BERRY,                         Date:  March 29, 2010
                                          Time:  9:00 a.m.
27                       Defendant.       Place: Courtroom 8, 4th Floor
   ────────────────────────────          Judge: James J. Ware
28
   UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
   PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)

   {1964 / BRF / 00100760.DOC v1}

# TABLE OF CONTENTS

APPLICATION ............................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

    I.      INTRODUCTION ............................................................................ 2

    II.     The Litigation............................................................................... 3

    III.    The Settlement Negotiations........................................................ 7

    IV.    ARGUMENT .................................................................................. 9

        A.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL.............. 9

            1.     Preliminary Approval Standards...................................... 9

            2.     The Settlement Agreement Resulted from Arm's-Length
                  Negotiations .................................................................. 10

            3.     The Settlement Has No Obvious Deficiencies and Falls
                  Within the Range for Approval...................................... 12

            4.     The Risk, Expense and Complexity of the Action........................ 13

            5.     The Proceedings Are Sufficiently Advanced To Permit
                  Preliminary Approval of the Settlement ...................... 14

        B.     THE PROPOSED PLAN OF ALLOCATION SHOULD BE
            PRELIMINARILY APPROVED ............................................... 15

        C.     THE PROPOSED NOTICE PLAN MEETS ALL
            REQUIREMENTS................................................................. 16

        D.     PROPOSED SCHEDULE FOR FINAL APPROVAL
            PROCEEDINGS ................................................................. 17

        E.     THE REQUESTED ATTORNEYS' FEES AND EXPENSES
            SHOULD BE PRELIMINARILY APPROVED ...................... 18

        F.     REIMBURSEMENT OF EXPENSES SHOULD BE
            PRELIMINARILY APPROVED ............................................... 19

    V.     CONCLUSION................................................................................. 20

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    i

{1964 / BRF / 00100760.DOC v1}

# **TABLE OF AUTHORITIES**

## CASES

*Auto. Prods. PLC v. Tilton Eng'g, Inc.*
    855 F. Supp. 1101, 1107-08 (C.D. Cal. 1994) ........................................................ 20

*Boeing Co. v. Van Gemert*
    444 U.S. 472, 478 (1980) ........................................................................................ 18

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 11

*Churchill Village, L.L.C. v. GE*
    361 F.3d 566 (9th Cir. 2004) .................................................................................. 13

*Class Plaintiffs v. Seattle*
    955 F.2d 1268 (9th Cir. 1992) .................................................................................. 9

*CLRB Hanson Indus. LLC v. Google Inc.*
    05-03649-JW, slip op. (N.D. Cal. May 12, 2009) ............................................ 14, 18

*Dura Pharms., Inc. v. Broudo*
    544 U.S. 336 (2005) .................................................................................................. 5

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................. 9

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994) ...................................................................................... 20

*In re Apollo Group, Inc. Sec. Litig.*
    CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ............................ 13

*In re Apple Computer Sec. Litig.*
    84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept 6, 1991) .................................... 13

*In re Cisco Systems, Inc. Sec. Litig.*
    01-20418-JW, slip op. (Dec. 5, 2006) (Dkt. 633) ............................................ 12, 19

*In re First Capital Hldgs. Corp. Fin. Prods. Sec. Litig.*
    MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................ 11

*In re Heritage Bond Litig.*
    02ML1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................. 13, 19

*In re Immune Response Sec. Litig.*
    497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ................................................. 10, 19

*In re Juniper Networks, Inc. Sec. Litig.*
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ............................................................. 5, 10

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)          ii

{1964 / BRF / 00100760.DOC v1}

*In re Juniper Networks, Inc. Sec. Litig.*
    No. C06-04327, 2009 WL 3353321 (N.D. Cal. Oct. 16, 2009) (amended opinion) ..... 6, 7, 10

*In re Maxim Integrated Prods. Sec Litig.*
    No. C08-00832JW, 2009 WL 2136939 (N.D. Cal. July 16, 2009) ........................................ 11

*In re Media Vision Tech. Sec. Litig.*
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ................................................................................................. 14

*In re OmniVision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................... 10, 13, 19

*In re Oracle Sec. Litig.*
    C-90-0931, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) ...................................................... 15

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................. 11

*In re Wireless Facilities, Inc. Sec. Litig. II*
    07CV482, 2008 WL 4146126 (S.D. Cal. Sept. 3, 2008) ....................................................... 10

*Knight v. Red Door Salons, Inc.*
    No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................... 13, 14

*Munoz v. UPS Ground Frieght, Inc.,*
    No. 07-00970 MHP, 2009 WL 1626376 (N.D. Cal. June 9, 2009) ........................................ 19

*New York City Employees' Retirement System v. Berry*
    616 F. Supp. 2d 987 (N.D. Cal.) ......................................................................................... 6, 10

*New York City Employees' Retirement System v. Berry*
    667 F. Supp. 2d 1121 (N.D. Cal. 2009) .............................................................................. 6, 10

*Ofcrs. for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................................................. 13

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ................................................................................................. 18

*Rosenburg v. IBM*
    C06-00430, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) .......................................... 10, 15, 17

*Satchell v. Fed. Express Corp.*
    C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................................... 10

*Six Mexican Workers v. Az. Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) ............................................................................................... 18

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*
    552 U.S. 148 (2008) ................................................................................................................. 6

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)       iii

{1964 / BRF / 00100760.DOC v1}

1    *Tellabs, Inc. v. Makor Issues & Rights*
         551 U.S. 308 (2007) ............................................................................................. 5
2
     *Torrisi v. Tucson Elec. Power Co.*
3        8 F.3d 1370 (9th Cir. 1993) ...................................................................... 18, 19
4    *Vizcaino v. Microsoft Corp.*
         290 F.3d 1043 (9th Cir. 2002) .................................................................. 18, 19
5
     *West v. Circle K Stores*
6        Civ. S-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ............................ 9, 12
7    *In re Wireless Facilities, Inc. Securities Litigation II*
         2008 WL 4146126, 253 F.R.D. 607 (S.D. Cal. 2008) ........................................ 17
8
     *Young v. Polo Retail, LLC*
9        C-02-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ................................... 9

