# EXHIBIT A


| | |
|---|---|
| 1 | BARBARA HART (*pro hac vice*) |
| | DAVID C. HARRISON (*pro hac vice*) |
| 2 | TODD S. GARBER (*pro hac vice*) |
| | LOWEY DANNENBERG COHEN & HART, P.C. |
| 3 | One North Broadway, Suite 509 |
| | White Plains, NY 10601-2310 |
| 4 | Telephone: 914-997-0500 |
| | Facsimile: 914-997-0035 |
| 5 | |
| | *Lead Counsel for the New York City Pension Funds and the Class* |
| 6 | |
| | WILLEM F. JONCKHEER S.B.N. 178748 |
| 7 | SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP |
| | Three Embarcadero Center, Suite 1650 |
| 8 | San Francisco, CA 94111 |
| | Telephone: 415-788-4220 |
| 9 | Facsimile: 415-778-0160 |
| 10 | *Local Counsel* |
| 11 | MICHAEL A. CARDOZO |
| | Corporation Counsel of the City of New York |
| 12 | Carolyn Wolpert |
| | 100 Church Street |
| 13 | New York, NY 10007 |
| | Telephone: 212-788-0748 |
| 14 | |
| | *Attorneys for the New York City Pension Funds* |
| 15 | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | | |
|---|---|---|
| | | No. C06-04327-JW (PVT) |
| | IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | **DECLARATION OF MICHAEL A. MAREK IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION** |
| | THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al., | No. C08-0246-JW (PVT) |
| | Plaintiffs, | Date: March 29, 2010 |
| | v. | Time: 9:00 a.m. |
| | LISA C. BERRY, | Place: Courtroom 8, 4th Floor |
| | Defendant. | Judge: James J. Ware |

DECLARATION OF MICHAEL A. MAREK, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)

{1964 / DECL / 00100682.DOC v1}

## I. Background and Qualifications

1. I was retained in this matter by Lead Counsel in this matter to, among other matters, estimate potential damages suffered by Lead Plaintiff and the members of the Class based on the allegations as set forth in the Consolidated Amended Class Action Complaint (the "Complaint"), based upon a Class Period of July 11, 2003 through August 10, 2006. I have been advised by Lead Counsel that this matter has been settled for $169 million against the Juniper Networks, Inc. ("Juniper" or the "Company") Defendants and that the net settlement proceeds will be distributed to the members of the Class.

2. I have assisted in formulating a Plan of Allocation ("POA"), which was based largely on my calculation of damages. I have also calculated the estimated average distribution per share if all Class members file claims. I submit this Declaration in Support of the Settlement and the proposed POA, a copy of which is attached as Exhibit A.

3. I am a founding member of Financial Markets Analysis, LLC ("FMA"). FMA is a securities analysis firm with offices in Princeton, New Jersey and San Diego, California. FMA provides financial analysis and related consulting to its clients. FMA personnel have frequently been called upon to prepare reports and to testify as securities valuation experts in class actions under Federal and State securities laws. Such testimony has included testifying to matters including: (1) market efficiency; (2) the materiality of information; (3) loss and damage causation; (4) the valuation of publicly traded securities based upon the hypothetical absence of alleged misstatements and the disclosure of alleged omissions and misrepresentations; and (5) damages calculations. Over the course of my career, I have prepared numerous plans of allocation in class action matters such as this. I have attached my curriculum vitae as Exhibit B.

## II. Analysis of Potential Damages Sustained by Members of the Settlement Class

4. In order to make a reliable estimate of the potential damages to Class members, as alleged in the Complaint, I reviewed information including the following:

    a.     The Court's Opinion Relating to the Juniper Defendants' Motion to Dismiss and Order and Opinion Granting Lead Plaintiff's Motion for Class Certification;

    b.     Filings made by Juniper and other companies with the Securities and Exchange Commission ("SEC") before, during and after the Class Period, including Forms 10-K, Forms 10-Q, Forms 8-K, Proxy Statements and Registration Statements;

    c.     Press releases issued before, during and after the Class Period by Juniper and other companies;

    d.     News articles and data published in the general and financial press before, during and after the Class Period about Juniper and other companies;

    e.     Reports published by securities and financial analysts about Juniper and other companies; and

    f.     Daily reported price, volume and quote data for the common stock of Juniper and Zero Coupon Convertible Notes due June 15, 2008 (the "Notes"), other companies and security price indices before, during and after the Class Period.

