BARBARA HART (*pro hac vice*)
DAVID C. HARRISON (*pro hac vice*)
JEANNE D'ESPOSITO (*pro hac vice*)
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
Telephone: 914-997-0500
Facsimile: 914-997-0035

*Lead Counsel for the New York City Pension Funds and the Class*

WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-778-0160

*Local Counsel*

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Carolyn Wolpert
100 Church Street
New York, NY 10007
Telephone: 212-788-0748

*Attorneys for the New York City Pension Funds*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | No. C06-04327-JW (PVT) **LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG** |
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al.,<br><br>                      Plaintiff,<br>v.<br>LISA C. BERRY,<br><br>                      Defendant | No. C08-0246-JW (PVT)<br><br>Date:      On Submission<br>Time:<br>BEFORE:  Hon. Patricia V. Trumbull |

LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR
SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE NO. 06-04327-JW (PVT)

{1964 / BRF / 00100666.DOC v1}

Pursuant to the Court's order dated March 8, 2010, Lead Plaintiff the New York City Pension Funds makes this second supplemental submission in support of the motion for sanctions against defendant Ernst & Young LLP ("EY"). In particular, the Court requests a further explanation of how Lead Plaintiff (and by extension the Class) were prejudiced by EY's various discovery abuses.

As demonstrated in detail below, EY has purposely engaged in a pattern of obstruction that has unreasonably delayed its compliance with its discovery obligations. In so doing, EY has successfully achieved its goal and prejudiced Lead Plaintiff in its efforts to prosecute this action. As such, Lead Plaintiff is entitled to sanctions against EY. In this context, the Court has discretion to fashion an appropriate remedy and must consider its role as fiduciary to absent class members. At the very least, EY's conduct calls for the sanction of reopening discovery so that Lead Plaintiff may now obtain the evidence needed to pursue the remaining Section 11 claim against EY on behalf of the Class.

### A. The Totality Of The Circumstances Demonstrates Prejudice

EY's opposition to the motion for sanctions rests primarily upon two grounds. First, that there was no prejudice to Lead Plaintiff and the Class from its misrepresentations and last minute production of hundreds of thousands of pages of documents because EY had always agreed to allow Lead Plaintiff to take depositions of its witnesses after the close of discovery and had agreed to support a request to an extension of the discovery deadline. Second, EY, who claims that Lead Plaintiff's Section 11 claims are meritless anyway, also claims there is no prejudice because the belatedly produced documents were largely duplicative, irrelevant and useless to Lead Plaintiff in taking depositions. Both arguments are disingenuous and should be rejected.

### 1. EY's Misconduct Created Numerous Delays Which Have Now Caused Lead Plaintiff to Lose The Opportunity to Depose Key EY Witnesses

Throughout its papers in opposition to the motion for sanctions, EY claimed it didn't matter that it had produced so many documents so close to the close of discovery, repeatedly assuring the Court that it would allow Lead Plaintiff to take the depositions it needed after December 1, 2009, and would also agree to an extension of the deadline. *See* Dkt. No. 481 (Opposition brief at pgs 6 ("EY has agreed to produce several of its witnesses after the December 1, 2009 discovery cut-off."), 10 ("[B]oth EY and Juniper have already agreed to allow Plaintiffs to depose both current and former personnel after the December 1 cutoff."), and 12 ("Plaintiffs will have ample opportunity to question witnesses about the documents in EY's November production" because of the agreement to take depositions after the discovery cutoff.)); Dkt. No. 481-1 (Affidavit of Andrew M. Farthing at ¶ 19 (During meet and confer, EY agreed not to oppose extension of discovery deadline)); and Dkt. No. 537 (Transcript of oral argument held on February 9, 2010 at 75 (acknowledging EY agreed to delayed scheduling of depositions due to circumstances).

