BARBARA HART (*pro hac vice*)
DAVID C. HARRISON (*pro hac vice*)
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
Telephone: 914-997-0500
Facsimile: 914-997-0035
*Lead Counsel for the New York City Pension Funds and the Class*

WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-778-0160
*Local Counsel*

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Carolyn Wolpert
100 Church Street
New York, NY 10007
Telephone: 212-788-0748

*Attorneys for the New York City Pension Funds*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE JUNIPER NETWORKS, INC. SECURITIES LITIGATION | No. C06-04327-JW (PVT)<br><br>**UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED PARTIAL CLASS SETTLEMENT, PLAN OF ALLOCATION, FORM OF SETTLEMENT NOTICE, AND PROPOSED AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LISA C. BERRY,<br><br>    Defendant. | No. C08-0246-JW (PVT)<br><br>Date:  May 10, 2010<br>Time:  9:00 a.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  James J. Ware |

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)

{1964 / BRF / 00101430.DOC v2}

## APPLICATION

Lead Plaintiff, the New York City Employees' Retirement System, the Teachers' Retirement System of the City of New York, the New York City Fire Department Pension Fund, the New York City Police Pension Fund, the New York City Police Superior Officers' Variable Supplements Fund, the New York City Police Officers' Variable Supplements Fund, the New York City Firefighters' Variable Supplements Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Teachers' Retirement System of the City of New York Variable Annuity Program (collectively, "NYC Funds" or "Lead Plaintiff") hereby applies to this Court for an order preliminarily approving (1) a proposed $500,000 settlement with Ernst & Young LLP ("E&Y") ("E&Y Settlement"), as set forth in the Amended Stipulation of Settlement dated April 27, 2010 ("Amended Stipulation"); (2) the revised form of and schedule for providing notice to the Class; and (3) the fairness hearing date of August 30, 2010 for the settlements with both E&Y and Juniper Networks, Inc. ("Juniper").

The proposed E&Y Settlement is the final component of a global settlement that would establish a $169,500,000 fund (the "Settlement Fund") for the benefit of Lead Plaintiff and the Class.[1] On April 12, 2010, this Court preliminarily approved the $169 million settlement with Juniper (the "Juniper Settlement"), the proposed Plan of Allocation, the form and manner of providing notice to the Class, and Lead Plaintiff's application for attorneys' fees and expenses, and set the fairness hearing for August 30, 2010. *See* Dkt. No. 597.

As shown herein, the E&Y Settlement is well within the range of fairness, and issues of economy and efficiency warrant a single notice program and settlement hearing for both the E&Y and Juniper Settlements.

This application is based on the Memorandum of Points and Authorities set forth below; the Amended Stipulation and exhibits; the supporting Declaration of Barbara Hart ("Hart Decl."); the Supplemental Declaration of Michael A. Marek ("Marek Supp. Decl."); and all other

---

[1] Pursuant to the terms of the Memorandum of Understanding dated April 15, 2010, E&Y will deposit $500,000 into the escrow account established by Lead Plaintiff's counsel with Amalgamated Bank in connection with the preliminary approval of the Juniper Settlement.

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   1

{1964 / BRF / 00101430.DOC v2}

pleadings and matters of record.

E&Y supports this application for preliminary approval of the Settlement. A proposed form of order is filed herewith as Exhibit A to the Amended Stipulation.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed E&Y Settlement should be preliminarily approved as within the range of fairness, reasonableness and adequacy.