10   **STATUTES**

11   15 U.S.C. § 77a *et seq.* ........................................................................................... 4

12   15 U.S.C. § 78u-4(a)(7) ........................................................................................... 17

13   15 U.S.C. § 78a *et seq.* ........................................................................................... 4

14   **OTHER AUTHORITIES**

15   J. Moore, *et al.,* MOORE'S FED. PRAC., ¶23.8102-1 (2d ed. 1993) ............................. 12

16   NEWBERG ON CLASS ACTIONS, §11.25 (1992) ........................................................... 9

17   **RULES**

18   Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 16

19   Fed. R. Civ. P. 23 .................................................................................................... 17

20   Fed. R. Civ. P 42 ..................................................................................................... 16

21   **REGULATIONS**

22   17 C.F.R. § 240.10b-5 ..................................................................................... 4, 5, 15

23

24

25

26

27

28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    iv

{1964 / BRF / 00100760.DOC v1}

## APPLICATION

Lead Plaintiff, the New York City Employees' Retirement System, the Teachers' Retirement System of the City of New York, the New York City Fire Department Pension Fund, the New York City Police Pension Fund, the New York City Police Superior Officers' Variable Supplements Fund, the New York City Police Officers' Variable Supplements Fund, the New York City Firefighters' Variable Supplements Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Teachers' Retirement System of the City of New York Variable Annuity Program (collectively, the "NYC Funds" or "Lead Plaintiff") hereby applies to this Court for an order preliminarily approving (1) the terms of the proposed partial settlement ("Settlement") set forth in the Stipulation of Settlement dated March 15, 2010 ("Stipulation"); (2) the form and manner for providing notice to the Class; (3) the proposed Plan of Allocation; and (4) the proposed award of attorneys' fees and expenses.  Lead Plaintiff further requests that the Court schedule a hearing to determine whether the Settlement, the Plan of Allocation, and the application for attorneys' fees and expenses, which are described in the accompanying Class Notice, should be given final approval.

The Settlement provides for the payment of $169,000,000 plus interest earned thereon for the benefit of the certified class of investors in Juniper publicly traded securities.[1]  If approved, the Settlement would resolve all claims in *In re Juniper Networks, Inc. Sec. Litig.*, C06-04327-JW (N.D. Cal.) (the "Juniper Action"), against Juniper Networks, Inc. ("Juniper" or the "Company"), and individual defendants Scott Kriens, Marcel Gani, Pradeep Sindhu, Robert M. Calderoni, Kenneth Goldman, William R. Hearst III, Stratton Sclavos, Vinod Khosla, Kenneth Levy, William R. Stensrud (collectively with Juniper, the "Juniper Defendants") and claims in the related class action, *The New York City Employees' Retirement System v. Berry*, C08-0246-JW (N.D. Cal.) (the "Berry Action"), against Lisa C. Berry ("Berry").  Berry and the Juniper

---

[1]  Pursuant to the terms of the Memorandum of Understanding dated February 5, 2010 (the "MOU"), the Settlement Fund was deposited by Defendants into an escrow account established by Lead Plaintiff's counsel with Amalgamated Bank, the escrow agent approved by the parties.

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    1

{1964 / BRF / 00100760.DOC v1}

1   Defendants are referred to collectively as the "Defendants."

2   The grounds for this application are that the Settlement, Plan of Allocation, and requested

3   fee award are within the range of fairness. Lead Plaintiff further contends and requests that

4   notice should be sent to members of the Class in the form submitted herewith, which proposed

5   notice adequately apprises the Class about the terms of the Settlement and Class members' rights

6   with respect to the proposed Settlement.

7   This application is based on the Memorandum of Points and Authorities set forth below;

8   the Stipulation and exhibits; the proposed Plan of Allocation; the Declarations of Barbara Hart

9   ("Hart Decl."), Michael A. Marek ("Marek Decl.") and Charles Ferrara ("Ferrara Decl."); and all

10   other pleadings and matters of record.

11   Defendants support this application for preliminary approval of the Settlement. A

12   proposed form of order is attached as Exhibit A to the Stipulation, which has been filed

13   concurrently.

14   ### STATEMENT OF ISSUES TO BE DECIDED

15   1.   Whether the proposed settlement of this action should be preliminarily approved

16   by this Court as within the range of fairness, reasonableness and adequacy.

17   2.   Whether the proposed settlement notice adequately apprises the members of the

18   Class about the terms of the settlement and their rights with respect to it.

19   3.   Whether the proposed plan of allocation should be preliminarily approved.

20   4.   Whether a hearing date should be scheduled for final approval of the settlement,

21   the plan of allocation, and the application for attorneys' fees and reimbursement of expenses.

22   ### MEMORANDUM OF POINTS AND AUTHORITIES

23   **I.   INTRODUCTION**

24   Lead Plaintiff seeks preliminary approval of the $169,000,000 all-cash Settlement with

25   Juniper Networks Inc. and certain of its current and former officers and directors on the grounds

26   that it is fair, reasonable and adequate, and requests that notice be sent to the certified Class.

27   The proposed Settlement is an excellent result, achieved after extensive discovery was

28
UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)          2

{1964 / BRF / 00100760.DOC v1}

1   taken from the Juniper Defendants, and notwithstanding difficult litigation risks.  As set forth

2   below, the Settlement, Plan of Allocation, and request for fees and expenses are within the range

3   of reasonableness so that notice should be sent to the proposed Class; and the settlement notice

4   adequately apprises Class members of the terms of the Settlement and their rights with respect to

5   it.