5.     In summary, based upon the assumptions and methodologies described below, I reached the following conclusions:

    a.     The information which Lead Plaintiff alleges was misstated and/or omitted by Defendants between July 11, 2003 and August 10, 2006 (the "Class Period") relating to the misstatement of the Company's financial results due to the failure to record $900 million in expenses associated with Juniper's stock options grants, was material to investors.

    b.     Revelation to the market of the true facts concerning Juniper's option granting practices on May 18, May 19, August 10 and August 11, 2006 caused statistically significant declines in the price of Juniper common stock.

    c.     By negatively affecting the price of Juniper common stock, revelation to the market of the true facts concerning Juniper's option granting practices on May 18, May 19, August 10 and August 11, 2006 caused the price of the Notes to decline over that time period;

    d.     As a result of those respective price changes, Class Members who purchased Juniper common stock and Notes during the Class Period, and did not sell such securities prior to May 18, 2006, suffered recoverable damages.

6.     I measured the impact of new material information, including disclosures associated with allegations in this matter, on the market price of Juniper common stock during

the Class Period. I generated empirical, statistical evidence of the materiality of the statements and disclosures which relate to Plaintiffs' allegations. I employed a generally accepted methodology commonly referred to as an "event study" (or "market model"). This is a standard research method that provides a statistical measure of whether a particular "event" or disclosure caused a significant change in the total mix of information which determines the price of a security. This empirical technique is supported by published literature, employs procedures based on objective standards, and has a known rate of error.

7. Because they were convertible into Juniper common stock, I valued the Notes as a fixed income security with an equity conversion option feature. I concluded that the information regarding backdating likely did not materially affect the Notes' fixed income value. However, the decline in price of Juniper common stock during the May 18 – August 11, 2006 time period, from a closing price of $16.87 on May 17, 2006 to a closing price of $12.20 on August 11, 2006, did negatively affect the option value of the Notes. I estimated the recoverable portion of this negative effect to be approximately $25 per Note.

### III. Determination of Artificial Inflation per Share and Note

8. As discussed above, a number of disclosures regarding Juniper's stock option practices and the Company's failure to record compensation expenses in multiple years of financial statements were made in May and August 2006. In my opinion, the material residual (i.e. net of general market and industry movement influence) stock price declines associated with these corrective disclosures constitute an empirical and reasonable starting point for estimation of the level of artificial inflation in the price of Juniper common stock which existed during the Class Period prior to the disclosures. The following table summaries those declines:

| Date | Closing Price | Actual $ Change | Residual $ Change | Figure Used as Inflation Estimate | Estimate of Inflation Prior To Disclosure |
|---|---|---|---|---|---|
| 05/18/2006 | $16.10 | $(0.77) | $(0.65) | $0.65 | $3.02 |
| 05/19/2006 | $15.06 | $(1.04) | $(1.18) | $1.18 | $2.37 |

DECLARATION OF MICHAEL A. MAREK, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   3

{1964 / DECL / 00100682.DOC v1}

| Date | Closing Price | Actual $ Change | Residual $ Change | Figure Used as Inflation Estimate | Estimate of Inflation Prior To Disclosure |
|---|---|---|---|---|---|
| 08/10/2006 | $12.90 | $(0.51) | $(0.57) | $0.57 | $1.19 |
| 08/11/2006 | $12.20 | $(0.70) | $(0.62) | $0.62 | $0.62 |

9.  As noted above, while no individual disclosure between May 18, 2006 and August 11, 2006 caused a significant decline in the price of the Notes, application of an equity option pricing model indicated that a reasonable estimate of the Notes' price decline over this period which could be claimed as recoverable losses approximated $25 per $1,000 Note.

## IV. Reasonableness of the Settlement and Plan of Allocation

10.  Lead Counsel has asked me to provide a formula which will reasonably ensure that members of the Class will be compensated in a manner commensurate with the actual amount of damages they sustained, based on the timing of their purchases and sales of Juniper stock and/or Notes. The damage analysis that I performed, as described herein, is the basis for the POA set forth in the Notice of Settlement. In my opinion this formula will allow for an equitable distribution of the settlement funds according to the relative amounts of losses caused by Defendants' alleged misrepresentations and omissions and the actual amount of losses sustained by the various members of the Settlement Class.

11.  The POA applies the same calculation for determining the investment losses of all Settlement Class members. For example, "Recognized Losses" are calculated using a constant inflation amount of $3.02 per share for all stock purchases and $25 per Note purchases prior to May 18, 2006. These figures are derived from FMA's damages analysis.