However, in a complete turnabout, EY filed a motion for a protective order to stop Lead Plaintiff from taking more depositions, claiming the time had expired to do so. Dkt. No. 564. This is precisely the opposite of the position EY had consistently taken in an effort to avoid sanctions. EY was successful in those efforts and, in its Order of March 8, 2010, this Court declared discovery in this litigation to be closed as of the end of January 2010. Dkt. No. 572. EY now interprets the Court's Order to preclude Lead Plaintiff from deposing the three witnesses EY had repeatedly agreed to produce after the December 1 cutoff and which were <u>not</u> the subject of the motion for a protective order. *See* Declaration of David Harrison in Further Support of Motion For Sanctions Dated March 16, 2010 ("Harrison 2nd Supp. Decl.") at ¶ 2, Ex. A.

{1964 / BRF / 00100666.DOC v1}LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE NO. 06-04327-JW (PVT) -2-

In short, by its own conduct, EY has negated the primary argument it relied upon to refute prejudice. Because EY's discovery abuses were so successful in causing repeated delays and rescheduling of EY witnesses until time ran out, Lead Plaintiff now stands unable to depose several key witnesses, including those most likely to have knowledge of the conduct of EY in connection with its decision to allow Juniper to incorporate its 2003 financials into the Registration Statement for Juniper's merger with Netscreen, the transaction that forms the basis for the $100 million claim of the Class under Section 11. The resultant prejudice to the ability of Lead Plaintiff to pursue this claim on behalf of the Class is self-evident.

EY attempts to deflect the blame for that situation back onto Lead Plaintiff by claiming Lead Plaintiff had time to go forward with the depositions, and did so with at least some of the EY witnesses. However, EY's belated and unexpected production of such an enormous volume of documents so close to the end of discovery intentionally jammed Lead Plaintiff into an unenviable dilemma. It could gamble that the Court would extend the discovery deadline if it delayed taking depositions until this new production could be properly loaded into the database and analyzed. Or it could risk missing some potentially important documents while racing through a review and completing at least some key depositions before the discovery cutoff. In light of the fact that the Court did not act upon Lead Plaintiff's previous requests to have the discovery deadline extended (*see, e.g.* Dkt. No. 325), Lead Plaintiff had no assurance that discovery would be extended and chose to take the most prudent course and move forward with at least some of the depositions it needed from EY.

EY self-servingly asserts that Lead Plaintiff had plenty of time to review more than 650,000 pages of documents before those depositions were taken, as if that were the only litigation activity ongoing in the Juniper litigation (*see* discussion below). However, as EY also points out, Lead Plaintiff did not mark some of the documents from that last production which it included in

its supplemental submission as highly relevant to its claims. The very fact that Lead Plaintiff overlooked some important documents in its rushed attempt to review EY's last minute production and prepare for deposition only highlights what an impossible task EY created for Lead Plaintiff to properly process such a voluminous production in such a short time – and the resultant prejudice suffered by Lead Plaintiff and the Class as it went forward, under duress, with depositions for which it did not have adequate time to prepare.

In order to fully assess the impact EY's discovery conduct had upon Lead Plaintiff, and the burden imposed, it is important to consider the broader picture of the discovery processes and motion practice that were also occurring during the November 2009 through January 2010 period of time and the current status of the various motions filed by the parties. In November, multiple motions were filed regarding Juniper and EY's invocations of attorney work product and attorney client privileges with respect to Juniper's Audit Committee Investigation and refusals to answer deposition questions regarding same. The Court's December 9, 2009 Order found no work product protection applied. Defendants moved for reconsideration of that Order and that issue was presented to the Court as late as February 9, 2010 when the Court held oral argument on the discovery motions discussed below. Dkt. Nos. 458, 477, 489, and 537. All parties agreed to adjourn the depositions of certain Juniper and EY witnesses whose questioning could be impacted by the final determination of that motion. Harrison 2nd Supp. Decl. at ¶ 3. On December 18, 2009, the Court ordered that Lead Plaintiff would be allowed 28 hours of additional time beyond the December 1, 2009 discovery deadline to depose certain Juniper witnesses, "plus any Additional Depositions granted to Lead Plaintiff…" Dkt. No. 474.