2. Whether a single notice program and fairness hearing date should be applied to both the E&Y and Juniper Settlements.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. THE LITIGATION AND SETTLEMENT NEGOTIATIONS**

Lead Plaintiff seeks preliminary approval of the $500,000 E&Y Settlement on the grounds that it is fair, reasonable and adequate, and requests that a single notice be sent advising the certified Class of their right to share in a global settlement, or to elect to object or opt out of the class action.[2]

In the Amended Consolidated Class Action Complaint, filed on April 9, 2007 ("Complaint"), Lead Plaintiff asserts a single claim against E&Y for violation of Section 11 of the Securities Act of 1933 in connection with Juniper's merger with NetScreen Technologies, Inc. ("NetScreen"). The Complaint alleges that Juniper's 2003 financial statements audited by E&Y, which were incorporated in the proxy statement/prospectus, were materially false in overstating the Company's earnings, in violation of generally accepted accounting principles, by failing to record nearly $900 million in compensation expenses relating to disguised in-the-money stock option grants. In its 2006 Form 10-K, Juniper restated its 2003 financial results to account for compensation expenses associated with stock option grants, thereby implicitly conceding that the financial misstatements were material.

Unlike the Juniper Defendants, E&Y neither moved to dismiss the Complaint nor

---

[2] Lead Plaintiff incorporates by reference its March 15, 2010 submission, which detailed for the Court the history of the litigation, Lead Plaintiff's factual investigation, and an analysis of the strengths and weaknesses of Lead Plaintiff's claims.

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    2

{1964 / BRF / 00101430.DOC v2}

1  challenged Lead Plaintiff's motion for class certification. E&Y filed its Answer to Lead
2  Plaintiff's Complaint on June 11, 2007, and has been a party to the Discovery Plan in effect since
3  November 2008.
4      Following fifteen months of fact discovery, including production of nearly two million
5  pages by E&Y, and two separate mediations, on February 5, 2010, Lead Plaintiff reached an
6  agreement in principle to settle the class action claims against the Juniper Defendants for
7  $169,000,000. E&Y did not participate in the mediations. However, with all claims against
8  Juniper resolved, Lead Plaintiff recognized that there were cost savings that could be achieved if
9  the E&Y claim could be settled in the context of the same notice program and final settlement
10 hearing as the Juniper Settlement. In mid-February 2010, Lead Plaintiff and E&Y began
11 informal settlement discussions. While the parties acknowledged their differing views on
12 liability, they focused their attention primarily on issues affecting potential recoverable damages
13 under Section 11. *See* Hart Decl. ¶ 7. At Lead Plaintiff's suggestion, on March 19, 2010,
14 counsel for Lead Plaintiff and E&Y and their respective damages experts participated in a
15 teleconference during which the experts made presentations relating to, among other issues, the
16 amount of recoverable Section 11 damages following trial, and a proof-of-claim process with the
17 Class. *See* Hart Decl. ¶ 10; Marek Supp. Decl. ¶¶ 6-7.
18     Following additional rounds of negotiations, and further consultation with Lead
19 Plaintiff's expert, Michael A. Marek of Financial Markets Analysis LLC ("FMA"), on April 6,
20 2010, the parties reached an agreement in principle to settle the Section 11 claim asserted against
21 E&Y for $500,000. On April 7, 2010, the parties promptly advised the Court that they would
22 seek to adopt a single notice program and final hearing date for both the Juniper and E&Y
23 Settlements, in order to avoid needless duplication and expense to the class. Dkt. No. 596.
24 Subsequent negotiations ensued over the next several weeks among counsel for Lead Plaintiff,
25 E&Y, and Juniper to amend the Stipulation of Settlement and revise the Class Notice and
26 release, to include the details of the E&Y Settlement. By Order dated April 15, 2010, this Court
27 directed Lead Plaintiff to file its motion in support of preliminary approval on April 27, 2010,
28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    3

{1964 / BRF / 00101430.DOC v2}

and set the hearing for May 10, 2010.  Dkt. No. 600.

The E&Y Settlement proceeds will be added to the $169 million Settlement Fund and subsequently distributed to Class members who timely file proofs of claim.  The Plan of Allocation provides that the net proceeds of the Settlement Fund will be distributed *pro rata* to members of the Class, based on a formula which takes into account their investment losses.  The Plan of Allocation is attached as Ex. A to the Marek Supp. Decl. and is described in detail in the proposed Class Notice (Ex. A-1 to Amended Stipulation).