6   **II.     THE LITIGATION**

7          Beginning on July 14, 2006, class action complaints were filed against Juniper and the

8   Individual Defendants.  On November 20, 2006, the actions were consolidated, the NYC Funds

9   were appointed as the Lead Plaintiff, and the Court approved Lead Plaintiff's choice of the law

10  firm of Lowey Dannenberg Cohen & Hart, P.C. ("LDCH") as Lead Counsel.  On January 12,

11  2007, Lead Plaintiff filed a Consolidated Class Action Complaint.  In March 2007, Juniper filed

12  restated financial statements, reducing the Company's earnings by $900 million over a several

13  year period to properly account for compensation expenses associated with historical stock

14  option grants.  On April 9, 2007, Lead Plaintiff filed the Amended Consolidated Class Action

15  Complaint (the "Complaint").

16         The Complaint alleges that Defendants engaged in a long-running scheme whereby

17  Defendants failed to disclose that they had manipulated stock option grant dates in order to

18  provide Juniper officers, directors and employees with more favorable option exercise prices

19  with the benefit of hindsight.  Like many companies, Juniper used stock options as a form of

20  compensation for its directors, officers and employees, and Juniper's representations about its

21  stock option grants stated that such grants were made at the market price on the date of the

22  option grant.  Lead Plaintiff alleges, however, that Defendants failed to disclose that Juniper

23  backdated the grant dates, *i.e.*, it retroactively selected dates in the past, when the market price

24  was lower, as the "grant date" so that the options were "in the money" when issued.

25         The Complaint alleges that from the time Juniper went public in June 1999, the

26  Company's financial statements and proxy statements were materially false and misleading in

27  representing (1) that under the Company's stock option plans, no stock options "have been

28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)          3

{1964 / BRF / 00100760.DOC v1}

granted for less than fair market value on the date of grant"; (2) that no compensation expense was recognized for the option grants because "the exercise price of the Company's stock options equals the market price of the underlying stock on the date of grant"; and (3) that stock options "will provide value to executive officers only when the price of the Company's common stock increases over the exercise price."  Lead Plaintiff alleges that by secretly backdating the grant dates to a date when the market price was lower, Defendants contradicted Juniper's public representations, and routinely issued in-the-money options without recording compensation charges, as required by generally accepted accounting principles ("GAAP").

The Complaint further alleges that when Juniper's stock options practices were disclosed by the financial media in May 2006, Juniper's stock price declined by 11 percent on May 18 and May 19, 2006, and dropped another 9 percent on August 10 and August 11, 2006 in connection with the Company's announcement that it intended to restate its financial results, from January 2003 through March 31, 2006.  Following the disclosure of the backdating scheme, Juniper undertook an internal investigation and ultimately disclosed the results of the investigation in its 2006 Form 10-K, dated March 9, 2007.  The Complaint alleges that these disclosures admit that:

- Juniper backdated options granted to executives, directors and personnel to ensure that the options were "in the money" when granted.

- One or more Juniper senior executives orchestrated this deliberate backdating.

- The backdating involved the falsification of documents, including documents filed with the Securities and Exchange Commission ("SEC"), which misrepresented executive and director compensation, the Company's option granting practices, and its financial results.

- Juniper violated GAAP and thereby materially understated expenses and overstated net income, necessitating a restatement of $900 million.

In the Complaint, Lead Plaintiff alleges claims against Juniper and certain of its current and former senior officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 issued by the SEC, and Sections 11 and 15 of the Securities Act of 1933 and directors.[2]  On June 7, 2007, Juniper filed a motion to dismiss the amended class complaint.

---

[2]  The officer defendants include Scott Kriens ("Kriens") (Chairman and Chief Executive Officer from 1996 to July 2008) and Marcel Gani (Chief Financial Officer from 1997 to 2004,

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)     4

{1964 / BRF / 00100760.DOC v1}

1   In their motion, the Juniper Defendants primarily challenged (1) whether Lead Plaintiff was able

2   to plead facts supporting a strong inference of scienter, *see Tellabs, Inc. v. Makor Issues &*

3   *Rights*, 551 U.S. 308 (2007), and (2) whether Lead Plaintiff had adequately alleged loss

4   causation with respect to Juniper's stock price declines in May and August 2006. *See Dura*

5   *Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Juniper also challenged Lead Plaintiff's standing

6   to assert a Section 11 claim based on the November 2003 notes offering, and whether Lead

7   Plaintiff had adequately pled control person liability under Sections 20(a) and 15 against the

8   Company's outside directors.

9        On March 31, 2008, this Court granted in part and denied in part the Juniper Defendants'

10   motion to dismiss, finding each element of securities fraud: scienter, loss causation, and

11   damages, was adequately pled. The Court also held that Lead Plaintiff had standing to assert

12   claims on behalf of purchasers of the Notes and had adequately alleged control person liability

13   against the outside Directors. *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037

14   (N.D. Cal. 2008).

15        On January 14, 2008, Lead Plaintiff filed a related action in this Court against Lisa C.

16   Berry, Juniper's former General Counsel, Vice-President and Secretary. *New York City*

17   *Employees' Retirement System. v. Lisa C. Berry*, Case No. 08-0246-JW (the "Berry Action" and

18   together with the Juniper Action, the "Actions"). Lead Plaintiff asserts Section 10(b) and 20(a)

19   claims against Ms. Berry.

20        On September 29, 2008, Ms. Berry moved to dismiss, arguing, among other things, that

21   the complaint failed to plead primary liability under Rule 10(b) under the Supreme Court's

22   recent decision in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148

23

24   and Chief of Staff from 2005 to 2006). The director defendants include Kriens, William R.
25   Hearst III, Vinod Khosla, Kenneth Levy, Stratton Sclavos, Pradeep Sindhu, William R.
    Stensrud, Robert Calderoni, and Kenneth Goldman. Each director defendant was sued as a
26   "control person" of Juniper and as a signatory to one or more registration statements for the
    NetScreen Merger and/or the Notes. Ernst & Young LLP, which is not a party to the
27   Settlement, is also named as a defendant on the claim relating to the NetScreen Merger. Lead
    Plaintiff continues to prosecute its claim against Ernst & Young.

28
UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    5

{1964 / BRF / 00100760.DOC v1}

1    (2008), and that the complaint failed to adequately allege Berry's scienter.  On May 15, 2009, the

2    Court granted in part and denied in part Ms. Berry's motion to dismiss the initial complaint

3    against her.  616 F. Supp. 2d 987 (N.D. Cal.).