12.  The POA also limits the amount of losses depending on the dates of sales. For instance, in certifying this case as a Class Action, the Court excluded from the definition of the Class any purchaser who sold prior to May 18, 2006 because his or her losses did not result from the partial corrective disclosures about Juniper's option practices made beginning on May 18, 2006. For open market purchasers, the common stock POA takes into account the damage

DECLARATION OF MICHAEL A. MAREK, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)      4

{1964 / DECL / 00100682.DOC v1}

limitation provisions of the PSLRA. *See* POA, notes 1 and 4. With regard to acquirers of Juniper common stock through the Netscreen merger and Notes purchasers, the POA incorporates statutory provisions of Section 11(e) of the Securities Act of 1933.

## V. Damages

13. I have also been asked by Plaintiffs' Counsel to estimate aggregate Class member damages based on the assumption that Plaintiffs would have been able to prove that the statistically significant declines in Juniper common stock on May 18, May 19, August 10 and August 11, 2006 were causally related to the disclosures concerning Juniper's options granting practices and the Company's inflated reported earnings for several years. Based on that assumption, I estimated that Class member common stock damages are approximately $957 million and that Class member Notes damages are approximately $5 million.[1] The $169 settlement thus compensates members of the Settlement Class for approximately 18% of estimated aggregate recoverable damages.

## VI. Average Distribution Per Share

14. Based in part on the relative common stock / Notes damage figures above, Plaintiffs' counsel has determined that approximately 1%, or $1.5 million of the Net Settlement fund, as calculated below, should be reserved for Notes purchasers.

15. I have calculated the average distribution per common share to be $0.3825 before attorneys' fees and expenses and $0.338 after deduction of fees and expenses. My calculations were as follows:

---

[1] In arriving at a common stock aggregate damage estimates, I used a "multi-trader" model with ownership and trading parameters customarily used by both plaintiffs' and defendants' experts in this type of litigation.

|  |  | Calculation |
|---|---|---|
| Common Stock Shares Purchased and Damaged | 437,901,221 | (1) |
| Total Settlement Before Fees/Expenses/Notes Allocation | $169,000,000 | (2) |
| Notes Allocation | $1,500,000 | (3) = 1% x (90% x (2) - $2,600,000) |
| Common Stock Settlement Distribution Before Fees/Expenses | $167,500,000 | (4) = (2) - $1,500,000 |
| Common Stock Average Distribution per Share Before Fees/Expenses | $0.3825 | (5) = (4) / (1) |
| Fees / Expenses | $19,500,000 | (6) = (2) x 10% + $2,600,000 |
| Common Stock Settlement Distribution After Fees/Expenses/Notes Allocation | $148,000,000 | (7) = (2) - (3) - (6) |
| Common Stock Average Distribution per Share After Fees/Expenses/Notes Allocation | $0.3380 | (8) = (7) / (1) |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*[signature]*

Michael A. Marek

March 15, 2010

# Exhibit A

| | |
|---|---|
| 1 | BARBARA HART (*pro hac vice*) |
| | DAVID C. HARRISON (*pro hac vice*) |
| 2 | JEANNE D'ESPOSITO (*pro hac vice*) |
| | LOWEY DANNENBERG COHEN & HART, P.C. |
| 3 | One North Broadway, Suite 509 |
| | White Plains, NY 10601-2310 |
| 4 | Telephone: 914-997-0500 |
| | Facsimile:  914-997-0035 |
| 5 | |
| | *Lead Counsel for the New York City Pension Funds and the Class* |
| 6 | |
| | WILLEM F. JONCKHEER S.B.N. 178748 |
| 7 | SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP |
| | Three Embarcadero Center, Suite 1650 |
| 8 | San Francisco, CA 94111 |
| | Telephone: 415-788-4220 |
| 9 | Facsimile:  415-778-0160 |
| 10 | *Local Counsel* |
| 11 | MICHAEL A. CARDOZO |
| | Corporation Counsel of the City of New York |
| 12 | Carolyn Wolpert |
| | 100 Church Street |
| 13 | New York, NY 10007 |
| | Telephone: 212-788-0748 |
| 14 | |
| | *Attorneys for the New York City Pension Funds* |
| 15 | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | | No. C06-04327-JW (PVT) |
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al., | | No. C08-0246-JW (PVT) |
| | Lead Plaintiff, | **EXHIBIT A** |
| v. | | |
| LISA C. BERRY, | | |
| | Defendant. | |

**[PROPOSED] PLAN OF ALLOCATION**

[PROPOSED] PLAN OF ALLOCATION– CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)

{1964 / MISC / 00100701.DOC v1}

Pursuant to ¶¶ 16 and 27 of the Stipulation of Settlement dated March 15, 2010, Lead Plaintiff, the New York City Pension Funds, submits this Plan of Allocation, which describes the manner in which the Net Class Settlement Fund will be distributed among Authorized Claimants.[1] Capitalized terms not defined herein have the definitions assigned to them in the Stipulation of Settlement.