During this same period, Lead Plaintiff also filed several other discovery motions, including a motion to compel deposition answers from Juniper Defendant William Hearst (which involves the same issues addressed in the December 9 Order) (Dkt. Nos. 449, 465, and 466, a

motion to compel the production of documents from Defendant Lisa Berry and third-party KLA Corp. (Dkt. Nos. 442 and 443), and a motion for additional deposition time for Juniper witnesses Leilani Eames and Scott Kriens (Dkt. No. 441). The motions regarding the Hearst deposition and the KLA documents are fully submitted and awaiting this Court's ruling. During oral argument on February 9, 2010 for the motion regarding the Eames and Kriens depositions, the Court indicated it would grant the motion and would be issuing an Order addressing time and scope limitations for those depositions. (Dkt. No. 537) The issuance of the Order is still pending.

Throughout this period, the parties also completed the depositions of 10 Juniper witnesses and 5 EY witnesses. Harrison 2nd Supp. Decl. at ¶ 4.

On March 8, 2009, the Court granted EY's motion for a protective order regarding additional depositions sought by Lead Plaintiff pursuant to the December 18, 2009 Order and held that merits "discovery is closed" in this litigation despite the pendency of several discovery motions. The parties have met and conferred and disagree on what discovery, if any, is now permitted in light of the Court's March 8 Order. Counsel for EY informed us that it is willing to produce for deposition the two witnesses for whom no protective order was sought but took the position that it is prohibited from moving forward with those depositions because of the March 8 Order. Harrison 2nd Supp. Decl. at ¶ 2, Ex. A.[1]

It was in the midst of these complex and ongoing discovery disputes and the taking of numerous depositions that Lead Plaintiff faced EY's unexpected and belated production of 679,000 pages of documents. The pending discovery motions, and in particular the pendency of the motions regarding privilege (the outcome of which would greatly impact the scope of numerous pending depositions), and the need to review EY's new production of documents,

---

[1] Nonetheless, EY offered to proffer those witnesses pursuant to a stipulation and order if Lead Plaintiff agreed not to seek reconsideration of or object to the March 8 Order. *Id.*

dramatically impacted Lead Plaintiff's ability to move forward with many depositions and its ability to fully prepare for the depositions that did go forward.

### 2. Lead Plaintiff Was Prejudiced By The Late Production of Crucial Evidence.

As detailed in Lead Plaintiff's previous submissions, the last minute EY production contained relevant documents that Lead Plaintiff would use in the depositions of additional EY witnesses if given the opportunity.[2] In fact, buried within those 679,000 pages, there is at least one very crucial two page document which contains an admission that EY's 2003 audit work regarding Juniper's granting of stock options was deficient. *See* Dkt. No. 533, (Declaration of David Harrison dated February 11, 2010, Ex. 3.) The document contains handwritten notes between two EY employees in which they discuss the procedures used during that audit and the documentation of that audit work. In the document, there is an admission by EY's own employees that the documentation of the procedures used to check the grant date and price of Juniper's stock options is "not the best" and that reconciliation of options to board of director minutes was only done by type of grant. *Id.*

These admissions go to the heart of EY's due diligence defense on Lead Plaintiff's Section 11 claims and the discovery Lead Plaintiff has been seeking from additional Juniper and EY witnesses. First, the 2003 audit results were incorporated into the Netscreen Merger documents. Second, it was during 2003 that Juniper witness Leilani Eames began to work as a Stock Administrator at Juniper and was involved in changing the procedures for the determination of stock option grant dates and prices -- moving away from the Stock Option Committee process that included Lisa Berry and on to a more regimented process for setting grant dates. Lead Plaintiff believes EY's failure to pick up on the significance of this change in practice defeats EY's due

---

[2] EY acknowledges that several other relevant documents were contained in that production and were marked as exhibits by Lead Plaintiff during subsequent depositions. Dkt. No. 542.

{1964 / BRF / 00100666.DOC v1}LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE NO. 06-04327-JW (PVT) -6-

diligence defense. This was also occurring at the same time that EY and Juniper were dealing with the passage of Sarbanes Oxley and determining what new controls were necessary for compliance.