Lead Plaintiff and Lead Counsel submit that the $500,000 settlement, which will dispose of the sole remaining claim in this action, represents a very good result that should be preliminarily approved, given the significant risks on liability and damages involved in this case if the claim against E&Y is not resolved.

## II.  ARGUMENT

### A.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for a class action settlement.  The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Approval of a proposed class action settlement is within the broad authority of the district court consistent with this long-standing policy favoring settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West v. Circle K Stores*, No. Civ. S-04-0438, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (citation omitted); J. Moore, *et al.*, MOORE'S FED. PRAC., ¶ 23.8102-1, at 23-479 (2d ed. 1993).  In making this assessment, there is an initial presumption of fairness for a proposed settlement that results from arm's-length negotiations.  *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In re Wireless Facilities, Inc. Sec. Litig. II*, 07CV482, 2008 WL 4146126, at *3 (S.D. Cal. Sept. 3, 2008).  The opinion of well-informed and experienced counsel in favor of the settlement is also

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   4

{1964 / BRF / 00101430.DOC v2}

entitled to significant weight. *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *In re First Capital Hldgs. Corp. Fin. Prods. Sec. Litig.*, MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor).

Here, the proposed settlement is the product of arm's-length negotiations between Lead Plaintiff, through its counsel, and E&Y, through its counsel. Moreover, the parties' views on the factual and legal issues were well-informed by merits discovery, as well as candid discussions by experts from both sides on the difficulties involved in proving up Section 11 damages. As a result, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. Hart Decl. ¶¶ 5-18. These negotiations produced a result that all parties believe to be within their respective best interests, and which will resolve the final component of this litigation.

Lead Plaintiff and Lead Counsel consider their Section 11 claim against E&Y meritorious, but not without very significant risk. They have concluded that it is in the best interests of the Class to settle with E&Y after considering the following factors: (1) the immediate benefits provided for the Class; (2) the risks and uncertainties in predicting the outcome of complex litigation; (3) the expense and length of time necessary to prosecute the claim against E&Y through trial and appeals; (4) the challenges asserted by and available to the Defendants that will likely substantially reduce the claimed damages; and (5) the extra expense to the Class associated with administration and notice program in the event of a future settlement or judgment.

### 1. Liability Is Uncertain

Lead Plaintiff believes it has a strong affirmative case against E&Y since Juniper has restated its 2003 financial results, thereby implicitly conceding the falsity and materiality of the financial results certified by E&Y. Intent is not an element of a Section 11 claim. *See In re Juniper Networks, Inc. Securities Litigation*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008). However, E&Y can escape liability by showing that it exercised reasonable due diligence in

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    5

{1964 / BRF / 00101430.DOC v2}

auditing Juniper's financial statements provided in the NetScreen merger. In this regard, E&Y will likely assert reliance on Juniper's minutes and grant schedules which on their face made it appear that options were issued at the market price on the dates of the grants. E&Y would likely argue that these self-authenticating documents attest to the propriety of not recording compensation charges for these option grants and the accuracy of the description of the accounting treatment in the notes to the financial statements. Lead Plaintiff can counter that E&Y's reliance was unwarranted given that Board minutes for certain grants raised red flags that should have prompted further inquiry. It is uncertain, however, how the Court or a jury would decide these issues – and unclear whether Lead Plaintiff would survive on summary judgment or prevail at trial.

### 2. Section 11 Damages Are Uncertain

As described in the accompanying Hart Decl. and the Marek Supp. Decl., there are strict criteria for determining whether any of the 132 million Juniper shares received pursuant to the NetScreen merger are deemed to be "damaged" under Section 11. First, Lead Plaintiff must establish that Juniper stock was held continuously from April 16, 2004, the effective date of the NetScreen merger, through May 18, 2006, the date of the first alleged corrective disclosure about options backdating.[3] Second, the shares must have been sold on or after May 18 for less than $25.17 per share, their value on the effective date of the NetScreen merger. *See* Marek Supp. Decl. ¶ 5. Current holders of such Juniper shares cannot claim any damages under Section 11 because Juniper's current stock price is greater than $25.17. *Id.* Based upon analyses of the quarterly holdings of institutional investors, which collectively received about two-thirds of Juniper stock distributed under the NetScreen merger, fewer than ten million shares satisfied the criteria for establishing statutory damages under Section 11. *Id.* ¶¶ 4, 7. Lead Plaintiff's expert then applied the estimated artificial stock price inflation of $3.02 per share which existed at the