4           On June 18, 2009, Lead Plaintiff filed an amended class action complaint against Ms.

5    Berry.  On July 13, 2009, Ms. Berry moved to dismiss the amended complaint and strike certain

6    allegations in the amended complaint derived from evidence obtained during discovery in the

7    Juniper Action and from allegations included in the SEC complaint against Berry, which is

8    pending before Judge Whyte.  On September 24, 2009, this Court granted in part and denied in

9    part Ms. Berry's motion to dismiss the Amended Complaint.  *New York City Employees'*

10   *Retirement System v.* Berry, 667 F. Supp. 2d 1121 (N.D. Cal. 2009).  The Court held, *inter alia*,

11   that Lead Plaintiff had adequately alleged that Berry "played a significant role in drafting and

12   editing" Juniper's false financial statements issued during the Class Period, even though she was

13   not a signatory to the SEC filings.  *Id.* at 1124.

14          On March 2, 2009, Lead Plaintiff moved to certify the class in the Juniper Action;

15   Juniper filed its opposition to class certification on June 2, 2009.  In connection with Lead

16   Plaintiff's motion, the Parties engaged in substantial fact and expert discovery, briefing and oral

17   argument.

18          On September 25, 2009, the Court granted Lead Plaintiff's motion for class certification

19   on behalf of Juniper investors during the period July 11, 2003 through August 10, 2006.  In re

20   Juniper Networks, Inc. Sec. Litig., No. C06-04327, 2009 WL 3353321 (N.D. Cal. Oct. 16, 2009)

21   (amended opinion).  In so ruling, the Court held that Lead Plaintiff's evidence was sufficient to

22   support its theory of loss causation relating to the May 2006 disclosures. Id. at *7.

23          On September 28, 2009, Juniper filed a motion for leave to file a motion for

24   reconsideration in order to, among other things, redefine the Class definition.  On October 16,

25   2009, the Court denied Juniper's motion and certified the following Class:

26                  All persons and entities who purchased or otherwise acquired the
                publicly traded securities of Juniper Networks, Inc. from July 11, 2003 through
27              August 10, 2006, inclusive  and who did not sell such acquired securities before
                May 18, 2006, were damaged, including (a) those who received or acquired

28
UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)          6

{1964 / BRF / 00100760.DOC v1}

Juniper common stock issued pursuant to a registration statement on SEC Form S-4, dated March 10, 2004, for the Company's merger with NetScreen Technologies Inc.; and (b) purchasers of Zero Coupon Convertible Senior Notes due June 15, 2008 issued pursuant to a registration statement on SEC Form S-3, dated November 20, 2003. Excluded from the Class are the Defendants and the current and former officers and directors of the Company, their immediate families, their heirs, successors, or assigns and any entity controlled by any such person.

2009 WL 3353321, at *10.

On October 12, 2009, the parties filed a Submission re: Dissemination of Class Notice, attaching a form of class notice.

The parties conducted extensive discovery pursuant to the Court's Discovery Plan. Prior to engaging in a second round of settlement discussions (the details of both settlement negotiations are set forth below), Lead Plaintiff examined more than 2.5 million pages of documents produced by the Defendants and third parties, and deposed 28 witnesses. Defendants have conducted depositions of representatives of Lead Plaintiff and numerous third-party witnesses.

In September 2009, the Juniper Defendants filed a motion for judgment on the pleadings seeking a ruling that the May 2006 disclosures did not constitute corrective disclosures for which Lead Plaintiff can plead loss causation. The motion has been fully briefed; however, the parties agreed to adjourn the hearing on the motion until March 15, 2009. In the interim, Lead Plaintiff and the Defendants engaged in a two-day mediation conference on February 4-5, 2010.[3]

## III.   THE SETTLEMENT NEGOTIATIONS

Lead Plaintiff has participated in all major litigation decisions and has overseen the negotiations conducted by Lead Counsel that resulted in the proposed Settlement. The negotiations were at all times conducted at arm's length. In anticipation of a potential mediation, in September 2008 Lead Plaintiff negotiated the voluntary production of all documents produced to the SEC despite the PSLRA stay of discovery. Based on that database, the parties exchanged

---

[3] Similarly, the parties postponed certain depositions until after the February mediation due to (1) the pending mediation; (2) resolution of outstanding motions to compel; and (3) the Juniper Defendants' motion for reconsideration regarding Judge Trumbull's December 9, 2009 ruling that the Audit Committee's investigation is not entitled to work-product protection.

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)          7

{1964 / BRF / 00100760.DOC v1}

1  damages reports and mediation statements.  The parties engaged in an initial mediation before

2  the Honorable Nicholas Politan.  The initial mediation was unsuccessful with the parties

3  extremely far apart after the first day.  Hart Decl. ¶¶ 17-19.  The parties then engaged in 17

4  months of intensive discovery, during which period several legal rulings were issued by the

5  Court which have shaped the contours of the litigation.

6       The parties began a second round of negotiations in November 2009.  Even prior to the

7  exchange of settlement offers, the parties addressed several other key issues concerning the

8  selection of the mediator, the parameters of the mediation and negotiated the range within which

9  the mediation would proceed.  *Id.* ¶ 22.  In late January and early February 2010, Lead Plaintiff

10 and the Juniper Defendants again exchanged extensive analyses regarding liability and damages

11 as part of the mediation process.  Defendants raised several independent bases for reducing any

12 potential liability, including its respective extent of liability and Lead Plaintiff's burden to

13 conclusively establish loss causation with respect to each of the corrective disclosure dates.  *Id.*

14 These submissions gave additional clarity to the strengths and weaknesses of Lead Plaintiff's

15 claims and the defenses thereto.

16       The mediation sessions began on February 4, 2010 under the aegis of a professional

17 mediator, retired United States District Court Judge Abraham Sofaer.  As described in the

18 accompanying Hart Decl., the negotiations among Lead Plaintiff, through Lead Counsel, and

19 counsel for Defendants, were arduous and contentious.  In the evening of the second full day of

20 negotiations with all principals and counsel present, an agreement in principle was reached to

21 settle the class action claims against Defendants for $169,000,000, the terms of which were

22 contained in a MOU executed by the parties.  *Id.* ¶ 23.  Subsequent negotiations ensued over the

23 next several weeks, which resulted in the Stipulation of Settlement executed on March 15, 2010.

24 *Id.* ¶ 24.