The following Plan of Allocation was created based on consultation with Financial Markets Analysis, LLC ("FMA"), Lead Plaintiff's damages expert in this action. FMA specializes in computing damages under the federal securities laws. The following Plan of Allocation reflects the allegations in the Complaints that Juniper's reported earnings and stock price were artificially inflated during the Class Period, and that Juniper's registration statements in connection with (a) Juniper's acquisition of NetScreen Technologies, Inc. ("NetScreen") in 2004, and (b) Juniper's registration of Zero Coupon Senior Convertible Notes in 2003, contained materially false or misleading statements. The Complaints allege claims under Sections 11 and 15 of the Securities Act of 1933, and Sections 10(b) and 20 of the Securities Exchange Act of 1934. Defendants do not agree with the characterization that any damages were suffered by any Class Members, and Defendants deny any liability to the Class Members.

The Settlement Fund of $169,000,000 cash, plus all interest earned thereon and all accretions thereto, less all attorneys' and other fees, litigation costs, taxes, and expenses approved by the Court, will constitute the Net Class Settlement Fund. The Net Class Settlement Fund will be allocated among Authorized Claimants based on such Authorized Claimant's proportional Recognized Loss, as determined pursuant to the rules set forth below, as compared to the total Recognized Losses of all Authorized Claimants (with prospective payments of less than $10.00 eliminated from the computation). Juniper securities eligible to have Recognized Losses are (i) Juniper common stock purchased or acquired from July 11, 2003, through August 10, 2006, inclusive, and held at least through May 17, 2006; (ii) Juniper common stock acquired in exchange for shares of NetScreen pursuant to Juniper's merger with NetScreen in April 2004, and

---

[1] Class Members who do not file acceptable Proofs of Claim will not share in the Net Class Settlement Fund, but will nevertheless be bound by the Stipulation of Settlement and Final Judgment of the Court dismissing these Actions.

[PROPOSED] PLAN OF ALLOCATION– CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)

{1964 / MISC / 00100701.DOC v1}

held at least through May 17, 2006; and (iii) Juniper Zero Coupon Senior Convertible Notes ("Notes") purchased or acquired from November 20, 2003 through August 10, 2006, inclusive, and held at least through May 17, 2006. The term Recognized Loss is a term used solely for the purposes of the allocation of the Net Class Settlement Fund and settlement of these Actions. The Recognized Loss is not intended to be an estimate of the amount a Class Member might have been able to recover after trial, nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the settlement. The Recognized Loss formula is the basis upon which the Net Class Settlement Fund will be proportionately allocated to the Authorized Claimants.

An Authorized Claimant's total "Recognized Claim" shall constitute the sum of such claimant's "Recognized Losses" as set forth below.

## COMPUTATION OF RECOGNIZED LOSSES

I. **Juniper Common Stock Purchases or Acquisitions**

    A. For shares of common stock purchased from July 11, 2003 through August 10, 2006:

        1. For shares acquired in the NetScreen merger, the "purchase price" shall be $24.08, Juniper's closing price on April 16, 2004, the date the merger was completed.

        2. For shares held at the end of trading on November 8, 2006, the Recognized Loss shall be that number of shares multiplied by the lesser of:

            a. the applicable purchase date artificial inflation per share figure, as found in Table A below; or

            b. the difference between the purchase price per share and $16.01.[2]

---

[2] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated." $16.01 was the mean closing price of Juniper common stock during the 90-day period beginning on August 11, 2006 and ending on November 8, 2006. This provision does not apply to shares acquired in the NetScreen merger, which shares are subject to

3. For shares sold between May 18, 2006 and August 10, 2006,[3] the Recognized Loss shall be that number of shares multiplied by the lesser of:

   a. the applicable purchase artificial inflation per share figure less the applicable sales date artificial inflation per share figure, as found in Table A; or

   b. the difference between the purchase price per share and the sales price; or

   c. the difference between the purchase price per share and $16.01.[4]

4. For shares sold between August 11, 2006 and November 8, 2006, the Recognized Loss shall be the lesser of:

   a. the applicable purchase date artificial inflation per share figure, as found in Table A; or

   b. the difference between the purchase price per share and the average sales price per share; or

   c. the difference between the purchase price per share and the average closing price of Juniper common stock between August 11, 2006 and the date of sale.[5]

---

claims under Section 11 of the Securities Act of 1933.