As the Court is aware, Lead Plaintiff moved for more deposition time from Eames and for a Rule 30(b)(6) deposition from EY regarding changes in option grant audit procedures in 2003. This handwritten document would play a major role in those depositions and would likely lead to crucial testimony regarding EY's audit work and due diligence defense. However, as things stand, Lead Plaintiff cannot even determine the individuals who created the document or explore their concerns about the audit work in question.

EY tries to brush off the import of this document, making the ridiculous claim that the a document in which EY questions the sufficiency of its own audit work on stock option accounting for the 2003 financials and admits that the documentation of same was substandard "not relevant." EY Supp. Br. at 4. EY should not be permitted to direct Lead Plaintiff's litigation strategy and EY's argument that this document does not "speak" to the sufficiency of its audit work is specious. Testimony on the failure to act consistent with applicable professional standards is relevant on its face. This document was allegedly created during EY's work on the restatement of Juniper's financials. The entire purpose of that work was to determine whether options had been properly accounted for and expensed. Therefore, any deficiency in the 2003 audit work or documentation found by EY during the restatement engagement is directly probative and determinative of the quality of that prior audit.

Similar skepticism is warranted in response to EY's claim that the document does "not suggest any lines of inquiry." *Id.* at 5. That Lead Plaintiff asked general questions regarding the audit procedures in general does not negate the prejudice suffered as a result of not having these documents to show the witnesses. This document (as well as others in the November production)

{1964 / BRF / 00100666.DOC v1} LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN     -7-
SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE NO.
06-04327-JW (PVT)

raise specific issues about the quality of EY's audit work and require targeted questioning to elicit information regarding the information contained therein. Obviously, it is much more effective to ask detailed questions about specific information contained in a document, and especially from a witness who created that document. That procedure is far more likely to refresh recollection and result in a substantive response. There can be no doubt that having this particular document would have been inordinately helpful in informing plaintiff's counsel regarding the quality of the audit procedures and in obtaining more specific and target information from witnesses.

Lead Plaintiffs did not discover the existence of this document until after it had completed the depositions of Juniper and EY witnesses who could have been asked about it because this very damaging document was withheld by EY until the very last moment, and then produced within a mountain of what EY now contends to be mostly useless paper. As discussed in more detail below, this attempt to hide such documents is itself a discovery violation which has caused additional prejudice to Lead Plaintiff. Indeed, counsel for Lead Plaintiff continues to review the November production to ensure that nothing else was missed. Therefore, Lead Plaintiff's supplemental submission of February 11, 2010 (Dkt. Nos. 532 and 533) should not be considered an exhaustive recitation of every document it would make use of from EY's last production or of the line of questioning that Lead Plaintiff would pursue with witnesses based upon these documents.[3]

### 3. Lead Plaintiff Was Prejudiced By EY's Burying of Relevant Documents

EY then argues that, other than a few documents here and there, the 679,000 plus pages of documents it produced on November 2, 2009 were "largely irrelevant and/or duplicative" of prior

---

[3] Lead Plaintiff should not be forced to disclose all the details of its litigation strategy or give EY a complete preview of the questions its witnesses will be asked. That would be unfair to Lead Plaintiff as it would enable EY to coach its witnesses on how they should answer. EY claims Lead Plaintiff must provide this information in order to prove prejudice. But, as demonstrated below, prejudice from discovery abuses is not limited to missed deposition opportunities and EY should not be able to gain an unfair litigation advantage by virtue of its own misdeeds.

{1964 / BRF / 00100666.DOC v1}LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE NO. 06-04327-JW (PVT)  -8-

productions. Notably, EY did not disclose this to Lead Plaintiff at the time it produced the documents. Nor has EY explained why it would produce such a large volume of duplicative documents and ignores that fact that Lead Plaintiff did not know and could not assume that this production was duplicative of earlier productions. Lead Plaintiff had no choice but to review each and every page of the November production in order to determine whether it contained any new, relevant and important documents. So Lead Plaintiff devoted considerable time and resources to a frantic and rushed review of the entire production. The necessity of that endeavor has been proven with the discovery of several relevant and necessary documents, including at least one crucial piece of evidence, as discussed above, which will play an important role in refuting EY's attempts to establish a due diligence defense.