---

[3] In fact, under the Court's class certification opinion dated October 16, 2009, sellers of Juniper stock prior to May 18 were expressly *excluded* from the Class because they were unable to establish loss causation. *See In re Juniper Networks, Inc. Shareholder Litigation*, _____ F.R.D. _____, 2009 WL 3353321, at *9-10 (N.D. Cal. Oct. 16, 2009).

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)  6

{1964 / BRF / 00101430.DOC v2}

time of the NetScreen Merger to the damaged shares, resulting in approximately $29.9 million estimated classwide damages. *Id.* ¶ 7. E&Y's damages estimate is substantially lower.

Moreover, any estimate is potentially subject to a significant reduction based upon loss causation challenges and potential judgment reduction based upon E&Y's proportionate liability vis-à-vis Juniper. Lead Plaintiff's theory of damages is based upon establishing that Juniper's stock prices declined in response to disclosures about the company's stock option practices on four separate dates: May 18, May 19, August 10 and August 11, 2006. However, defendants vigorously challenge Lead Plaintiff's ability to establish the causal connection for three out of four disclosure dates, which, if successful, would eliminate more than 87% ($26.1 million) of the claimed recoverable damages that will be presented at trial, reducing classwide damages to $3.8 million. *See id.* ¶ 8 and Exhibit B thereto.

In September 2009, Juniper filed a motion for judgment on the pleadings seeking a ruling that the May 2006 disclosures were not corrective disclosures for which Lead Plaintiff can plead loss causation, based upon this Court's decision in *In re Maxim Integrated Prods. Sec Litig.*, No. C08-00832JW, 2009 WL 2136939 (N.D. Cal. July 16, 2009). This motion has been fully briefed but was adjourned in light of the mediation with Juniper. If E&Y successfully reasserts this motion, approximately 75% (or $22.7 million) would be eliminated from the estimated damages.

Causation has also been challenged as to the decline in Juniper's share price on August 10, 2006. Lead Plaintiff contends that news of Juniper's restatement was "leaked" to the market prior to Juniper's public release of the restatement announcement after the market closed on August 10, 2006. Although discovery revealed dozens of individuals that were aware of the impending restatement announcement prior to its public release, defendants will argue that Lead Plaintiff's leakage theory falls short as merely circumstantial. If defendants' position prevails on summary judgment, or Lead Plaintiff fails to convince a jury of leakage, it would reduce recoverable damages by almost another 12% (or $3.4 million). *See* Marek Supp. Decl. ¶ 8.

Finally, under the Juniper Stipulation of Settlement and Section 11, any judgment obtained against E&Y must be reduced based upon its proportionate fault in relation to the

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   7

{1964 / BRF / 00101430.DOC v2}

Juniper defendants. If the unsettled Section 11 claims were pursued to trial, it is likely that the jury would assess a low level of comparative fault to E&Y for its negligence in exercising due diligence, since E&Y's failings would be measured against Juniper's intentional misconduct and fabrication of its underlying records. *See In re Cendant Corp. Litig.*, 109 F. Supp. 2d 235, 261 (D.N.J. 2000) (holding that the proportionate liability restriction imposed by the PSLRA offsetting potential damages weighed strongly in favor of settlement with Ernst & Young, particularly with respect to its alleged Section 11 violation), *aff'd*, 404 F.3d 173 (3d Cir. 2005).