25       The Settlement proceeds, after payment of taxes, costs, expenses and attorneys' fees, will

26 be distributed to Class members who timely file proofs of claim.  The Plan of Allocation

27 provides that the net proceeds will be distributed *pro rata* to members of the Class, based on a

28

{1964 / BRF / 00100760.DOC v1}

1 formula which takes into account their investment losses. The proposed Plan of Allocation is

2 attached as Ex. A to the Marek Declaration and is described in detail in the proposed Class

3 Notice (Ex. A-1 to Stipulation).

4     Lead Plaintiff and Lead Counsel submit that the $169,000,000 settlement is an excellent

5 result that should be preliminarily approved, given the immediate financial benefit and the

6 significant litigation risks involved in this case if the two class actions against Defendants are not

7 resolved. Likewise, the Plan of Allocation and application for attorneys' fees and expenses

8 should be preliminarily approved as fair and reasonable, and notice should be provided to the

9 Class.

10 **IV.   ARGUMENT**

11    **A.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

12       **1.   Preliminary Approval Standards**

13     Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for a class

14 action settlement. The Ninth Circuit maintains a "strong judicial policy that favors settlements,

15 particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955

16 F.2d 1268, 1276 (9th Cir. 1992). Approval of a proposed class action settlement is within the

17 broad authority of the district court consistent with this long-standing policy favoring

18 settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

19     The class action settlement approval process involves two steps: first, preliminary

20 approval, followed by notice to the class, and then final approval. *See, e.g., West v. Circle K*

21 *Stores*, Civ. S-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). The test for whether

22 preliminary approval should be granted has both a procedural and a substantive component. The

23 court in *Young v. Polo Retail, LLC*, C-02-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25,

24 2006), quoting from NEWBERG ON CLASS ACTIONS, §11.25 (1992) explained the procedure as

25 follows:

26       If the proposed settlement appears to be the product of serious,
      informed, non-collusive negotiations, has no obvious deficiencies,
27       does not improperly grant preferential treatment to class
      representatives or segments of the class, and falls within the range

28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   9

{1964 / BRF / 00100760.DOC v1}

of possible approval, then the court should direct that the notice be
given to the class members of a formal fairness hearing. . . .
MANUAL FOR COMPLEX LITIGATION, Second §30.44 (1985).
In addition, '[t]he court may find that the settlement proposal
contains some merit, is within the range of reasonableness required
for a settlement after, or is presumptively valid.' NEWBERG ON
CLASS ACTIONS §§11.25 (1992).

See also Rosenburg v. IBM, C06-00430, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11,

2007) (preliminary approval granted where "Settlement has no obvious defects and is within the

ranges of possible Settlement approval such that notice to the Class is appropriate"); Satchell v.

Fed. Express Corp., C03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)

(preliminarily approving non-collusive settlement that had no obvious defects and was within the

range of fairness).

### 2. The Settlement Agreement Resulted from Arm's-Length Negotiations

There is an initial presumption of fairness for a proposed settlement that results from

arm's-length negotiations. In re OmniVision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

2008); In re Wireless Facilities, Inc. Sec. Litig. II, 07CV482, 2008 WL 4146126, at *3 (S.D. Cal.

Sept. 3, 2008). Here, the proposed settlement is the product of arm's-length negotiations over a

several-month period between Lead Plaintiff, through its counsel, and the Juniper Defendants,

through their counsel. As noted above, in September 2008, the parties engaged in initial

negotiations and a mediation which was unsuccessful. Following intensive discovery over a 17

month period, negotiations resumed. Those negotiations culminated in a two-day mediation

session on February 4 and 5, 2010 under the auspices of the Hon. Abraham D. Sofaer. "[T]he

assistance of an experienced mediator in the settlement process confirms that the settlement is

non-collusive." Satchell, 2007 WL 1114010, at *4; In re Immune Response Sec. Litig., 497 F.

Supp. 2d 1166, 1171 (S.D. Cal. 2007). Moreover, the parties' views on the factual and legal

issues were well-informed by merits discovery, as well as a series of rulings by this Court giving

contours to the claims. See In re Juniper Networks Sec. Litig., 542 F. Supp. 2d 1037 (N.D. Cal.

2008); NYCERS v. Berry, 616 F. Supp. 2d 987 (N.D. Cal. 2009); Berry, 667 F. Supp. 2d 1121

(N.D. Cal. 2009); Juniper, 2009 WL 3353321. As a result, the parties were able to negotiate a

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)     10

{1964 / BRF / 00100760.DOC v1}

1   fair settlement, taking into account the costs and risks of continued litigation.  Hart Decl. ¶¶ 26-

2   29.  These negotiations produced a result that all parties believe to be within their respective best

3   interests.

4         The opinion of well-informed and experienced counsel in favor of the settlement is also

5   entitled to significant weight.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

6   1080 (N.D. Cal. 2007); *In re First Capital Hldgs. Corp. Fin. Prods. Sec. Litig.*, MDL 901, 1992

7   WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a

8   compelling factor); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Lead

9   Plaintiff and Lead Counsel consider their claims meritorious, but not without risk.  They have

10   concluded that it is in the best interests of the Class to settle with the Defendants after

11   considering the following factors: (1) the immediate benefits provided for the Class; (2) the risks

12   and uncertainties in predicting the outcome of complex litigation; (3) the expense and length of

13   time necessary to prosecute two separate Class Actions through trial and appeals; and (4) the

14   challenges asserted by and available to the Defendants that could substantially reduce the

15   claimed damages.

16         In this regard, Lead Plaintiff's theory of damages is based upon establishing that

17   Juniper's stock prices declined in response to adverse revelations about the Company's stock

18   option practices on four disclosure dates:  May 18, May 19, August 10 and August 11, 2006.

19   Lead Plaintiff's financial expert estimates total damages resulting from losses in Juniper's stock

20   value on these four dates at approximately $957 million.  *See* Marek Decl. ¶ 13.  However,

21   Defendants vigorously challenge Lead Plaintiff's ability to establish the causal connection for

22   three out of four disclosure dates, which account for 80% of the claimed recoverable damages.