[3] Pursuant to the Court's order granting class certification, loss causation cannot be shown for Juniper shares purchased and sold *prior* to May 18, 2006, because May 18 was the first date that questions about Juniper's stock option practices were publicly disclosed. As a result, no Recognized Loss will be attributed to Juniper shares sold prior to May 18, 2006.

[4] This provision does not apply to shares acquired in the NetScreen merger.

[5] Pursuant to Section 21(D)(e)(2) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security." This provision does not apply to shares acquired in the NetScreen merger.

Table A

| Purchase or Sale Date Range | Estimated Inflation per Share |
|---|---|
| 07-11-2003 – 05-17-2006 | $3.02 |
| 05-18-2006 | $2.37 |
| 05-19-2006 – 08-09-2006 | $1.19 |
| 08-10-2006 | $0.62 |

II. **Juniper Zero Coupon Convertible Senior Notes Purchases**

For Notes purchased between November 20, 2003 (the date the Notes were registered with the SEC) and May 17, 2006 and still held at the close of trading on May 17, 2006,[6] and Notes purchased between May 18, 2006 and August 10, 2006, the Recognized Loss shall be:

(a) if sold between May 18, 2006 and August 10, 2006, the lesser of (i) $25 per $1,000 principal amount of Notes; or (ii) the difference between the purchase price per Note and the sale price per Note; or

(b) if held at the close of trading on August 10, 2006, the lesser of (i) $25 per $1,000 principal amount of Notes; or (ii) if sold after August 10, 2006, the difference between the purchase price per Note and the sale price per Note; (iii) if converted to Juniper common stock after August 10, 2006, the difference between the purchase price per Note and: (a) the price of Juniper common stock on the date of conversion multiplied by (b) the conversion rate of 49.6512 shares per each $1,000 principal amount of Notes; or (iv) if held to maturity, the difference between the purchase price per Note and $1,000.00.

III. **Other Instructions and Guidelines Applicable to All Recognized Claims and Classes of Juniper Stock and Notes**

A. For Class Members who held publicly traded Juniper securities before the Class Period, made multiple purchases or sales during the Class Period, or acquired shares in the NetScreen merger, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a Recognized Claim. Under the FIFO method, for

---

[6] Pursuant to the Court's order granting class certification, loss causation cannot be shown for Juniper shares purchased and sold *prior* to May 18, 2006, because May 18 was the first date that questions about Juniper's stock option practices were publicly disclosed. As a result, no Recognized Loss will be attributed to Juniper shares sold prior to May 18, 2006.

each Juniper security, each sale of that Juniper security during the Class Period will be matched, in chronological order, first against that Juniper Security held at the beginning of the Class Period. Such holdings and sales will be included in the calculation of Recognized Claim as described above. For each security, the remaining sales of such security during the Class Period will then be matched, in chronological order, against purchases of such Juniper securities during the Class Period.

B. A purchase or sale of Juniper securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

C. The price per share or per option contract, paid or received, should exclude all commissions, taxes and fees.

D. The following restrictions on computing Recognized Losses apply to all claims:

- "Short sales" will not be recognized for any amount of loss on the cover or purchase transaction, and no Recognized Loss will be computed for any such covering purchase transaction.

- No Recognized Loss will be computed for any transactions in Juniper common stock engaged in by market makers.

- No Recognized Loss will be computed for Juniper common stock or Notes sold prior to May 18, 2006.

- To the extent a Claimant had a gain from his, her, or its overall transactions in Juniper securities during the Class Period, the value of the Recognized Loss will be zero.

- To the extent a Claimant suffered an overall loss on his, her, or its overall transactions in Juniper securities during the Class Period, but that loss was less than the Recognized Loss calculated above, then the Recognized Loss shall be limited to the amount of the actual loss.

E. The receipt or grant by gift, devise or operation of law of Juniper securities during the Class Period shall not be deemed a purchase, acquisition, disposition or sale of Juniper securities for the calculation of an Authorized Claimant's Recognized Claim, nor shall it be deemed an assignment of any claim relating to the purchase of such securities unless specifically provided in the instrument of gift or assignment.

F. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Class Settlement Fund based on his, her or its Recognized Claim compared to the total Recognized

Claims of all Authorized Claimants.  Each Authorized Claimant shall be paid an amount determined by multiplying the Net Class Settlement Fund by a fraction the numerator of which shall be his, her or its "Recognized Claim" and the denominator of which shall be the total Recognized Claims of all Authorized Claimants.

G.  The total recovery payable to Authorized Claimants from purchases of the Notes shall not exceed one percent (1%) of the Net Class Settlement Fund.

H.  Class Members who do not file acceptable Proofs of Claim will not share in the Net Class Settlement Fund.  Class Members who do not submit an acceptable Proof of Claim will nevertheless be bound by the Stipulation of Settlement and Final Judgment of the Court dismissing these Actions.

I.  Bank drafts will be distributed to Authorized Claimants after the Effective Date of the settlement and after all claims have been processed.  To the extent that any monies remain in the Class Notice and Administration Account or the Settlement Fund Escrow Account after the Administrator has caused distributions to be made to all Authorized Claimants, whether by reason of un-cashed distributions or otherwise, then, after the Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Class Notice and Administration Account or the Settlement Fund Escrow Account one (1) year after the initial distribution of such funds shall be redistributed to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Class Notice and Administration Account or the Settlement Fund Escrow Account for such re-distribution.  If six months after such redistribution, funds remain in the Class Notice and Administration Account or the Settlement Fund Escrow Account, then such funds shall be further redistributed to Authorized Claimants who have cashed their most recent redistribution and who would receive at least $10.00 from such further redistribution, after payment of any unpaid costs or fees incurred in administering the Cash Settlement Accounts for such redistribution.  The redistributions shall continue until it becomes economically unfeasible to continue redistributions based upon the costs associated with such redistributions, after which Lead Plaintiff's Lead

Counsel shall file a motion seeking an order to donate the remaining funds to an appropriate 501(c)(3) charitable organization selected by Lead Plaintiff through its counsel and agreed to by Defendants.

  J. No Authorized Claimant will have any claim against Lead Plaintiff, Lead Plaintiff's Lead Counsel or the Claims Administrator, or any other agent designated by Lead Plaintiff's Lead Counsel based on the distributions made substantially in accordance with the Stipulation, the Plan of Allocation or further orders of the Court.

  K. No distributions or redistributions shall be made to any Authorized Claimant who would receive $10.00 or less based on the initial allocation of the Net Class Settlement Fund.

  L. The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

Date: March _____, 2010

                 _____
                  THE HONORABLE JAMES WARE
                  Judge, United States District Court for the
                  Northern District of California

# Exhibit B

**MICHAEL A. MAREK, CFA**
600 Alexander Road, Suite 2-B
Princeton, NJ 08540
Phone: (609) 452-9500     Fax: (609) 452-9881
e-mail: mmarek@fmaonline.biz

**Professional Experience**

| | | |
|---|---|---|
| 05/01 - Present | **Financial Markets Analysis, LLC** | Princeton, NJ |
| 12/97 - 04/01 | **Triumph Partners, LLC** | Princeton, NJ |

Founding Member
Provide financial analysis, valuation services and expert litigation support and testimony. Areas of concentration include valuation of securities and businesses, securities law and economic issues. Testimonial experience in securities class action litigation. Clients include corporations, government agencies (SEC), lawfirms, institutional and individual investors.

| | | |
|---|---|---|
| 10/86 - 12/97 | **Princeton Venture Research, Inc.** | Princeton, NJ |

Vice President
Performed securities valuation and financial analysis in connection with investment banking, venture capital and securities law expert consulting operations. Prepared company and industry research reports, valuations and fairness opinions. Responsible for project management and supervision of financial analysts and research personnel.

| | | |
|---|---|---|
| 05/85 - 06/86 | **Sage Data, Inc.** | Princeton, NJ |

Research Analyst
Developed and maintained econometric models and business forecasting systems for Fortune 500 clients. Created, produced and instructed customized PC hardware and software application seminars.

**Education**

| | |
|---|---|
| 1984 | **Wharton School of Finance, University of Pennsylvania** |

B.S. Economics
Double Major: Finance / Decision Sciences

**Professional Designations and Affiliations**

Chartered Financial Analyst (CFA)
Member, New York Society of Security Analysts (NYSSA)
Member, CFA Institute
Member, American Economic Association (AEA)