It now appears that EY's egregiously late production of documents was just another tactic designed to further avoid discovery of that relevant evidence, impose additional burdens on Lead Plaintiff and create yet more delays before EY had to produce its witnesses for deposition. EY knew that production would make it that much more difficult for Lead Plaintiff to complete all the work it needed to do before discovery was closed, including final designations and noticing of witnesses, preserving the right to challenge the defendants' assertions of privilege, compelling third party discovery, preparing motions to extend discovery and obtain the right to take additional depositions, and the preparation for and taking of some 15 depositions. Harrison 2d Supp. Decl. at ¶ 4. EY knew that the need to review another 679,000 pages of documents would place a substantial burden on Lead Plaintiff as it diverted resources and raced against the December 1 deadline, making it that much more likely that Lead Plaintiff would miss something important.

EY's focus on the relatively few relevant documents contained in the November production is a red herring. Prejudice from improper conduct during discovery can take many forms. Here, the prejudice also took the form of sending Lead Plaintiff's counsel hunting through

a giant haystack to find a few needles, just when its resources were most likely to be stretched thin, and causing Lead Plaintiff to incur enormous costs to conduct the review. *See e.g., In Re: Telxon Corp. Sec. Litig,* 2003 WL 25769712 (N.D. Ohio Jun. 6, 2003) (sanction of default recommended where "[Defendant's] failure to produce documents timely and in the order in which they were kept in the regular course of business slowed [plaintiffs]' discovery of relevant information and increased the cost of discovery.").

Finally, it should be noted that the settlement between Lead Plaintiff and the Juniper Defendants does not negate the prejudice to Lead Plaintiff's claims against those Defendants as caused by EY's conduct. Audit documents are organized but inherently complex. There is an interplay between the desk files, the footnotes, different sections of the audit and years of audits are at issue in the claim against EY. EY witnesses dodged questions by saying the documents referred to other files, or other sections of the audit. Effective tracing of each audit through the audit files was hindered by EY's late production.

In sum, EY's conduct in belatedly producing so many documents just before the close of discovery, coupled with its conduct in refusing to answer and then concealing for months the fact that workpapers from a key audit year are missing (Dkt. No. 359), has greatly impacted the cost and burden of discovery for Lead Plaintiff and impacted Lead Plaintiff's ability to advocate effectively on behalf of the Class and fully prosecute their claims against all defendants. The delays achieved have now resulted in the lost opportunity to take several vital depositions. In addition to this prejudice, the ability of the Court to decide this case on the merits has been greatly affected. *See Telxon* (repeated discovery abuses such as late production and unexplained loss of work papers irreparably undermines the ability to have claims decided on the merits.)

### 4. The Most Appropriate Sanction is an Order Compelling EY to Produce Its Witnesses For Deposition

The Court has wide discretion in choosing an appropriate sanction. However, because the primary harm suffered by Lead Plaintiff and the Class as a result of EY's misconduct is the loss of deposition opportunities, the most appropriate remedy would be to require EY to produce all the witnesses sought by Lead Plaintiff for deposition. The Court had previously granted Lead Plaintiff the right to take 28 hours within 8 additional depositions. EY represented repeatedly that discovery should proceed after the cutoff and they would produce the witnesses. Reinstating the noticed depositions and granting the 28 hours of additional deposition time is a sanction neatly tailored to punish EY in a manner that fits the misconduct and the prejudice that flowed therefrom.

Dated: March 16, 2010

Respectfully Submitted,

LOWEY DANNENBERG COHEN & HART, P.C.

/S/
BARBARA J. HART
DAVID C. HARRISON
One North Broadway, 5th Floor
White Plains, NY 10601-2310
914-733-7228 (telephone)
914-997-0035 (facsimile)

*Counsel for Lead Plaintiff*

WILLEM F. JONCKHEER
SCHUBERT JONCKHEER KOLBE
 & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
415-788-4220 (telephone)
415-788-0161 (facsimile)

*Local Counsel*

{1964 / BRF / 00100666.DOC v1}LEAD PLAINTIFF'S SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT ERNST & YOUNG – CASE No. 06-04327-JW (PVT)

-12-