### 3. The Settlement Has No Obvious Deficiencies and Falls Within the Range for Approval

It is difficult to compare the Settlement to the theoretical amount that the Class might have obtained had it been completely successful in establishing liability at trial – a matter E&Y vigorously disputes – because the parties hold divergent views on the estimated number of damaged shares under Section 11, on loss causation, and on proportionate liability. Even if one adopts Lead Plaintiff's estimate of damaged shares, if E&Y prevails on its loss causation challenges and receives a finding of 10 to 25 percent comparative fault, then recovery at trial for the Class would range from $380,000 to $942,000. Under this far-from-implausible outcome, the $500,000 proposed Settlement accounts for 84% to 131% of potential recoverable damages.

Even considering the unlikely possibility of a home run for Lead Plaintiff – with all four disclosure dates accepted, and proportionate fault of 100% for E&Y and 0% for Juniper – "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Ofcrs. for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). *See also Knight v. Red Door Salons, Inc.* 08-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case"). *See also OmniVision*, 559 F. Supp. 2d at 1042 (citing *In re Heritage Bond Litig.*, 02ML1475, 2005 WL 1594403, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)).

Indeed, very few securities stock option backdating suits with separate claims against the

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)     8

{1964 / BRF / 00101430.DOC v2}

company's outside auditors have survived to the point where the accountants contributed to a monetary settlement.[4] In those few cases where the auditor contributed to a backdating settlement, the amounts have been nominal. In *In re Brocade Communications Systems, Inc. Derivative Litig.*, KPMG paid only $98,500 to settle securities fraud claims against in conjunction with Brocade's $160 million settlement. 05-02233-CRB (N.D. Cal.) Similarly, in *In re Comverse Technology, Inc. Sec. Litig.*, Deloitte & Touche paid $275,000 as part of a derivative action settlement on behalf of Comverse, whereas the company and its senior executives contributed $225,000,000 to the settlement fund. 06-1825 (E.D.N.Y.) *See* Hart Decl. ¶ 20. These results are significantly less than the proposed $500,000 settlement in this case.

### 4. The Risk, Expense and Complexity of the Action

The fairness of the Settlement is further underscored when the obstacles the Class faces in succeeding on the merits, as well as the expense and likely duration of the litigation, are considered. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). Although Lead Plaintiff believes that E&Y's defenses to liability lack merit, a substantial risk exists that E&Y would prevail on one or more of these arguments at summary judgment or ultimately at trial. E&Y denies each and all of the claims asserted by Lead Plaintiff and continues to aggressively litigate the Section 11 claims against it. On March 8, 2010, Judge Trumbull granted E&Y's request for a protective order and to quash subpoenas to prevent it from providing Lead Plaintiff further witnesses for deposition. Lead Plaintiff filed its objections to the Protective Order on March 22, 2010. On March 25, Lead Plaintiff moved to extend discovery in order to obtain further factual evidence sufficient to substantiate the Section 11 claims alleged against E&Y. Several other unresolved motions will affect the scope of Lead Plaintiff's fact discovery against E&Y. These discovery matters must be resolved, and expert discovery, summary judgment, and motions *in limine* concluded, before the case against E&Y can proceed to a

---

[4] On the contrary, claims against outside auditors in backdating cases often do not survive beyond the pleading stage. For example, in *In re Broadcom Corp. Class Action Litig.*, 06-05036 (C.D. Cal.), which recently settled for $160 million, the complaint against Ernst & Young was dismissed, and is currently on appeal in the Ninth Circuit. 09-55632 (9th Cir.).

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   9

{1964 / BRF / 00101430.DOC v2}

judgment on the merits. These proceedings are costly and uncertain, and would delay resolution of this action.[5] The substantial delay and significant labor involved weigh against bringing the Section 11 claims against E&Y to final judgment, particularly in light of the uncertainties in obtaining a successful verdict and the possibility that, even if successful, the judgment may yield a small residual award, subject to a lengthy appeals process.