23         In September 2009, the Juniper Defendants filed a motion for judgment on the pleadings

24   seeking a ruling that the May 2006 disclosures were not corrective disclosures for which Lead

25   Plaintiff can plead loss causation, based upon this Court's decision in *In re Maxim Integrated*

26   *Prods. Sec Litig.*, No. C08-00832JW, 2009 WL 2136939 (N.D. Cal. July 16, 2009).  If

27   Defendants' motion is successful, it would eliminate over 60 percent of the claimed damages.

28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   11

{1964 / BRF / 00100760.DOC v1}

1    Defendants' motion has been fully briefed; however, the parties adjourned the hearing on the

2    motion in light of the mediation.[4]

3          The Juniper Defendants also challenge causation resulting from the decline in Juniper's

4    share price on August 10, 2006. Lead Plaintiff contends that news of Juniper's restatement was

5    "leaked" to the market prior to Juniper's public release of the restatement announcement after the

6    market closed on August 10, 2006. Although discovery revealed dozens of individuals that were

7    aware of the impending restatement announcement prior to its public release, Defendants have

8    argued Lead Plaintiff's leakage theory falls short as merely circumstantial. If Defendants'

9    position prevails on summary judgment, or Lead Plaintiff fails to convince a jury of leakage, it

10   would reduce recoverable damages by almost another 20 percent. *See* Hart Decl. ¶ 29.

11   Accordingly, in light of these uncertainties, the Settlement amount is more than satisfactory. *See*

12   *In re Cisco Systems, Inc. Sec. Litig.*, 01-20418-JW, slip op. (Dec. 5, 2006) (Dkt. 633) (approving

13   $99 million settlement where there were substantial risks in proving damages).

### 3.    The Settlement Has No Obvious Deficiencies and Falls Within the Range for Approval

16         "[A]t this preliminary approval stage, the court need only 'determine whether the

17   proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11

18   (citation omitted); J. Moore, *et al.,* MOORE'S FED. PRAC., ¶23.8102-1, at 23-479 (2d ed. 1993).

19   Under this Settlement, Defendants will pay $169,000,000, which is the third largest settlement in

20   gross dollars for all cases involving the backdating of stock options.

21         It is difficult to compare the Settlement to the theoretical amount that the Class might

22   have obtained had it been completely successful in establishing liability at trial, because the

23   parties fiercely debated issues of causation and damages. During the course of negotiations, the

24   parties discussed at length Defendants' loss causation challenges with respect to the alleged

25   correction disclosures in May and August 2006. The $169 million proposed Settlement

26   represents a generous percentage of recovery – ranging from 18% to 94% of damages –

27   _____

[4] On February 16, 2009, the motion was withdrawn in light of the proposed settlement.

28
UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    12

{1964 / BRF / 00100760.DOC v1}

depending on whether one or more of the four disclosure dates are excluded from the damages calculus. In all events, the percentage of recovery is well above the median percentage of investor losses recovered recovery level in securities class action settlements. *See OmniVision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 02ML1475, 2005 WL 1594403, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)). The percentage of recovery also falls within the higher end range of recoveries in terms of dollar value and percentage of recovery for comparable options backdating settlements. *Cf. Ofcrs. for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"). *See also Knight v. Red Door Salons, Inc.* 08-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

### 4. The Risk, Expense and Complexity of the Action

The fairness of the Settlement is further underscored when the obstacles the Class faced in succeeding on the merits, as well as the expense and likely duration of the litigation, are considered. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). Although Lead Plaintiff believes that Defendants' arguments described above lack merit, a substantial risk existed that Defendants would prevail on one or more of these arguments on their motion for judgment on the pleadings, at summary judgment, or ultimately at trial.[5] Defendants have denied, and continue to deny, each and all of the claims asserted by Lead Plaintiff.

The settlement will confer an immediate benefit to the Class and eliminate the risk of

---

[5] As discussed in further detail herein, even if Lead Plaintiff were to prevail at trial, risks to the Class would remain. For example, Defendants certainly would initiate a lengthy and costly appeal process to challenge the verdict. Moreover, any verdict returned by a jury would be subject to the presiding judge's evaluation and, as such, could be overturned. *See, e.g., In re Apple Computer Sec. Litig.*, 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept 6, 1991) (this Court entered a judgment notwithstanding the verdict for the individual defendants and ordered a new trial against the corporate defendant); *In re Apollo Group, Inc. Sec. Litig.*, CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (overturning a trial verdict because there was insufficient evidence at trial to prove loss causation).

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    13

{1964 / BRF / 00760.DOC v1}

1  continued litigation under circumstances where a favorable outcome is far from certain. *See In*

2  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming approval of

3  settlement because "[c]omplex litigation is inherently uncertain and Plaintiffs would have had

4  much difficulty proving scienter"); *see also Knight,* 2009 WL 248367, at *3 (acknowledging that

5  the settlement agreement that offered an immediate and certain award for the Class was a

6  superior alternative to continued litigation in light of the uncertain risks associated with

7  plaintiffs' claims). Given that Defendants aggressively challenged liability, causation, and

8  damages, and would continue to do so through summary judgment, trial and appeals, the

9  $169,000,000 settlement manifestly falls within the range of possible approval and possesses no

10  obvious deficiencies.

11           **5.    The Proceedings Are Sufficiently Advanced To Permit Preliminary
                      Approval of the Settlement**

12

13           Lead Plaintiff, through Lead Counsel, is thoroughly familiar with the factual and legal

14  issues in this case. Hart Decl. ¶¶ 7-8. Lead Plaintiff's claims have been tested and have survived

15  motions to dismiss in both Actions as well as challenges at the class certification stage. Fact

16  discovery in the Juniper Action is substantially complete. Lead Counsel has examined more than

17  2.5 million pages of documents have been produced by the Defendants and third parties, and has

18  deposed 28 witnesses. In addition, Lead Plaintiff and the Juniper Defendants also presented

19  comprehensive evidentiary submissions in late January and early February 2010 pursuant to the

20  mediation process. The parties' respective positions on liability and damages were explored

21  most recently in great detail before the mediator, former federal Judge Abraham Sofaer. As a

22  result, Lead Counsel is thoroughly familiar with the facts of the case and has had ample

23  opportunity to assess the strengths and weaknesses of the claims in which to appraise the

24  sufficiency of the settlement. *See CLRB Hanson Indus. LLC v. Google Inc.*, 05-03649-JW, slip

25  op. (N.D. Cal. May 12, 2009) (granting motion for settlement at a parallel stage of the

26  proceedings); *see also Knight,* 2009 WL 248367, at *4.