Here, the E&Y Settlement will confer an immediate benefit to the Class and resolve the litigation completely. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (affirming approval of settlement because "[c]omplex litigation is inherently uncertain and Plaintiffs would have had much difficulty proving scienter"); *see also Knight,* 2009 WL 248367, at *3 (acknowledging that the settlement agreement that offered an immediate and certain award for the Class was a superior alternative to continued litigation in light of the uncertain risks associated with plaintiffs' claims). Given that E&Y aggressively challenged liability, damages, causation, and proportionate liability and would continue to do so through summary judgment, trial and appeals, the $500,000 settlement falls well within the range of possible approval and possesses no obvious deficiencies.

### 5. The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval of the Settlement

Lead Plaintiff, through Lead Counsel, is thoroughly familiar with the factual and legal issues in this case. Lead Plaintiff's claims have survived a motion to dismiss and a challenge at the class certification stage. Fact discovery is in its advanced stages. Lead Counsel has examined more than 2.5 million pages of documents that have been produced by the Juniper, E&Y, and third parties, and has deposed 28 witnesses. As a result, Lead Counsel is thoroughly

---

[5] Even if Lead Plaintiff were to prevail at trial, risks to the Class would remain. For example, E&Y certainly would initiate a lengthy and costly appeal process to challenge the verdict. Moreover, any verdict returned by a jury would be subject to the presiding judge's evaluation and, as such, could be overturned. *See, e.g., In re Apple Computer Sec. Litig.*, 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept 6, 1991) (this Court entered a judgment notwithstanding the verdict for the individual defendants and ordered a new trial against the corporate defendant); *In re Apollo Group, Inc. Sec. Litig.*, CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (overturning a trial verdict because there was insufficient evidence at trial to prove loss causation), *appeal pending*, No. 08-16971 (9th Cir.).

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   10

{1964 / BRF / 00101430.DOC v2}

familiar with the facts of the case and has had ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the sufficiency of the settlement. *See CLRB Hanson Indus. LLC v. Google Inc.*, 05-03649-JW, slip op. (N.D. Cal. May 12, 2009) (granting motion for settlement at a parallel stage of the proceedings); *see also Knight*, 2009 WL 248367, at *4.

### B. THE REVISED NOTICE SHOULD BE APPROVED WITH A SINGLE SCHEDULE AND FINAL APPROVAL DATE FOR THE JUNIPER AND E&Y SETTLEMENTS

As noted above, the Notice was addressed by Lead Plaintiff in its application filed on March 15, 2010, and preliminarily approved by the Court on April 12, 2010. The Notice was revised to include the terms of the E&Y Settlement, and the proposed order extends the mailing and publication dates by ten days (to May 21 and June 10, 2010, respectively), in order to permit sufficient time to accommodate any further changes made by the Court at the May 10, 2010 hearing. *See* Hart Decl ¶¶ 22-24; Marek Supp. Decl. ¶ 10.

### III. CONCLUSION

Based upon the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed E&Y Settlement, (2) approve the updated Class notice, and schedule for providing notice to the Class; and (3) schedule the final settlement hearing for August 30, 2010.

Dated: April 27, 2010

LOWEY DANNENBERG COHEN
& HART, P.C.

/S/
BARBARA J. HART
DAVID C. HARRISON
TODD S. GARBER
One North Broadway, 5th Floor
White Plains, NY 10601-2310
914-733-7228 (telephone)
914-997-0035 (facsimile)

*Counsel for Lead Plaintiff*

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)   11

{1964 / BRF / 00101430.DOC v2}

1
2
3   WILLEM F. JONCKHEER
    SCHUBERT JONCKHEER & KOLBE LLP
    Three Embarcadero Center, Suite 1650
4   San Francisco, CA 94111
    415-788-4220 (telephone)
5   415-788-0161 (facsimile)

6   *Local Counsel*

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNOPPOSED APPLICATION OF LEAD PLAINTIFF IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CASE NOS. C06-04327-JW (PVT) AND C08-0246-JW (PVT)    12

{1964 / BRF / 00101430.DOC v2}