27

28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   14

{1964 / BRF / 00100760.DOC v1}

## B. THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation will govern how the settlement proceeds will be distributed among Class members who timely file proofs of claim. The Plan of Allocation is attached as Exhibit A to the accompanying Declaration of Michael A. Marek and detailed in the Class Notice, Ex. A-1 to Stipulation at 16-19, so that members of the Class can determine how their share of the Settlement and those of other claimants will be calculated.

A plan of allocation will be preliminarily approved so long as "the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted." *Rosenburg*, 2007 WL 128232, at *5. *See also In re Oracle Sec. Litig.*, C-90-0931, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) (reasonable to allocate more to class members with stronger claims).

Here, the proposed Plan of Allocation was prepared by Lead Counsel in consultation with its expert, Michael Marek, who found it to be fair and equitable. Marek Decl. ¶ 10. Under the Plan of Allocation, all purchasers of Juniper common stock during the Class Period are treated equally. They will receive their pro rata share of the total claims submitted. Recognized Losses are based upon a constant inflation amount of $3.02 per share for stock, and $25 per Note, for all Class Period purchases before May 18, 2006, the date of the first corrective disclosure. *Id.* ¶ 11. The Plan of Allocation also limits losses depending upon the date of sale. Consistent with this Court's class certification order, purchasers who sold Juniper securities prior to May 18, 2006 are excluded from the definition of the Class because his or her losses were unrelated to the partial corrective disclosures about Juniper's option practices made on May 18, 2006. The POA also takes into account sales during the 90-day period following Juniper's August 10, 2006 announcement that the Company intended to restate its financial results. *Id.* ¶ 12. Under PSLRA Rule 10b-5, damages will be reduced for Class members who sold during this period to the extent that the average stock price between August 11 and the date of sale was higher than the

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    15

{1964 / BRF / 00100760.DOC v1}

1  market price on August 11, 2006.[6] *See* POA, note 2.

2          Accordingly, the proposed Plan of Allocation should be preliminarily approved.

3      **C.    THE PROPOSED NOTICE PLAN MEETS ALL REQUIREMENTS**

4          "For any class certified under Rule 23(b)(3), the court must direct to class members the

5  best notice practicable under the circumstances, including individual notice to all members who

6  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The proposed notice

7  program, provided under the Stipulation, complies with the requirements of Rule 23, and the

8  PSLRA.[7]

9          Lead Plaintiff proposes to give interested parties notice via two separate approaches: (1)

10  by first-class mail, addressed to all Class Members who can reasonably be identified and located;

11  and (2) by publication. After a competitive bidding process from respected and established

12  notice and administration consultants, Lead Plaintiff has retained Rust Consulting, Inc. ("Rust"),

13  an experienced claims administrator, to handle the notice and claims process. Declaration of

14  Charles E. Ferrara, ¶¶ 1-2. As provided in the Preliminary Hearing Order (Ex. A to Stipulation),

15  Rust will mail the Class Notice to all Class members whose names and addresses appear in

16  Juniper's transfer records and to other Class members whose names and addresses are provided

17  by nominees. *Id.* ¶¶ 6-9. In addition, Rust will issue a press release announcing the Settlement

18  and post the Notice on its website. *Id.* ¶¶ 10-11. A Summary Notice will also be published once

19  in the national edition of *The Wall Street Journal* and in *The San Jose Sun Mercury News*. *Id.*

20  ¶ 12.

21          The Class Notice advises putative Class members of the existence of the class action, and

22  their rights with respect to the proposed Settlement. Class Notice, Ex. A-1 to Stipulation at [1-

23

24  _____
   [6]     The PSLRA's 90-day lookback provision is not applicable to Lead Plaintiff's Section 11
   claims with respect to the NetScreen merger and the Notes.

25  [7] For purposes of settlement only, the parties request that the Court consolidate the Juniper Action
26  with the Berry Action under Rule 42, Fed. R. Civ. P., and certify the Berry Action as a class
   action with the same Class definition as previously certified in the Juniper Action. *See*
27  [Proposed] Order Preliminarily Approving Settlement and Providing For Notice (attached as Ex.
   A to the Stipulation), ¶¶ 1-4.

28  UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
   PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)      16

   {1964 / BRF / 00100760.DOC v1}

1   2]. Specifically, the Notice describes (1) the basis for the Settlement and potential recovery on

2   an average per share basis;[8] (2) a brief description of the maximum amount of fees and expenses

3   that Lead Counsel will seek (less than 6% of the Net Settlement Fund after payment of

4   reasonable expenses) and such amount on a per share basis; (3) the Plan of Allocation, which

5   apprises Class members how their "Recognized Loss" will be calculated; (4) information about

6   how to participate in the Settlement; (5) the Court's procedures for final approval of the

7   Settlement; (6) procedures for a Class member to opt out or to object to any aspect of the

8   proposed Settlement, Plan of Allocation, or requested fee award; and (7) instructions as to how

9   to obtain additional information regarding the Action and the Settlement. *See* 15 U.S.C. § 78u-

10  4(a)(7). Similar forms of notice routinely have been approved. *E.g., In re Wireless Facilities,*

11  *Inc. Securities Litigation II,* 2008 WL 4146126 (S.D. Cal. 2008).

12          Moreover, the Proof of Claim (Ex. A-2 to the Stipulation) apprises Class Members that

13  failure to complete and submit a Claim Form, in the manner and time specified, constitutes a

14  waiver of any right to share in the Settlement Fund. Accordingly, the manner of notice satisfies

15  due process and Rule 23. *See Rosenburg,* 2007 WL 128232, at *5-6; *Wireless Facilities,* 2008

16  WL 4146126, at *8.

17  **D.      PROPOSED SCHEDULE FOR FINAL APPROVAL PROCEEDINGS**

18          Based on the terms of the Stipulation and Preliminary Approval Order (Ex. A thereto),

19  Lead Plaintiff proposes the following schedule for the Court's review:

| Event | Time for Compliance |
|-------|---------------------|
| Date by which the Claims Administrator shall mail by first-class mail the Notice and the Proof of Claim to be to all Class members who can reasonably be identified ("Notice Date") | 22 days after the Court's entry of the Preliminary Approval Order[9] |

---

[8] Depending on the number of eligible shares purchased by investors who elect to participate in the settlement and when those shares were purchased and sold, the average distribution, if all class members file valid claims, is estimated to be $0.383 per damaged share. *See* Marek Decl. ¶ 15.

[9]    The foregoing schedule anticipates the timely delivery by Defendants of all necessary shareholder records, in a machine readable format, to the Claims Administrator by the date

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   17

{1964 / BRF / 00100760.DOC v1}

| Event | Time for Compliance |
|---|---|
| Deadline for publishing Summary Notice | 20 days after the Notice Date |
| Deadline for filing Proofs of Claim | 120 days following the Notice Date |
| Deadline for submission in support of final approval | 28 calendar days before the Settlement Fairness Hearing |
| Deadline for submitting Exclusion Requests or Requests for Written Objections (not required) | 21 court days before the Settlement Hearing (90 days after the Notice Date) |
| Reply/Responses to Any Objections | 14 days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 100 days following entry of the Preliminary Approval Order, or later at the Court's convenience |

## E.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES SHOULD BE PRELIMINARILY APPROVED

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks preliminary approval of its request for an award of less than 6% of the Net Settlement Fund. It has long been recognized that a lawyer who "recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[10] The Ninth Circuit and this Court have approved the use of the percentage method in common fund cases. *E.g., CLRB Hanson Indus., LLC v. Google,* 05-03649-JW, slip op. (N.D. Cal. Sept. 14, 2009) (awarding 25% of $25 million settlement); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power*

---

provided in the Preliminary Approval Order. To the extent there are any delays in providing this data to the Claims Administrator, adjustments to the schedule may be necessary.

[10] This rule, known as the common fund doctrine, is firmly rooted in American case law. The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)     18

{1964 / BRF / 00100760.DOC v1}

1  *Co.*, 8 F.3d 1370 (9th Cir. 1993).

2    Here, the requested fee of less than 6% of the <u>Net</u> Settlement Fund, which falls well

3  below the Ninth Circuit's 25% benchmark, is well within the range of reasonableness given

4  (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work;

5  (4) the contingent nature of the fee and the financial burden carried; and (5) awards made in

6  similar cases. *See, e.g., Vizcaino*, 290 F.3d at 1048-50; *Immune Response*, 497 F. Supp. 2d at

7  1175 (recovery of 12% of damages supported a 25% fee award); *OmniVision*, 559 F. Supp. 2d at

8  1046, (recovery of 9% of damages, three times the usual recovery in securities settlements,

9  supported a 28% fee award) (citing *Heritage Bond*, 2005 WL 1594403, at *11 (median

10  shareholder recovery is in the range of 2-3% of damages, from 2002 through 2007)).

11    **F.   REIMBURSEMENT OF EXPENSES SHOULD BE PRELIMINARILY**
       **APPROVED**
12

13    Lead Counsel also requests preliminary approval of reimbursement of approximately

14  $2.6 million of expenses advanced by counsel in prosecuting this action for items such as expert

15  and consultant fees, travel costs, discovery costs, court reporters, legal research, photocopies,

16  postage and filing fees, as well as substantial costs associated with class notice and claims

17  administration. *See Munoz v. UPS Ground Freight, Inc.*, No. 07-00970 MHP, 2009 WL

18  1626376, at *5 (N.D. Cal. June 9, 2009)(reimbursing routine litigation-related expenses incurred

19  when a review of the proceedings would not reveal any obvious inefficiencies that would require

20  a diminution of the submitted amount); *see also In re Cisco*, 01-20418-JW, slip op. (Dec. 5,

21  2006) (awarding reimbursement of expenses that amounted to approximately 9% of the total

22  recovery).[11]

23    Among the largest costs incurred by Lead Counsel were those for Lead Plaintiff's

24  financial and accounting experts whose assistance was essential to the successful prosecution of

25  these actions.  In complex litigation such as this, courts do "not doubt the necessity for counsel to

26  _____

27  [11] This does not include costs of administration and notice, which Lead Plaintiff is advised will
    range between $1.6 million and $2.0 million.

28

{1964 / BRF / 00100760.DOC v1}

retain expert assistance." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996) (recognizing the necessity for counsel to retain securities and financial analysts, forensic accountants, and an investigator to locate and contact potential witnesses); *see also Auto. Prods. PLC v. Tilton Eng'g, Inc.*, 855 F. Supp. 1101, 1107-08 (C.D. Cal. 1994) (finding services of antitrust expert to be necessary to provide jury with a factual basis to ascertain damages). The other categories of expenses for which Lead Counsel seeks reimbursement consist of the type of expenses routinely charged to hourly paying clients – such as travel and court reporter expenses – and therefore are appropriate for reimbursement. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("[Plaintiff] may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted); *Media Vision*, 913 F. Supp. at 1366.

## V.    CONCLUSION

Based upon the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed Class Settlement, Plan of Allocation and request for attorneys' fees and reimbursement of expenses, and (2) enter the Preliminary Approval Order consolidating the Actions, directing that notice be provided to all members of the Class and scheduling a final settlement hearing.

Dated: March 15, 2010

LOWEY DANNENBERG COHEN & HART,
P.C.

/S/_____
BARBARA J. HART
DAVID C. HARRISON
TODD S. GARBER
One North Broadway, 5th Floor
White Plains, NY 10601-2310
914-733-7228 (telephone)
914-997-0035 (facsimile)

*Counsel for Lead Plaintiff*

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    20

{1964 / BRF / 00100760.DOC v1}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLEM F. JONCKHEER
SCHUBERT JONCKHEER KOLBE
   & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
415-788-4220 (telephone)
415-788-0161 (facsimile)

*Local Counsel*

{1964 / BRF / 00100760.DOC v1}